## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

CALIFORNIA DEPARTMENT OF MOTOR VEHICLES,
*Petitioner,*

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,
*Respondents.*

On Petition for Review of an Order of the
Federal Motor Carrier Safety Administration

## RESPONSE TO EMERGENCY MOTION FOR
## STAY PENDING REVIEW

BRETT A. SHUMATE
  *Assistant Attorney General*

BRAD HINSHELWOOD
SIMON G. JEROME
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-1673*
  *simon.g.jerome@usdoj.gov*

## INTRODUCTION

Federal law establishes eligibility criteria for aliens not domiciled in the United States to obtain commercial drivers' licenses (CDLs) from State licensing agencies. Last year, the Federal Motor Carrier Safety Administration (FMCSA) conducted an annual review of implementation of those criteria by the California Department of Motor Vehicles (DMV). That review revealed systemic failures in the issuance of non-domiciled CDLs, including that roughly 20,000 CDLs—nearly one-third of the approximately 65,000 non-domiciled CDLs issued by the DMV—were issued improperly.

FMCSA, in conjunction with the DMV, established a corrective action plan to address the widespread failures in the DMV's non-domiciled CDL issuance process. As part of that plan, FMCSA directed the DMV to pause the issuance of non-domiciled CDLs until the DMV completed a variety of steps to ensure that it was capable of issuing non-domiciled CDLs in accordance with governing requirements. Those steps included not only an internal audit and systematic changes to the DMV's computer systems, training, and other processes, but also the cancellation of the more than 20,000 credentials that the DMV agreed to cancel, and the overwhelming majority of which it agrees were improperly issued.

As part of this ongoing process, FMCSA is evaluating whether the DMV has successfully completed the various required corrective steps, and on January 16 sent an email requesting documentation from the DMV to demonstrate how those changes were implemented. To date, however, the DMV has not demonstrated that it has successfully completed the corrective actions it was required to undertake. And although the DMV asserts that it has completed many of those actions, there is no dispute that the DMV definitively has not completed one required step: the cancellation of more than 20,000 CDLs it concedes were improperly issued and must be cancelled.

The DMV does not dispute that its prior issuance of non-domiciled CDLs was infected with systemic errors. Nor does it dispute that a pause in the issuance of non-domiciled CDLs while it implemented corrective measures to address those systemic issues was appropriate. But it now asks the Court to issue a stay to allow it to issue non-domiciled CDLs once again before FMCSA has determined whether the DMV has successfully completed the corrective actions the agency identified as necessary.

There is no basis for this Court to inject itself into the administrative process in this fashion, and the Court should reject the DMV's invitation to usurp FMCSA's role in determining whether the DMV has adequately

implemented the corrective actions that the DMV does not dispute were necessary. The harms that the DMV asserts from further delay in completing the administrative process are largely within its control: the DMV still has not provided the documentation of completion of corrective steps that FMCSA requested a month ago, and still has not cancelled the 20,000 erroneously issued CDLs.

The DMV also asserts separate harms flowing from FMCSA's Final Determination of non-compliance—specifically, the loss of highway trust fund money for FY 2027 as a statutory penalty for a finding of non-compliance. The DMV's arguments against that penalty are mistaken, but for present purposes, the salient point is that the loss of highway funds beginning in October 2026 is not irreparable harm warranting a stay of the Final Determination now. And in any event, the DMV's disagreement with the merits of the penalty imposed in the Final Determination is not a basis for this Court to intervene in the agency's assessment of whether the DMV has successfully implemented the corrective actions all agree were needed before the DMV may resume issuing non-domiciled CDLs. This Court should deny the DMV's stay motion.

## STATEMENT

1.  The Commercial Motor Vehicle Safety Act, Pub. L. 99–570, 100 Stat. 3207 (Oct. 27, 1986), and its implementing regulations, 49 C.F.R. Pt. 383, establish substantive criteria that an individual must satisfy in order to obtain and maintain a CDL.[1]  *See, e.g.*, 49 C.F.R. § 383.71(b)(2) (requiring a driver to "pass a driving or skills test in accordance with the standards" set by FMCSA).  Generally, an individual may obtain a CDL only from the State in which she is domiciled.  49 U.S.C. § 31311(a)(12)(A).  The Act, however, also permits the Secretary of Transportation to prescribe the conditions under which a non-domiciliary may obtain a CDL from a State.  *Id.* § 31311(a)(12)(B)(ii).  Under that authority, FMCSA in 2011 promulgated a rule creating the category of "non-domiciled commercial driver's license" for applicants domiciled outside the United States or in a State that does not issue CDLs.  *Commercial Driver's License Testing and Commercial Learner's Permit Standards*, 76 Fed. Reg. 26,854, 26,878 (May 9, 2011).  At present, all States issue CDLs, which means in practice that non-domiciled

---

[1] This response uses "commercial driver's license" or "CDL" to refer collectively to licenses and commercial learner's permits, or CLPs.

CDLs are issued almost entirely to aliens domiciled outside the United States.

Primary responsibility for applying statutory and regulatory CDL requirements falls to the States—which retain their traditional authority to issue driver's licenses—as a condition of their receipt of particular highway funding from the federal government. 49 U.S.C. § 31311. Every State that issues CDLs must, for example, consult the federally maintained Commercial Driver's License Information System (CDLIS) before issuing a CDL "and, based on th[e] information" obtained, "issue the license or, in the case of adverse information, promptly implement the disqualifications, licensing limitations, denials, and/or penalties that are called for" by federal regulation. 49 C.F.R. § 384.205. And after issuing a CDL, a State must update the driver's record on CDLIS to ensure that other States are well equipped to enforce the requirements and restrictions of the Act. *Id.* § 384.225.

Relevant here, a State must ensure that a non-domiciliary CDL applicant is, in fact, eligible to obtain and hold a non-domiciled CDL under federal law. An alien not domiciled in the United States is categorically ineligible for a non-domiciled CDL if she is "domiciled in a foreign

jurisdiction that the [Federal Motor Carrier Safety] Administrator has determined tests drivers and issues CDLs in accordance with, or under standards similar to, the standards" prescribed by the Secretary, *id.* § 383.23(b)(1), a category that currently includes Canada and Mexico, *id.* & n.1. A State must also verify the non-domiciliary's identity and lawful presence by means of "an unexpired employment authorization document (EAD) issued by [United States Citizenship and Immigration Services] or an unexpired foreign passport accompanied by an approved I-94 form documenting the applicant's most recent admittance into the United States." *Id.* § 383.71(f)(2)(i) (2025); *see id.* § 383.73(f)(3) ("The State must require compliance with the standards for providing proof of legal presence specified in … § 383.71(f)(2)(i)."); *see also id.* § 384.212(a).[2]

---

[2] In September 2025, FMCSA promulgated an interim final rule that altered aliens' eligibility to obtain non-domiciled CDLs, as well as the documentation required to establish work authorization. *See Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses*, 90 Fed. Reg. 46,509, 46,516-17 (Sept. 29, 2025). This Court stayed the interim final rule pending review on November 13, 2025. *Lujan v. FMCSA*, No. 25-1215 (Nov. 13, 2025). Subsequently, on February 13, 2026, FMCSA published a final rule incorporating comments received on the interim final rule. *See Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses*, 91 Fed. Reg. 7044 (Feb. 13, 2026). That rule has not yet taken effect. Citations in this part are to the prior version of the requirements modified by the interim final rule and final rule, which governed the DMV's conduct at all relevant times. *Accord* Add. 40.

To ensure compliance with the Act's regulatory scheme, FMCSA undertakes annual "review[s] to determine whether or not the State meets the general requirement for substantial compliance." *Id.* § 384.307(a); *see id.* § 384.301 (outlining general requirements of substantial compliance); Add. 39[3] ("During an [Annual Program Review], FMCSA evaluates all aspects of the State['s] CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas."). Where such a review results in a preliminary determination by the agency that the State is not substantially in compliance, FMCSA notifies the State accordingly, *id.* § 384.307(b), and develops a corrective action plan in consultation with the State, *id.* § 384.307(c). The State's failure to complete the required corrective steps on the agreed schedule may result in a final determination of non-compliance. *Id.* § 384.307(d). The Act empowers the agency to impose various penalties for non-compliance, ranging from

---

[3] The DMV's motion and this response both include consecutively paginated addenda. Citations to the addendum materials are cited with "Add." and the page number.

withholding of a specified portion of federal highway funding, 49 U.S.C. § 31314, to total decertification of the State's CDL program, *id.* § 31312.

2. Following its Annual Program Reviews in 2025, FMCSA preliminarily determined that 30 States[4] and the District of Columbia were in substantial noncompliance with federal non-domiciled CDL regulations. *List of States FMCSA Determined Were in Substantial Noncompliance*, Regulations.gov, https://perma.cc/JZJ8-G8NT. Among those States is California, whose DMV underwent an Annual Program Review beginning in August 2025. Add. 41. On September 26, 2025, after FMCSA's review of the DMV revealed "systemic policy, procedural, and programming errors" with respect to issuance and renewal of non-domiciled CDLs, *id.*, FMCSA issued a Preliminary Determination of substantial noncompliance. In a sample of 145 CDL transaction records, FMCSA discovered that 29 non-domiciled CDLs—20 percent of the sample—were issued with expiration dates exceeding the period of the applicant's lawful presence in the United States. Add. 41, 42-48. The DMV's subsequent internal audit confirmed that the

---

[4] California, Colorado, Connecticut, the District of Columbia, Delaware, Idaho, Illinois, Indiana, Iowa, Maine, Maryland, Michigan, Minnesota, Missouri, Nevada, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Washington, and Wyoming.

scope of the problem was even larger: of some 65,000 unexpired non-domiciled CDLs it had issued, "approximately 20,100," or almost 31 percent, were issued with non-conforming expiration dates. Add. 90. FMCSA's review also revealed that in 11 of the 145 cases sampled, the DMV issued a non-domiciled CDL to a categorically ineligible citizen of Mexico. Add. 48. Subsequent investigation by the DMV revealed the number of such licenses (including those issued to citizens of Canada, who are identically situated) to be approximately 1,600. Add. 91. Finally, FMCSA learned that the DMV routinely issued "temporary" CDLs and permits to individuals without verifying lawful presence, and without reporting the issuances to CDLIS, both steps in violation of federal law. Add. 51.

To address these shortcomings, FMCSA identified a series of corrective steps for the DMV to take, including an immediate pause on issuance of non-domiciled CDLs, prompt identification and rescission of CDLs issued with overlong expiration dates and those issued to ineligible citizens of Mexico and Canada, an internal audit, and reissuance of the erroneously issued CDLs "only after the [DMV] ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities,

equipment, and personnel), and enforcement practices meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311." Add. 51-52.

In response to the Preliminary Determination of non-compliance, the DMV disputed that its practice of issuing CDLs that expired after an alien's period of lawful presence violated federal law, as well as the agency's position that the Mexican and Canadian citizens who obtained CDLs were ineligible to do so. Add. 57-58, 58-61. The DMV nevertheless agreed that the overlong expiration dates violated state law. Add. 63. The DMV also agreed that it had improperly failed to report required information about temporary CDL holders to CDLIS. Add. 67. To remedy these missteps, the DMV agreed to take corrective action, including by pausing non-domiciled CDL issuance, rescinding licenses with expiration dates that exceeded the applicant's documented lawful presence and those issued to Mexican citizens who are not Deferred Action for Childhood Arrivals recipients, and auditing its internal processes. Add. 67-70.

FMCSA subsequently issued a Conditional Determination on November 13, 2025. Add. 72. FMCSA noted that the DMV's proposed corrective actions might prove to resolve the systemic issues identified, Add. 80-81, but emphasized that FMCSA needed additional information from the

DMV about its implementation of the corrective action plan to verify that the deficiencies identified had been resolved.  Add. 82.  FMCSA also stressed that "timely rescission of all unexpired non-domiciled … CDLs that failed to meet the requirements of parts 383 and 384, as interpreted by FMCSA, at the time of issuance … [wa]s critically important to the overall framework of the required corrective action plan."  *Id.*

Prior to the Conditional Determination, the DMV had represented to FMCSA that its rescission of more than 17,000 improperly issued CDLs[5] would be effective by January 5, 2026.  Add. 136; *accord* Add. 108.  The day before Christmas, however, the DMV emailed FMCSA and informed the agency that the cancellation date would be moved to March 6 instead.  Add. 108.  The following week, without FMCSA's assent, the DMV proceeded to announce a unilateral extension of the expiration date.  Add. 140; *cf.* 49 C.F.R. § 384.307(c) (stating that "[c]orrective action must … be implemented on a

---

[5] The total number of non-domiciled CDLs the DMV has agreed to cancel approximates 20,100.  Add. 90.  Of those, approximately 17,000 were the first group to be slated for cancellation, and whose cancellation would take place no later than January 5, per the DMV's representations to FMCSA.  Add. 91.  The DMV informed FMCSA that the remaining CDLs with overlong expiration dates, as well as the CDLs improperly issued to ineligible citizens of Mexico and Canada, would be cancelled in a subsequent batch.  Add. 90-91.

schedule mutually agreed upon by the agency and the State"). On January 7, FMCSA issued a Final Determination of substantial noncompliance, observing that the DMV had failed to implement aspects of the corrective action plan, including the cancellation of improperly issued CDLs. Add. 141-42.

To date, the DMV has failed to demonstrate that it has completed the corrective actions required to come into substantial compliance. FMCSA has repeatedly requested information about the steps the DMV asserts that it has taken to complete aspects of the corrective action plan, such as changes to training programs and DMV software. *See* Add. 125-28, 129-30. On January 16, FMCSA reiterated its requests for information related to the DMV's implementation of corrective actions, such as information about trainings the DMV asserted it had provided on December 17 and information about a "short-term" software fix the DMV had proposed to use to ensure compliance. Add. 147-49. And more recently, on February 4—two days before the DMV filed the instant motion—FMCSA sent a follow-up email again requesting the information it sought from the DMV. Add. 161. As of the filing of this response, however, the DMV has not provided any of the requested information. And, of course, the DMV still has not cancelled any

of the more than 20,000 improperly issued non-domiciled CDLs.  Add. 108, 147.  On February 13, FMCSA emailed the DMV to schedule an interim site visit and reiterated its request for additional information related to the DMV's corrective actions.  Add. 165-68.  The DMV responded the same day, tentatively scheduling such a visit for February 24-26 and indicating that the DMV would continue to work on responses to FMCSA's request.  Add. 169.

3.  One month after FMCSA issued its Final Determination, the DMV petitioned this Court for review of that order.  Pet. (Feb. 4, 2026).  The next day, the DMV moved the agency for a stay of its order.  Add. 157-58.  When FMCSA denied that request on February 6, Add. 160, the DMV filed this motion for a stay pending review of the Final Determination.

## ARGUMENT

"A stay pending [review] is an 'extraordinary' remedy."  *KalshiEX LLC v. CFTC*, 119 F.4th 58, 63 (D.C. Cir. 2024) (quoting *CREW v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam)).  The DMV must show a likelihood of success on the merits, irreparable harm, and that the harm to third parties and the public interest support interim relief.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Winter v. Natural Res. Def. Council, Inc.*,

555 U.S. 7, 20 (2008).  It has not shown here that the circumstances justify

"such exceptional relief."  *KalshiEX LLC*, 119 F.4th at 63.

## A. The DMV's Own Representations Regarding Remediation Do Not Justify a Stay

The DMV asks this Court to stay the Final Determination that

FMCSA issued finding that the DMV was not in substantial compliance with

federal regulations governing the issuance of non-domiciled CDLs.  The

DMV primarily urges that a stay of the Final Determination is necessary to

allow the DMV to resume the issuance of non-domiciled CDLs, *e.g.*, Mot. 2,

21, and argues that the Final Determination was erroneous in multiple

respects, *see* Mot. 13-20.

Those arguments misunderstand the structure of the FMCSA review

process and ignore basic premises of administrative law.  FMCSA instructed

the DMV to pause the issuance of non-domiciled CDLs while the DMV

implemented corrective actions to address systemic flaws in the DMV's

issuance of such CDLs.  The DMV does not dispute FMCSA's authority to

order that pause or that the pause was appropriate when issued.  *See* 49

C.F.R. § 384.405(a) (requiring the Administrator to prohibit certain

transactions after a finding of substantial noncompliance).  FMCSA made

clear from the beginning that the pause would end only when the DMV had

completed the necessary corrective actions, ensuring that the future issuance or reissuance of non-domiciled CDLs would not be affected by the same systemic problems. *See* Add. 51-52, Add. 97. The DMV's motion focuses primarily on the requirement to cancel more than 20,000 CDLs with overlong expiration dates that all agree were improperly issued, but the corrective actions required extended far beyond that single requirement, including changes to the DMV's training, software, and policies. *See* Add. 51-52.

The requirement that the DMV pause issuance is thus not tied solely to the DMV's (still-uncompleted) cancellation of erroneous licenses. The DMV does not dispute that these corrective actions are necessary, instead urging that it "has remedied the issues that FMCSA identified in its various Determinations." Mot. 18. Yet the statutory and regulatory scheme tasks FMCSA, as the agency responsible for overseeing the CDL issuance process, with determining whether those issues have in fact been remedied by the actions the DMV has taken. FMCSA has thus repeatedly requested information about the corrective actions the DMV says it has taken. *See* Add. 125-28, 129-30, 161, 165-69. On January 16, FMCSA requested information related to five specific aspects of the DMV's corrective actions. Add. 147-49. Then, on February 4, FMCSA sent a follow-up email reminding the DMV

that the agency was still waiting on necessary information. Add. 161. The requests remain unanswered a month later, *see* Add. 169, even though they have obvious bearing on the assertions of compliance the DMV now makes. For example, the DMV asserts that it has "trained staff in new procedures related to non-domiciled commercial licenses," Mot. 18, yet it has not provided requested information about such training, *see* Add. 148. Nor has the DMV provided information about a "short-term" software solution that will "bypass[] [a] software error" in the DMV's current software, or about the DMV's timeline for implementing a longer-term solution. Add. 148-49.

There is no basis for this Court to short-circuit the process of assessing whether the DMV has properly implemented corrective actions that will put the DMV back into compliance, and particularly to do so based solely on the DMV's unsupported representations about the efficacy of the steps taken rather than on the basis of a developed record. And more generally, FMCSA's ability to oversee States' compliance with the CDL regulatory framework would be put at serious risk if a State impatient with the speed of remediation could run to court and circumvent the process the Act and its regulations contemplate. 49 C.F.R. § 384.307.

At bottom, the DMV's real complaint appears to be that the process of bringing the DMV into compliance is taking too long. *See* Mot. 11-12. The DMV's complaints about delay ring hollow given that four and a half months have passed since the Preliminary Determination, and the DMV has not yet responded to the information requests about the DMV's corrective actions that FMCSA sent a month ago. Moreover, the fact that the DMV will not complete all the necessary corrective actions until March at the earliest—when it finally cancels the erroneously issued CDLs—is entirely the product of the DMV's unilateral decision to delay that cancellation. With respect to the timing of an on-site review of the DMV's corrective actions, FMCSA initially chose to delay any such review until the DMV documented its completion of *all* the corrective actions required. That approach makes good sense, as having full documentation of the corrective actions ensures that the DMV is prepared for a site visit and increases the odds that such a visit will be productive—an important consideration given inherent constraints on agency resources at a time when FMCSA is engaged in similar dialogues with numerous other driver's license issuing agencies in other States. Indeed, FMCSA is presently tasked with overseeing remedial steps being implemented by three-fifths of the States. *Supra* p. 8 & n.4. In any event, in

a good-faith effort to resolve the DMV's remedial process expeditiously, FMCSA subsequently agreed to conduct an interim on-site review. Add. 166. The utility of that review, and the necessity of any further site visits before the DMV is reauthorized to issue non-domiciled CDLs, will turn largely on the completeness of the information the DMV chooses to submit in the meantime and its success in completing the various corrective actions.

Finally, aside from the asserted harm of being presently unable to issue non-domiciled CDLs, the DMV contends in passing (Mot. 21) that it faces injury from the loss of federal highway funds that would be available on October 1 of this year. But the DMV provides no justification for treating the loss of funds more than seven months in the future as an irreparable injury that warrants a stay now. *KalshiEX, LLC*, 119 F.4th at 63 (stay movant must show irreparable harm "before the appeal concludes").

*   *   *

FMCSA's hope and expectation is that the DMV will be able to document its completion of the necessary corrective actions and that the DMV will then be permitted to resume issuance of non-domiciled CDLs. The timing of that process is predominantly in the DMV's control, and the ball has been squarely in the DMV's court for a month and counting. But at this

stage, there is no basis for this Court to issue a stay premised on the DMV's own claims about the corrective actions it has purportedly completed, much less to ignore the corrective action the DMV concededly has not yet completed.

## B. The DMV Is Unlikely to Succeed on the Merits

The DMV asserts that the Final Determination is contrary to law and arbitrary and capricious. But as the foregoing illustrates, those arguments are largely irrelevant at this stage: the DMV is not entitled to an order from this Court that prejudges whether the DMV has successfully completed the corrective actions all agree were necessary to bring the DMV into compliance and to permit the DMV to restart the issuance of non-domiciled CDLs, and the DMV has failed to identify any other injury flowing from the Final Determination that could warrant a stay. But in any event, the DMV is not likely to succeed on the merits of a challenge to the Final Determination.

FMCSA properly concluded that the DMV's practice of issuing non-domiciled CDLs with expiration dates exceeding those of the lawful presence documentation the applicants offered violated federal law. As the agency explained in the Preliminary Determination, an alien applying for a non-domiciled CDL must present *unexpired* proof of lawful presence. 49 C.F.R.

§ 383.71(f)(2)(i) (2025); *id.* § 383.73(f)(3) (2025); *see* Add. 40; Add. 74.  Because eligibility for a non-domiciled CDL hinges on the applicant's lawful presence, it follows as a matter of course that a credential issued for a period in which the applicant has not demonstrated lawful presence exceeds the State's authority.  49 U.S.C. § 31308(4)(E) adds nothing to this equation; it merely requires that CDLs issued by the States show an expiration date—a requirement implemented in 49 C.F.R. § 383.153(a)(7).  *Cf.* Mot. 15.  And the other provisions the DMV cites, 49 C.F.R. §§ 383.25(c) and 383.73(b)(9), merely establish independent maximum periods of validity for CDLs and learner's permits.  An alien's period of lawful presence may exceed those periods, and so the provisions remain operative under the government's interpretation.  *Cf.* Mot. 16 (citing *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1078 (7th Cir. 2013)).  Finally, the fact that FMCSA sought to make this requirement more explicit in its recent (and stayed) interim final rule on non-domiciled CDLs, Mot. 15-16, does not mean that the requirement did not logically follow from the rule previously in effect.

FMCSA did not act arbitrarily when it issued the Final Determination.  An agency "satisfies arbitrary-and-capricious review so long as it considered relevant information and drew 'a rational connection between the facts found

and the choice made.'" *National Ass'n of Broadcasters v. FCC*, 147 F.4th 978, 991 (D.C. Cir. 2025) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 43 (1983)). Here, FMCSA reasonably determined at a preliminary stage that the DMV was not in substantial compliance with federal CDL regulations in that it issued overlong CDLs, issued CDLs to ineligible applicants, and failed to follow reporting requirements. *Supra* pp. 8-10. That determination required the DMV to take "[c]orrective action" "adequate to correct the deficiencies noted in the program review and … implemented on a schedule mutually agreed upon by the agency and the State." 49 C.F.R. § 384.307(c). But, as the DMV does not dispute, the DMV "failed to implement the crucial corrective action of rescinding and reissuing the licenses in accordance with 49 C.F.R. § 384.212, FMCSA and DMV's mutually agreed upon timeline, and DMV's own commitments." Add. 141. And this failure went beyond just licenses issued with incorrect expiration dates: as the Final Determination noted, the DMV also unilaterally extended the deadline for cancelling CDLs improperly issued to citizens of Mexico and Canada. Add. 140-41. Accordingly, FMCSA was justified in issuing the Final Determination. *See* 49 C.F.R. § 384.307(d) ("In making its final determination, the FMCSA will take into consideration

the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.").

In response, the DMV critiques the agency's statement that failing to cancel the improperly issued licenses created a "significant safety risk." Mot. 19 (quoting Add. 141). But the relative safety records of non-domiciled CDL holders and other CDL holders are not in the record, and the California-specific data the DMV cites does not disaggregate by domiciliary status. And in any event, safety considerations would not alter the fact that the DMV violated the clear regulatory requirement to adhere to the "mutually agreed upon schedule" for termination of licenses it agreed were improperly issued.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for stay pending review.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

BRAD HINSHELWOOD

  */s/ Simon G. Jerome*
SIMON G. JEROME
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-1673*
  *simon.g.jerome @usdoj.gov*

FEBRUARY 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the response contains 4,556 words. The response complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point CenturyExpd BT typeface.

*/s/ Simon G. Jerome*
SIMON G. JEROME

# ADDENDUM

# TABLE OF CONTENTS

Feb. 4, 2026 Email from FMCSA to DMV ............................................... Add. 161

Feb. 13, 2026 Email from FMCSA to DMV .......................................... Add. 165

Feb. 13, 2026 Email from DMV to FMCSA .......................................... Add. 169

**Snook, Christopher (FMCSA)**

| | |
|---|---|
| **From:** | Hembeck, Mari (FMCSA) |
| **Sent:** | Thursday, February 5, 2026 3:03 PM |
| **To:** | Snook, Christopher (FMCSA) |
| **Subject:** | FW: FMCSA review - Response |

**From:** Jones, Joshua (FMCSA) <joshua.jones@dot.gov>
**Sent:** Wednesday, February 4, 2026 9:31 AM
**To:** Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Bernard.Soriano dmv.ca.gov
<Bernard.Soriano@dmv.ca.gov>; Thomas, Philip (FMCSA) <Philip.Thomas@dot.gov>; Gordon, Steve P.@DMV
<Steve.Gordon@dmv.ca.gov>; Swenson, Edward D.@DMV <Edward.Swenson@dmv.ca.gov>; Triepke, Kristin J.@DMV
<Kristin.Triepke@dmv.ca.gov>
**Cc:** Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>; Ehret, Lorraine
(FMCSA) <lorraine.ehret@dot.gov>; Poarch, Brandon (FMCSA) <brandon.poarch@dot.gov>; Nemons, Patrick (FMCSA)
<Patrick.Nemons@dot.gov>; Dequina, Carlos (FMCSA) <carlos.dequina@dot.gov>; Liberatore, Thomas (FMCSA)
<thomas.liberatore@dot.gov>; Hampton, Michael (FMCSA) <michael.hampton@dot.gov>
**Subject:** RE: FMCSA review - Response

Deputy Director Soriano,

FMCSA is following up on this email and request for information. Can you please confirm receipt of this email and its
contents. Additionally, we are inquiring as to the proposed timeline in which the requested information will be provided
to FMCSA for review.

Thank you,

Joshua Jones, CDL Program Manager
Western Service Center
U.S. Department of Transportation
Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)
Golden Hills Office Centre
12600 W. Colfax Ave. Suite B-300
Lakewood, CO 80215



**From:** Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>
**Sent:** Friday, January 16, 2026 3:13 PM
**To:** Bernard.Soriano dmv.ca.gov <Bernard.Soriano@dmv.ca.gov>; Thomas, Philip (FMCSA) <Philip.Thomas@dot.gov>;
Gordon, Steve P.@DMV <Steve.Gordon@dmv.ca.gov>; Swenson, Edward D.@DMV <Edward.Swenson@dmv.ca.gov>;
Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>
**Cc:** Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>; Ehret, Lorraine
(FMCSA) <lorraine.ehret@dot.gov>; Poarch, Brandon (FMCSA) <brandon.poarch@dot.gov>; Jones, Joshua (FMCSA)

<joshua.jones@dot.gov>; Nemons, Patrick (FMCSA) <Patrick.Nemons@dot.gov>; Dequina, Carlos (FMCSA) <carlos.dequina@dot.gov>; Liberatore, Thomas (FMCSA) <thomas.liberatore@dot.gov>; Hampton, Michael (FMCSA) <michael.hampton@dot.gov>
**Subject:** RE: FMCSA review - Response

Deputy Director Soriano,

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA) served the State of California a conditional Determination on November 13, 2025.  On December 10, 2025, DMV submitted a "Response to November 13, 2025, Conditional Determination Regarding Non-Domiciled Commercial Driver's License and Learning Permits Issuance," which stated, among other things, that DMV issued cancellation notices to approximately 17,400 drivers and the cancellations would be effective on January 5, 2026. However, on December 30, 2025, contrary to the mutually agreed upon date with FMCSA, DMV unilaterally informed the public that noncompliant non-domiciled CLPs and CDLs that were due to be cancelled on January 5, 2026, would not be cancelled until March 6, 2026. FMCSA subsequently told DMV that any extension was not
approved and reiterated that failure or delay in the implementation of the required corrective actions would be contrary to the corrective action plan. FMCSA acknowledges that DMV has implemented or indicates that it plans to implement some of the corrective actions required in the Preliminary Determination. However, as DMV is aware, the rescission and reissuance of all unexpired noncompliant non-domiciled CLPs and CDLs in accordance with parts 383 and 384, in effect at the time of reissuance, is critically important to the overall framework of the required corrective action plan.
The DMV must rescind/cancel all unexpired noncompliant CLPs and CDLs prior to any planned on-site review by the FMCSA. In addition, as has been requested on several occasions, FMCSA requires the following items:

1. A full and complete audit report and list of drivers the DMV identified as noncompliant. The purpose for the report would allow FMCSA to independently verify the DMV's claims its CDL issuance processes have been updated in accordance with federal regulations. Without a list of non-compliant CDLs and CLPs, FMCSA's audit would be limited to reviewing non-domiciled CDLs and CLPs of the DMVs choosing. As part of this report, the DMV must provide a sample of each type (i.e. each "bucket") of cancellation notices the DMV issued to noncompliant CLP and CDL holders from November and December, as well as a sample of any notices pertaining to the delay of said cancelations.  Additionally, within the letter dated December 10, the DMV identified three groups of noncompliant drivers; however, based upon FMCSA's review of the DMV's responses from December 10 and January 5, FMCSA determined there may be as many as five distinct groups of noncompliant drivers. As a result, FMCSA is requesting DMV to reconcile the discrepancy between the information provided in the December 10 letter, verbally acknowledged on December 18, and the answers received on January 5. Further, FMCSA is wanting to ensure the total unexpired non-domiciled CDLs and CLPs are accurately accounted for and reviewed. FMCSA identified the five groups are below:
    a. CDL's with license expiration dates exceeding the expiration date on the LP documents, approximately 17,299 drivers.
    b. Non-REAL ID license expiration dates exceeding the expiration date on the LP documents, approximately 2,719 drivers.
    c. Licenses issued to MX/CN citizens not present in the U.S. under DACA, approximately 1,613 drivers.
    d. Drivers who have established US Citizenship or lawful permanent residency, approximately 2000 drivers deducted from the total as they are now compliant, as verbally acknowledged during the 12/18 call between the FMCSA and DMV.
    e. Temporary CLPs issued prior to verifying a driver's legal presence, 11 drivers.

2.  The DMV indicated training was provided on December 17, 2025. Field offices were instructed to record which employees received the training on December 17th and continue to record training that occurs on an ongoing basis for employees who were absent on December 17, 2025.  Please provide evidence that relevant DMV staff have been properly trained, including, but not limited to:

a. Field personnel rosters and rosters of staff who received the updated SDLA memo (DL-2025-XX) "Resuming Issuance of Non-Domiciled CLPs and CDLs"

b. Copies of old issuance memos, DL 2025-20 and DL 2025-23 for comparison

c. New-hire onboarding training material and training processes.

d. Termination of the practice of issuing temporary/interim CDLs and CLPs at field offices and assurances CDLIS pointers are created in compliance with 384.207.

3.On September 29, 2025, the DMV indicated field office employees were directed to stop issuing non-domiciled CLPs and CDLs. On October 28, 2025, DMV implemented programming modifications to prohibit field office employees from issuing non-domiciled CLPs and CDLs were released into production; field office employees are no longer able to issue non-domiciled CDLs.  Please provide details surrounding the one-month gap, from September 29 to October 28, in short term programmatic solutions, including, but not limited to:

a. Although field office employees are no longer permitted to issue non-domiciled CDLs and CLPs, please provide verification the DMV 'shutdown' its system between September 29 to October 28. In addition, the DMV needs to provide verification that no non-domiciled licenses were issued prior to the hard coding stops put integrated on October 28.

4. The DMV indicated the short-term solution will rely on DMV's intelligent automation (bot) to automatically verify the SAVE response against the customer's legal presence document. The system will then automatically match the license expiration date to the expiration date of the legal presence document. This bypasses the software error in our current computer program. Please provide additional details including, but not limited to "bot" functionality and processes:

a. Operational parameters and business rules used to program for the "bot"

b. Limitations requiring manual intervention by DMV HQ staff

c. Methodology pertaining to the "daily manual review" as noted in the January 5 communication

5. The DMV indicated they plan to implement a long-term policy, programming, and or programmatic changes, as noted in footnote 18 to the January 7, 2026, Notice of Final Determination of Substantial Noncompliance. DMV projected the long-term effort will take six months to complete and acknowledged the DMV has other conflicting priorities. It is unclear if the DMV has begun implementation or development of the long-term solution. As a result, FMCSA requests the timeline in which DMV will deploy the solution.

Once submitted, the FMCSA will analyze and review the aforementioned information and data.  Once complete, FMCSA will visit DMV headquarters and certain field office locations to assess the application of the revised policies, procedures and IT system changes, to ensure future license issuances are in compliance with parts 383 and 384.  Further follow-up may be required once the DMV is permitted to re-issue non-domiciled licenses up to and including, verification of the DMVs proposed long-term programmatic solutions.

On behalf of Deputy Associate Administrator Thomas,

**Scott Hernandez**, Regional Field Administrator
*Western Region*
Federal Motor Carrier Safety Administration
12600 W. Colfax Avenue, Suite B300, Lakewood, CO 80215
P: (303) 407-2370 | M: (303) 918-9423
scott.hernandez@dot.gov


U.S. Department of Transportation
**Federal Motor Carrier Safety Administration**

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Monday, January 12, 2026 5:17 PM
**To:** Thomas, Philip (FMCSA) <Philip.Thomas@dot.gov>; Gordon, Steve P.@DMV <Steve.Gordon@dmv.ca.gov>; Swenson, Edward D.@DMV <Edward.Swenson@dmv.ca.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>
**Cc:** Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>; Ehret, Lorraine (FMCSA) <lorraine.ehret@dot.gov>; Poarch, Brandon (FMCSA) <brandon.poarch@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Nemons, Patrick (FMCSA) <Patrick.Nemons@dot.gov>; Dequina, Carlos (FMCSA) <carlos.dequina@dot.gov>; Liberatore, Thomas (FMCSA) <thomas.liberatore@dot.gov>
**Subject:** FMCSA review

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Dear Deputy Associate Administrator Thomas,

The California Department of Motor Vehicles is following up on its request to schedule a time where FMCSA representatives can review the changes the department has made with respect to the processing of non-domiciled CDLs. As we previously discussed with FMCSA staff, the department is and has been ready to have FMCSA conduct its review. To that end, and as we identified last week, department staff are available to meet with FMCSA representatives on the following remaining dates through Friday, January 23: January 13-15 and the 20-23. The department can meet at any time that will work for FMCSA staff on those days.

Again, it is critically important that FMCSA agree to a date as soon as possible so that California can issue corrected CDLs to eligible drivers as required by FMCSA.

Please let us know which of these dates will work for your staff.

Sincerely,


Bernard C. Soriano
Deputy Director, Policy
California Department of Motor Vehicles

M: 916.952.0080

| | |
|---|---|
| **From:** | Spinnicchia, Michael (FRA) |
| **To:** | Fuller, Samuel (OST) |
| **Cc:** | Pettit, Rebecca (FMCSA); White, Tracy (FMCSA); Lavalas, Romana (FMCSA); Schottler, Brian (FMCSA) |
| **Subject:** | FW: FMCSA review |
| **Date:** | Friday, February 13, 2026 4:26:29 PM |
| **Attachments:** | image001.png |

Hi Sam,

The email was just sent to CA.  See below.

-Mike

**From:** Philip Thomas <philip.thomas@dot.gov>
**Sent:** Friday, February 13, 2026 4:24 PM
**To:** Spinnicchia, Michael (FRA) <michael.spinnicchia@dot.gov>; White, Tracy (FMCSA) <Tracy.White@dot.gov>
**Subject:** Fwd: FMCSA review

Philip W. Thomas
Deputy Associate Administrator
Office of Safety
Federal Motor Carrier Safety Administration
U.S. Department of Transportation
(202) 366-9554
Philip.Thomas@dot.gov
Schedule 15 minutes with me

---------- Forwarded message ---------
From: **Jones, Joshua (FMCSA)** <joshua.jones@dot.gov>
Date: Fri, Feb 13, 2026 at 4:13 PM
Subject: FMCSA review
To: Bernard.Soriano dmv.ca.gov <Bernard.Soriano@dmv.ca.gov>
CC: Thomas, Philip (FMCSA) <Philip.Thomas@dot.gov>, Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>, Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>, Price, Craig (FMCSA) <craig.price@dot.gov>, Ehret, Lorraine (FMCSA) <lorraine.ehret@dot.gov>, Nemons, Patrick (FMCSA) <Patrick.Nemons@dot.gov>, Dequina, Carlos (FMCSA) <carlos.dequina@dot.gov>, Liberatore, Thomas (FMCSA) <thomas.liberatore@dot.gov>,

Hampton, Michael (FMCSA) <michael.hampton@dot.gov>, Snook, Christopher (FMCSA) <christopher.snook@dot.gov>

Deputy Director Soriano,

As FMCSA previously communicated, the California DMV must rescind/cancel all unexpired noncompliant CLPs and CDLs. We noted this should take place prior to any planned on-site review by FMCSA. However, after further consideration, FMCSA would like to offer California DMV an interim onsite visit to discuss unresolved items and continue evaluating the State's progress toward completing the required corrective actions identified in its non-domiciled CDL program.

We have availability over the course of the next two weeks:

- February 18th and 19th
- February 24th – 26th

Please let us know if you are available to meet on any of those days.

In addition, as has been requested on several occasions, FMCSA requires the following items:

1. A full and complete audit report and list of drivers the DMV identified as noncompliant. The purpose for the report would allow FMCSA to independently verify the DMV's claims its CDL issuance processes have been updated in accordance with federal regulations. Without a list of non-compliant CDLs and CLPs, FMCSA's audit would be limited to reviewing non-domiciled CDLs and CLPs of the DMVs choosing. As part of this report, the DMV must provide a sample of each type (i.e. each "bucket") of cancellation notices the DMV issued to noncompliant CLP and CDL holders from November and December, as well as a sample of any notices pertaining to the delay of said cancelations.  Additionally, within the letter dated December 10, the DMV identified three groups of noncompliant drivers; however, based upon FMCSA's review of the DMV's responses from December 10 and January 5, FMCSA determined there may be as many as five distinct groups of noncompliant drivers. As a result, FMCSA is requesting DMV to reconcile the discrepancy between the information provided in the December 10 letter, verbally acknowledged on December 18, and the answers received on January 5. Further, FMCSA is wanting to ensure the total unexpired non-domiciled CDLs and CLPs are accurately accounted for and reviewed. FMCSA identified the five groups are below:
a. CDL's with license expiration dates exceeding the expiration date on the LP documents, approximately 17,299 drivers.
b. Non-REAL ID license expiration dates exceeding the expiration date on the LP documents, approximately 2,719 drivers.
c. Licenses issued to MX/CN citizens not present in the U.S. under DACA, approximately 1,613 drivers.
d. Drivers who have established US Citizenship or lawful permanent residency, approximately 2000 drivers deducted from the total as they are now compliant, as verbally acknowledged during the 12/18 call between the FMCSA and DMV.

e. Temporary CLPs issued prior to verifying a driver's legal presence, 11 drivers.

2.  The DMV indicated training was provided on December 17, 2025. Field offices were instructed to record which employees received the training on December 17th and continue to record training that occurs on an ongoing basis for employees who were absent on December 17, 2025.  Please provide evidence that relevant DMV staff have been properly trained, including, but not limited to:
a. Field personnel rosters and rosters of staff who received the updated SDLA memo (DL-2025-XX) "Resuming Issuance of Non-Domiciled CLPs and CDLs"
b. Copies of old issuance memos, DL 2025-20 and DL 2025-23 for comparison
c. New-hire onboarding training material and training processes.
d. Termination of the practice of issuing temporary/interim CDLs and CLPs at field offices and assurances CDLIS pointers are created in compliance with 384.207.

3.On September 29, 2025, the DMV indicated field office employees were directed to stop issuing non-domiciled CLPs and CDLs. On October 28, 2025, DMV implemented programming modifications to prohibit field office employees from issuing non-domiciled CLPs and CDLs were released into production; field office employees are no longer able to issue non-domiciled CDLs.  Please provide details surrounding the one-month gap, from September 29 to October 28, in short term programmatic solutions, including, but not limited to:
a. Although field office employees are no longer permitted to issue non-domiciled CDLs and CLPs, please provide verification the DMV 'shutdown' its system between September 29 to October 28. In addition, the DMV needs to provide verification that no non-domiciled licenses were issued prior to the hard coding stops put integrated on October 28.

4. The DMV indicated the short-term solution will rely on DMV's intelligent automation (bot) to automatically verify the SAVE response against the customer's legal presence document. The system will then automatically match the license expiration date to the expiration date of the legal presence document. This bypasses the software error in our current computer program. Please provide additional details including, but not limited to "bot" functionality and processes:
a. Operational parameters and business rules used to program for the "bot"
b. Limitations requiring manual intervention by DMV HQ staff
c. Methodology pertaining to the "daily manual review" as noted in the January 5 communication

5. The DMV indicated they plan to implement a long-term policy, programming, and or programmatic changes, as noted in footnote 18 to the January 7, 2026, Notice of Final Determination of Substantial Noncompliance. DMV projected the long-term effort will take six months to complete and acknowledged the DMV has other conflicting priorities. It is unclear if the DMV has begun implementation or development of the long-term solution. As a result, FMCSA requests the timeline in which DMV will deploy the solution.

**It would be helpful to have the above-listed items prior to the interim onsite**. FMCSA intends to analyze and review the aforementioned information and data. Once complete, FMCSA will then go back onsite to DMV headquarters and certain field office locations to assess the application of the revised policies, procedures, and IT system changes, to ensure future license issuances comply with parts 383 and 384.  Further follow-up may be required once the DMV is permitted to re-issue non-

domiciled licenses up to and including, verification of the DMVs proposed long-term programmatic solutions.

Thank you,

Joshua Jones, CDL Program Manager
Western Service Center
U.S. Department of Transportation
Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)
Golden Hills Office Centre
12600 W. Colfax Ave, Suite B-300
Lakewood, CO 80215



| From: | Thomas, Philip (FMCSA) |
| --- | --- |
| To: | Spinnicchia, Michael (FRA); White, Tracy (FMCSA); Lavalas, Romana (FMCSA); Hampton, Michael (FMCSA) |
| Subject: | Fwd: FMCSA review |
| Date: | Friday, February 13, 2026 8:16:50 PM |
| Attachments: | image001.png |

FYI



Philip W. Thomas
Deputy Associate Administrator
Office of Safety
Federal Motor Carrier Safety Administration
U.S. Department of Transportation
(202) 366-9554
Philip.Thomas@dot.gov

Schedule 15 minutes with me

---------- Forwarded message ---------
From: **Soriano, Bernard C.@DMV** <Bernard.Soriano@dmv.ca.gov>
Date: Fri, Feb 13, 2026 at 7:59 PM
Subject: Re: FMCSA review
To: Jones, Joshua (FMCSA) <joshua.jones@dot.gov>
CC: Thomas, Philip (FMCSA) <Philip.Thomas@dot.gov>, Hernandez, Scott (FMCSA)
<scott.hernandez@dot.gov>, Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>, Price,
Craig (FMCSA) <craig.price@dot.gov>, Ehret, Lorraine (FMCSA) <lorraine.ehret@dot.gov>,
Nemons, Patrick (FMCSA) <Patrick.Nemons@dot.gov>, Dequina, Carlos (FMCSA)
<carlos.dequina@dot.gov>, Liberatore, Thomas (FMCSA) <thomas.liberatore@dot.gov>,
Hampton, Michael (FMCSA) <michael.hampton@dot.gov>, Snook, Christopher (FMCSA)
<christopher.snook@dot.gov>

Joshua...............Thank you for your note and FMCSA's willingness to schedule an interim onsite
visit.  Let's calendar Feb. 24-26.  We'll work to provide responses to your requests prior to the
visit.

Bernard C. Soriano, Ph.D.
Deputy Director
M: 916.952.0080

---

**From:** Jones, Joshua (FMCSA) <joshua.jones@dot.gov>
**Sent:** Friday, February 13, 2026 1:13 PM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>

**Cc:** Thomas, Philip (FMCSA) <Philip.Thomas@dot.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>; Ehret, Lorraine (FMCSA) <lorraine.ehret@dot.gov>; Nemons, Patrick (FMCSA) <Patrick.Nemons@dot.gov>; Dequina, Carlos (FMCSA) <carlos.dequina@dot.gov>; Liberatore, Thomas (FMCSA) <thomas.liberatore@dot.gov>; Hampton, Michael (FMCSA) <michael.hampton@dot.gov>; Snook, Christopher (FMCSA) <christopher.snook@dot.gov>
**Subject:** FMCSA review

Deputy Director Soriano,

As FMCSA previously communicated, the California DMV must rescind/cancel all unexpired noncompliant CLPs and CDLs. We noted this should take place prior to any planned on-site review by FMCSA. However, after further consideration, FMCSA would like to offer California DMV an interim onsite visit to discuss unresolved items and continue evaluating the State's progress toward completing the required corrective actions identified in its non-domiciled CDL program.

We have availability over the course of the next two weeks:

- February 18th and 19th

- February 24th – 26th

Please let us know if you are available to meet on any of those days.

In addition, as has been requested on several occasions, FMCSA requires the following items:

1. A full and complete audit report and list of drivers the DMV identified as noncompliant. The purpose for the report would allow FMCSA to independently verify the DMV's claims its CDL issuance processes have been updated in accordance with federal regulations. Without a list of non-compliant CDLs and CLPs, FMCSA's audit would be limited to reviewing non-domiciled CDLs and CLPs of the DMVs choosing. As part of this report, the DMV must provide a sample of each type (i.e. each "bucket") of cancellation notices the DMV issued to noncompliant CLP and CDL holders from November and December, as well as a sample of any notices pertaining to the delay of said cancelations.  Additionally, within the letter dated December 10, the DMV identified three groups of noncompliant drivers; however, based upon FMCSA's review of the DMV's responses from

December 10 and January 5, FMCSA determined there may be as many as five distinct groups of noncompliant drivers. As a result, FMCSA is requesting DMV to reconcile the discrepancy between the information provided in the December 10 letter, verbally acknowledged on December 18, and the answers received on January 5. Further, FMCSA is wanting to ensure the total unexpired non-domiciled CDLs and CLPs are accurately accounted for and reviewed. FMCSA identified the five groups are below:

a. CDL's with license expiration dates exceeding the expiration date on the LP documents, approximately 17,299 drivers.

b. Non-REAL ID license expiration dates exceeding the expiration date on the LP documents, approximately 2,719 drivers.

c. Licenses issued to MX/CN citizens not present in the U.S. under DACA, approximately 1,613 drivers.

d. Drivers who have established US Citizenship or lawful permanent residency, approximately 2000 drivers deducted from the total as they are now compliant, as verbally acknowledged during the 12/18 call between the FMCSA and DMV.

e. Temporary CLPs issued prior to verifying a driver's legal presence, 11 drivers.


2.  The DMV indicated training was provided on December 17, 2025. Field offices were instructed to record which employees received the training on December 17th and continue to record training that occurs on an ongoing basis for employees who were absent on December 17, 2025.  Please provide evidence that relevant DMV staff have been properly trained, including, but not limited to:

a. Field personnel rosters and rosters of staff who received the updated SDLA memo (DL-2025-XX) "Resuming Issuance of Non-Domiciled CLPs and CDLs"

b. Copies of old issuance memos, DL 2025-20 and DL 2025-23 for comparison

c. New-hire onboarding training material and training processes.

d. Termination of the practice of issuing temporary/interim CDLs and CLPs at field offices and assurances CDLIS pointers are created in compliance with 384.207.


3.On September 29, 2025, the DMV indicated field office employees were directed to stop issuing non-domiciled CLPs and CDLs. On October 28, 2025, DMV implemented programming modifications to prohibit field office employees from issuing non-domiciled CLPs and CDLs were released into production; field office employees are no longer able to issue non-domiciled CDLs.  Please provide details surrounding the one-month gap, from September 29 to October 28, in short term programmatic solutions, including, but not limited to:

a. Although field office employees are no longer permitted to issue non-domiciled CDLs and CLPs, please provide verification the DMV 'shutdown' its system between September 29 to October 28. In addition, the DMV needs to provide verification that no non-domiciled licenses were issued prior to the hard coding stops put integrated on October 28.

4. The DMV indicated the short-term solution will rely on DMV's intelligent automation (bot) to automatically verify the SAVE response against the customer's legal presence document. The system will then automatically match the license expiration date to the expiration date of the legal presence document. This bypasses the software error in our current computer program. Please provide additional details including, but not limited to "bot" functionality and processes:

a. Operational parameters and business rules used to program for the "bot"

b. Limitations requiring manual intervention by DMV HQ staff

c. Methodology pertaining to the "daily manual review" as noted in the January 5 communication

5. The DMV indicated they plan to implement a long-term policy, programming, and or programmatic changes, as noted in footnote 18 to the January 7, 2026, Notice of Final Determination of Substantial Noncompliance. DMV projected the long-term effort will take six months to complete and acknowledged the DMV has other conflicting priorities. It is unclear if the DMV has begun implementation or development of the long-term solution. As a result, FMCSA requests the timeline in which DMV will deploy the solution.

**It would be helpful to have the above-listed items prior to the interim onsite**. FMCSA intends to analyze and review the aforementioned information and data. Once complete, FMCSA will then go back onsite to DMV headquarters and certain field office locations to assess the application of the revised policies, procedures, and IT system changes, to ensure future license issuances comply with parts 383 and 384. Further follow-up may be required once the DMV is permitted to re-issue non-domiciled licenses up to and including, verification of the DMVs proposed long-term programmatic solutions.

Thank you,

Joshua Jones, CDL Program Manager

Western Service Center

U.S. Department of Transportation

[Federal Motor Carrier Safety Administration](#) ([www.fmcsa.dot.gov](http://www.fmcsa.dot.gov))

Golden Hills Office Centre

[12600 W. Colfax Ave. Suite B](#)-300

Lakewood, CO 80215

