ORAL ARGUMENT NOT YET SCHEDULED

No. 26-1027

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

CALIFORNIA DEPARTMENT OF MOTOR VEHICLES,

Petitioner,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, ET AL.,

Respondents.

———————————

On Petition for Review of an Order of the
Federal Motor Carrier Safety Administration

———————————

## PETITIONER'S INITIAL OPENING BRIEF

———————————

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE
SETH E. GOLDSTEIN
Supervising Deputy Attorneys General

KRISTEN C.A. KIDO
JAY C. RUSSELL
SHIWON CHOE
Deputy Attorneys General
State of California
Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 510-3617
Fax: (415) 703-5480
Jay.Russell@doj.ca.gov
*Attorneys for Petitioner*
*California Department of Motor Vehicles*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Under Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**Parties and Amici:**

Petitioner is the California Department of Motor Vehicles. Respondents are the Department of Transportation; Sean Duffy, in his official capacity as Secretary of the Department of Transportation; the Federal Motor Carrier Safety Administration; and Derek Barrs, in his official capacity as Administrator of the Federal Motor Carrier Safety Administration. No amici or intervenors have entered appearances before this Court.

**Rulings under Review:**

Petitioner petitions for review of the Federal Motor Carrier Safety Administration's January 7, 2026 Notice of Final Determination of Substantial Noncompliance and its antecedent enforcement actions. No official citations for the Final Determination or preceding enforcement actions exist.

**Related Cases:**

This case has not previously been before this or any other Court. Petitioner is unaware of any related cases as defined in Circuit Rule 28(a)(l)(C).

*/s/ Jay C. Russell*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................ 1

JURISDICTION AND VENUE ................................................................... 3

STANDING ................................................................................................. 4

RELEVANT STATUTES AND REGULATIONS....................................... 5

STATEMENT OF ISSUES ......................................................................... 6

STATEMENT OF THE CASE..................................................................... 7

    I.     Federal Commercial Driver's License Standards and Requirements................................................................................ 7

    II.    FMCSA's Audit Authority and its Preliminary Determination of Noncompliance to DMV.............................. 8

    III.   DMV's Response to the Preliminary Determination .............. 11

    IV.   FMCSA's Conditional and Final Determinations................... 13

    V.    DMV's Independent Efforts to Comply with State Law ........ 14

SUMMARY OF ARGUMENT ................................................................... 18

ARGUMENT ............................................................................................. 21

    I.     The Final Determination and its Pre-Determination Enforcement Measures Lack Any Foundation in Federal Law .................................................................................... 21

        A.    Federal Regulations Did Not Require License Expiration Dates to Match the Expiration Date of Legal Presence Documents ......................................... 22

        B.    The Final Determination Is Not Grounded in Any Federal Law............................................................... 30

        C.    Federal Law Did Not Require DMV to Cancel the CDLs at Issue, Let Alone to Cancel Them by a Date Certain ................................................................. 31

II.    FMCSA Does Not Have Authority to Indefinitely Prevent DMV from Processing Any Transactions for Non-Domiciled Commercial Drivers ................................................. 34

CONCLUSION ................................................................................. 37

CERTIFICATE OF COMPLIANCE ........................................... 38

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Biden v. Nebraska*
600 U.S. 477 (2023) ................................................................4

*Christensen v. Harris Cnty.*
529 U.S. 576 (2000) ..............................................................26

*Fed. Election Comm'n v. Akins*
524 U.S. 11 (1998) ...................................................22, 30, 31

*Hecker v. Deere & Co.*
496 F. Supp. 2d 967 (W.D. Wis. 2007), *aff'd*, 556 F.3d 575
(7th Cir. 2009) ......................................................................28

*Lujan v. FMCSA*
No. 25-1215, 2025 WL 3182504 (D.C. Cir. Nov. 13, 2025) ......................7

*Lujan v. FMCSA*
No. 26-1032 (D.C. Cir. filed Feb. 12, 2026) ............................18

*Massachusetts v. Trump*
790 F. Supp. 3d 8 (D. Mass. 2025) .......................................22

*Miot v. Trump*
__ F. Supp. 3d __, No. 25-cv-02471, 2026 WL 266413
(D.D.C. Feb. 2, 2026) .............................................................36

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut.
Auto. Ins. Co.*
463 U.S. 29 (1983) ...........................................................21, 22

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*
894 F.3d 95 (2d Cir. 2018) ...................................................20

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety*
  *& Health Admin.*
  595 U.S. 109 (2022)..............................................................36

*Nat'l Lifeline Ass'n v. FCC*
  921 F.3d 1102 (D.C. Cir. 2019)..............................................34

*Robinson v. Shell Oil Co.*
  519 U.S. 337 (1997)..............................................................23

*Scherr v. Marriott Int'l, Inc.*
  703 F.3d 1069 (7th Cir. 2013) .................................................25

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016)................................................................4

*Tripoli Rocketry Ass'n, Inc.* v. *Bureau of Alcohol, Tobacco,*
  *Firearms, and Explosives*
  437 F.3d 75 (D.C. Cir. 2006)........................................21, 31, 34

*United States v. Greene*
  No. 1:23-cr-52 (RDA), 2025 WL 310128 (E.D. Va. Jan. 27,
  2025) ..................................................................................29

**STATUTES**

United States Code, Title 5
  § 553(b)(A) ..........................................................................29
  § 702....................................................................................3
  § 704...........................................................................3, 21, 31
  § 706....................................................................................3
  §§ 706(2)(A)-(C)....................................................................21
  Chapter 7 ..........................................................................3, 4

United States Code, Title 23
  § 104(b)(1) .............................................................................4

United States Code, Title 28
§ 2342(3)(A) ....................................................................................3
§ 2343....................................................................................................4
§ 2349.................................................................................................3

United States Code, Title 49
§ 31100 *et seq*. ..............................................................23, 24
§ 31301 *et seq*. ....................................................................7
§ 31308(4)(E).......................................................................23
§ 31311.................................................................3, 11, 12
§§ 31311-12 ............................................................................7
§ 31311(a) ...............................................................................9
§ 31311(a)(12)(B) ............................................................7
§ 31312(c) ...........................................................................36
§ 31314...................................................................................7

California Vehicle Code
§ 12816.................................................................................8, 12
§ 13100.................................................................................15

REGULATIONS

49 C.F.R.

pt. 383 .............................................................7, 9, 16, 22, 23, 24

pt. 384 .......................................................7, 9, 11, 16, 22, 23, 24

§ 349.307(e) ........................................................................4

§ 383.23(b) ..........................................................................10

§ 383.25(c) .............................................................8, 23, 24, 25

§ 383.71(f) ............................................................................10

§ 383.71(f)(2) .......................................................................25

§ 383.73.............................................................8, 12, 14, 28

§ 383.73(a)(3) .......................................................8, 22, 24, 25

§ 383.73(b)(9) ...............................................8, 18, 22, 24, 25

§ 383.73(f) .......................................................................10, 28

§ 383.73(f)(2) .........................................................8, 23, 25

§ 383.73(f)(2)(iv) .................................................................28

§ 383.153(a)(7) ....................................................................23

§ 383.153(b)(2)(vi) ..............................................................23

§§ 384.201-236 ....................................................................9

§ 384.212(a) ..........................................6, 7, 8, 10, 28, 30

§ 384.301(a) ..........................................................................9

§ 384.301(o) ..........................................................................9

§ 384.307.........................................................................34, 35

§ 384.307(a) ..........................................................................9

§ 384.307(b) ..........................................................................9

§ 384.307(c) .............................................................9, 12, 32

§ 384.307(d) .......................................................................3, 9

§ 384.307(e) ..........................................................................3

§ 384.309(a)(2) ....................................................................3

§ 384.401...............................................................................9

§ 384.405.........................................................................9, 35

§ 384.405(a) .....................................................................9, 35

§ 384.405(h) .....................................................................9, 36

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

California Code of Regulations, Title 13
§ 26.02(c) ...............................................................................14, 15, 32

**FEDERAL REGISTER**

*Commercial Driver's License Testing and Commercial Learner's
Permit Standards*, 76 Fed. Reg. 26,854-01 (May 9, 2011) ..................26, 27

*Restoring Integrity to the Issuance of Non-Domiciled
Commercial Drivers Licenses*, 90 Fed. Reg. 46,509 (Sept. 29,
2025) .....................................................................................7, 28, 29

*Restoring Integrity to the Issuance of Non-Domiciled
Commercial Drivers Licenses
(CDL)*, 91 FR 7044-01 (Feb. 13, 2026).....................................7, 18, 28, 29

# GLOSSARY OF ABBREVIATIONS

| Abbreviations | Definition |
| --- | --- |
| APA | Administrative Procedure Act |
| CDL | Commercial Driver's License |
| CLP | Commercial Learner's Permit |
| DMV | California Department of Motor Vehicles |
| FMCSA | Federal Motor Carrier Safety Administration |

**INTRODUCTION**

This petition concerns expiration dates for commercial driver's licenses. Commercial driver's licenses are regulated by a combination of federal and state requirements. Federal law sets only maximum validity periods for commercial driver's licenses or learner's permits of eight years and one year, respectively, and those maximum validity periods are the same for commercial drivers who are domiciled in the United States or elsewhere. Federal law is otherwise silent as to the permissible term of commercial licenses. California Department of Motor Vehicles (DMV) complies fully with federal law governing expiration dates. And yet, the Federal Motor Carrier Safety Administration (FMCSA) has terminated approximately $160 million dollars of federal funding for Californians for fiscal year 2027 for issuing licenses with allegedly "noncompliant" expiration dates.

In so doing, FMCSA did not find that DMV issued commercial driver's licenses or learner's permits with terms exceeding the maximum validity periods under federal law. Rather, FMCSA alleged that DMV was not in compliance with federal laws because it issued "non-domiciled" commercial driver's licenses for a period exceeding the date on the person's legal presence documentation, such as an Employment Authorization Document or I-94 Form. But *no federal law* requires commercial licenses to expire on or before the date of a driver's legal presence documentation. Accordingly, FMCSA's determination that DMV is not in

1

compliance with federal requirements is contrary to law, arbitrary and capricious, and *ultra vires*.  It should be vacated.

That determination has already caused devastating harm to thousands of California residents and stands to deprive California of needed highway safety funding at the start of the new fiscal year.  First, FMCSA demanded that DMV cancel approximately 13,000 licenses held by drivers who were not U.S. citizens or permanent residents—even though those licenses fully complied with federal law.  FMCSA had no authority to make such a demand.  But after FMCSA threatened to decertify California's commercial driver's license program altogether if DMV did not comply within FMCSA's preferred timeline, those licenses were canceled on March 6, 2026.  And as of this filing, those 13,000 drivers have no means of obtaining new licenses because FMCSA has also prohibited DMV from correcting, renewing or reissuing non-domiciled commercial driver's licenses.  Even non-domiciled drivers whose licenses did not suffer from this expiration date issue have been impacted, since they have no way of renewing their commercial licenses when they expire in the normal course.

Second, FMCSA plans to withhold approximately $160 million of federal highway funding from California—funding that would have supported infrastructure development and repairs to maintain the safety of California's highways.  That funding will be withheld on the first day of the next fiscal year—

that is, October 1, 2026.  This Court's intervention is urgently needed to vacate FMCSA's final determination and prevent further harm flowing from agency action not grounded in the law.

## JURISDICTION AND VENUE

Petitioners seek review of the Federal Motor Carrier Safety Administration's January 7, 2026 Notice of Final Determination of Substantial Noncompliance, which is a final agency action under 49 C.F.R. §§ 384.307(d) and 384.309(a)(2). The Notice of Final Determination is a reviewable final order under 5 U.S.C. §§ 702, 704, and 49 C.F.R. § 384.307(e) ("Any State aggrieved by an adverse decision under this section may seek judicial review under 5 U.S.C. Chapter 7.").

This Court has jurisdiction under 28 U.S.C. §§ 2342(3)(A) and 2349 because the Notice of Final Determination held that California DMV was not in compliance with State eligibility requirements for federal funding under 49 U.S.C. § 31311. *See* 28 U.S.C. § 2342(3)(A) ("The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of— final orders of the Secretary of Transportation issued pursuant to . . . chapter 313 . . . of title 49.").  This Court has authority to decide all relevant questions of law, to interpret the meaning of the relevant statutes and regulations, and to enjoin, set aside, or suspend the agency's final decision under 5 U.S.C. § 706 and 28 U.S.C. §§ 2342(3)(A), 2349.

Venue is proper in this Court under 28 U.S.C. § 2343.

**STANDING**

The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Petitioner has satisfied these elements here. First, FMCSA issued DMV a final determination of noncompliance with federal law, and withheld approximately $160 million in National Highway Performance Program and Surface Transportation Block Grant Program funds beginning in Fiscal Year 2027. That funding would otherwise have been apportioned to California under 23 U.S.C. §§ 104(b)(1) and (2). Funding will be withheld as of October 1, 2026. The loss of federal funding under FMCSA's determination is an injury in fact directly traceable to the agency's action. *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 490 (2023). A favorable decision by this Court overturning that final determination will redress that injury by making the funds available in the new fiscal year. Further, Petitioner has standing under the relevant regulations to seek review of the Federal Motor Carrier Safety Administration's January 7, 2026 Final Determination. 49 C.F.R. § 349.307(e) ("Any State aggrieved by an adverse decision under this section may seek judicial review under 5 U.S.C. Chapter 7").

The petition for review was timely filed on February 4, 2026.  Doc. No.

2157889.

## RELEVANT STATUTES AND REGULATIONS

Relevant statutes and regulations are reprinted in the Addendum to this brief.

# STATEMENT OF ISSUES

1. Whether Code of Federal Regulations, Title 49, section 384.212(a) and related regulations in effect before September 29, 2025, required Petitioner California Department of Motor Vehicles (DMV) to issue non-domiciled commercial driver's licenses (CDLs) that expired *on or before* the expiration date of the driver's legal presence documentation.

2. Whether the Federal Motor Carrier Safety Administration (FMCSA) acted arbitrarily, capriciously, contrary to law, and/or *ultra vires* by issuing a Final Determination of Substantial Noncompliance to DMV on January 7, 2026, on the ground that DMV did not cancel non-domiciled CDLs that expired after the expiration date of the driver's legal presence documentation, and that DMV did not do so on a certain date.

3. Whether FMCSA is acting arbitrarily, capriciously, contrary to law, and/or *ultra vires* by instituting and maintaining a "pause" on all DMV transactions concerning non-domiciled CDLs, including correcting and replacing valid CDLs.

<h1 style="text-align:center">STATEMENT OF THE CASE</h1>

**I. FEDERAL COMMERCIAL DRIVER'S LICENSE STANDARDS AND REQUIREMENTS**

Federal law[1] sets baseline requirements for a person to hold a commercial

driver's license (CDL) or commercial learner's permit (CLP).[2] *See* 49 U.S.C.

§ 31301 *et seq.*; 49 C.F.R. pts. 383, 384.  It mandates that state agencies issuing

CDLs comply with federal requirements to remain eligible for certain federal

highway funding, and to continue to be certified to issue CDLs.  49 U.S.C.

§§ 31311-12, 31314; 49 C.F.R. pt. 384.  Under those rules, U.S. citizens and

permanent residents may obtain a standard CDL in their State of domicile.  49

C.F.R. § 384.212(a).  Drivers who are not citizens or permanent residents may

obtain what is called a "non-domiciled" CDL.  *Id.*; *see also* 49 U.S.C.

§ 31311(a)(12)(B).  With few exceptions, none of which concern expiration dates,

---

[1] Unless otherwise noted, all references to federal statutes and regulations refer to the rules as they existed prior to September 29, 2025.  On that date, FMCSA issued an Interim Final Rule that dramatically altered the eligibility criteria for non-domiciled CDLs.  *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses*, 90 Fed. Reg. 46,509 (Sept. 29, 2025). While the Interim Final Rule was stayed by this Court, *see Lujan v. FMCSA*, No. 25-1215, 2025 WL 3182504, at *1-2 (D.C. Cir. Nov. 13, 2025), FMCSA later issued a Final Rule that was substantially identical to the Interim Final Rule and that became effective March 16, 2026.  91 Fed. Reg. 7044 (Feb. 13, 2026).  But because all licenses at issue in this Petition were issued before September 29, 2025, the relevant federal rules for purposes of this Petition are those that were in effect before FMCSA's recent rulemaking efforts on this subject began.

[2] Unless otherwise noted, references to "CDLs" includes both CDLs and CLPs.

7

the testing and licensure procedures governing the issuance of a standard CDL and a non-domiciled CDLs are "identical." 49 C.F.R. § 383.73(f)(2); *see also* § 384.212(a).

Applicable federal rules dictate the maximum time that a CDL may be valid before it expires. Specifically, federal rules mandate that States must "[m]ake the CLP valid for no more than one year from the date of issuance" (49 C.F.R. § 383.73(a)(3); *see also id.* § 383.25(c)) and "[m]ake the CDL valid for no more than 8 years from the date of issuance" (*id.* § 383.73(b)(9)). Apart from these rules, there are *no* other requirements in relevant federal law concerning expiration dates for CDLs. Rather, States are permitted to regulate the validity periods for CDLs issued in their respective jurisdictions so long as they comply with the federal maximum validity periods set out in section 383.73. California, for instance, requires CLPs to expire within one year (JA__(CALDMV-2026-000010)) and CDLs to expire within five years (Cal. Veh. Code § 12816). Critical to this Petition, no federal statute or regulation in effect when these licenses were issued required that a CDL expire on or before the expiration date of an applicant's legal presence documents.

## II. FMCSA'S AUDIT AUTHORITY AND ITS PRELIMINARY DETERMINATION OF NONCOMPLIANCE TO DMV

FMCSA is authorized to audit state agencies' licensing procedures to ensure that they are in "substantial compliance" with federal law governing eligibility for

highway safety funding.  49 C.F.R. § 384.307(a); *see* 49 U.S.C. § 31311(a) (federal requirements for State eligibility for highway safety funding).  "Substantial compliance" means that a State "must meet each and every standard of subpart B" of Code of Federal Regulations, Title 49, part 384—that is, sections 384.201-236— and part 383.  49 C.F.R. § 384.301(a), (o).  FMCSA audits DMV annually, and in every instance before 2025, it found that DMV substantially complies with federal laws.  Decl. S. Gordon Supp. Pet.'s Mot. to Stay, Doc. No. 2158053 at 38, ¶ 2.

If FMCSA determines that a State is not substantially compliant, FMCSA may issue a notice of preliminary determination of noncompliance.  49 C.F.R. § 384.307(b).  A State has thirty days to respond and explain either why the preliminary determination is incorrect, or what the State intends to do to come into compliance.  *Id.* § 384.307(c).  If, after that reply, FMCSA determines that the State is still not in compliance, FMCSA may issue a final determination of noncompliance.  *Id.* § 384.307(d).  Upon issuing a final determination, FMCSA may withhold federal highway funds under a statutorily set schedule (*id.* § 384.401) and may decertify the State's entire CDL program (*id.* § 384.405).  Decertification prohibits the State from issuing, renewing, transferring, or upgrading CDLs, but does not have retroactive effect on CDLs active at the time of decertification.  *Id.* § 384.405(a), (h).

On September 26, 2025, FMCSA sent DMV a notice of Preliminary Determination of Substantial Noncompliance alleging that DMV was not in compliance with federal regulations, specifically, section 384.212(a).[3]  JA___ (CALDMV-2026-000739-0747).  FMCSA's primary complaint was that DMV had issued non-domiciled CDLs for a term exceeding the expiration date of the driver's legal presence documents.  *Id*.  Out of 44 "non-compliant" CDLs that FMCSA noted in its Preliminary Determination, 29 of these had an allegedly non-compliant expiration date.[4]  JA___ (CALDMV-2026-000738).  Notably, FMCSA pointed to *no* federal rule requiring CDLs to expire on or before the date of the driver's legal presence documents.  JA___ (CALDMV-2026-000737).  Rather, it merely asserted that "[t]he requirement that States accept as valid only *unexpired* lawful presence documents also means that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s)."  *Id*. (emphasis in original).

---

[3] 49 C.F.R. § 384.212(a) provides in relevant part: "[T]he State may issue a Non-domiciled CLP or CDL under the conditions specified in §§ 383.23(b), 383.71(f), and 383.73(f) of this subchapter."

[4] FMCSA also issued findings of noncompliance for (1) issuing non-domiciled CDLs to Mexican citizens who did not have status under the Deferred Action on Childhood Arrivals program (11 instances); (2) failing to retain a driver's legal presence documents (1 instance); and (3) issuing temporary CDLs while legal status verification was pending.  JA___ (CALDMV-2026-000737, 0745-0748).  These issues were not material to the Final Determination.  JA___ (CALDMV-2026-001123-1132).  Accordingly, they are not discussed further here.

FMCSA demanded that DMV (1) immediately pause issuing non-domiciled CDLs; (2) audit unexpired non-domiciled CDLs for noncompliance with federal law; (3) audit DMV's internal procedures and practices that might result in issuance of non-compliant non-domiciled CDLs; (4) void or rescind any non-compliant non-domiciled CDL; and (5) reissue voided or rescinded CDLs under applicable law.  JA___ (CALDMV-2026-000748-0749).  FMCSA also stated that DMV could not resume issuing non-domiciled CDLs until "after the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resources assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard or subpart B of part 384 and 49 U.S.C. § 31311."  *Id*.

## III.  DMV's RESPONSE TO THE PRELIMINARY DETERMINATION

DMV immediately cooperated with FMCSA's audit and enforcement efforts.  Upon receiving the Preliminary Determination, DMV immediately paused issuing non-domiciled CDLs.  JA____ (CALDMV-2026-001024-1025, 1051-1052).  DMV staff were notified that effective immediately, no non-domiciled CDLs or CLPs could be issued.  JA____ (CALDMV-2026-001024-1025).  DMV also contacted applicants, driving schools, and employer testing firms to notify them of this abrupt change of practice.  *Id*.  And DMV began a months-long audit of approximately 65,000 records of unexpired non-domiciled CDLs in California,

11

evaluating their compliance with both state and federal legal requirements. JA____ (CALDMV-2026-001025-1026). DMV also undertook an extensive audit of its own internal procedures and technical systems, which also lasted several months. JA____ (CALDMV-2026-001054-1056). DMV informed FMCSA of the results of these audits and continues to provide FMCSA with updates. *See, e.g., id.*; JA____ (CALDMV-2026-001065, 1113-1119).

And yet, FMCSA's assertion that DMV was non-compliant for issuing CDLs expiring after the date on a driver's legal presence document was incorrect. In its October 26, 2025 response to FMCSA's Preliminary Determination, DMV explained that no federal law, regulation, or rule required non-domiciled CDLs to expire on or before the expiration date of the driver's legal presence documents. JA___ (CALDMV-2026-001014-1015, 1019-1020). DMV informed FMCSA that in California, all CLPs must expire within one year and all CDLs must expire within five years, and thus every non-domiciled commercial license issued in California necessarily complied with the maximum validity periods set out in section 383.73. JA___ (CALDMV-2026-001020); *see also* JA___ (CALDMV-2026-000010; Cal. Veh. Code § 12816. Accordingly, as 49 C.F.R. § 384.307(c) permits, DMV explained that the Preliminary Determination was issued in error because all CDLs comply with federal expiration date requirements. *Id.* ("As part

of its internal audit, DMV did not identify any CLPs or CDLs that exceeded the terms imposed by the federal regulations[.]").

## IV.  FMCSA's CONDITIONAL AND FINAL DETERMINATIONS

On November 13, 2025, FMCSA issued DMV a Conditional Determination. JA___ (CALDMV-2026-001035-1046).  In it, FMCSA reiterated its baseless assertion that non-domiciled CDLs must expire consistent with the driver's legal presence documents.  JA___ (CALDMV-2026-001039-1041).  FMCSA still provided no legal authority supporting that assertion, and did not substantively respond to DMV's arguments from its October 26, 2026 response showing otherwise.  *Id*.  Instead, FMCSA insisted that "the regulatory universe of non-domiciled CLPs and CDLs is premised on the basic notion that a non-domiciled driver's commercial motor vehicle driving privileges cannot extend beyond that driver's lawful presence in the United States."  JA___ (CALDMV-2026-001039).

Despite being unable to point to any authority to support its contention, FMCSA *conditioned* DMV's eligibility for continued federal funding and the ability to maintain a CDL program on canceling licenses with "non-compliant" expiration dates.  *See* JA___ (CALDMV-2026-001036) ("DMV's failure to implement, or undue delay in implementing, the [cancellation of CLDs expiring past the date of the legal presence documents] will result in FMCSA issuing a Final Determination of Substantial Noncompliance and withholding up to four

percent of certain Federal-aid Highway funds as well as possible decertification of California's CDL program[.]").  Over numerous communications, FMCSA continued to demand that DMV cancel those licenses, without citing to any legal basis to justify that action.  *See, e.g.*, JA___ (CALDMV-2026-001106).

As DMV had explained on multiple occasions, California-issued CDLs comply with all federal expiration date requirements, as provided in section 383.73.  *See, e.g.*, JA___ (CALDMV-2026-001020, 1049).  Nonetheless, on January 7, 2026, FMCSA issued its Final Determination.  JA___ (CALDMV-2026-001123-1132).  Concluding that DMV had "failed to undertake the necessary step of rescinding and reissuing" allegedly "noncompliant" commercial licenses, FMCSA withheld National Highway Performance Program and Surface Transportation Block Grant Program funds totaling approximately $158 million beginning in fiscal year 2027 and threatened to decertify DMV's entire CDL program.  JA___ (CALDMV-2026-001132).

## V.  DMV'S INDEPENDENT EFFORTS TO COMPLY WITH STATE LAW

While federal law only sets maximum validity periods of one year and eight years for CLPs and CDLs, respectively, *California* law requires that non-domiciled CDLs expire on or before the expiration date of the driver's legal presence documents.  Cal. Code Regs. tit. 13, § 26.02(c). DMV explained this distinction to FMCSA on multiple occasions.  *See, e.g.*, JA___ (CALDMV-2026-001019-1020,

14

1047-1049).  During its internal audit, DMV found that several thousand non-domiciled CDLs had expiration dates that did not match the expiration date of the driver's legal presence documents.  JA___ (CALDMV-2026-001022, 1052).  Under *California* law, DMV was obligated to notice those licenses for cancellation.  Cal. Code Regs. tit. 13, § 26.02(c).  Accordingly, on November 6 and December 15, 2025, DMV issued notices to drivers with mismatched expiration dates stating that their licenses were issued inconsistent with State law and would be canceled in 60 days.  JA____ (CALDMV-2026-001031-1034, 001049, 001052-1054).  Apart from the expiration date error under California law, the CDLs noticed for cancellation were compliant with all other state and federal law requirements.  *See* Decl. S. Gordon, Document No. 2158053 at 42, ¶ 13.

Under state law, when DMV cancels a license, that cancellation is without prejudice, and DMV must permit those drivers whose licenses are canceled to immediately apply for a new license.  Cal. Veh. Code § 13100.  When DMV issued the cancellation letters on November 6 and December 15, it anticipated being able to correct the expiration dates for affected drivers within 60 days.  *See* JA___ (CALDMV-2026-001056-1057) ("DMV will resume issuing non-domiciled CLPs and CDLs on December 17, 2025.  Because this date will precede the end of the 60-day cure period provided in the cancellation notices described above, and consistent with FMCSA's instruction to 'reissue the licenses in accordance with

15

parts 383 and 384 in effect at the time of the reissuance,' the DMV may take action to issue corrected CDLs to eligible drivers[.]"); JA___ (CALDMV-2026-001061-1062) ("[W]e are interpreting FMCSA's direction to be that CA DMV should take action to correct non-domiciled CDLs and CLPs that are currently issued; the pause only prevents CA DMV from issuing new, original, CDLs and CLPs, or from renewing the same."); JA___ (CALDMV-2026-001089-1091).  Indeed, FMCSA told DMV that it expected to review corrected CDLs as part of its ongoing audit procedure.  JA___ (CALDMV-2026-001062-1063) ("FMCSA will need an opportunity to request and review specific instances of corrected CDLs and/or CLPs or to meet with you and review together a sample of corrected CDLs and/or CLPs[.]"); *see also* JA__ (CALDMV-2026-001064, 1089-1091).

But ultimately, FMCSA prohibited DMV from correcting the CDLs, stating that DMV could not process any transactions whatsoever concerning non-domiciled CDLs until FMCSA completed a comprehensive review of DMV's corrective actions, responses to further questions, and conducted further onsite visits.  *See, e.g.*, JA___ (CALDMV-2026-001061-1063, 1078-1082, 1089-98).  DMV was thus faced with the dilemma of either having to violate FMCSA's indefinite "pause" by reissuing corrected licenses to those who had received cancellation notices, or having to deprive thousands of fully eligible drivers of their privileges and employment.  Ultimately, DMV determined that it would extend the

16

effective cancellation date an additional 60 days—to March 6, 2026—to give FMCSA more time to complete its audit.  JA____ (CALDMV-2026-001083, 1089-1091).  DMV informed FMCSA about the extension on December 24, 2025.  JA___ (CALDMV-2026-001083, 1091).  Hearing nothing from FMCSA in response, DMV issued a press release informing the public of the extended cancellation date on December 30.  JA___ (CALDMV-2026-001120); *see also* JA__(CALDMV-2026-001121-1122).  FMCSA issued its Notice of Final Determination of Substantial Noncompliance within the week on the ground that DMV failed to cancel the licenses by a date certain.  JA___ (CALDMV-2026-001123-1132).  This, despite DMV never agreeing that such cancellations were part of its corrective action plan to come into compliance with federal law.  *See, e.g.*, JA_____ (CALDMV-2026-001019-1020, 1047-1049, 1061-1063, 1089-1090).

DMV sought review and a stay of FMCSA's enforcement actions in this Court.  *See* Doc. Nos. 2157889, 2158053.  The request for a stay was denied on March 2, 2026.  Doc. No. 2161537.  This Court made a preliminary finding that DMV was not likely to succeed on the merits, but as explained herein, DMV was under no obligation—by agreement or otherwise—to cancel the noticed licenses by January 5, 2026.  Indeed, no federal law required their cancellation *at all*.  Accordingly, the Final Determination is contrary to law, arbitrary and capricious,

17

and *ultra vires.* But, faced with the threat of decertification, DMV did cancel the noticed licenses on March 6.[5] Despite those cancellations, FMCSA has not reconsidered its Final Determination, nor has it lifted the "pause" on DMV's non-domiciled CDL program.[6] Thousands of eligible drivers have therefore been deprived of their licenses and livelihoods as a result of FMCSA's Final Determination and indefinite "pause," and $160 million will be withheld on October 1, 2026.

## SUMMARY OF ARGUMENT

Federal regulations provide that CDLs must expire within eight years of issuance. 49 C.F.R. § 383.73(b)(9). There is no federal law requiring non-domiciled CDLs to expire on or before the date on a driver's legal presence documents. FMCSA has never articulated a sound legal argument to support its contrary position. Instead, FMCSA argues that "the regulatory universe of non-

---

[5] *See* California Dep't of Motor Vehicles, *Federal Government Requires California DMV to Cancel Certain Non-Domiciled Driver's Licenses* (Mar. 6, 2026), https://www.dmv.ca.gov/portal/news-and-media/federal-government-requires-california-dmv-to-cancel-certain-nondomiciled-drivers-licenses/.

[6] While keeping the "pause" in place, FMCSA also issued a Final Rule, as mentioned above, significantly restricting eligibility to obtain a non-domiciled CDL. *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*, 91 FR 7044-01 (Feb. 13, 2026). Under the Final Rule, which went into effect on March 16, the overwhelming majority of non-domiciled CDL holders in California would no longer qualify for such licenses, including those whose licenses were canceled on March 6, 2026. The Final Rule has been challenged in this Court. *Lujan v. FMCSA*, No. 26-1032 (D.C. Cir. filed Feb. 12, 2026).

domiciled CLPs and CDLs is premised on the basic notion that a non-domiciled driver's commercial motor vehicle driving privileges cannot extend beyond that driver's lawful presence in the United States." JA___ (CALDMV-2026-001039). No principle of statutory construction looks to unsupported "basic notions" to understand what the law means. Rather, when the law is unambiguous, the plain language controls. Here, the plain language of federal law governing CDLs set only maximum validity periods, and DMV followed that law. The plain meaning of the law is further supported by the regulatory history and FMCSA's recent rulemaking efforts.

DMV was therefore following California law—not federal law—when it undertook to cancel CDLs with expiration dates that did not match the expiration dates of the driver's legal presence documents. DMV never agreed that canceling CDLs was a required corrective action under federal law—much less that those cancellations needed to happen by a date certain. Therefore, FMCSA had no authority under federal law to condition a determination of compliance on these planned cancellations. As a result, the Final Determination and the preceding Conditional and Preliminary Determinations are contrary to law, exceed FMCSA's statutory authority, and are arbitrary and capricious.

In addition, FMCSA's "pause" on DMV's non-domiciled CDL program was arbitrary and capricious because it was unsupported by any facts showing

19

substantial noncompliance with federal law that would justify a wholesale moratorium on the program. The "pause" is also independently *ultra vires* because it exceeds FMCSA's statutory authority to prohibit a State licensing agency from issuing CDLs.

Indeed, given the absence of a legal basis for its position, it appears that FMCSA's primary motivation is to ensure that non-citizen CDL holders are permanently disenfranchised. FMCSA repeatedly demanded that DMV cancel non-domiciled CDLs, prohibited DMV from correcting or reissuing them, then changed the rules to prevent affected drivers from ever being able to obtain a license—all based on a false premise about an expiration date requirement found nowhere in relevant federal law. DMV thus asks this Court to exercise its authority to set aside FMCSA's Final Determination and its enforcement actions, and to curtail FMCSA's attempt to deprive non-citizens of their employment, and California of vital highway safety funding. Moreover, because under the Final Determination funding will be withheld on October 1, 2026, DMV respectfully requests this Court to vacate the Final Determination prior to that date.[7]

---

[7] *See, e.g.*, *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 100 (2d Cir. 2018) (granting petition and vacating agency action shortly after argument and issuing opinion at a later date).

## ARGUMENT

### I. THE FINAL DETERMINATION AND ITS PRE-DETERMINATION ENFORCEMENT MEASURES LACK ANY FOUNDATION IN FEDERAL LAW

The Administrative Procedure Act (APA) requires a court to "hold unlawful and set aside" agency actions that are contrary to constitutional right or power; exceed statutory authority or limitation; are not in accordance with law; fail to observe required procedure; or are arbitrary and capricious. 5 U.S.C. § 706(2)(A)-(C). "A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704.

An agency acts arbitrarily and capriciously when it relies on a factor "which Congress has not intended it to consider" to render a decision. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). To pass judicial scrutiny under the APA, "an agency action must be supported by 'reasoned decisionmaking.'" *Tripoli Rocketry Ass'n, Inc.* v. *Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006), quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998). Specifically, the agency must act "within the scope of its lawful authority," and the result reached "must be logical and rational." *Id*.

Even where an agency "has discretion about whether or not to take a particular action," the agency's decisions are actionable if they are "based . . . upon

an improper legal ground." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25, (1998); *see also Massachusetts v. Trump* 790 F. Supp. 3d 8, 21 (D. Mass. 2025). And "[i]f a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action." *Akins*, 524 U.S. at 25. Moreover, "when an agency relies on multiple grounds for its decision, some of which are invalid," courts should only "sustain the decision [where] one is valid and the agency would clearly have acted on that ground even if the other were unavailable." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43.

Here, FMCSA's Final Determination, and its preceding enforcement efforts, were contrary to law, *ultra vires*, and arbitrary and capricious.

### A. Federal Regulations Did Not Require License Expiration Dates to Match the Expiration Date of Legal Presence Documents

#### 1. The Plain Meaning of the Regulations Controls

Regulations concerning eligibility and standards for issuing CDLs are contained within title 49 of the Code of Federal Regulations, parts 383 and 384. Federal law in effect at the time of FMCSA's Final Determination contained only limited provisions governing the validity periods for CDLs. The entirety of the regulations governing expiration dates for commercial licenses provided that learner's permits must expire within one year of issuance and CDLs within eight years. 49 C.F.R. § 383.73(a)(3) ("A State must . . . make the CLP valid for no more than 1 year from the date of issuance"); *id.* § 383.73(b)(9) ("A State must . . .

make the CDL valid for no more than 8 years from the date of issuance"); *see also id.* § 383.25(c) ("The CLP must be valid for no more than one year from the initial date of issuance"). CDLs must also include "the dates between which the license or learner's permit is valid." 49 U.S.C. § 31308(4)(E); *see also* 49 C.F.R. §§ 383.153(a)(7), (b)(2)(vi).

Apart from these provisions, *no other requirement for expiration dates existed. See* 49 C.F.R. parts 383, 384. No special rules applied to non-domiciled CDLs as compared to standard CDLs. *Id.* § 383.73(f)(2) (procedures for issuing non-domiciled licenses "identical" to those for issuing a resident license, apart from exceptions not affecting expiration dates). Nor did the authorizing statutes impose further requirements on validity periods for CDLs. *See* 49 U.S.C. §§ 31100 *et seq.* Thus, the requirements of federal law were clear, unambiguous, and relatively simple: CLPs must expire within one year and CDLs must expire within eight years.

The meaning of a law is determined by its plain language. *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). The "first step in interpreting a [law] is to determine whether the language at issue has a plain and unambiguous meaning." *Id.* at 340. And where the regulatory language is "unambiguous" and the regulatory scheme is "coherent and consistent," then the court's inquiry into the law's meaning "must cease." *Id.* Here, the law clearly and unambiguously sets a

ceiling of one-year and eight-year validity periods for CLPs and CDLs, respectively. 49 C.F.R. §§ 383.25(c), 383.73(a)(3), 383.73(b)(9). And the statutory and regulatory scheme is coherent and consistent: there are no ambiguities or conflicts within the relevant provisions. *See* 49 C.F.R. parts 383, 384; 49 U.S.C. §§ 31100 *et seq.* Thus, there is no basis for looking beyond the law's plain language to determine its meaning.

### 2. FMCSA's Interpretation Is Untenable

FMCSA ignores the law's plain language and instead relies on a tenuous and extra-textual reading of a *different* regulatory provision to support its position that CLPs and CDLs must expire on or before the date of the driver's legal presence documents. It asserts that "[t]he requirement that States accept as valid only *unexpired* lawful presence documents also means that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s)." JA___ (CALDMV-2026-000737); *see also* JA___ (CALDMV-2026-001037). FMCSA's inference "is premised on the basic notion that a non-domiciled driver's commercial motor vehicle driving privileges cannot extend beyond that driver's lawful presence in the United States." JA___ (CALDMV-2026-001039).

The law does not support FMCSA's "basic notion." Indeed, FMCSA points to no authority supporting it. Instead, FMCSA mistakenly relies on regulations

24

governing *acceptable immigration documents* (49 C.F.R. § 383.71(f)(2)) to draw unfounded conclusions about the law's meaning as to the completely unrelated subject of *license expiration dates*—despite there being separate provisions in the same regulatory chapter that do, in fact, govern expiration dates (49 C.F.R. §§ 383.25(c), 383.73(a)(3), 383.73(b)(9)). FMCSA's approach thus reads the relevant expiration date provisions out of the regulations as applied to non-domiciled CDLs. That is not a permissible interpretation. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1078 (7th Cir. 2013) ("We do not construe regulations in such a way as to render other provisions of the regulations meaningless or superfluous.").

Further, the regulatory scheme provides that the standards and procedures for issuing non-domiciled CDLs are "identical" to those for standard CDLs, with minimal exceptions, all of which are unrelated to expiration dates. 49 C.F.R. § 383.73(f)(2). Notably absent is an exception that non-domiciled CDLs expire on or before the date of the driver's legal presence documentation. *Id.* Reading that requirement into the regulations creates the very incoherence in the regulatory scheme that principles of statutory construction seek to avoid—namely, it would create an ambiguous additional exception to procedures intended to be "identical" except in specifically enumerated instances. *See id.* Accepting FMCSA's reading would further violate the APA's requirements for creating new regulations. *See,*

25

*e.g.*, *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000) ("To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation.").

The plain language of the federal regulations sets only a maximum validity period for non-domiciled CDLs. FMCSA's argument that these maximum terms must be read as incorporating an additional, contradictory requirement that CDLs expire before that time is untenable.

### 3. FMCSA's Rule-Making History Is Consistent with a Plain Language Interpretation

Regulatory history is consistent with the law's plain language. Before 2011, federal regulations contained no provision governing the validity period for CDLs. *See Commercial Driver's License Testing and Commercial Learner's Permit Standards*, 76 Fed. Reg. 26,854-01, 26,856, 26,860 (May 9, 2011) (promulgating rule setting "Maximum Initial Validity and Renewal Periods for CLP and CDL" to address issues including "a lack of uniformity in the duration of learner's permits"). This rule was promulgated by noticed rulemaking and received 103 comments. *Id.* at 26,857. FMCSA adopted the recommendation that CLPs be valid for "a maximum of one year" and adopted eight years as the "maximum" issuance and renewal period for CDLs. *Id.* at 26,861. In so doing, FMCSA rejected a comment arguing that the relatively long eight-year period "will increase the potential for unsafe drivers to evade detection and magnify the possibility of

fraud and the amount of time that fraudulent CDL actions can continue undetected." *Id.* FMCSA explained: "Under the new rule 8 years is the maximum, but States are free to set shorter validity periods." *Id.* Thus, the regulatory record makes clear that FMCSA intended federal regulations to set only a maximum term within which States could regulate.

At no point did the rule promulgating an expiration date ceiling envision additional or alternative rules governing non-domiciled CDL validity periods. *See* 76 Fed. Reg. 26,854-01. Indeed, the 2011 final rule is the *same rule* that promulgated the requirement that a driver domiciled in a foreign jurisdiction must present an unexpired Employment Authorization Document or an Arrival/Departure Record (Form I-94) with an unexpired passport to obtain a non-domiciled CDL. *Id.* at 26,883. And yet, FMCSA did not propose tying the newly established validity periods to the newly established legal presence documentation requirements. The regulatory history thus shows that federal rules establish only maximum validity periods for *all* CDLs, not that expiration dates were required to match a driver's legal presence documentation.

### 4. FMCSA Did Not Seek to Tie Validity Periods to Immigration Status Until 2025

On September 26, 2025, the same date that FMCSA sent its notice of Preliminary Determination to DMV, it announced the issuance of an Interim Final Rule that *added* a requirement that legal presence documents and license expiration

dates match. *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL)*, 90 Fed. Reg. 46,509 (Sept. 29, 2025). On February 13, 2026, FMCSA issued a Final Rule with the same requirement. *Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses*, 91 Fed. Reg. 7044 (Feb. 13, 2026). The Final Rule went into effect on March 16, 2026. *Id.* at 7044. That rule modified the very provisions at issue in this Petition. Specifically, section 383.73, which previously only provided for the one- and eight-year maximum validity periods, now includes an additional subsection that reads: "For applicants domiciled in a foreign jurisdiction, the State must ensure that the period of validity of the non-domiciled CLP or CDL does not exceed the Admit Until Date or expiration date on the applicant's I-94/A or 1 year, whichever is sooner." 49 C.F.R. § 383.73(f)(2)(iv) (effective March 16, 2026); *compare id. with* 49 C.F.R. § 383.73 (effective Sept. 29, 2022-Sept. 28, 2025); *see also* 49 C.F.R. § 384.212(a) (conditioning issuance of non-domiciled CDLs on compliance with, *inter alia* section 383.73(f)).

That FMCSA sought to *add* this requirement to federal regulations through these rulemaking efforts confirms that no such requirement existed previously. *See, e.g.*, *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 973 (W.D. Wis. 2007) ("Moreover, recent proposals to amend the regulations . . . to require [a new rule] make it apparent that present regulations do not require it.") (citations omitted),

*aff'd*, 556 F.3d 575 (7th Cir. 2009); *United States v. Greene*, No. 1:23-cr-52 (RDA), 2025 WL 310128, at *5 (E.D. Va. Jan. 27, 2025) ("[T]hat the regulation has now been amended to include more specific language suggests to the Court that the Agency recognized that the plain language of the prior regulation . . . did *not* include" the new language.) (emphasis in original) (citing cases). Importantly, the Final Rule is not retroactive. 91 Fed. Reg. at 7061.

In the face of this contradiction, FMCSA has attempted to argue that the Interim Final Rule merely "clarified" existing law. But that cannot be true. The Interim Final Rule itself explains that it is *changing*—not clarifying—existing rules. *See* 90 Fed. Reg. at 46,510 ("This [Interim Final Rule] *revises* the regulations . . ."; "The *changes* strengthen the security of the CDL issuance process . . .") (emphasis added); *see also id.* at 46,511 (not listing the expiration date rule as an "existing requirement"). Moreover, FMCSA alleged that it had "good cause" to make the interim rule effective immediately because the notice and comment procedure "would delay the adoption and immediate implementation of strict standards concerning the issuance and renewal of non-domiciled CLPs and CDLs[.]" *Id.* at 46,513. If FMCSA were merely interpreting an existing rule, it could have done so without notice and comment, given that the APA provides that "interpretive rules" are not subject to notice and comment procedure. 5 U.S.C. § 553(b)(A). FMCSA did not do so for good reason—because there was no

29

preexisting rule requiring that the expiration dates of CDLs and legal presence documents must match.

**B.     The Final Determination Is Not Grounded in Any Federal Law**

Prior to FMCSA's most recent rulemaking efforts concerning non-domiciled CDLs, no federal law required CDLs to expire consistent with the date on the driver's legal presence documents.  *See supra* Section I.A.  And yet, the failure to cancel CDLs with mismatched expiration dates is precisely why FMCSA held DMV to be in "substantial noncompliance."  *See* JA___ (CALDMV-2026-001124) (explaining that Final Determination was issued due to DMV's failure to cancel licenses in purported noncompliance with 49 C.F.R. § 384.212(a), governing criteria for issuing non-domiciled CDLs).  FMCSA cannot base its determination of noncompliance with federal law on the failure to take an action *not required by federal law*.  Such agency action is inherently contrary to law, exceeds statutory authority, and is arbitrary and capricious.  *Akins*, 524 U.S. at 25 (agency action may not be based on improper legal ground).

Accordingly, FMCSA's Preliminary and Conditional Determinations are likewise improper because they are grounded in the same flawed legal theory.  The Preliminary Determination was based primarily on DMV's issuance of CDLs with expiration dates exceeding the date on the driver's legal presence document.  *See* Preliminary JA___ (CALDMV-2026-000739-0745).  The Conditional

Determination not only reiterated FMCSA's baseless position about expiration dates, but also improperly *conditioned* DMV's compliance on canceling the "noncompliant" licenses, although such action was not required by federal law. *See* JA___ (CALDMV-2026-001036) ("DMV's failure to implement, or undue delay in implementing, the [cancellation of CDLs expiring past the date of the legal presence documents] will result in FMCSA issuing a Final Determination of Substantial Noncompliance and withholding up to four percent of certain Federal-aid Highway funds as well as possible decertification of California's CDL program."). These pre-enforcement actions should similarly be set aside because they are based on improper legal grounds. *Akins*, 524 U.S. at 25; 5 U.S.C. § 704.

### C. Federal Law Did Not Require DMV to Cancel the CDLs at Issue, Let Alone to Cancel Them by a Date Certain

Because DMV was never obligated under federal law to cancel the licenses in question *at all*, it follows that DMV was not required to cancel them by a date certain. That alone is sufficient to determine that issuing a Final Determination based on the purported "failure to adhere to the schedule for" canceling such CDLs was arbitrary and capricious. JA___ (CALDMV-2026-001124); *see Tripoli Rocketry Ass'n, Inc.*, 437 F.3d at 77 (agency must engage in "reasoned decisionmaking"). Moreover, DMV never agreed that canceling the purportedly "noncompliant" licenses by January 5, 2026 was part of its corrective action plan. *See, e.g.*, JA___ (CALDMV-2026-001019-1020; 1047-1049).

31

While it is true that "[c]orrective action must be . . . implemented on a schedule mutually agreed upon by the agency and the State" (49 C.F.R. § 384.307(c)), that assumes that the State is required to, and has agreed to take, that corrective action. In fact, the regulations specifically provide that a State may contest the grounds of a preliminary determination if it believes the determination was issued in error. *Id.* § 384.307(c) ("The State's reply must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited in the notice *or, alternatively, why the FMCSA preliminary determination is incorrect*.") (emphasis added). DMV did the latter here by repeatedly explaining to FMCSA that no federal law required cancellation of CDLs with expiration dates not matching the date of a driver's legal presence documents. JA__ (CALDMV-2026-001023) ("[A]ny CDL issued with an expiration date that exceeds the person's legal presence would be inconsistent with California law, not a violation of federal law, and therefore not a basis for withholding federal funding."); JA__(CALDMV-2026-001049) ("To be clear, an extended expiration date cannot be a basis to withhold federal highway funding because it is not a violation of relevant federal law.").

Indeed, DMV made clear that it was *California* law that required non-domiciled CDLs to expire no later than the expiration date on a driver's legal presence documents. Cal. Code Regs. tit. 13, § 26.02(c) ("A commercial driver's

license or commercial learner's permit issued to a person submitting documents pursuant to 26.01(b) [i.e., a valid employment authorization document or passport with I-94 form] will be termed to expire on the same date as the expiration date on the valid DHS document"). Accordingly, when DMV acted—separately and independently from FMCSA's annual review—to cancel licenses in late 2025, it was to comply with *California* law. *See* JA___ (CALDMV-2026-001020, 1049). No federal law required those licenses to be canceled. Accordingly, DMV never entered a "mutual agreement" with FMCSA that it would cancel affected licenses by January 5, 2026, to comply with FMCSA's interpretation of federal regulations.

Moreover, DMV only ever expressed that any "remaining" CDLs that were not compliant with California law would be canceled on January 5, 2026, because DMV understood that it would be permitted to correct the expiration dates of otherwise compliant CDLs in the interim. *See* JA___ (CALDMV-2026-001053) ("Any *remaining* non-compliant licenses that were noticed on [November 6, 2025] will be canceled and recorded in CDLIS on January 5, 2026."); JA___ (CALDMV-2026-001056-1057) (DMV plans to begin reissuing licenses before January 5, and so "may take action to issue corrected CDLs to eligible drivers[.]"); *see also* JA____ (CALDMV-2026-001061-1064, 1089-90). And when FMCSA prevented DMV from doing so, DMV extended its chosen 60-day cancellation period. JA___ (CALDMV-2026-001061-1063, 1089-1098). Thus, there was no "schedule

mutually agreed upon by the agency and the State" to cancel affected licenses as part of DMV's corrective action plan, making 49 C.F.R. § 384.307 an arbitrary and capricious basis for the Final Determination. *See, e.g.*, *Nat'l Lifeline Ass'n v. FCC*, 921 F.3d 1102, 1110 (D.C. Cir. 2019) (a reviewing court shall "hold unlawful" agency actions that are "arbitrary, capricious, [and] an abuse of discretion").[8]

## II. FMCSA DOES NOT HAVE AUTHORITY TO INDEFINITELY PREVENT DMV FROM PROCESSING ANY TRANSACTIONS FOR NON-DOMICILED COMMERCIAL DRIVERS

In its Preliminary Determination, FMCSA mandated that DMV "[i]mmediately pause issuing non-domiciled CLPs and CDLs." JA__ (CALDMV-2026-000748). For the reasons stated above, FMCSA's Preliminary Determination and subsequent determinations were based on a misinterpretation of federal law and thus violated the APA on multiple grounds. *See supra* Section I. Accordingly, FMCSA's wholesale shutdown of California's non-domiciled CDL program based on the issuance of CDLs with expiration dates exceeding the date of the driver's legal presence documents is arbitrary and capricious. *Tripoli Rocketry Ass'n, Inc.*, 437 F.3d at 77 (results of agency action "must be logical and rational").

---

[8] For this same reason, DMV respectfully disagrees with this Court's decision on its Motion to Stay. 49 C.F.R. § 384.307 was not implicated, since DMV never agreed to cancel the licenses at issue in order to come into compliance with federal law. Nor could it—no federal law required those cancellations. DMV is therefore likely to succeed on the merits because the Final Determination is contrary to law, arbitrary and capricious, and *ultra vires*.

In addition, the scope of the "pause" is independently *ultra vires* because it far exceeds FMCSA's statutory authority to interfere with a State's CDL program. No statute or regulation authorizes FMCSA to impose a pre-enforcement "pause" on a State's CDL program. Rather, FMCSA is only authorized to (1) audit the State's program; (2) issue a preliminary determination of noncompliance; and (3) issue a final determination of noncompliance withholding funds and/or decertifying the State's CDL program. 49 C.F.R. § 384.307. Indeed, the most aggressive enforcement action that FMCSA can take against a State's CDL program is to decertify it and thereby prohibit the State from maintaining a CDL program altogether. *Id*. § 384.405. But even then, FMCSA is only able to prohibit a State from processing four specific transactions: (1) initial license applications; (2) renewals; (3) transfers; and (4) upgrades. *Id.* § 384.405(a).

To be clear, FMCSA has only threatened to decertify California's CDL program; it has not actually taken that action. But even if FMCSA *had* fully exercised its enforcement authority, the "pause" goes much further than what the law allows. FMCSA even prohibited DMV from making corrections to valid CDLs and from replacing lost or stolen CDLs. *See, e.g.*, *Chinese Am. Truckers Ass'n v. FMCSA*, No. 26-cv-00063-JGB-DTB (C.D. Cal. Jan. 7, 2026) (suit against DMV alleging harm to commercial drivers unable to renew or replace licenses under FMCSA's pause); *Doe, John 1 v. Cal. Dep't of Motor Vehicles*, No.

25CV161994 (Cal. Super. Ct. Dec. 29, 2025) (same). This had the effect of voiding valid CDLs before they naturally expired, something Congress expressly prohibited. 49 U.S.C. § 31312(c) ("Nothing in this section shall be construed as invalidating or otherwise affecting commercial driver's licenses issued by a State before the date of issuance of an order [of decertification]."); *see also* 49 C.F.R. § 384.405(h). Thus, the "pause" is independently *ultra vires* because it exceeds FMCSA's statutory authority. *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022) ("Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided.")

Absent any law or regulation supporting the Final Determination, its antecedent enforcement actions, or the ongoing "pause," FMCSA's actions appear to be motivated by a desire to push qualified and lawful immigrant workers out of the workforce by coercing States to cancel valid licenses and then changing the eligibility rules while keeping state agencies in limbo. This is not a proper use of the administrative process. *See, e.g.*, *Miot v. Trump*, __ F. Supp. 3d __, No. 25-cv-02471, 2026 WL 266413, at *10 (D.D.C. Feb. 2, 2026) (administrative action motivated by racial animus improper). And California's own state laws cannot be used by a federal agency as a proxy to enforce an agenda to disenfranchise non-citizens. The Final Determination should be set aside.

36

## CONCLUSION

There is no basis in federal law for FMCSA's Final Determination.  DMV's Petition should be granted, and the Final Determination should be vacated at the earliest opportunity.

Dated: April 22, 2026

Respectfully submitted,

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
R. MATTHEW WISE
SETH E. GOLDSTEIN
  *Supervising Deputy Attorneys General*
KRISTEN C.A. KIDO
SHIWON CHOE

 /s/ *Jay C. Russell*
JAY C. RUSSELL
*Deputy Attorneys General*
Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 510-3617
Email: Jay.Russell@doj.ca.gov

37

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by the Federal Rules of Appellate Procedure and this Court's rules, this document contains 8,023 words, as calculated by my word processing software.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface, 14-point Times New Roman, using Microsoft Word 365.

Respectfully submitted,

*/s/ Jay C. Russell*
Jay C. Russell

# CERTIFICATE OF SERVICE

Case Name: **_California Department of Motor Vehicles v. U.S. Department of Transportation, et al._**     Case No.   **26-1027**

I hereby certify that on <u>April 22, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **PETITIONER'S INITIAL OPENING BRIEF**

2. **CIRCUIT RULE 28(A)(5) ADDENDUM TO PETITIONER'S INITIAL OPENING BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 22</u>, at San Francisco, California.

| | |
|---|---|
| M. Mendiola | _M. Mendiola_ |
| Declarant | Signature |

SA2025305909