**ORAL ARGUMENT NOT YET SCHEDULED**

NO. 26-1027

**United States Court of Appeals**
**for the District of Columbia Circuit**

CALIFORNIA DEPARTMENT OF MOTOR VEHICLES,
*Petitioner*,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, ET AL.,
*Respondents*,

*On Petition for Review of an Order of the Federal Motor Carrier Safety Administration*

# BRIEF OF AMICUS CURIAE THE SIKH COALITION, ASIAN LAW CAUCUS, THE SIKH AMERICAN LEGAL DEFENSE AND EDUCATION FUND, CALIFORNIA SIKH YOUTH ALLIANCE, GILLSON TRUCKING, SMART TRANSPORTATION UNION, GENERAL COMMITTEE OF ADJUSTMENT 875, AND THE JAKARA MOVEMENT IN SUPPORT OF PETITIONER

Sahel K. Sra
Munmeeth Kaur Soni
The Sikh Coalition
165 Broadway, 23rd Floor
New York, NY 10006
Tel: (212) 655-3095

Katherine Zhao
Josh Rosenthal
Asian Law Caucus
55 Columbus Ave
San Francisco, CA 94111
Tel: (415) 896-1701

*Counsel for Amici Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies as follows:

### A. Parties and *Amici*

Except for the following, all parties, intervenors, or *amici* appearing in this Court are listed in Petitioner's Opening Brief: *amici curiae* the Sikh Coalition, Asian Law Caucus, the Sikh American Legal Defense and Education Fund, California Sikh Youth Alliance, Gillson Trucking, SMART Transportation Union, General Committee of Adjustment 875, and the Jakara Movement.

None of *amici* have any parent corporations and no publicly held company owns 10% or greater ownership in any of *amici*.

### B. Rulings Under Review:

Petitioner seeks review of the Federal Motor Carrier Safety Administration's January 7, 2026 Notice of Final Determination of Substantial Noncompliance and its antecedent enforcement actions, including its mandated "pause" on all DMV transactions concerning non-domiciled commercial driver's licenses. No official citations for the Final Determination or preceding enforcement actions exist.

### C. Related Cases:

This case has not previously been before this or any other Court. Petitioner is unaware of any related cases as defined in Circuit Rule 28(a)(l)(C).

**D. Statutes and Regulations**

Except for the following, all applicable statutes, etc., are contained in

Petitioner's Opening Brief:

1. California Vehicle Code 12811

2. Cal. Code Regs. tit. 13 §§ 26.01(b)

3. 58 Fed. Reg. 34344

4. 58 Fed. Reg. 34351

5. 58 Fed. Reg. 34355

6. 59 Fed. Reg. 26029

7. 59 Fed. Reg. 26038

8. 59 Fed. Reg. 26042

9. 66 Fed. Reg. 39248

10. 66 Fed. Reg. 39252

11. 66 Fed. Reg. 39260

12. 67 Fed. Reg. 49742

13. 67 Fed. Reg. 49763

14. 90 Fed. Reg. 46509

15. 90 Fed. Reg. 46522

Dated: April 29, 2026            */s/ Sahel K. Sra*
                                              Sahel K. Sra

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............ i

TABLE OF CONTENTS ........................................................................... iii

TABLE OF AUTHORITIES........................................................................ iv

GLOSSARY OF ABBREVIATIONS ............................................................. vi

STATEMENT IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE ..........................................................................1

PRELIMINARY STATEMENT ..................................................................4

STATEMENT OF FACTS ........................................................................5

**I. Doe, et al. v. Cal. Dep't of Motor Vehicles, et al. ...........................5**

**II. State Court Orders DMV to Comply with State Law and Refuses to Discharge DMV from the Writ ...............................................6**

**III. The License Cancellations ..............................................................7**

ARGUMENT ..........................................................................................7

**I. FMCSA Unlawfully Directed DMV to "Pause" License Reissuance, Which Forced DMV to Delay the Cancellation of Drivers' Licenses to Prevent Irreparable Harm ..................................................7**

**II. FMCSA's Unauthorized Pause Prevents DMV From Administering Relevant State Law.........................................................11**

**III. FMCSA's Determination is Arbitrary, Capricious, and An Abuse of Discretion ........................................................................13**

*A. FMCSA's Determinations were Based on a Non-Existent Federal Requirement ..........................................................................14*

*B. FMCSA Ignored the Irreparable and Unjustified Harm of its Determinations on Drivers..........................................................15*

CONCLUSION ....................................................................................18

CERTIFICATE OF COMPLIANCE .........................................................19

CERTIFICATE OF SERVICE..................................................................20

EXHIBIT A……………………………………………………………….21

EXHIBIT B……………………………………………………………….29

# TABLE OF AUTHORITIES

**Cases**

*Chao v. Day*, 436 F.3d 234 (D.C. Cir. 2006) ....................9
*Doe, et. al. v. Cal. Dep't of Motor Vehicles*, No. 25CV161994 (Cal. Super. Ct.) ...2, 3, 4, 5, 6, 7, 12
*General Motors Corp. v. U.S.*, 496 U.S. 530 (1990)....................9
*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ....................8
*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 591 U.S. 657 (2020) ....................14
*Lujan v. FMCSA*, No 26-1032....................13
*Mississippi Comm'n on Env't Quality v. E.P.A.*, 790 F.3d 138 (D.C. Cir. 2015)..13, 15
*Ohio v. E.P.A.*, 603 U.S. 279 (2024) ....................14
*Whitman v. Am. Trucking Assocs.*, 531 U.S. 457 ....................8

**Statutes**

5 U.S.C. § 706(2)(A) ....................9, 11, 14
5 U.S.C. § 706(2)(C) ....................8
49 U.S.C. § 31311 ....................8, 11
49 U.S.C. § 31312 ....................8
49 U.S.C. § 31312(c)....................8

**Regulations**

Cal. Code Regs. tit. 13, § 26.01(b) ....................15
Cal. Code Regs. tit. 13, § 26.02(c) ....................15
49 C.F.R. § 383.73(b)(9) ....................14
49 C.F.R. § 384.307....................9
49 C.F.R. § 384.405(a) ....................8
58 Fed. Reg. 34344....................10
58 Fed. Reg. 34351....................10
58 Fed. Reg. 34355....................10
59 Fed. Reg. 26029....................10
59 Fed. Reg. 26038....................10
59 Fed. Reg. 26042....................10
66 Fed. Reg. 39248....................10
66 Fed. Reg. 39252....................10
66 Fed. Reg. 39260....................10
67 Fed. Reg. 49742....................10
67 Fed. Reg. 49763....................10
90 Fed. Reg. 46509....................11

90 Fed. Reg. 46522 .......... 11

**California Vehicle Code**

§ 12811 .......... 4, 5, 12
§ 12811(a)(1)(A) .......... 6, 12
§ 13100 .......... 4, 5, 6, 11, 12

**Other Authorities**

State of California DMV, California DMV Extends Date of Nondomiciled CDL Action, Calfornia Department of Motor Vehicles (Dec. 30, 2025) .......... 5

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| APA | Administrative Procedure Act |
| CDL | Commercial Driver's License |
| FMCSA | Federal Motor Carrier Safety Administration |
| DMV | California Department of Motor Vehicles |

## STATEMENT IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE[1]

**The Sikh Coalition** is a nonprofit and nonpartisan organization dedicated to ensuring that members of the Sikh community in America are able to practice their faith without fear of discrimination or backlash. It defends the civil rights and civil liberties of Sikhs by providing direct legal services, advocating for legislative change, educating the public about Sikhs and Sikhi, promoting local community empowerment, and fostering civic engagement amongst Sikh Americans. The organization also educates community members about their legally recognized free-exercise rights and works with public agencies and officials to implement policies that accommodate their sincerely held beliefs. The Sikh Coalition has long advocated for the legal rights of Sikh truckers, including by representing plaintiffs in landmark hiring discrimination legislation, fighting for clients' rights to maintain their articles of faith while working in the trucking industry, seeking justice for drivers who experience bias-motivated assault, producing accessible "know your rights resources" in Punjabi, and more. The Sikh Coalition serves as counsel for

[1] Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), *amici curiae* certify that no person or entity, other than *amici*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. Under Circuit Rule 29(d), *amici curiae* certify that joinder in a single brief with other *amici* would be impracticable because, as of the date of this certification, they are aware of no other brief that addresses the impact of FMCSA's enforcement actions on effectuating California law or on a court order requiring DMV to carry out its ministerial duties.

petitioners in *Doe, et al. v. Cal. Dep't of Motor Vehicles, et al.*, No. 25CV161994 (Cal. Super. Ct. Dec. 29, 2025).

**Asian Law Caucus** was founded in 1972 as the nation's first legal and civil rights organization serving low-income, immigrant, and underserved Asian American and Pacific Islander communities. The organization continues to advocate for Asian, Pacific Islander, Arab, Muslim, and other immigrants across a range of issues—including the rights of immigrant workers. Asian Law Caucus also serves as counsel for petitioners in *Doe, et al. v. Cal. Dep't of Motor Vehicles, et al.*, No. 25CV161994 (Cal. Super. Ct. Dec. 29, 2025).

**The Sikh American Legal Defense and Education Fund (SALDEF)** is a nonprofit organization that is dedicated to empowering Sikh Americans by building dialogue, deepening understanding, promoting civic and political participation, and upholding civil rights and religious freedom for all Americans. Sikh truckers are deeply connected to SALDEF's mission because they represent one of the most visible and vital segments of the Sikh American community and their daily experiences directly reflect the issues SALDEF works to address.

**California Sikh Youth Alliance (CSYA)** is a grassroots community organization dedicated to advocacy, organizing, and youth development within the Sikh community in the United States. The organization seeks to mobilize Sikhs across California while advancing principled, informed engagement on issues of

justice, civil rights, and human rights for all. This issue is of serious concern given its direct impact on the livelihoods of Sikh truckers.

**Gillson Trucking** was founded in 2011 and has served 48 states across the US to provide safe, secure, and reliable transportation services. Their fleet includes over 300 trucks and employs more than 300 people, including individuals in California. The impact of CDL cancellations on their business has been disastrous., forcing 35 trucks out of commission.

**SMART Transportation Union, General Committee of Adjustment 875** based in Los Angeles, California, represents five locals comprised of bus and rail operators working for Los Angeles County Metro Transportation Authority and have transit Operators with non-domiciled CDLs who have lost their livelihoods as a result of FMCSA's enforcement actions against DMV.

**The Jakara Movement** is a nonprofit 501(c)(3) grassroots community building organization dedicated to empowering, educating, and organizing working class Punjabi Sikhs and other marginalized communities. Its mission is to advance health, education, arts and culture, economic opportunity, and community power. Many Jakara members work in the trucking industry, which forms one of the organization's largest and most active membership bases. Jakara is a petitioner organization in *Doe, et al. v. Cal. Dep't of Motor Vehicles, et al.*, No. 25CV161994 (Cal. Super. Ct. Dec. 29, 2025).

## PRELIMINARY STATEMENT

*Amici Curiae* include legal, community, member-driven organizations, and businesses that either advocate on behalf of Sikh and other non-citizen commercial drivers in California and across the United States, or they have been directly impacted by Respondents' enforcement actions. *Amici* submit this brief in support of Petitioner's challenge to the Federal Motor Carrier Safety Administration's (FMCSA) directive imposing a mandatory "pause" on the California Department of Motor Vehicles' (DMV) processing of all non-domiciled commercial driver's licenses (CDLs) transactions—including issuing, correcting, replacing, and renewing such licenses—as well as FMCSA's Final Determination of Substantial Noncompliance.

*Amici* are particularly concerned that FMCSA's enforcement actions have substantially interfered with DMV's ability to comply with a binding California state-court order issued in *Doe, et al. v. Cal. Dep't of Motor Vehicles, et al.*, No. 25CV161994 (Cal. Super. Ct. Mar. 2, 2026). That order requires DMV to adhere to California Vehicle Code sections 13100 and 12811 by permitting affected non-domiciled CDL holders to promptly reapply for and obtain cancelled licenses. By restricting DMV's authority to process such applications, FMCSA's actions have impeded DMV's ability to carry out the state court's mandate and to give full effect to its own laws.

## STATEMENT OF FACTS

### I. Doe, et al. v. Cal. Dep't of Motor Vehicles, et al.

On December 23, 2025, *amici* the Sikh Coalition and Asian Law Caucus filed a class-action lawsuit in California superior court, *Doe v. Cal. Dep't of Motor Vehicles*, No. 25CV161994 (Cal. Super. Ct.). The action followed DMV's issuance of 60-day cancellation notices in November and December to approximately 21,000 individuals whose non-domiciled CDLs were flagged due to alleged mismatches between their license expiration dates and federal work authorization records. The lawsuit alleged, in relevant part, that although California Vehicle Code § 13100 permits DMV to cancel licenses issued in error, it also imposes a mandatory, ministerial duty to allow affected drivers to immediately apply for a new license, and that Vehicle Code § 12811 requires DMV to issue a license to any applicant who is lawfully entitled to one. The lawsuit sought to halt the impending cancellations before they could precipitate widespread job loss and economic disruption beginning January 5, 2026—the original date of cancellation.

On December 30, 2025, DMV announced a 60-day extension of the cancellation dates to the close of business on March 6, 2026. *See* State of California DMV, California DMV Extends Date of Nondomiciled CDL Action, https://www.dmv.ca.gov/portal/news-and-media/california-dmv-extends-date-of-nondomiciled-cdl-action/ (last visited April 29, 2026). One week later, FMCSA

issued its Notice of Final Determination of Substantial Noncompliance on the basis that DMV failed to cancel the licenses by a certain date.

## II. State Court Orders DMV to Comply with State Law and Refuses to Discharge DMV from the Writ

On March 2, 2026, the Alameda Superior Court for the State of California granted the *Doe* petitioners' writ of mandate in part, finding that DMV's intended manner of cancelling non-domiciled CDLs—without providing a right to challenge the cancellations, to reapply, or to request a hearing—violated state law. Ex. A, Order at 1, *Doe, et al. v. Cal. Dep't of Motor Vehicles, et al.*, No. 25CV161994 (Cal. Super. Ct. Mar. 2, 2026). Specifically, the court found that California law "imposes a ministerial duty on DMV to allow persons whose licenses are cancelled to 'immediately' apply for a license." *Id.* at 4 (citing Cal. Veh. Code § 13100). As such, the court ordered DMV "to allow any nondomiciled CDL holder whose CDL is cancelled due to an administrative error…to apply for a new license." The court also found petitioners "entitled to the issuance [of] CDL licenses if DMV determines that they are "lawfully entitled to a license." *Id. (quoting* Cal. Veh. Code § 12811(a)(1)(A)). The court ordered DMV to "issue corrected CDLs to Petitioners and putative class members" with issuances to "occur within a reasonable time following receipt and acceptance of an individual's application and finding of lawful eligibility…" *Id.*

On April 2, 2026, the court held a compliance hearing and found DMV had not yet achieved compliance with the writ due to "FMCSA's mandated pause," which has been preventing DMV from reissuing corrected CDLs to petitioners and putative class members consistent with state law. *See* Ex. B, Order at 1, *Doe, et al. v. Cal. Dep't of Motor Vehicles, et al.*, No. 25CV161994 (Cal. Super. Ct. April 2, 2026). The court continues to retain jurisdiction until compliance is achieved. *Id.*

## III. The License Cancellations

Despite winning on the law, impacted California non-domiciled CDL holders have still suffered defeat due to FMCSA's mandated pause that has prevented DMV from complying with its ministerial duties. Thousands of non-domiciled CDL holders find themselves facing a Kafkaesque reality where on the one hand a state court has vindicated their rights under state law, but who are unable to obtain relief from DMV's mistake due to FMCSA's arbitrary and retaliatory enforcement actions.

On March 6, 2026, DMV executed the mass cancellation of approximately 13,000 non-domiciled CDLs, leaving thousands of drivers ineligible to work and unable to secure adequate alternative employment, thereby leaving them in a state of profound financial instability because of FMCSA's pause.

# ARGUMENT

## I. FMCSA Unlawfully Directed DMV to "Pause" License Reissuance, Which Forced DMV to Delay the Cancellation of Drivers' Licenses to Prevent Irreparable Harm

FMCSA's mandated pause on DMV's non-domiciled CDL-related action is unlawful because it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), and catalyzed the very conduct that FMCSA later penalized DMV for—namely, DMV's 60-day extension of the January 5, 2026 cancellation deadline.

The relevant statute does not authorize FMCSA to "pause" a state's entire non-domiciled CDL program when it issues a preliminary determination of substantial noncompliance. *See* 49 U.S.C. 31311. Given that such a "pause" would alter the balance between state and federal power, Congress must authorize this change through "unmistakably clear" language in the statute. *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991). It tellingly did not do so here. *See Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 468 (Congress does not "hide elephants in mouseholes"). Instead, the separate statutory provision on decertification states that if the Secretary of Transportation makes a *final* determination that a state is in substantial noncompliance, the Secretary shall prohibit that state "from carrying out licensing procedures" and issuing CDLs "until such time the Secretary determines such State is in substantial compliance." 49 U.S.C. 31312.[2] Congress, in other words,

[2] The relevant statute and FMCSA's regulations delineate limits on the federal agency's ability to prohibit a state from processing commercial licenses at the final determination stage. *See* 49 U.S.C. 31312(c) ("Nothing in this section shall be construed as invalidating or otherwise affecting [previously-issued] commercial driver's licenses"); 49 C.F.R. § 384.405(a) (specifying four types of transactions prohibited by states found in substantial noncompliance). In other words, even at this stage, FMCSA is not authorized to impose a sweeping ban on all non-domiciled commercial license transactions.

expressly authorized FMCSA to prohibit certain transactions at the final determination stage but did not impose similar clear authority at the preliminary determination stage. *See Chao v. Day*, 436 F.3d 234, 236 (D.C. Cir. 2006) ("[W]e do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."). Accordingly, FMCSA overstepped its statutory authority in mandating sweeping "pauses" in processing at the preliminary determination stage. *See General Motors Corp. v. U.S.*, 496 U.S. 530, 538 (1990) (refusing to infer in certain provisions of a statute deadlines and enforcement limitations that had been expressly imposed elsewhere).

FMCSA's mandated pause on DMV's non-domiciled CDL-related action is also unlawful because it is "not in accordance with law," namely its own regulations. *See* 5 U.S.C. § 706(2)(A). The governing regulations outline FMCSA's oversight role during state compliance reviews, but they do not authorize the agency to halt a state's CDL operations during the audit process. *See* 49 C.F.R. § 384.307. Nowhere does the regulation permit FMCSA to impose a blanket suspension on a state's ability to issue or correct licenses, as FMCSA did here. A review of recent rulemakings further supports this argument, as the preamble and regulatory texts corresponding to Section 384.307 in these rulemakings fail to even mention an

action resembling a "pause" in processing. *See* 58 Fed. Reg. 34344, 34351, 34355 (1993 NPRM); 59 Fed. Reg. 26029, 26038, 26042 (1994 Final Rule); 66 Fed. Reg. 39248, 39252, 39260 (2001 NPRM); 67 Fed. Reg. 49742, 49763 (2002 Final Rule). Taken together, the "pause" in processing that FMCSA imposed on California's non-domiciled CDL program is neither authorized by statute nor the agency's own regulations, thus violating the APA.

And had FMCSA not imposed its unlawful pause, impacted California drivers would have been able to promptly reapply for and receive corrected non-domiciled CDLs following the scheduled January 5, 2026 cancellations. Instead, FMCSA's directive forced DMV into an untenable position, whereby it had to extend the cancellation deadline by 60 days to prevent immediate economic devastation for thousands of drivers. Without their licenses, thousands of drivers would have been unable to maintain their jobs (for which a non-domiciled CDL is a requirement), thereby exposing them and their families to severe financial and emotional hardships. FMCSA, however, relied on DMV's extension—necessitated by FMCSA's own unlawful conduct—as a basis to find DMV in substantial noncompliance and to impose significant financial penalties, including the withholding of hundreds of millions in federal funds. FMCSA should not be permitted to penalize a state for taking reasonable steps to protect its residents from the harmful consequences of the agency's own unlawful, unreasonable demand.

Ultimately, faced with FMCSA's ongoing threat of decertification, DMV cancelled approximately 13,000 licenses on March 6, 2026. Meanwhile, FMCSA's unlawful pause remains in effect, and its consequences have only compounded over time. With each passing day, more drivers lose their licenses and are rendered ineligible to work, while those whose licenses have already been canceled continue to struggle to secure stable employment and to support themselves and their families, deepening the economic and personal toll. What began as an unlawful directive has evolved into an ongoing source of widespread and escalating harm, underscoring the urgent need for judicial intervention.

## II. FMCSA's Unauthorized Pause Prevents DMV From Administering Relevant State Law

FMCSA's "pause" on DMV's non-domiciled CDL program is separately "not in accordance with law," 5 U.S.C. § 706(2)(A), because it interferes with DMV's authority to administer and enforce its own licensing regime. States retain primary responsibility for issuing non-domiciled CDLs in compliance with both federal standards and state-specific requirements, *see* 49 U.S.C. § 31311,[3] and California law provides a comprehensive framework governing both cancellation and reissuance of licenses. Under California Vehicle Code section 13100, DMV is authorized to cancel licenses issued in error. But that authority is paired with a clear,

[3] *See also* 90 Fed. Reg. 46509, 46522 (Sept. 29, 2025) (FMCSA noting "the CDL program does not have preemptive effect").

nondiscretionary obligation: section 13100 imposes a ministerial duty on DMV to allow affected individuals to "immediately" reapply for a new license upon cancellation. Additionally, applicants are entitled to license issuance if DMV determines that they are lawfully qualified. *See* Cal. Veh. Code § 12811(a)(1)(A).

A California court has already confirmed that these statutory protections are enforceable through mandamus: in *Doe, et al. v. Cal. Dep't of Motor Vehicles, et al.*, No. 25CV161994 (Cal. Super. Ct. Mar. 2, 2026), the court ordered DMV to issue corrected CDLs to petitioners and putative class members, consistent with its obligations under sections 13100 and 12811. FMCSA's unauthorized "pause" directly obstructs DMV's ability to carry out these mandatory duties by preventing the issuance of corrected licenses to qualified drivers. This interference places DMV in an untenable position: fulfill its state statutory obligations and risk further federal sanctions, or comply with improper federal directives and violate state law.

FMCSA's unlawful actions also undermine state judicial relief because the federal government's threats constrained the *Doe* court's ability to provide meaningful relief was effectively constrained. Because FMCSA has threatened severe penalties—including decertification of the entire CDL program—DMV cannot fully comply with the state court's mandate without risking catastrophic consequences. In practical terms, FMCSA is wielding its enforcement authority as a "sword" that overrides not only state law but also state courts. If allowed to stand,

FMCSA's actions would mean that any federal agency could, through enforcement threats, suspend the operation of state law—even where Congress has not authorized such intrusion.

The implications of such a determination would extend far beyond this case; if federal agencies can coerce states into disregarding their own laws, state sovereignty becomes illusory. *See Mississippi Comm'n on Env't Quality v. E.P.A.*, 790 F.3d 138, 175 & n.20 (D.C. Cir. 2015) ("[T]he Federal Government may not compel the States to implement . . . federal regulatory programs"). State legislatures could enact laws that agencies simply ignore, state courts could issue rulings that agencies effectively veto, and citizens would lose the ability to rely on state law protections. Accordingly, FMCSA's "pause" is not only unlawful under the APA, but also an impermissible intrusion on state sovereignty that this Court should set aside to preserve the integrity of California's legal framework and the constitutional balance between federal and state authority.[4]

## III. FMCSA's Determination is Arbitrary, Capricious, and An Abuse of Discretion

FMCSA's determination is also "arbitrary, capricious, [and] an abuse of

[4] For much of the period that FMCSA directed the "pause," the operative regulations would have permitted most of the affected drivers to obtain reissued, corrected CDLs. However, FMCSA since promulgated a rule that prohibits states from issuing non-domiciled CDLs to drivers who hold work authorization through Deferred Action for Childhood Arrivals, Temporary Protected Status, a pending application for asylum or adjustment of status, or many other statuses. That rule is currently subject to separate litigation in this court. *See Lujan v. FMCSA*, No 26-1032. However, to fully vacate FMCSA's determination and reserve the status quo ante, *amici* request that this court make clear that DMV may reissue licenses pursuant to the prior regulations.

discretion," 5 U.S.C. § 706(2)(A), because it rests on no cognizable federal violation and produces an irrational result. *See Ohio v. E.P.A.*, 603 U.S. 279, 292 (2024) ("An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'"). Further, FMCSA ignored the substantial and unnecessary harm that its determinations predictably caused the affected drivers. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 591 U.S. 657, 682 (2020) (agency action arbitrary and capricious when it entirely fails to consider an important aspect of the problem or offers an explanation for its decision that runs counter to the evidence before it).

### *A. FMCSA's Determinations were Based on a Non-Existent Federal Requirement*

Both FMCSA's preliminary and final determinations stem from non-domiciled CDLs with expiration dates that extended beyond the expiration of a drivers' Employment Authorization Document at the time of license issuance. But as DMV correctly argues, federal regulations in effect during the relevant period did not require non-domiciled CDL expiration dates to match the expiration date of legal presence documents. *See* Pet. Opening Brief at 22–29. Instead, federal regulations required only that non-domiciled CDLs not exceed specified maximum validity periods. *See* 49 C.F.R. § 383.73(b)(9). California imposed an additional requirement that non-domiciled CDLs expire on or before the date of the driver's legal presence

documents. Cal. Code Regs. tit. 13, §§ 26.01(b), 26.02(c).

Thus, any deficiency of those non-domiciled CDLs lies squarely within the domain of state law, not federal law. But despite the absence of federal noncompliance for these licenses, FMCSA has barred DMV from implementing the very corrective measures that California law requires. This places DMV in an unjustifiable situation: it is faulted for failing to remedy a nonexistent federal deficiency, even as it is prevented from carrying out the remedy that state law compels. *See Mississippi Comm'n on Env't Quality*, 790 F.3d at 175 & n.20. Such internally inconsistent enforcement cannot be squared with reasoned decision-making. By imposing an indefinite pause and threatening decertification based on a federal requirement that did not exist during the review period, FMCSA has effectively commanded DMV to refrain from complying with its own legal obligations, while improperly expanding federal power. Such action is the essence of arbitrary and capricious agency action.

### *B. FMCSA Ignored the Irreparable and Unjustified Harm of its Determinations on Drivers*

When DMV executed the mass cancellation of approximately 13,000 non-domiciled CDLs, it left thousands of drivers ineligible to work and unable to secure adequate alternative employment, thereby placing them in a state of profound financial instability. For example, John Doe 1, one of the petitioners in the *Doe* case,

has been unable to secure employment since losing his position as a shuttle bus driver for a major technology company following the cancellation of his non-domiciled CDL. He is the father of two children, including one with severe disabilities requiring intensive care. Although he reapplied for a non-domiciled CDL, he has been unable to secure new employment. He now faces mounting financial strain; having recently purchased a home, he has been forced to rely on limited savings to meet his mortgage obligations, with no clear path forward.

Similarly, John Doe 2 has suffered severe financial hardship since his non-domiciled CDL was cancelled on March 6, 2026. He previously operated a towing business that depended on his commercial license and he served as the sole provider for a family of five, including a newborn. Since losing his CDL, he has been unable to continue working in the trucking industry, and his monthly income has dropped from approximately $10,000–$15,000 to about $1,200, leaving him unable to meet basic financial obligations and uncertain as to how he will continue to support his family.

Former truck driver "P.S." has also been unable to secure any employment in the trucking field—the only field in which he has experience. P.S. is the sole provider for his household, supporting himself and his two aging parents. His inability to work has forced him to deplete his savings to cover basic living expenses.

Former truck driver "M.S." has over a decade of experience but has also been

unable to secure employment in his field. As a result, M.S. has lost all income and exhausted his savings while attempting to meet ongoing financial obligations, including his mortgage and essential living expenses. M.S. is the primary provider for his household, which includes his spouse and young child. Although his spouse has sought limited employment to mitigate the loss, the household remains unable to meet basic financial needs and faces imminent inability to cover housing and other necessities.

Another driver reported to counsel at the Asian Law Caucus that he was terminated from his trucking job on March 10, 2026, after his non-domiciled CDL was cancelled on March 6, rendering him ineligible to continue working. Similarly, driver "H.C." was terminated from his position with a California recycling company when he was unable to renew his non-domiciled CDL upon its expiration in February 2026. The loss of his employment also resulted in the loss of accrued seniority and essential benefits, including medical and dental insurance. As he searches for alternative work, H.C. is no longer financially able to pursue plans to purchase a home or marry his fiancé.

These accounts are not isolated, nor are they unexpected. Rather, they are representative of the widespread, ongoing, and foreseeable economic harm caused by FMCSA's actions. FMCSA's determinations have rendered thousands of drivers in California unable to work and left their families in severe financial distress. Yet

FMCSA failed entirely to consider these harms in demanding that DMV pause renewal and issuance of licenses. Such an oversight renders FMCSA's determination arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, *amici* respectfully request that this court vacate the Final Determination and lift FMCSA's mandated "pause."

Respectfully submitted,

Dated: April 29, 2026

                                                     */s/ Sahel K. Sra*

Sahel K. Sra
Munmeeth Kaur Soni
The Sikh Coalition
165 Broadway, 23rd Floor
New York, NY 10006
Tel: (212) 655-3095
sahel@sikhcoalition.org
munmeeth@sikhcoalition.org

Katherine Zhao
Joshua Rosenthal
Asian Law Caucus
55 Columbus Ave
San Francisco, CA 94111
Tel: (415) 896-1701
katherinez@asianlawcaucus.org
joshr@asianlawcaucus.org

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that this Brief of *Amici Curiae* complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because, excluding parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1), it contains 3,338 words.

I further certify this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with 14-point Times New Roman font in Microsoft Word.

Respectfully submitted,

Dated: April 29, 2026

*/s/ Sahel K. Sra*
Sahel K. Sra
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 29, 2026, I electronically filed the foregoing brief with the Clerk of the Court using the appellate CM/ECF system, which served copies of the brief on all ECF-registered counsel.

*/s/ Sahel K. Sra*
Sahel K. Sra
*Counsel for Amici Curiae*

EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

Rene C. Davidson Courthouse

| | |
|---|---|
| JOHN DOE 1 et al<br>Plaintiff/Petitioner(s)<br>vs.<br>STEVE GORDON et al<br>Defendant/Respondent (s) | No. 25CV161994<br><br>Date: 03/02/2026<br>Time: 4:42 PM<br>Dept: 20<br>Judge: Karin Schwartz<br><br>ORDER Granting Peitition for Writ of Mandate in Part |

The petition for writ of mandate is GRANTED IN PART.

Petitioners have demonstrated that the manner in which their commercial drivers licenses ("CDLs") were cancelled – without a right to challenge cancellation, to reapply, or to request a hearing – violated state law requirements. Respondents California Department of Motor Vehicles ("DMV") and its Director, Steve Gordon, identify potential conflicts with federal requirements or mandates issued by the Federal Motor Carrier Safety Administration ("FMCSA"), but these potential conflicts are not a basis for declining to order compliance with ministerial mandates imposed by state law. Any federal conflicts, however, may present implementation issues that may impact the timing for some of the relief sought, as discussed below.

**BACKGROUND**

**The Parties and the Lawsuit**

Petitioners seek court relief on behalf of themselves and approximately 20,000 non-domiciled (i.e., immigrant) drivers and business owners residing in California whose CDLs will be cancelled on March 6, 2026. The Doe petitioners include two school bus drivers, a tow truck driver, and a driver of tankers and double/triple trailers.

Respondent DMV is the state agency responsible for enforcing the laws and regulations governing CDLs, including their issuance, renewal, and cancellation. Respondent Steve Gordon is the Director of Motor Vehicles who oversees the DMV.

Petitioners filed the Petition for Writ of Mandate on 12/29/25 seeking, inter alia, mandamus relief enabling them to immediately reapply for CDLs upon cancellation. (Pet., paras. 87-88; Prayer for Relief.)

**Legal Framework for Issuance and Cancellation of CDLs**

Federal law and regulations, administered by FMCSA, set baseline requirements for a person to

hold a CDL and for States to remain eligible for federal highway funding and to continue to issue CDLs. (See 49 U.S.C. §§ 113, 31311–12, 31314; 49 C.F.R. pts. 1 § 1.86, 383, 384.)

FMCSA is authorized to audit state licensing procedures for CDLs and to take action if it determines a state is not in substantial compliance with federal regulations. (49 C.F.R. §§ 384.307(a)-(d), 384.401, 384.405.) Upon issuing a final determination of noncompliance, FMCSA may withhold federal highway funds or decertify the State's CDL program. (Id., §§ 384.401, 384.405.) If a State's CDL program is decertified, that State is prohibited from issuing, renewing, transferring, or upgrading CDLs. (Id., § 384.405.)

California law prohibits any person from operating a commercial motor vehicle unless that person holds a valid CDL of the appropriate class. (Veh. Code ("VC"), § 15250(a).) An employer cannot allow any individual with a suspended, revoked, or canceled license to drive a commercial vehicle. (Id., § 15240.) California residents who are not United States citizens or legal permanent residents may obtain and maintain a CDL after passing knowledge and driving tests that comply with both federal and state requirements. (VC, § 15250(b)(2)(A).)

While federal regulations set forth the minimum requirements, states may impose additional requirements, as California has done. (See generally 49 C.F.R. Part 383; VC, §15250(b).) DMV regulations require a CDL to expire on the same date the applicant's work authorization or legal presence expires. (Cal. Code Regs. tit. 13, § 26.02(c).)
VC section 13100 provides that a license may be cancelled when, inter alia, "a license has been issued through error." "[C]ancellation" is defined as termination "without prejudice," and "[a]ny person whose license has been canceled may immediately apply for a license." (Id.) Further, when the DMV determines that "an applicant is lawfully entitled to a license," it is required to issue that applicant the "license as applied for." (VC, § 12811(a)(1)(A).)

**Notice of License Cancellation and Federal Administrative Action**

The following chronology of facts does not appear to be in dispute.

On September 26, 2025, FMCSA sent DMV a preliminary notice alleging that DMV was not in substantial compliance with federal requirements, including by issuing nondomiciled CDLs that expired beyond the expiration date of a driver's legal presence documents. FMCSA demanded that DMV immediately pause issuing nondomiciled CDLs, and rescind or cancel all unexpired, noncompliant nondomiciled CDLs and reissue them in accordance with relevant regulations, among other corrective actions.

DMV responded on October 26, 2025 to FMCA's preliminary notice disputing the federal agency's legal assertions; noting steps taken to ensure substantial compliance with federal regulations; and noting that the requirement that expiration dates of nondomiciled CDLs match the expiration of lawful presence documents was based on California regulations that exceeded federal requirements.

As part of its review process, DMV conducted an audit of its nondomiciled CDLs, and identified CDLs that extended beyond the expiration of legal presence documents in violation of California regulations. On November 6, 2025, DMV sent out notices to 17,299 CDL holders residing in

California stating that the cancellations would be effective January 5, 2026. DMV sent similar notifications letters to an additional approximately 2,700 CDL holders in mid-December 2025. The DMV did not provide the CDL holders with a way to challenge the cancellations, request a hearing, submit updated work authorization documents, or reapply for corrected CDLs before the cancellation date. DMV has not accepted or processed applications for corrected CDLs and has not provided a timeline for when affected individuals will be permitted to obtain corrected CDLs.

On November 13, 2025, FMCSA issued DMV a Conditional Determination, stating that it required evidence of its corrective actions as required by the federal agency's preliminary determination. DMV responded by letter on December 10, 2025 that detailed its corrective actions, including that it had issued, or soon would be issuing, cancellation notices under California law to drivers whose legal presence documents and CDL expiration dates did not match.

Believing that it had satisfied FMCA's demands for corrective action, DMV advised FMCSA that it would resume reissuing licenses on December 17, 2025. However, FMCSA responded on December 16, 2025 that DMV could "not resume issuing non-domiciled CLPs [commercial learners permits] or CDLs" or "re-issue. . . any improperly issued non-domiciled CLPs or CDLs" "until FMCSA completed its review of the State's corrective action(s) and issued a determination that California is in compliance" with federal regulations.

On December 24, 2025, DMV e-mailed FMSCA that it was extending the cancellation date to March 26, 2026 to allow "time for FMCSA and DMV to work through the compliance process," and subsequently provided public notice and letters to affected drivers relating to the extension of the cancellation date.

On January 7, 2026, FMCSA issued a Notice of Final Determination of Substantial Noncompliance. Although acknowledging that DMV was making progress on implementing corrective actions required by FMCSA's Preliminary Determination, FMCSA characterized DMV's extension of the cancellation date as "critically important" and concluded that DMV had not implemented "all required corrective actions." Accordingly, FMCSA advised that it would withhold funds totaling approximately $158 million beginning fiscal year 2027 and threatened to withhold more funding or decertify DMV's CDL program should noncompliance persist.

On January 12, 2026, DMV emailed FMCSA to request an onsite inspection to review changes DMV had made to its processing of nondomiciled CDLs. FMCSA responded that it would not conduct an onsite review of DMV's program until DMV cancelled all unexpired, noncompliant nondomiciled CDLs and until it had reviewed DMV's responses to various new inquiries.

On February 4, 2026, DMV initiated a Petition for Review in the District of Columbia Circuit Court of Appeals challenging FMCSA's Final Determination. DMV also requested an Emergency Motion for Stay. The Petition and Motion remain pending.

**ANALYSIS**

Preliminarily, the Court does not find FMCSA to be an indispensable party as urged by DMV.

(Code Civ. Proc.(CCP), § 389.) The Petition involves the application of California law to people who reside in California. The concerns that Respondents raise regarding their potential conflicts in their obligation to comply with FMCSA directives and California law may be addressed through the scope of relief granted and DMV's exercise of its discretion, within reasonable bounds, relating to how it will effectuate compliance with the ministerial duties imposed by state law.

Petitioners are entitled to writ relief under VC section 13100. The parties do not dispute that Section 13100 authorizes cancellation of any nonconforming nondomicile CDLs issued through error. However, section 13100 also imposes a ministerial duty on DMV to allow persons whose licenses are cancelled to "immediately" apply for a license. DMV must allow any nondomiciled CDL holder whose CDL is cancelled due to the administrative error described above to apply for a new license.

Petitioners are also entitled to the issuance CDL licenses if DMV determines that they are "lawfully entitled to a license." (VC, § 12811(a)(1)(A).) DMV points out that (1) this section does not specify a time period, and (2) complying before the FMCSA is satisfied with DMV's corrective action could jeopardize additional highway funds. As to the first concern, the lack of a statutory timeframe does not preclude writ relief; rather DMV is under a ministerial duty to act, and it must do so within a reasonable time frame. (California Trout, Inc. v. Superior Ct. (Ct. App. 1990) 218 Cal.App.3d 187, 202 ["Unreasonable delay in compliance with the duty enforced by the writ lies within this remedial power."].) As to the latter, the nonhypothetical prospect that unilateral state action (including steps the DMV might take to comply state law) could result in loss of additional federal funds or decertification, and the pendency of the federal lawsuit, are developments that may be considered; however, these considerations do not preclude writ relief, although they may impact the scope of available relief and the timeframe for compliance. (Cf. Cal Fire Loc. 2881 v. California Pub. Employees' Ret. Sys. (Ct. App. 2016) 7 Cal.App.5th 115, 123 [mandamus relief not available to compel the performance of any act which would be void, illegal or contrary to public policy].)

**WRIT RELIEF**

The Petition for Writ of Mandate is GRANTED IN PART, and a writ shall issue directing as follows:

1. Respondents DMV and Steve Gordon, in his official capacity, and each of their officers, agents, employees, and persons acting in concert with them, are COMMANDED as follows:

a. Opportunity to Rescind Cancellations before March 6, 2026. The DMV shall create a process for relief from cancellation for Petitioners or any putative class member who holds a state-compliant CDL (i.e. with a compliant expiration date) but who received a cancellation letter from the DMV.

b. Notice of right to immediately reapply. On or before March 6, 2026, Respondents shall post an update on its website advising Petitioners and putative class members that they can immediately re-apply for their CDL and that the termination of their CDL is without prejudice. Within two weeks of this order, Respondents shall send Petitioners and putative class members

updated cancellation notifications advising that they can immediately re-apply for their CDL and that the termination of their CDL is without prejudice.

c. Application and acceptance.  Respondents must provide a means for Petitioners and putative class members to immediately apply for corrected CDLs, including putative class members who have surrendered their CDLs pursuant to the November 6th and December 15th notification letters.  The DMV shall accept and process these applications.

d. Issuance where legally entitled.  Respondents shall issue corrected CDLs to Petitioners and putative class members, including putative class members who have surrendered their CDLs pursuant to the November 6th and December 15th notification letters. The issuance must occur within a reasonable time following receipt and acceptance of an individual's application and finding of lawful eligibility as required by Vehicle Code section 12811.

e. Writ issuance; effective date; retention of jurisdiction.  Petitioners shall prepare a proposed peremptory writ of mandate consistent with this Order for execution by the Court.  This Order is effective immediately.  The Court retains jurisdiction to enforce this Order and the peremptory writ.

2. Return to writ.  Within ten days of service of the peremptory writ of mandate, Respondents shall file and serve a return to the writ informing of the agency's actions in compliance with the writ.

The Court is setting a Compliance Date as follows.

Compliance Hearing re Status of Writ is scheduled for 04/01/2026 at 03:00 PM in Department 20 at Rene C. Davidson Courthouse.

Dated :  03/02/2026

Karin Schwartz / Judge

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Alameda<br>03/02/2026<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: ________ Deputy<br>D. Kinney |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |
| PLAINTIFF/PETITIONER:<br>JOHN DOE 1 et al | |
| DEFENDANT/RESPONDENT:<br>STEVE GORDON et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>25CV161994 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the General Order (Court Order Granting Peitition for Writ of Mandate in Part) entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

David R. Singh
david.singh@weil.com

Joshua Aaron Rosenthal
Asian Law Caucus
josh@asianlawcaucus.org

Katherine Zhao
ASIAN LAW CAUCUS
katherinez@asianlawcaucus.org

Chad Finke, Executive Officer / Clerk of the Court

Dated: 03/02/2026

By:

D. Kinney, Deputy Clerk



EXHIBIT B

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

Rene C. Davidson Courthouse

| | |
|---|---|
| JOHN DOE 1 et al<br>Plaintiff/Petitioner(s)<br>vs.<br>STEVE GORDON et al<br>Defendant/Respondent (s) | No. 25CV161994<br><br>Date: 04/02/2026<br>Time: 3:00 PM<br>Dept: 20<br>Judge: Karin Schwartz<br><br>ORDER re: Compliance Hearing re Status of Writ |

ORDER RE: COMPLIANCE

The Court has ordered the following at the conclusion of a judicially supervised Compliance Hearing.

For reasons stated on the record, the Court finds that (1) Respondents have achieved compliance with (a)-(c) of the Peremptory Writ of Mandate issued on 3/3/26; (2) Respondents have not achieved compliance with (d) of the Peremptory Writ of Mandate. The Court (1) retains jurisdiction to enforce the writ until compliance has been achieved; (2) finds that FMCSA's mandated pause is a current but temporary obstacle to full compliance; and (3) orders that Respondent provide progress reports as directed by the Court until the obstacle has been removed and full compliance has been achieved. (See California Trout, Inc. v. Superior Ct. (Ct. App. 1990) 218 Cal.App.3d 187, 202.)

The matter is set for a Case Management Conference on the date and time below. If any issues arise prior to the next Case Management Conference, either side may email Department 20 and request an earlier Case Management Conference.

FURTHER CONFERENCE
A Case Management Conference is scheduled for 10/20/2026 at 03:00 PM in Department 20.

Updated Case Management Statements in compliance with Rule of Court 3.725, on Judicial Council Form CM-110, must be filed no later than 10/05/2026. If the foregoing date is a court holiday or a weekend, the time is extended to the next business day.

Respondent must file Case Management Statement no later than one week prior to the Case Management Conference.

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
Rene C. Davidson Courthouse

Dated : 04/02/2026

**Karin Schwartz / Judge**

ORDER re: Compliance Hearing re Status of Writ Page 2 of 2

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
| --- | --- |
| COURTHOUSE ADDRESS: Rene C. Davidson Courthouse 1225 Fallon Street, Oakland, CA 94612 | FILED Superior Court of California County of Alameda 04/06/2026 Chad Finke, Executive Officer / Clerk of the Court By: [signature] Deputy D. Kinney |
| PLAINTIFF/PETITIONER: JOHN DOE 1 et al | |
| DEFENDANT/RESPONDENT: STEVE GORDON et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER: 25CV161994 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order re: Compliance Hearing re Status of Writ entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Barbara Horne-Petersdorf
DOJ - ATTORNEY GENERAL - LOS ANGELES
barbara.hornepetersdorf@doj.ca.gov

David R. Singh
david.singh@weil.com

Joshua Aaron Rosenthal
Asian Law Caucus
joshr@asianlawcaucus.org

Katherine Zhao
ASIAN LAW CAUCUS
katherinez@asianlawcaucus.org

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/06/2026 By:

D. Kinney, Deputy Clerk