ORAL ARGUMENT NOT YET SCHEDULED

**No. 26-1027**

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

CALIFORNIA DEPARTMENT OF MOTOR VEHICLES,

Petitioner,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, ET AL.,

Respondents.

---

**On Petition for Review of an Order of the Federal Motor Carrier Safety Administration**

---

# JOINT APPENDIX

---


ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE
SETH E. GOLDSTEIN
Supervising Deputy Attorneys General

KRISTEN C.A. KIDO
JAY C. RUSSELL
SHIWON CHOE
Deputy Attorneys General
Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3617
Fax: (415) 703-5480
Jay.Russell@doj.ca.gov
*Attorneys for Petitioner California Department of Motor Vehicles*

**TABLE OF CONTENTS**


DMV Manual, Chapter 2 (August 2025) (excerpt) ........ JA001

Preliminary Determination of Noncompliance (September 26, 2025) ........ JA005

DMV Response to Preliminary Determination of Noncompliance (October 26, 2025) ........ JA021

E-mail from DMV to FMCSA regarding cancellation notices, and attachment thereto (November 6, 2025) ........ JA037

Conditional Determination of Noncompliance (November 13, 2025) ........ JA041

DMV Response to Conditional Determination of Noncompliance (December 10, 2025) ........ JA053

Exhibit A to DMV Response to Conditional Determination of Noncompliance (December 10, 2025) ........ JA064

E-mails between FMCSA and DMV regarding plan to resume issuance or correct CDLs (December 16, 2025) ........ JA067

E-mail from DMV to FMCSA regarding process to correct CDLs (December 18, 2025) ........ JA070

E-mail from DMV to FMCSA regarding staff training (December 18, 2025) ........ JA071

DMV Draft Policy Memo: Resuming Issuance of Non-Domiciled CLPs and CDLs (Training Materials) (December 15, 2025) (excerpt) ........ JA072

Follow-Up Questions from FMCSA to DMV (December 18-22, 2025) ........ JA074

E-mail from DMV to FMCSA providing notice of extension of cancellation date (December 24, 2025) ........ JA079

E-mails between FMCSA and DMV regarding planned extension of cancellation date (December 30, 2025 – December 31, 2025) ........ JA085

**TABLE OF CONTENTS**
**(continued)**


E-mails between FMCSA and DMV regarding responses to FMCSA questions and status of CDLs noticed for cancellation (January 5, 2026) ........ JA095

DMV Responses to FMCSA follow-up questions (attachment to email from DMV to FMCSA, January 5, 2026) ........ JA102

DMV Press Release: California DMV Extends Date of Nondomiciled CDL Action (December 30, 2025) ........ JA109

DMV Webpage Capture: Important Changes to Limited-Term Legal Presence CDL Requirements ........ JA110

Final Determination of Noncompliance (January 7, 2026) ........ JA112

## 2.050 Commercial Driver's License (CDL), *continued*

**Commercial learner's permit (CLP)**

An applicant must be 18 years old or older to apply for a CDL or be issued a commercial instruction permit.

The commercial instruction permit has been renamed the commercial learner's permit (CLP) to comply with federal regulations.
The CLP:

- Applicant must be at least 18 years old.
- Will **not** be issued to an applicant until they have obtained a valid California DL, which at a minimum, allows the applicant to operate noncommercial Class C motor vehicles. A temporary California DL is acceptable.
- Is only valid when accompanied by the CLP holder's valid California DL.
- Will be valid for a maximum of 180 days from the date of issuance and may be renewed for up to an additional 180 days, provided the CLP expiration date does not exceed a period of 1-year from the application date.
- Is limited to the following endorsements:
  — Tank (N).
  — Passenger (P).
  — School Bus (S).

> **NOTE:** Doubles/Triples (T) and Hazardous Materials (H) endorsements are prohibited on a CLP.

- Holder with a CLP containing an "N" endorsement is prohibited from operating a tank vehicle unless the tank is empty.

> **NOTE:** A purge certificate is not required for testing purposes.


CALDMV-2026-000010

## 2.050 Commercial Driver's License (CDL), *continued*

**Commercial learner's permit (CLP)**

- Holder with a CLP containing a Passenger "P" endorsement and/or School Bus "S" endorsement is prohibited from operating a commercial motor vehicle (CMV) with passengers, other than federal/state auditors and inspectors, test examiners, other trainees, and the accompanying CDL holder.
- Holder must wait a minimum of 14 days after initial CLP issuance to be eligible to take the skills test. The 14-day waiting period applies to classification upgrades and endorsement/restriction changes that require a skills test.
- Holder must be accompanied by a CDL holder while operating a CMV. The CDL holder must possess the appropriate class license and endorsements necessary to operate the CMV.

> **EXCEPTION:** A CDL holder is not required to accompany a CLP holder during a skills test or when the CLP holder is operating a vehicle in a capacity for which they are already licensed.

- Holder must surrender their CLP and DL to DMV prior to being issued a CDL.

**Processing procedures for CLP**

When an applicant submits a Commercial Driver License Application (DL 44C) follow the steps below, as applicable:

1. Verify the applicant is at least 18 years old.

> **NOTE:** The applicant applying for a HazMat endorsement must be at least 21 years old and complete a Transportation Security Administration (TSA) background check.

2. Process the DL 44C according to existing procedures.

## 2.050 Commercial Driver's License (CDL), *continued*

**Processing procedures for CLP**

3. Refer to the chart below for additional processing instructions:

| *If the Applicant* | *Then* |
|---|---|
| Has never held any DL or currently holds a foreign country DL | • Inform the applicant that they must satisfy all of the noncommercial Class C testing requirements and obtain a temporary DL for noncommercial Class C vehicles prior to obtaining their CLP.<br>**NOTE:** Noncommercial testing may be done on the CDL application. Do **not** require the applicant to complete a separate noncommercial DL application.<br>• Administer the applicable CDL and noncommercial knowledge tests.<br>• Issue a noncommercial Class C instruction permit if the applicant successfully passes the noncommercial Class C knowledge and vision tests.<br>• Inform the applicant that they must schedule a noncommercial Class C driving performance valuation (DPE).<br>• Do **not** issue a CLP until the applicant has successfully passed the noncommercial Class C DPE and completed all applicable knowledge tests. |
| Holds an unrestricted noncommercial DL issued by California | • Administer the applicable CDL and noncommercial knowledge tests.<br>• If the applicant's DL is expired, issue them a temporary DL of the same class.<br>• Issue a CLP, if applicable. |
| Holds an unrestricted noncommercial DL issued by another state or U.S. territory | • Administer the applicable CDL and noncommercial knowledge tests.<br>• If the applicant successfully passes the noncommercial knowledge test(s), issue them a temporary DL of the same class.<br>• Issue a CLP, if applicable. |
| Is applying to upgrade an unrestricted California CDL which is **valid or expired no more than 2 years ago** | • Administer the applicable CDL and noncommercial knowledge tests.<br>• Verify **federal Medical Examination Report (MER) form MCSA-5875 and Medical Examiner's Certificate (MEC) form MCSA-5876** are valid.<br>• Issue them a temporary CDL of the same class and endorsements.<br>• Issue a CLP, if applicable. |

## 2.050 Commercial Driver's License (CDL), *continued*

**Processing procedures for CLP**

| *If the Applicant* | *Then* |
|---|---|
| Is applying to upgrade or renew an unrestricted California CDL which **expired more than 2 years ago** | • Administer the applicable CDL and noncommercial knowledge tests.<br>• Verify **MCSA-5875 and MCSA-5876** are valid.<br>• They are **not** eligible for a temporary CDL.<br>• Issue them a temporary noncommercial DL.<br>• Issue a CLP, if applicable. |
| Is applying to upgrade an unrestricted CDL issued by another state or U.S. territory | • Administer the applicable CDL and noncommercial knowledge tests.<br>• If the applicant successfully passes all of the knowledge tests required for their existing CDL and their CDL is valid or expired no more than 2 years ago:<br>—Review and update the **MCSA-5875 and MCSA-5876** using current process.<br>—Require them to surrender their CDL.<br>—Issue them a temporary CDL of the same class and endorsements.<br>• Issue a CLP, if applicable. |
| **IMPORTANT:** Do **not** issue a CLP until all applicable CDL knowledge tests have been administered and passed. | |

**Information on bottom of CLP**

The system will no longer require the use of the CLP label. The automated system will generate the information below on the bottom portion of page one of the CLP:

- "Commercial Learner's Permit" instead of "Commercial Instruction Permit."
- "Additional Learner's Permit Limitations" instead of "Additional Instruction Permit Limitations."
- The expiration date.
- The following statements, if applicable:
  - —"You must retain this permit for 14 days from the initial issuance date to be eligible for the commercial drive test."
  - —"You must have a valid California DL in your possession to validate this Commercial Learner's Permit."
  - —"Not valid for carrying passengers other than exceptions under CFR §383.25," if a passenger vehicle and/or school bus endorsement are present on the application.
  - —"Not valid for carrying hazardous materials, tank must be purged of any residue, tank vehicle must be empty," if a tank vehicle endorsement is present on the application.

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, SE
Washington, DC 20590

September 26, 2025

The Honorable Gavin Newsom
Governor of California
1021 O Street, Suite 9000
Sacramento, CA 95814

Mr. Steve Gordon, Director
California Department of Motor Vehicles
2415 1st Avenue
Mail Station F101
Sacramento, CA 95818

Dear Governor Newsom and Mr. Gordon:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration ("FMCSA" or "Agency") is required by statute to ensure that all States comply with the commercial driver's license (CDL) regulations.[1] In August 2025, FMCSA initiated an Annual Program Review of the California Department of Motor Vehicles (DMV) CDL program in accordance with 49 U.S.C. § 31311 and 49 CFR 384.307. During the 2025 Annual Program Review, FMCSA obtained evidence of systemic policy, procedural, and programming errors in California's issuance of non-domiciled commercial learner's permits (CLPs) and CDLs—that is, CLPs and CDLs issued to drivers who are not domiciled within California. In this regard, FMCSA found that the DMV issued non-domiciled CDLs that extend beyond expiration of drivers' lawful presence in the United States, issued non-domiciled CDLs to drivers who were not eligible, and issued non-domiciled CDLs without first validating the drivers' lawful presence. Therefore, in accordance with 49 CFR 384.307(b), this letter constitutes FMCSA's preliminary determination that California has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs.[2] California must take immediate

[1] 49 U.S.C. § 31311; *see also* 49 CFR part 384, subparts B and C.
[2] FMCSA notes that California issues non-domiciled CLPs and CDLs as "limited term" CLPs and CDLs. However, this preliminary determination uses the term "non-domiciled" CLPs and CDLs to ensure consistent terminology with Federal regulations.

corrective action, as set forth in section IV below, to address the deficiencies identified in this letter. The State's failure to do so may result in FMCSA initiating the withholding of certain Federal-aid highway funds and decertifying the State's CDL Program.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[3] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[4] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR part 383 and part 384, subpart B. Under 49 CFR 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of part 384, subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive Annual Program Reviews (APRs) of State CDL programs, in accordance with 49 CFR 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the States' CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under part 384, subpart B, FMCSA will notify the State accordingly.[5] As explained more fully in section V below, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect.[6] If FMCSA makes a final determination of substantial noncompliance, FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program.[7]

As part of the 2025 comprehensive APRs, FMCSA conducted an in-depth review of State procedures and policies in issuing non-domiciled CLPs and CDLs. FMCSA's focus on State non-domiciled CDL issuance practices during the 2025 APR was consistent with Executive Order 14286, "Enforcing Commonsense Rules of the Road for America's Truck Drivers."[8] The Executive Order directed FMCSA to "review non-domiciled [ ] CDLs issued by relevant State agencies to identify any unusual patterns or numbers or other irregularities" and "to take

---

[3] 49 U.S.C. 31301 *et seq*.
[4] 49 U.S.C. 31311(a).
[5] 49 CFR 384.307(b). A preliminary determination of noncompliance is also known as a "finding."
[6] *Id*. at § 384.307(c).
[7] 49 U.S.C. §§ 31314(c), 31312; *see also infra* at section VI; 49 CFR 384.307(d), 49 CFR part 384, subpart D.
[8] 90 Fed. Reg. 18759 (Apr. 28, 2025).

appropriate actions to improve the effectiveness of current protocols….”[9] Accordingly, FMCSA conducted a thorough audit of the California DMV’s procedures and policies in issuing non-domiciled CLPs and CDLs as part of the 2025 APR.

## II. Statutory and Regulatory Requirements for Issuing Non-Domiciled CLPs and CDLs

Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency’s regulations provide that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver’s most recent admittance into the United States.[10] In addition, State procedures for issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[11]

The requirement that States accept as valid only *unexpired* lawful presence documents also means that the State must make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver’s lawful presence document(s). In other words, because FMCSA’s regulations consider only unexpired lawful presence documents to be valid, the DMV is required to ensure that the non-domiciled CLP or CDL period of validity *does not exceed* the expiration of the driver’s lawful presence documents. Therefore, State driver’s licensing agencies must ensure that the validity of non-domiciled CLPs or CDLs do not exceed the expiration date of drivers’ lawful presence documents.

In addition, States may not issue a non-domiciled CLP or CDL to citizens of Mexico. In this regard, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor (Mexican CDLs) in accordance with standards that are consistent with 49 CFR part 383.[12] Citizens of Mexico are authorized to operate a CMV in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[13] Accordingly, issuing a non-domiciled CDL to a citizen of Mexico who is not present under the DACA program violates parts 383 and 384.

---

[9] *Id*. at 18759-60.
[10] 49 CFR 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212(b).
[11] *Id*. at § 383.73(f)(2).
[12] 49 CFR 383.23, footnote 1; 383.71(f)(1)(i); and 383.73(f)(1).
[13] *See* FMCSA, Office of Registration, CDL-383.23-FAQ001 (May 8, 2023), https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled.

## III. 2025 Annual Program Review

FMCSA initiated California's APR in August 2025 (2025 APR) in accordance with 49 U.S.C. § 31311 and 49 CFR 384.307. On June 23, 2025, the DMV informed FMCSA that its records reflect that more than 62,000 drivers hold an unexpired non-domiciled CLP or CDL issued by the California DMV, as of June 1, 2025.

During the 2025 APR, FMCSA sampled approximately 145 records of drivers issued a non-domiciled CDL by the DMV between June and August 2025. Approximately 26 percent of the driver records sampled failed to comply with requirements in 49 CFR parts 383 and 384.[14] Even more concerning is the fact that, for three of the transactions, the DMV was unable to provide documentation showing that it validated the drivers' lawful presence documents before issuing a non-domiciled CDL. Consequently, based on the documentation provided, it appears that the DMV issued a non-domiciled CDL to three drivers without validating their lawful presence.[15]

The 2025 APR uncovered evidence of systemic policy, procedural, and programming errors. In this regard, of the driver records sampled, FMCSA found 29 transactions where the DMV issued non-domiciled CDLs that exceeded the expiration date of the driver's lawful presence documents. Through discussions with DMV staff during the 2025 APR, FMCSA learned that this error occurs for several reasons. One reason is that if the expiration date of a driver's lawful presence document is not electronically populated in the DMV's driver record, and an employee does not notice and correct this error, the DMV's systems will issue a non-domiciled CDL that exceeds the expiration date of the lawful presence documents. In addition, DMV officials speculated that employee error in handling attachments to the application might also result in the same expiration date error. In some instances, these errors cause the DMV's system to erroneously calculate the expiration date of the non-domiciled CDL based on the driver's date of birth, rather than the expiration date of lawful presence documents.[16]

Another recurring error discovered during the 2025 APR is the DMV's repeated issuance of non-domiciled CDLs to citizens of Mexico who are not present in the United States under the DACA program. As explained in greater detail in section III(b) below, of the driver records sampled, FMCSA found 11 transactions where the DMV issued a non-domiciled CDL to a citizen of Mexico who is not present under DACA.

In addition, through FMCSA's review of the DMV's training manuals as well as discussions with DMV personnel during the 2025 APR, the Agency discovered the DMV continues issuing "temporary" CLPs and CDLs, and that the DMV trains its employees to do so. In this regard, the DMV issues temporary credentials to drivers pending final determination of the driver's

---

[14] As set forth in sections III(a), III(b), and III(c), 38 of the 145 records sampled failed to comply with FMCSA's regulations.
[15] *See infra* "JTM," sec. III(a)(6); "CPS," sec. III(a)(24); and "AOA," sec. III(a)(26).
[16] FMCSA also identified five additional transactions where the DMV's system defaulted to calculating the non-domiciled CDL's expiration date from the driver's date of birth; though the license validity did not exceed the driver's lawful presence. FMCSA has not included these transactions in the list of noncompliant transactions; though they indicate the problem with the DMV's system.

eligibility for a commercial credential. Further, the DMV is not reporting issuance of these credentials to the Commercial Driver's License Information System (CDLIS) as required in 49 CFR 384.212 and 384.225. As discussed in section III(d) below, this repeated error poses two problems. First, issuing a temporary CDL before validating a driver's lawful presence increases the risk that a driver who is unlawfully present in the United States will be issued a non-domiciled CDL. In addition, by failing to report the temporary CDL issuance to CDLIS, enforcement personnel and other State driver's licensing agencies performing a CDLIS check of a driver will not see that the driver holds (or held) a temporary CDL. This deprives enforcement personnel and State driver's licensing agencies of vital information about a driver's CDL status and history. FMCSA cited this violation during the 2024 APR and believes it continues to occur.

During the 2025 APR, the DMV was unable to provide evidence of sufficient management controls to prevent these errors or catch them if they occur. Further, the DMV has not programmed its systems with sufficient measures to handle exceptions or with "stop procedures" to prevent errors from occurring. The repeated errors discovered during the 2025 APR indicate a systemic breakdown in the DMV's issuance process for non-domiciled CLPs and CDLs. The transactions illustrating these compliance issues are discussed in greater detail below and documentation for each is provided in Appendix 1.

**a. Finding: 49 CFR 384.212—The California DMV issued non-domiciled CLPs or CDLs with an expiration date that exceeded the expiration of the driver's lawful presence documents.**

During the 2025 APR, FMCSA discovered that 29 of the 145 driver records sampled showed that the DMV issued a non-domiciled CLP or CDL for a period of validity that exceeded the driver's lawful presence document(s). Four of the 29 transactions are also noncompliant because the DMV issued non-domiciled CDLs to citizens of Mexico who are not present under DACA, and those 4 transactions are listed separately in section III(b). The remaining 25 transactions at issue are described below.

1. On June 27, 2025, the DMV issued a non-domiciled CDL with an expiration date of June 16, 2030 to a driver with the initials "MOC" who is a citizen of Mexico present in the United States under the DACA program. At the time the transaction occurred, MOC's EAD credential showed an expiration date of April 23, 2022. During the 2025 APR, a query report from USCIS' online verification service, Systematic Alien Verification for Entitlements (SAVE),[17] conducted on August 27, 2025, showed that MOC's EAD expires on April 21, 2026. However, the DMV issued a non-domiciled CDL with an expiration date of June 16, 2030, more than *four years* after the EAD expires.

[17] "SAVE is a service by USCIS that helps Federal, State, and local benefit-issuing agencies, institutions, and licensing agencies determine the immigration status of benefit applicants, so only those entitled to benefits receive them." U.S. CITIZENSHIP AND IMMIGR. SERVS., *Guide to Understanding SAVE Verification Responses* (April 2022), https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf.

2. On June 16, 2025, the DMV issued a non-domiciled CDL with an expiration date of July 9, 2030 to a driver with the initials "JK" who is a citizen of South Korea. During the 2025 APR, a SAVE query, conducted on August 20, 2025, showed that JK's EAD is set to expire on November 2, 2025. The DMV was unable to present any evidence during the 2025 APR showing that it validated JK's lawful presence before issuing a non-domiciled CDL. In addition, though JK's EAD is valid through November 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of July 9, 2030, more than *four years* after the EAD's expiration date.

3. On August 18, 2025, the DMV issued a non-domiciled CDL with an expiration date of February 10, 2031 to a driver with the initials "JHB" who is a citizen of Mexico present in the United States under the DACA program. At the time the transaction occurred, JHB's EAD credential showed an expiration date of April 23, 2027. The DMV provided FMCSA with a copy of a SAVE query report initiated on June 5, 2025 that also showed an EAD expiration date of April 23, 2027, and during the 2025 APR, a SAVE query, conducted on September 2, 2025, confirmed this date. However, the DMV issued a non-domiciled CDL with an expiration date of February 10, 2031, more than *three years* after the EAD expires.

4. On June 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of July 10, 2030 to a driver with the initials "MS" who is a citizen of India. At the time the transaction occurred, MS's EAD credential showed an expiration date of December 29, 2022. However, the DMV issued a non-domiciled CDL with an expiration date of July 10, 2030. During the 2025 APR, the DMV queried SAVE and provided FMCSA with a copy of the report showing that MS's EAD expires on March 5, 2027. The non-domiciled CDL expires more than *three years* after MS's lawful presence document is set to expire.

5. On June 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of June 2, 2030 to a driver with the initials "EMR" who is a citizen of Mexico present in the United States under the DACA program. At the time the transaction occurred, EMR's EAD credential showed an expiration date of July 24, 2015. During the 2025 APR, a SAVE query, conducted on August 27, 2025, showed that EMR's EAD expires on July 21, 2027. However, the DMV issued a non-domiciled CDL with an expiration date of June 2, 2030, approximately *three years* after the EAD expires.

6. On June 6, 2025, the DMV issued a non-domiciled CDL with an expiration date of June 3, 2030 to a driver with the initials "JTM" who is a citizen of Mexico present in the United States under the DACA program. At the time the transaction occurred, JTM's EAD credential showed an expiration date of May 24, 2023. During the 2025 APR, a query of SAVE, conducted on August 19, 2025, showed that JTM's EAD is set to expire on April 23, 2027. This transaction presents several areas of noncompliance with the most concerning being that the DMV was unable to present any evidence during the APR showing that it validated JTM's lawful presence before issuing a non-domiciled CDL. In addition, while FMCSA learned during the APR that JTM's EAD is valid through April

23, 2027, the DMV issued a non-domiciled CDL with an expiration date of June 3, 2030, *nearly three years* after the EAD's expiration date.

7. On June 20, 2025, the DMV issued a non-domiciled CDL with an expiration date of July 24, 2029 to a driver with the initials "SL" who is a citizen of India. At the time the transaction occurred, SL's EAD credential showed an expiration date of October 22, 2028, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. However, the DMV issued a non-domiciled CDL with an expiration date of July 24, 2029, approximately *nine months* after the EAD's expiration date.

8. On June 19, 2025, the DMV issued a non-domiciled CDL with an expiration date of April 15, 2030 to a driver with the initials "DM" who is a citizen of Kazakhstan. At the time the transaction occurred, DM's EAD credential showed an expiration date of July 9, 2029, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. Further, the DMV's record showed clearly that DM's lawful presence document expired on July 9, 2029. However, the DMV issued a non-domiciled CDL with an expiration date of April 15, 2030, nearly *nine months* after the EAD expires.

9. On June 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of November 27, 2029 to a driver with the initials "PND" who is a citizen of Brazil. At the time the transaction occurred, PND's EAD credential showed an expiration date of March 29, 2029. The DMV provided FMCSA with a copy of a SAVE query report initiated on December 18, 2024 that also showed an EAD expiration date of March 29, 2029, and during the 2025 APR, a SAVE query, conducted on September 2, 2025, confirmed this date. However, the DMV issued a non-domiciled CDL with an expiration date of November 27, 2029, approximately *eight months* after the EAD expires. Even more troubling, the DMV issued PND a non-domiciled CDL that includes passenger[18] and school bus[19] endorsements well beyond the driver's lawful presence.

10. On June 23, 2025, the DMV issued a non-domiciled CDL with an expiration date of July 3, 2030 to a driver with the initials "NS" who is a citizen of India. At the time the transaction occurred, NS's EAD credential showed an expiration date of November 18, 2029, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. Further, the DMV's record showed clearly that NS's lawful presence document expired on November 18, 2029. However, the DMV issued a non-domiciled CDL with an expiration date of July 3, 2030, nearly *eight months* after the EAD expires.

11. On June 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of June 25, 2030 to a driver with the initials "EBT" who is a citizen of El Salvador. At the time the transaction occurred, EBT's EAD credential showed an expiration date of

[18] A passenger endorsement allows a driver to operate a commercial motor vehicle designed to transport 16 or more passengers, including the driver. 49 CFR 383.5 (definition of "commercial motor vehicle"), 383.91, 383.93.
[19] A school bus endorsement allows a driver to operate a commercial motor vehicle to transport pre-primary, primary, or secondary school students from home to school, from school to home, or to and from school-sponsored events. 49 CFR 383.5 (definition of "school bus"), 383.91. 383.93.

January 13, 2024. During the 2025 APR, a SAVE query, conducted on August 25, 2025, showed that EBT's EAD is set to expire on December 15, 2029. The DMV was unable to present any evidence during the APR showing that it validated EBT's lawful presence before issuing a non-domiciled CDL. In addition, while EBT's EAD is valid through December 15, 2029, the DMV issued a non-domiciled CDL with an expiration date of June 25, 2030, approximately *six months* after the EAD's expiration date.

12. On July 21, 2025, the DMV issued a non-domiciled CDL with an expiration date of June 29, 2030 to a driver with the initials "FLD" who is a citizen of Guatemala. At the time the transaction occurred, FLD's EAD credential showed an expiration date of January 22, 2030, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. However, the DMV issued a non-domiciled CDL with an expiration date of June 29, 2030, more than *five months* after the EAD expires.

13. On June 24, 2025, the DMV issued a non-domiciled CDL with an expiration date of February 1, 2030 to a driver with the initials "YS" who is a citizen of China. At the time the transaction occurred, YS's EAD credential showed an expiration date of September 19, 2029, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL.[20] Further, the DMV's record showed clearly that YS's lawful presence document expired on September 19, 2029. However, the DMV issued a non-domiciled CDL with an expiration date of February 1, 2030, approximately *five months* after the EAD expires.

14. On June 11, 2025, the DMV issued a non-domiciled CDL with an expiration date of July 22, 2029 to a driver with the initials "EBB" who is a citizen of San Marino. At the time the transaction occurred, EBB's EAD credential showed an expiration date of March 10, 2029. The DMV provided FMCSA with a copy of a query report from SAVE, initiated on December 26, 2024, that showed an EAD expiration date of March 13, 2029. While there is a three-day discrepancy in the EAD expiration date shown on the face of the credential and in SAVE, the DMV issued a non-domiciled CDL with an expiration date of July 22, 2029, which exceeds both EAD expiration dates by more than *four months*.

15. On June 3, 2025, the DMV issued a non-domiciled CDL with an expiration date of June 6, 2030 to a driver with the initials "JNG" who is a citizen of Mexico present in the United States under the DACA program. At the time the transaction occurred, JNG's EAD credential showed an expiration date of March 4, 2024. During the 2025 APR, a SAVE query, conducted on September 2, 2025, showed that JNG's EAD expires on January 30, 2026. However, the DMV issued a non-domiciled CDL with an expiration date of June 6, 2030, approximately *four months* after the EAD expires.

16. On June 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of September 9, 2029 to a driver with the initials "GS" who is a citizen of India. At the time

[20] The DMV provided FMCSA a copy of the back of YS's EAD card. However, YS's name and the EAD expiration date are also printed on the back of the card.

the transaction occurred, GS's EAD credential showed an expiration date of April 28, 2029. During the 2025 APR, a SAVE query, conducted on August 25, 2025, confirmed that GS's EAD expires on April 28, 2029. However, the DMV issued a non-domiciled CDL with an expiration date of September 9, 2029, more than *four months* after the EAD expires.

17. On June 23, 2025, the DMV issued a non-domiciled CDL with an expiration date of February 25, 2030 to a driver with the initials "NV" who is a citizen of India. At the time the transaction occurred, NV's EAD credential showed an expiration date of November 25, 2029, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. Further, the DMV's record showed clearly that NV's lawful presence document expired on November 25, 2029. However, the DMV issued a non-domiciled CDL with an expiration date of February 25, 2030, *three months* after the EAD expires.

18. On June 4, 2025, the DMV issued a non-domiciled CDL with an expiration date of March 22, 2030 to a driver with the initials "CC" who is a citizen of Somalia. At the time the transaction occurred, CC's EAD credential showed an expiration date of January 19, 2030. During the 2025 APR, the DMV queried SAVE and provided FMCSA with a copy of the report showing that CC's EAD expires on January 19, 2030. However, the DMV issued a non-domiciled CDL with an expiration date of March 22, 2030, more than *two months* after the EAD expires.

19. On June 24, 2025, the DMV issued a non-domiciled CDL with an expiration date of February 2, 2030 to a driver with the initials "QC" who is a citizen of China. At the time the transaction occurred, QC's EAD credential showed an expiration date of December 12, 2029, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. Further, the DMV's record showed that QC's lawful presence document expired on December 12, 2029. However, the DMV issued a non-domiciled CDL with an expiration date of February 2, 2030, nearly *two months* after the EAD expires. Further, the DMV issued the non-domiciled CDL with a passenger endorsement well beyond the driver's lawful presence.

20. On June 27, 2025, the DMV issued a non-domiciled CDL with an expiration date of March 14, 2030 to a driver with the initials "BS" who is a citizen of India. At the time the transaction occurred, BS's EAD credential showed an expiration date of September 20, 2021. A SAVE query run by the DMV on March 6, 2025 showed that BS's EAD expires on January 10, 2030. However, the DMV issued a non-domiciled CDL with an expiration date of March 14, 2030, more than *two months* after the EAD expires.

21. On June 10, 2025, the DMV issued a non-domiciled CDL with an expiration date of February 10, 2030 to a driver with the initials "DD" who is a citizen of Russia. At the time the transaction occurred, DD's EAD credential showed an expiration date of February 3, 2030, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. However, the DMV issued a non-domiciled CDL with an expiration date of February 10, 2030. While the period of validity of the non-domiciled CDL was only

seven days longer than the driver's lawful presence document, the DMV's record showed that DD's lawful presence document expired on February 3, 2030.

22. On June 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of July 11, 2030 to a driver with the initials "JS" who is a citizen of India. At the time the transaction occurred, JS's EAD credential showed an expiration date of June 10, 2022. However, the DMV issued a non-domiciled CDL with an expiration date of July 11, 2030. The DMV was unable to provide FMCSA with any documentation to support the July 11, 2030 expiration date.

23. On June 30, 2025, the DMV issued a non-domiciled CDL with an expiration date of January 10, 2027 to a driver with the initials "CPS" who is a citizen of Nicaragua. At the time the transaction occurred, CPS's EAD credential showed an expiration date of July 10, 2025, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. The DMV queried SAVE during the 2025 APR on August 15, 2025, and the query report shows that CPS's EAD was extended to January 1, 2027. However, the DMV provided no evidence that, at the time it issued the non-domiciled CDL with an expiration date of January 10, 2027, it had confirmation that CPS's EAD was extended to January 1, 2027. Even more troubling, the DMV issued CPS a non-domiciled CDL that includes passenger and school bus endorsements beyond the driver's lawful presence.

24. On June 23, 2025, the DMV issued a non-domiciled CDL with an expiration date of September 1, 2028 to a driver with the initials "CY" who is a citizen of China. At the time the transaction occurred, CY's I-94 showed an entry date of July 23, 2022 and an "admit until date" of January 22, 2023. CY also provided a Chinese passport with a June 2029 expiration date and a B-1 Visa with an expiration date of July 7, 2032. The DMV queried SAVE on June 23, 2025, and the query report indicated that CY had an EAD that expired on July 9, 2025 and that CY had a pending application for asylum. However, the DMV issued a non-domiciled CDL with an expiration date of September 1, 2028, more than three years beyond the expiration date of CY's EAD indicated on the SAVE query report. While CY presented an unexpired foreign passport and a Form I-94, the DMV was required to ensure the period of CDL validity did not exceed CY's EAD expiration when it issued the CDL.

25. On June 18, 2025, the DMV renewed and issued a non-domiciled CDL with an expiration date of September 9, 2026 to a driver with the initials "AOA" who is a citizen of El Salvador. AOA's EAD showed a March 9, 2025 expiration date. The DMV queried SAVE, and the query report showed that AOA's EAD expires on September 9, 2026. While the DMV's June 18, 2025 renewal of AOA's non-domiciled CDL did not reveal noncompliance with respect to that transaction, FMCSA's review of records presented by the DMV call into question the preceding renewal of AOA's non-domiciled CDL, which occurred on December 21, 2020. During that transaction, AOA presented an EAD with an

expiration date no later than March 9, 2025;[21] however, on December 21, 2020, the DMV issued a non-domiciled CDL with an expiration date of June 16, 2025, more than *three months* after the EAD in effect at the time expired.

**b. Finding: 49 CFR 384.212—The California DMV issued non-domiciled CLPs or CDLs to citizens of Mexico.**

During the 2025 APR, FMCSA discovered that 11 of the 145 driver records sampled showed that the DMV issued a non-domiciled CLP or CDL to a driver who, as a citizen of Mexico who is not present in the United States under the DACA program, was ineligible to receive a non-domiciled CDL. As noted in section III(a) above, 4 of the 11 transactions also showed that the DMV issued a non-domiciled CLP or CDL for a period of validity that exceeded the driver's lawful presence document. The transactions at issue are set forth below.

1. On June 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of May 18, 2027 to a driver with the initials "EDP" who is a citizen of Mexico. At the time the transaction occurred, EDP's EAD credential showed an expiration date of June 4, 2025. However, the DMV issued a non-domiciled CDL with an expiration date of May 18, 2027, almost *two years* after the EAD expires. The DMV did not provide FMCSA with any documentation supporting the May 18, 2027 expiration date or showing that EDP is present in the United States under DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

2. On June 30, 2025, the DMV issued a non-domiciled CDL with an expiration date of August 28, 2030 to a driver with the initials "DAH" who is a citizen of Mexico. At the time the transaction occurred, DAH's EAD credential showed an expiration date of December 3, 2028 and showed that the driver was from Mexico, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. However, the DMV issued a non-domiciled CDL with an expiration date of August 28, 2030, more than *eighteen months* after the EAD's expiration date. In addition, the DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

3. One June 13, 2025, the DMV issued a non-domiciled CDL with an expiration date of June 24, 2029 to a driver with the initials "ACC" who is a citizen of Mexico. At the time the transaction occurred, ACC's EAD credential, as well as a SAVE query report the DMV obtained prior to issuing the non-domiciled CDL, showed the driver was from Mexico. Further, ACC's EAD and a SAVE query report provided by the DMV dated December 2023 shows an expiration date of October 26, 2028. While a SAVE query report generated on August 20, 2025 as part of the 2025 APR shows that ACC currently has indefinite lawful presence with pending permanent residency, the DMV has not provided any evidence that ACC's indefinite lawful presence was known at the time the

[21] The DMV provided FMCSA with a copy of AOA's EAD showing that it was issued on September 9, 2023 and expired on March 9, 2025. Because the DMV renewed AOA's non-domiciled CDL on December 21, 2020, it is likely that AOA's EAD in effect in 2020 had an expiration date earlier than March 9, 2025.

DMV issued a non-domiciled CDL with an expiration date of June 24, 2029, approximately *eight months* after the expiration date shown on the EAD and the December 2023 SAVE query report. In addition, the DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

4. On June 10, 2025, the DMV issued a non-domiciled CDL with an expiration date of July 4, 2030 to a driver with the initials "GOC" who is a citizen of Mexico. At the time the transaction occurred, GOC's EAD credential showed the driver was from Mexico. In addition, GOC's EAD showed an expiration date of October 20, 2028, which the DMV also confirmed in SAVE prior to issuing the non-domiciled CDL. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico. However, the DMV issued a non-domiciled CDL with an expiration date of July 4, 2030, approximately *four months* after the EAD expires to a driver who was not eligible for a non-domiciled CDL.

5. On June 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of August 1, 2029 to a driver with the initials "JAB" who is a citizen of Mexico. At the time the transaction occurred, JAB's EAD credential showed the driver was from Mexico. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.[22]

6. On June 12, 2025, the DMV issued a non-domiciled CDL with an expiration date of August 2, 2029 to a driver with the initials "DBD" who is a citizen of Mexico. At the time the transaction occurred, DBD's EAD credential as well as the SAVE query result, which the DMV obtained before issuing the non-domiciled CDL, showed the driver was from Mexico. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

7. On June 6, 2025, the DMV issued a non-domiciled CDL with an expiration date of August 18, 2028 to a driver with the initials "CCS" who is a citizen of Mexico. At the time the transaction occurred, CCS's EAD credential showed the driver was from Mexico. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

8. On June 4, 2025, the DMV issued a non-domiciled CDL with an expiration date of June 11, 2027 to a driver with the initials "RGS" who is a citizen of Mexico. At the time the transaction occurred, RGS's EAD credential showed the driver was from Mexico. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

[22] There is a slight inconsistency in the spelling of JAB's last name between the driver's EAD and the SAVE query report. However, the driver's date of birth and EAD card number are consistent on both documents. With no evidence to the contrary, FMCSA concluded that both documents pertain to the same driver.

9. On June 30, 2025, the DMV issued a non-domiciled CDL with an expiration date of December 9, 2025 to a driver with the initials "AMZ" who is a citizen of Mexico. At the time the transaction occurred, AMZ's passport and visa showed the driver was from Mexico. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico. Further, the DMV issued AMZ a non-domiciled CDL that includes a passenger endorsement when the driver was not eligible for a non-domiciled CDL.

10. One June 23, 2025, the DMV issued a non-domiciled CDL with an expiration date of October 11, 2025 to a driver with the initials "IMR" who is a citizen of Mexico. At the time the transaction occurred, IMR's EAD credential, as well as a SAVE query report the DMV obtained prior to issuing the non-domiciled CDL, showed the driver was from Mexico. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

11. One June 17, 2025, the DMV issued a non-domiciled CDL with an expiration date of July 23, 2028 to a driver with the initials "RMN" who is a citizen of Mexico. At the time the transaction occurred, RMN's EAD credential, as well as a SAVE query report the DMV obtained prior to issuing the non-domiciled CDL, showed the driver was from Mexico. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

12. One June 10, 2025, the DMV issued a non-domiciled CDL with an expiration date of November 12, 2028 to a driver with the initials "JRR" who is a citizen of Mexico. At the time the transaction occurred, JRR's EAD credential and a SAVE query report initiated by the DMV showed the driver was from Mexico. The DMV provided no evidence of DACA status, without which the driver would have been ineligible for a non-domiciled CDL as a citizen of Mexico.

**c. Finding: 49 CFR 384.212—Other anomalies regarding lawful presence.**

In addition to the findings cited in Section III(a), FMCSA noted anther transaction with significant anomalies surrounding lawful presence documentation. This transaction is set forth below.

1. On June 2, 2025, the DMV issued a non-domiciled CDL with an expiration date of June 1, 2030 to a driver with the initials "ASV" who is a citizen of Honduras. ASV's EAD presented at the time of the transaction displayed an expiration date of May 14, 2021. The DMV was unable to present any evidence that it validated ASV's lawful presence before issuing a non-domiciled CDL. During the 2025 APR, a query of SAVE, conducted on August 19, 2025, showed that ASV now has indefinite lawful presence. However, despite the DMV having a record of an expired EAD, there is no indication the DMV ever queried SAVE or otherwise validated ASV's lawful presence before issuing a non-domiciled CDL.

**d. Updated Finding (2024): 49 CFR 384.225—Issuance of "temporary" or "interim" non-domiciled CDLs.**

Through the review of the DMV's training manuals and discussions with DMV personnel during the 2025 APR, FMCSA learned that the DMV continues to issue "temporary" non-domiciled CLPs and CDLs to drivers. This problem is two-fold. First, the DMV issues the temporary CLPs or CDLs before validating of the driver's lawful presence. This continuing practice greatly increases the risk that the DMV will unknowingly issue a non-domiciled CLP or CDL to a driver who is not lawfully present in the United States in violation of 49 CFR 384.212.

Second, the DMV is not reporting issuance of these credentials to CDLIS in violation of 49 CFR 384.225. As noted above, this repeated error is particularly problematic because when enforcement personnel or other State driver's licensing agencies perform a CDLIS check of a driver issued a temporary CDL, CDLIS will not reflect whether the driver holds (or held) a temporary CDL. This practice leaves enforcement personnel and State driver's licensing agencies with incomplete information about a driver's CDL status and history, thus confusing and frustrating roadside enforcement efforts.

FMCSA cited this violation during the 2024 APR and has no evidence or indication that the DMV has ceased this practice. Accordingly, FMCSA is updating the 2024 finding to reiterate that the DMV has not resolved the violation.

## IV. Required Corrective Action

As noted above, approximately 62,000 drivers hold an unexpired CLP or CDL issued by the California DMV. In light of the systemic errors and deficiencies in the DMV's issuance of non-domiciled CLPs and CDLs uncovered by the 2025 APR, FMCSA determines that California must take the following actions:

- Immediately pause issuing non-domiciled CLPs and CDLs;
- As soon as practicable, identify all unexpired non-domiciled CDLs that were not issued in compliance with parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in widespread noncompliance in issuing non-domiciled CLPs and CDLs;
- Notify FMCSA of the audit findings and the number of unexpired noncompliant non-domiciled CDLs;
- Take immediate action to correct the deficiencies identified in the DMV's internal audit and in this letter;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with parts 383 and 384 in effect at the time of the reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel),

and enforcement practices meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311.

## V. Responding to this Preliminary Determination

The procedural regulations applicable to this action are found at 49 CFR 384.307. Within 30 calendar days, the State must respond to this preliminary determination. The State's response must explain what corrective action it either has implemented or intends to implement to correct the deficiencies cited. The required corrective actions are set forth in section IV of this preliminary determination. The State must provide documentation of corrective action as required by FMCSA. In addition, the corrective actions may be implemented on a schedule mutually agreed upon by FMCSA and the State. Upon request by the State, an informal conference will be provided during this time.

Alternatively, the State's response may explain why FMCSA's preliminary determination is incorrect and may include any additional documentation the State wishes FMCSA to consider.

After reviewing a timely response to the preliminary determination by the State, FMCSA will notify the State of the final determination. In making its final determination, FMCSA will take into consideration the corrective action either implemented or planned to be implemented in accordance with the mutually agreed upon schedule.

## VI. Potential Penalties for a Final Determination of Substantial Noncompliance

If FMCSA issues a final determination of substantial noncompliance, the Agency may withhold up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to California under 23 U.S.C. § 104(b)(1) and (2).[23] Accordingly, upon a final determination of substantial noncompliance, California risks losing up to approximately $158,000,000 for FY 2027.[24] Further, if the substantial noncompliance persists beyond the first fiscal year, FMCSA may withhold up to eight percent of these funds; therefore, California risks losing up to approximately $316,000,000 in the second and subsequent FY(s) of noncompliance.[25] Once funds are withheld following a substantial noncompliance determination, they are no longer available for apportionment to California.[26]

In addition, if FMCSA issues a final determination of substantial noncompliance, the Agency may decertify California's CDL Program. Decertification of California's CDL program would prohibit the State from issuing, renewing, transferring, or upgrading CLPs and CDLs until such time as FMCSA determines that the DMV is in substantial compliance with 49 U.S.C. § 31311 and 49 CFR part 384, subpart B.[27]

---

[23] 49 U.S.C. § 31314(c)(1); 49 CFR 384.401(a).
[24] FMCSA estimates this amount based on FY 2026 funding levels.
[25] 49 U.S.C. § 31314(c)(2); 49 CFR 384.401(b).
[26] 49 U.S.C. § 31314(d); 49 CFR 384.403.
[27] 49 U.S.C. § 31312(a); 49 CFR 384.405(a).

## VII. Conclusion

The 2025 APR uncovered that more than one in four of the non-domiciled CLP and CDL issuances FMCSA sampled failed to comply with parts 383 and 384 because the DMV issued non-domiciled CDLs to drivers who were not eligible, issued non-domiciled CDLs that extend beyond a driver's lawful presence, and issued non-domiciled CDLs without first validating the drivers' lawful presence. This is an unacceptable deviation from FMCSA's regulations when issuing credentials to operate commercial motor vehicles. The DMV must take immediate corrective action to audit its non-domiciled CDL program, correct the deficiencies that FMCSA identified above, and any deficiencies identified through the State's internal audit, and void or rescind and reissue all non-domiciled CLPs and CDLs that failed to comply with Federal regulations at the time of issuance, renewal, transfer, or upgrade.

The State of California is an important partner in FMCSA's mission to reduce crashes, injuries and fatalities involving large trucks and buses, and the Agency makes this preliminary determination to help California come into substantial compliance. I note with appreciation the highly cooperative and professional approach that DMV staff took during this review, and especially appreciate the hospitable arrangements for two onsite meetings spanning multiple days each and on short notice. To continue in that spirit of partnership towards our common safety goals, my staff stands ready to assist the DMV in resolving these serious issues.

Please note that this letter addresses noncompliance with the DMV's issuance of non-domiciled CDLs only. FMCSA will separately address areas of noncompliance unrelated to non-domiciled CDLs. If you or your staff need additional information or assistance, please contact Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Jesse Elison
Chief Counsel

**OFFICE OF THE DIRECTOR**
**DEPARTMENT OF MOTOR VEHICLES**
P.O. BOX 932328
SACRAMENTO, CA 94232-3280

October 26, 2025

*Via Email jesse.elison@dot.gov and First-Class Mail*

Jesse Elison, Chief Counsel
U.S. Department of Transportation
Federal Motor Carrier Safety Administration
1200 New Jersey Avenue SE
Washington, DC 20590

RE: Response to September 26, 2025, Letter Regarding Commercial Learning Permit and Commercial Driver's License Issuance

Dear Mr. Elison:

This correspondence responds to your September 26, 2025, letter (Sept. 26 Letter) notifying the State of California of the Federal Motor Carrier Safety Administration's (FMCSA) preliminary determination that the State is not in substantial compliance with the standards for issuing non-domiciled commercial learning permits and commercial driver's licenses. As discussed in detail below, the State of California seeks to ensure that commercial driver's licenses and learning permits are issued according to state and federal requirements, and continuously reviews and refines its procedural systems accordingly. In fact, as FMCSA is aware, the California Department of Motor Vehicles (DMV) has been undergoing an extensive project to modernize its computer systems over the last few years, and the commercial drivers licensing system will be updated as part of this modernization project.

In response to your letter, DMV initiated an audit that has revealed certain technical limitations in its systems, and it is duly working toward correcting those issues. However, DMV's audit also revealed that, despite these technical limitations, its commercial driver's license issuance policies and practices were substantially compliant with applicable federal requirements. Notably, in finding non-compliance, the September 26 Letter appears to rely on prohibitions that did not take effect until after the DMV actions at issue and, indeed, after the

date of the letter itself. Moreover, FMCSA faults DMV and finds non-compliance for practices that were explicitly approved by the Department of Homeland Security. Accordingly, it is not appropriate for FMCSA to withhold federal highway funding or take any other adverse action at this time.

California's guiding principle in issuing driving licenses is safety, for both CDL holders and the traveling public. DMV is proud of the safety record established in California. In 2023, the last year for which full data is available, California commercial driver's license holders were involved in fatal crashes at a rate *39.4% lower than the national average*. Building on this record of safety, California will continue to work to improve our systems and processes.

**1. Federal Highway Trust Fund Apportionment**

Funds are made available to States "to assist the State in complying with the requirements of section 31311 [commercial motor vehicle licensing requirements]; and . . . to improve the State's implementation of its commercial driver's license program." 49 U.S.C. § 31313(a)(2). To avoid withholding from this apportionment, States must be in substantial compliance with the licensing requirements outlined in section 31311. *Id.* §§ 31311-12. That statute permits commercial driver's licenses to be issued to individuals not domiciled in the issuing State pursuant to regulations prescribed by the Secretary of Transportation. 49 U.S.C. § 31311(a)(12)(B). Upon notice of a preliminary determination of non-compliance with such regulations, a State has thirty days to respond, and any corrective action taken in response to the notice must "be implemented on a schedule mutually agreed upon by the agency and the State." 49 C.F.R. § 384.307(c). If, after considering the corrective action "implemented or planned to be implemented in accordance with the mutually agreed upon schedule," FMCSA still determines that a State is not in substantial compliance, funding may be withheld on the first day of the following fiscal year according to a schedule set by statute. 49 C.F.R. § 384.307(c)-(d); *see also* 49 U.S.C. § 31314; 49 C.F.R. § 384.401(a).

**2. Regulations Governing Issuance of Commercial Driver's Licenses**

States are permitted to issue non-domiciled commercial driver's licenses (CDLs) and commercial learner's permits (CLPs) under Code of Federal Regulations title 49 sections 383.23(b), 383.71(f) and 383.73(f). 49 C.F.R. §

384.212.[1] As relevant here, the regulations provide that a person may obtain a non-domiciled CDL or CLP if they are not domiciled in a foreign jurisdiction that the Administrator has determined tests drivers and issues CDLs in accordance with, or under standards similar to, the U.S. federal standards. 49 C.F.R. §§ 383.23(b)(1); 383.71(f)(1)(i). Non-domiciled applicants were required to satisfy the requirements for issuance of a resident CDL, but instead of providing proof of citizenship or legal residence, they were required to provide an unexpired employment authorization document (EAD), or an unexpired foreign passport accompanied by an approved I-94 form. 49 C.F.R. § 383.71(f)(2)(i). Applicants do not need to show proof of domicile under the federal rules. 49 C.F.R. § 383.71(f)(2)(i).

a. Limitations on Validity Periods for CDLs and CLPs

Prior to adoption of an Interim Final Rule (IFR) on September 29, 2025, federal law required that the CDLs and CLPs include "the dates between which the license or learner's permit is valid." 49 U.S.C. § 31308(4)(E); *see also* 49 C.F.R. §§ 383.153(a)(7), (b)(2)(vi) (requiring that all CDLs and CLPs contain "[t]he date of issuance and the date of expiration of the [license or permit]"). Under the applicable provisions, CLPs had to expire within one year of issuance (49 C.F.R. §§ 383.25(c); 383.73(a)(3)), and CDLs had to expire within eight years of issuance (49 C.F.R. § 383.73(b)(9)).[2] Apart from these rules, there were no other provisions in subparts 383 or 384 of Title 49 of the Code of Federal Regulations mandating the means of calculating expiration dates for CDLs or CLPs. *Cf.* 6 C.F.R. § 37.21(b)(1) (prohibiting REAL ID licenses from issuing "[f]or a time period longer than the expiration of the applicant's authorized stay in the United States, or, if there is no expiration date, for a period longer than one year[.]").

[1] Unless otherwise stated, all citations to the Code of Federal Regulations refer to the regulations in effect as of September 26, 2025, the date of FMCSA's letter. This analysis does not incorporate the provisions of the Interim Final Rule (IFR) published in the Federal Register on September 29, 2025, and effective that date, because those provisions post-date the transactions at issue in FMCSA's letter, and the IFR is not retroactive.

[2] Section 383.73(f)(2) provides that the procedures for issuing a non-domiciled CLP or CDL are "identical" to those for issuing a resident CDL and CLP, apart from three exceptions, none of which address expiry period. 49 CFR § 383.73(f)(2). Thus, the provisions cited here—sections 383.25(c), 383.73(a)(3), and 383.73(b)(9)—govern the validity period for both resident and non-domiciled CDLs and CLPs.

FMCSA's contrary claim that DMV was required "to ensure that the non-domiciled CLP or CDL period of validity *does not exceed* the expiration of the lawful presence documents" is thus unsupported. Sept. 26 Letter at 3 (emphasis in original). That FMCSA issued an IFR, to *add* this requirement to the federal regulations confirms that it was not previously in existence. *See, e.g.*, *United States v. Greene*, No. 1:23-cr-52 (RDA), 2025 WL 310128, at *5 (E.D. Va. Jan. 27, 2025) ("[T]hat the regulation has now been amended to include more specific language suggests to the Court that the Agency recognized that the plain language of the prior regulation . . . did *not* include [the new addition].") (emphasis in original) (citing cases); *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 973 (W.D. Wis. 2007) ("Moreover, recent proposals to amend the regulations . . . to require [a new rule] make it apparent that present regulations do not require it.") (citations omitted), *aff'd*, 556 F.3d 575 (7th Cir. 2009).

b. Issuance of CDLs and CLPs to Commercial Motor Vehicle Operators Holding Mexican or Canadian Citizenship

"Non-domiciled CLP or Non-domiciled CDL means a CLP or CDL, respectively, issued by a State or other jurisdiction . . . [t]o an individual domiciled in a foreign country meeting the requirements of § 383.23(b)(1)." 49 C.F.R. § 383.5. In turn, section 383.23(b)(1) provides: "If a CMV operator is not domiciled in a foreign jurisdiction that the Administrator has determined tests drivers and issues CDLs in accordance with, or under standards similar to, the [U.S.] standards," they were entitled to obtain a non-domiciled CLP or CDL. 49 C.F.R. § 383.23(b)(1). The footnote to section 383.23(b)(1) clarifies that, to date, the United States has entered reciprocity agreements with respect to CDLs with only Mexico and Canada. 49 C.F.R. § 383.23(b)(1) n.1. Thus, "under the single license provision of § 383.21, a driver holding a commercial driver's license issued under the Canadian National Safety Code or a new Licencia Federal de Conductor issued by Mexico is prohibited from obtaining a non-domiciled CDL, or any other type of driver's license, from a State or other jurisdiction in the United States." *Id.* However, the regulations do not contain a categorical bar on citizens of Mexico and Canada obtaining a CDL in the United States.

First, the regulations contain no language that could be read as a categorical bar on obtaining a CDL by *citizens* of specific nationalities. *See* 49 C.F.R. § 383.23(b)(1) (permitting non-domiciled CDLs and CLPs to issue where "a CMV operator is not *domiciled* in a foreign jurisdiction" that issues licenses consistent with U.S. standards) (emphasis added); 49 C.F.R. § 383.71(f)(1)(i) (same). The regulations define "domicile" as "that State where a person has

his/her true, fixed, and permanent home and principal residence and to which he/she has the intention of returning whenever he/she is absent." 49 C.F.R. § 383.5. Thus, section 383.23(b)(1) restricted only the issuance of a non-domiciled CDL or CLP to individuals who maintain their "principal residence" in, and who intend always to return to, a jurisdiction that issues compatible CDLs—not to "citizens" of specific countries.

That the requirement turns on domicile, rather than citizenship, is consistent with the regulation requiring that State licensing entities issue licenses only to individuals domiciled in their State. *See* 49 C.F.R. § 383.21(a)(2) (providing that no person shall operate a CMV unless they possess a CDL "issued by his/her State or jurisdiction of domicile."). This requirement, as well as its companion limitation on issuing licenses to individuals domiciled in jurisdictions that issue CDLs consistent with U.S. standards, are both rooted in the single license rule. *See* 49 C.F.R. § 383.21 ("No person who operates a commercial motor vehicle shall at any time have more than one driver's license."); *see also* 49 C.F.R. § 383.23(b)(2), n.1; 49 C.F.R., Subchapter B, Part 383, Subpart B (entitled "Single License Requirement," and containing sections 383.21-383.25). Read together, the regulations require that when a person is domiciled (that is, has a permanent home and place of residence) in a place where they may obtain a compatible CDL, they must obtain a CDL in their place of domicile and may not obtain a second CDL elsewhere, to prevent the issuance of multiple CDLs in violation of the single license rule.

Second, FMCSA's own interpretation of the regulations supports this position. When FMCSA issued its notice that the United States had entered into a reciprocity agreement with Canada to recognize as valid commercial driver's licenses issued by a Canadian jurisdiction, FMCSA stated: "[A] Canadian driver *holding a commercial driver's license* issued under the Canadian National Safety Code will be prohibited from obtaining any driver's license from a State or other licensing jurisdiction from the United States." Federal Register V. 54, No. 98 (emphasis added); *see also* Commercial Drivers License Reciprocity With Canada, Notice and Technical Amendment to Part 383, May 16, 1989, https://www.fmcsa.dot.gov/international-programs/commercial-drivers-license-reciprocity-canada-notice-and-technical-amendment.[3] In 2022, FMCSA once

[3] Indeed, FMCSA promulgated the footnote in 49 C.F.R. § 383.23(b)(1) as a "technical" update without notice and comment, because it believed the footnote was "primarily technical in nature and [was] needed solely to update the regulations to include an enabling agreement between the government of Canada and the United States." Commercial Driver Testing and Licensing Standards; Canadian Provinces and Territories, 54 FR 22285-01. FMCSA therefore

again clarified that as a result of the U.S.-Canada reciprocity agreement, "the commercial driver's licenses possessed by a United States-domiciled or a Canada-domiciled commercial driver shall be mutually recognized . . . [a]dditionally, *those drivers* [*i.e.*, those possessing a commercial driver's license] are prohibited from obtaining a commercial driver's license in each other's country." Reciprocity and Recognition of United States and Canadian Commercial Drivers Licenses, FMCSA (Feb. 9, 2022), https://www.fmcsa.dot.gov/international-programs/reciprocity-and-recognition-united-states-and-canadian-commercial-drivers (emphasis added). In other words, FMCSA has repeatedly taken the position that there is no categorical bar to Canadian drivers obtaining CDLs issued by a jurisdiction within the United States.

Consistent with this understanding, when FMCSA issued guidance on May 8, 2023, responding to inquiries about whether DACA recipients could obtain a CDL despite being citizens of Mexico, FMCSA clarified that they may do so, using the non-domiciled CDL or CLP process outlined in 49 C.F.R. § 383.73(f), provided that they do not have, and have never had, a Licencia Federal de Conductor from Mexico. FMCSA-CDL-383.23-FAQ001(2023-05-08). Indeed, when FMCSA rescinded this guidance in connection with the September 29, 2025 IFR, it explained that DACA recipients could no longer obtain a CDL "[b]ecause DACA recipients would no longer be eligible to obtain a CLP or CDL under the new requirements for evidence of lawful immigration status," *not* because FMCSA was rescinding an existing exception to a categorical bar on Mexican citizens obtaining a CDL. *See* FMCSA Presentation to AAMVA (Oct. 2, 2025), at slide 21.

For individuals, like DACA recipients, who are no longer domiciled in Canada or Mexico, but who are citizens of those countries, the (former) guidance to make use of the non-domiciled CLP or CDL process made sense. An applicant can obtain a resident CLP or CDL only if they present evidence of (1) U.S. citizenship, or (2) U.S. permanent residence. 49 C.F.R. § 383.71(a)(5), (b)(9). Thus, DACA recipients, and others with pending U.S. residency or citizenship, could not obtain a resident CLP or CDL under the regulations. FMCSA reasonably determined that those individuals could make use of the

---

understood this footnote, including the provision that only Canadian and Mexican *license holders* are prohibited from obtaining a second license, as making no material changes to the existing regulations.

non-domiciled procedure to obtain a license or permit while they awaited permanent residence or citizenship.

California law is consistent in this regard with the federal regulations existing prior to the September 29, 2025 IFR. An individual could not obtain a CDL or CLP in California "unless the person presents to the department proof of his or her legal presence in the U.S., and proof of California residence." Cal. Code Regs. tit. 13, § 26.01. U.S. citizens and lawful permanent residents were required to present documentation consistent with 49 C.F.R. §§ 383.71(a)(5) and (b)(9). *See id*. subs. (a). If an applicant could not show proof of U.S. citizenship or lawful permanent residence, they could present an EAD or an unexpired foreign passport with an approved I-94 (per 49 C.F.R. § 383.71(f)(2)(i)) *and* proof of California residency. *See* Cal. Code Regs. tit. 13, § 26.01(b)-(c). Thus, under California law, CDLs and CLPs could issue to citizens of Mexico and Canada only if they are California residents, and thus not *domiciled* in a foreign jurisdiction that issues compatible CDLs.

Accordingly, prior to September 29, 2025, federal law permitted Mexican and Canadian citizens, regardless of DACA status, to obtain a CDL so long as they were not domiciled in Mexico or Canada, they did not have a CDL from a jurisdiction in those countries, and they satisfied the other provisions of sections 383.71(f) and 383.73(f) in effect at the time.

c. Requirements to Share Records with Federal Systems

Before issuing a CLP or a CDL, a State must query the Commercial Driver's License Information System (CDLIS) (49 C.F.R. § 384.205), which maintains drivers' records including information that may be disqualifying, such as violations of state or local law. 49 C.F.R. § 384.225. A state must not issue a CDL or CLP if a CDLIS check reveals disqualifying information. 49 C.F.R. § 384.205. To keep the CDLIS system up-to-date, states must notify the CDLIS operator within 10 days of any CDL or CLP issuance, change in driver identification information, or transfer of CDL or CLP to another jurisdiction. 49 C.F.R. § 384.207(a)-(c); 49 C.F.R. § 383.73(h). Further, federal law requires a State to "operate a commercial driver's license information system that is compatible with the [federal] modernized commercial driver's license information system." 49 U.S.C. § 31311(21).

### 3. FMCSA's Preliminary Determination of Non-Compliance

FMCSA claims that records obtained from DMV show that about 26 percent of CDLs and CLPs issued to non-domiciled drivers failed to comply with federal requirements. In response to your letter, DMV immediately initiated a comprehensive audit of all non-domiciled CDLs and CLPs—including a review of approximately 65,000 records. This internal audit revealed certain limitations in DMV's internal systems, as described further below, which DMV is currently working to remedy. But DMV's audit did not corroborate a substantial failure to comply with relevant federal regulations, and any limitations in DMV's systems do not justify a withdrawal of federal highway funding. Indeed, now that DMV has identified these limitations in due response to FMCSA's September 26 Letter, the governing regulations mandate that the State and FMCSA mutually agree upon a schedule to implement corrective action, which must be considered before any funding is withheld. 49 C.F.R. § 384.307(c)-(d). Therefore, at this time, FMCSA does not have a valid basis for determining that DMV's planned corrective actions are insufficient so as to withhold funding.

a. Expiration Dates for CDLs and CLPs

FMCSA alleges that 29 of the 145 records that it reviewed reflected CDL expiration dates exceeding the "expiration of driver's lawful presence documents." Sept. 26 Letter, at 4. There are at least two flaws with FMCSA's analysis. First, it ignores that until September 29, 2025, federal law did not prohibit CDL expiration dates extending beyond an initial term of lawful presence. FMCSA's concerns about the expiration dates for those records therefore stemmed from the content of applicable federal law, not DMV's *compliance* with federal law. Second, FMCSA does not acknowledge that the DMV practices with respect to CDL expiration dates—that FMCSA now asserts were non-compliant with then-existing law—were explicitly approved by Department of Homeland Security.

i. Federal Law Did Not Prohibit CDL Expiration Dates Extending Beyond an Initial Term of Lawful Presence

The legal requirement that CDLs must expire no later than the period of lawful presence was promulgated by FMCSA through the September 29, 2025 IFR, which post-dated all of the transactions reviewed in FMCSA's summer 2025 audit, and which post-dated even FMCSA's September 26, 2025 Notice of Determination of Noncompliance. 90 Fed. Reg. 46,509 (Sept. 29, 2025). Until

September 29, 2025, federal regulations required only that CLPs must expire within one year of issuance, and that CDLs must expire within eight years of issuance. *See* 49 C.F.R. §§ 383.25(c); 383.73(a)(3); 383.73(b)(9). In adopting that rule, FMCSA expressly rejected comments that raised concerns that the eight-year period would "increase the potential for unsafe drivers to evade detection and magnify the possibility of fraud[.]" 76 Fed. Reg. 26,854, 26,861 (May 9, 2011). Indeed, FMCSA acknowledged that the corrective action for any such concern is *State* regulation. *Id.* ("States are free to set shorter validity periods."). This makes sense. The purpose of the federal regulations is to set *minimum* requirements. California, like other States, chose to impose more stringent expiration date requirements than federal law requires, as discussed herein.

Accordingly, DMV's issuance of non-domiciled CDLs and CLPs for no greater than eight years and one year, respectively, was consistent with operative federal regulations. As part of its internal audit, DMV did not identify any CLPs or CDLs that exceeded the terms imposed by the federal regulations, and indeed, under California law, a CDL may not be issued for a period greater than *five* years. Cal. Veh. Code § 12816.

Separate and apart from *federal* requirements, California has promulgated its own regulations that require that CDLs issued to individuals who are not U.S. citizens or permanent residents must expire no later than their term of legal presence. *See* Cal. Code Regs. tit. 13, § 26.02(c) ("A commercial driver's license or commercial learner's permit issued to a person submitting documents pursuant to 26.01(b) [*i.e.,* a valid EAD or passport with I-94 form] will be termed to expire on the same date as the expiration date on the valid DHS document. The person may not renew or upgrade without submitting a document pursuant to 26.01(a) or (b)."). DMV has confirmed that shortcomings of its technical systems and processes led to licenses being issued with validity dates extending beyond expiration of the applicant's then-current legal presence in the United States, and DMV is working to address that issue to come into compliance with *California law*. This was not, however, a violation of federal law, which imposed no comparable requirement before the IFR, and thus is not a basis for withholding highway funding.

### ii. The Department of Homeland Security Expressly Approved of DMV's Practices

As described above, California has promulgated its own regulation that went beyond federal requirements and required that CDLs issued to individuals who are not U.S. citizens or lawful residents must expire no later than their term of legal presence. Pursuant to this regulation, DMV's policy is to issue CDLs with an expiration date that is consistent with the legal presence document presented at the time of application, with the following federal law exceptions:

- If an applicant is from a county subject to special consideration under the Temporary Protected Status program, any CDL issued would be set to expire on the same date that Temporary Protected Status expires.
- If an applicant has received an I-797C form showing a pending EAD application, any CDL issued would be set to expire 18 months after the EAD expiration date, consistent with instructions from U.S. Citizenship and Immigration Services.[4]

California has worked closely with Department of Homeland Security (DHS) to establish internal systems to verify a person's legal presence using the Systematic Alien Verification for Entitlements (SAVE) system, administered by U.S. Citizenship and Immigration Services. Because SAVE often returns inconclusive results, DMV personnel consulted directly with SAVE representatives and Steven Kozar, Senior Policy Advisor at DHS, to determine the best practice for calculating expiration dates in that scenario. On January 8, 2020, Mr. Kozar approved in writing the following procedure, which DMV communicated to its field technicians:

---

[4] *See* U.S. Citizenship and Immigration Services, Automatic Employment Authorization Document (EAD) Extension, https://www.uscis.gov/eadautoextend (last visited Oct. 16, 2025) (outlining the conditions under which an EAD is "automatically extended for up to 540 days while your EAD renewal application is pending").

| ***If the Verified Response Received Specifies*** | ***Then*** |
|---|---|
| A clearly defined end date | Key the end date as the applicant's expiration date for their DL/ID card. |
| Conflicting end dates | Key the end date that extends the applicant's DL/ID card out the furthest. |
| Duration of Stay (D/S) | Key **1-year** date from the applicant's DL/ID card application date. (**EXAMPLE:** If the applicant completed their DL/ID card renewal application on October 1, 2019, issue their DL/ID card with a September 30, 2020, expiration date.) |
| No Date | Key **1-year** date from the applicant's DL/ID card application date. (**EXAMPLE:** If the applicant completed their DL/ID card renewal application on October 1, 2019, issue their DL/ID card with a September 30, 2020, expiration date.) |

FMCSA's methodology for determining that DMV improperly calculated expiration dates for non-domiciled CDLs—which is based solely on a comparison of the CDL expiration date and the EAD expiration date (*see* Sept. 26 Letter, at 5-11)—is thus flawed. DMV has closely evaluated the expiration dates in over 65,000 records.[5] Of these records, approximately 20,000 non-domiciled CDLs had expiration dates that exceeded their legal presence document, but the majority of these were issued appropriately based on the results from SAVE and the DHS-approved chart above. Concluding that California's implementation of a methodology expressly approved by DHS violates federal law is plainly inappropriate and provides no basis for withholding federal funding.

Nonetheless, DMV appreciates the opportunity to review its internal procedures in this area. During its internal audit, DMV identified certain technical limitations that affected the automated calculation of expiration dates. The audit is ongoing, but there are some licenses that appear to have

---

[5] These records consisted of approximately 61,000 non-domiciled CDLs and approximately 4,000 non-domiciled CLP permits.

been issued with expiration dates that are inconsistent with California's requirements under section 26.02 of title 13 of the California Code of Regulations. Accordingly, DMV is currently working to identify and correct any programming limitations that could result in a CDL expiration date that exceeds a person's lawful presence.[6] Yet, as noted above, any CDL issued with an expiration date that exceeds the person's legal presence would be inconsistent with California law, not a violation of federal law, and therefore not a basis for withholding federal funding. *See* 49 C.F.R. §§ 383.25(c); 383.73(a)(3); 383.73(b)(9).[7]

b. DMV Verifies Lawful Presence Before Issuing CDLs

FMCSA further alleges that, for three of the records it reviewed, DMV did not produce proof that it verified legal presence before issuing the CDL. Although the federal regulations did not specifically require a State agency to query the SAVE system until the effective date of the IFR on September 29, 2025 (*see* 48 C.F.R. § 383.73(m)(2)(ii) (as amended Sept. 29, 2025)), DMV always performs a SAVE check to confirm an applicant's legal presence before issuing an original non-domiciled CDL or CLP to satisfy its own regulations. In fact, the SAVE query is automated as part of the digital system that field technicians use to process an original application. Thus, *no original CDL or CLP can be issued in California without a SAVE check being performed*. However, as part of its internal review, DMV identified certain circumstances in which the documentation of its verification procedure is not properly filed with the CDL record. DMV also identified a limitation in its automated system that sometimes fails to prompt a technician to query SAVE during the CDL *renewal* process. Accordingly, DMV is instituting procedures to ensure that all records are filed and preserved correctly, and that the automated system is corrected. When non-domiciled CDL licensing resumes, DMV will be in compliance with the IFR's new preservation and validation requirements.

c. CDLs Issued to Citizens of Mexico and Canada

---

[6] In addition, DMV paused all non-domiciled CDL licensing following FMCSA's instruction in the IFR to cease issuance of CDLs and CLPs. When such licensing resumes, DMV will ensure that license expiration dates do not exceed the expiration of legal presence documents, in compliance with the IFR and state law.
[7] To be clear, however, DMV paused all non-domiciled CDL licensing following FMCSA's instruction in the IFR to cease issuance of CDLs and CLPs. When such licensing resumes, DMV will ensure that license expiration dates do not exceed the expiration of legal presence documents, in compliance with the IFR and state law.

FMCSA alleges that eleven of the records that it reviewed were CDLs issued to citizens of Mexico who are not DACA recipients. Sept. 26 Letter, at 9-11. DMV's audit revealed that it has issued licenses to approximately 3,970 non-DACA recipients who are citizens of Mexico. DMV also found that it had issued CDLs to Canadian citizens, but, notably, FMCSA did not inquire as to Canadian CDL holders. In any event, as discussed above, these license issuances were not categorically prohibited by the regulations in effect at the time these CDLs were issued. DMV is in the process of reviewing the 3,970 non-DACA recipients who are Mexican nationals to ensure that their CDLs were properly issued. If any of these non-DACA recipients fail to satisfy the requirements in effect at the time their licenses were issued, then DMV will take action accordingly.

d. In Its 2024 Audit, FMCSA Did Not Cite DMV For Issuing Temporary Licenses Pending Legal Presence Verification

California law permits the DMV to issue a temporary CDL when the applicant has satisfied all requirements, but when DHS is not able to timely verify the applicant's lawful presence. *See* Cal. Veh. Code § 12801.8. Those licenses are only valid for a maximum of 90 days, and the majority are only issued for 60 days. FMCSA alleges that, in its 2024 audit, it cited DMV for issuing temporary licenses pending verification of legal presence. Sept. 26 Letter, at 14. This allegation is not consistent with DMV's understanding of the 2024 audit. In fact, the 2024 audit was never closed. DMV is aware, however, of a programming limitation that resulted in temporary CDLs not being properly reported to CDLIS. All non-domiciled CDL issuance is currently paused, but going forward, DMV will correct any programming limitations that result in incomplete CDLIS reporting.

**4. DMV's Response to FMCSA's List of Required Corrective Action**

FMCSA requested that DMV take several corrective actions in response to its letter. DMV has evaluated these requests and is taking action as follows:

a. Immediately pause issuing non-domiciled CLPs and CDLs

DMV immediately paused issuing non-domiciled CLPs and CDLs on September 26, 2025 (the same day it received FMCSA's letter). DMV issued a memo that day, notifying its staff that effective immediately, all DMV offices would cease issuing CDLs and CLPs to non-domiciled applicants. DMV also

reached out to applicants, driving schools, and employer testing firms to notify them as well.

b. Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in widespread noncompliance in issuing non-domiciled CLPs and CDLs, and take immediate action to address the deficiencies

Upon receipt of the Sept. 26 Letter, DMV immediately began an in-depth audit of its policies and procedures surrounding the issuance of non-domiciled CDLs and CLPs, as well as of the over-65,000 records of non-domiciled CDL holders. As discussed above, the audit revealed some technical limitations, mostly with DMV's programming system, which was instituted to automate and streamline the licensing procedure. This system conducts an automatic check of the SAVE system when a non-domiciled applicant submits an original CDL application, but it is also vulnerable to programming deficiencies. DMV has identified certain system limitations that may result in gaps in the reviews that would be required for consistency with State requirements. DMV is working to address these limitations expeditiously. As DMV's audit proceeds, it will continue to timely identify and remedy any such issues.

c. Identify all unexpired non-domiciled CDLs that were not issued in compliance with parts 383 and 384 of Title 49 of the Code of Federal Regulations, notify FMCSA of the audit findings and the number of unexpired noncompliant non-domiciled CDLs, and revoke any noncompliant CDLs and CLPs

Upon receipt of your letter, DMV immediately began a thorough evaluation of all records of non-domiciled CDL holders to determine compliance with federal and state requirements. DMV's internal audit is ongoing. Of the approximately 65,000 non-domiciled CDL and CLP holders in California, none were issued in violation of the expiration date requirements of parts 383 and 384 of Title 49 of the Code of Federal Regulations because none exceeded the maximum validity period for CDLs and CLPs imposed by federal law. And, as explained above, the majority were issued with expiration dates calculated to coincide with a person's legal presence and pursuant to guidance explicitly approved by DHS. That the IFR has since changed CDL

expiration date requirements does not render licenses issued under the regulations applicable at the time invalid, nor does it mean that DMV's prior practices consistent with then-applicable requirements is a basis for a finding of non-compliance. Nonetheless, DMV will continue to analyze the remaining records and take action accordingly.

Further, DMV's internal audit revealed that there are currently just under 4,000 unexpired non-domiciled CDLs issued to Mexican citizens who are not DACA recipients. DMV is in the process of reviewing these records to ensure that those CDL-holders satisfy the provisions of 49 CFR §§ 383.71(f) and 383.71(f) and will revoke any CDLs issued in error.

As part of the pause on non-domiciled CDL and CLP issuance effective September 26, 2025, DMV has also stopped issuing temporary CDLs pending DHS verification of legal presence under California Vehicle Code section 12801.8. As DMV updates its systems to ensure compliance with the IFR, it will evaluate California Vehicle Code section 12801.8 for consistency with the IFR. When licensing resumes, DMV intends to be in compliance with the IFR. Further, DMV's internal audit uncovered a programming limitation that resulted in temporary CDLs not automatically being reported to CDLIS. DMV is working to eliminate gaps in its automated system, and to ensure that all licensing and permitting activity is reported to CDLIS according to the federal rules.

d. Resume issuing non-domiciled CLPs and CDLs only after the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311

DMV continues to evaluate its CDL and CLP issuance policies and procedures for the purpose of identifying all procedural and technical limitations in its implementation of all relevant rules and regulations, including 49 CFR parts 383 and 384, and 49 U.S.C. § 31311. DMV will implement corrective measures to address any procedural and technical limitations, and it welcomes input from FMCSA on how to satisfy the new federal requirements under the IFR.

* * *

As described above, a thorough review of non-domiciled CDL records did not reveal inconsistency with the requirements of 49 U.S.C. § 31311 and its implementing regulations, parts 383 and 384 of Title 49, as they existed before the IFR was issued. Thus, withholding of federal highway funds would be improper. Moreover, DMV intends to fully comply with the IFR when non-domiciled licensing resumes. In the interim, DMV welcomes an opportunity to have an informal conference with FMCSA, and to devise a "schedule mutually agreed upon by the agency and the State" to implement corrective measures. 49 C.F.R. § 384.307(c).

STEVE GORDON, Director
Department of Motor Vehicles

| | |
|---|---|
| **From:** | Soriano, Bernard C.@DMV |
| **To:** | Thomas, Philip (FMCSA); Barrs, Derek (FMCSA); Elison, Jesse (FMCSA); Hernandez, Scott (FMCSA); Poarch, Brandon (FMCSA); Hampton, Michael (FMCSA); White, Tracy (FMCSA); Lavalas, Romana (FMCSA); Liberatore, Thomas (FMCSA) |
| **Cc:** | Gordon, Steve P.@DMV |
| **Subject:** | Re: CDL update |
| **Date:** | Thursday, November 6, 2025 12:09:38 PM |
| **Attachments:** | image001.png<br>CDL Cancellation Letter_BULKnon-domiciledCDLs_Final 11.06.2025.pdf |

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

FMCSA team............Attached is the letter that was sent today to non-domiciled CDL drivers. The letter was sent to approximately 17,000 recipients. We continue to review all non-domiciled CDLs and anticipate completion by November 15.

Please feel free to reach out..............Bernard

Bernard C. Soriano
Deputy Director
M: 916.952.0080

---

**From:** Thomas, Philip (FMCSA) <Philip.Thomas@dot.gov>
**Sent:** Wednesday, November 5, 2025 11:53 AM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Barrs, Derek (FMCSA) <derek.barrs@dot.gov>; Elison, Jesse (FMCSA) <jesse.elison@dot.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Poarch, Brandon (FMCSA) <brandon.poarch@dot.gov>; Hampton, Michael (FMCSA) <michael.hampton@dot.gov>; White, Tracy (FMCSA) <Tracy.White@dot.gov>; Lavalas, Romana (FMCSA) <romana.lavalas@dot.gov>; Liberatore, Thomas (FMCSA) <thomas.liberatore@dot.gov>
**Cc:** Gordon, Steve P.@DMV <Steve.Gordon@dmv.ca.gov>
**Subject:** RE: CDL update

Hi Bernard,

Thank you for the update; please see below for additional questions. We would appreciate a more complete response within the hour.

- What is the timeline for notifying all 15,000 impacted license holders?
- What is the exact number of license holders who will be receiving notice that their non-domicile CDLs will be cancelled?
- Does this figure of 15,000 represent the total population of non-compliant, non-domiciled CDLs identified, based on the standards outlined in FMCSA's September 26,

2025, letter?

- If so, please provide a breakdown of this total to include the following:
  - Mexican or Canadian Nationals (non-DACA recipients):
  - All license holders whose CDL expiration date extends beyond their verified period of lawful presence:
  - Any other non-compliant licenses:

- Please provide a template of the notification letter being sent to non-compliant license holders.
- What is the specific deadline by which these 15,000 non-compliant CDLs will be canceled or downgraded?
- How many additional non-domiciled CDLs are still under review as part of this audit, and what is the projected completion date for the entire audit?

Thanks,

**Philip Thomas**, Deputy Associate Administrator
*Office of Safety*
Federal Motor Carrier Safety Administration
1200 New Jersey Avenue, SE | Washington, DC 20590
P: (202) 366-9554 | M: (667) 203-3996
Philip.Thomas@dot.gov

---

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Wednesday, November 5, 2025 2:19 PM
**To:** Barrs, Derek (FMCSA) <derek.barrs@dot.gov>; Elison, Jesse (FMCSA) <jesse.elison@dot.gov>; Thomas, Philip (FMCSA) <Philip.Thomas@dot.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Poarch, Brandon (FMCSA) <brandon.poarch@dot.gov>
**Cc:** Gordon, Steve P.@DMV <Steve.Gordon@dmv.ca.gov>
**Subject:** CDL update

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Administrator Barrs, Chief Counsel Elison, and FMCSA team.............I want to update you on our non-domiciled CDL efforts since our meeting last week. As you may recall, there are approximately 730,000 CDLs issued in California and approximately 65,000 are non-domiciled CDLs. We continue to analyze all of the non-domiciled CDLs.

Beginning tomorrow (11/6) we will begin mailing notices to over 15,000 non-domiciled CDL holders informing them that their CDLs will be cancelled.

Please let me know if there are any questions.  Thanks.............Bernard

Bernard C. Soriano
Deputy Director
M: 916.952.0080

CALIFORNIA STATE TRANSPORTATION AGENCY GAVIN NEWSOM, *Governor*

**DEPARTMENT OF MOTOR VEHICLES**
OPERATIONS DIVISION
P.O. BOX 942890 M/S G204
Sacramento, CA 94290-0001
Telephone: (800) 777-0133

November xx, 2025 [DL Number]

[Applicant's Name]
[Applicant's Address]
[Applicant's City, State, Zip]

**Subject: Notice of Commercial Driver's License (CDL) Cancellation**

Dear [Applicant's Name],

This letter is to inform you that the Department of Motor Vehicles (DMV) recently reviewed your driver record and submitted legal presence documents. Based on this review, the DMV determined that your Commercial Driver’s License (CDL) is not consistent with California law which requires that the expiration date of a CDL must be on or before the expiration of the legal presence documents provided to the DMV.

We regret to inform you that the DMV will cancel your commercial driver’s license **60 days** from the date of this letter pursuant to California Vehicle Code §13100 unless you provide legal presence documents that meet new federal guidelines issued on September 26, 2025 (linked below), such as permanent residency or U.S. citizenship.

In addition to your CDL being cancelled, your noncommercial driver’s license (DL) will also be cancelled. To obtain a new license, you must:

- Complete an application online,
- Schedule an appointment to visit your nearest DMV field office,
- Surrender the driver’s license in your possession, and
- Bring this letter and all relevant documentation so our staff may conduct a thorough review and provide appropriate guidance.

Additional licensing requirements may apply. To start your application and schedule an appointment, please visit edl.dmv.ca.gov or call (800) 777-0133.

On September 26, 2025, federal guidelines established by the Trump Administration imposed new restrictions on issuance of CDLs to individuals with limited-term legal presence (non-domiciled) in the United States. For more information regarding the new FMCSA requirements for non-domiciled CDLs, visit https://www.fmcsa.dot.gov/newsroom/interim-final-ruling-restoring-integrity-issuance-non-domiciled-drivers-licenses-cdl.

Sincerely,

California Department of Motor Vehicles

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Ave, S.E.
Washington, D.C. 20590

November 13, 2025

<u>Via Electronic Mail and UPS</u>
The Honorable Gavin Newsom
Governor of California
1021 O Street, Suite 9000
Sacramento, CA 95814

Mr. Steve Gordon, Director
California Department of Motor Vehicles
2415 1st Avenue
Mail Station F101
Sacramento, CA 95818

**CONDITIONAL DETERMINATION**

Dear Governor Newsom and Mr. Gordon:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) served the State of California a Preliminary Determination of Noncompliance (preliminary determination) in accordance with 49 CFR § 384.307(b) on September 26, 2025. The preliminary determination proposed a finding that DMV has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled commercial learner's permits (CLPs) and commercial driver's licenses (CDLs)[1] set forth in 49 CFR § 384.212.[2] FMCSA reviewed California's "Response to the September 26, 2025, Letter Regarding Commercial Learning Permit and Commercial Driver's License Issuance" (Response), which

[1] FMCSA notes that California issues non-domiciled CLPs and CDLs as "limited term" CLPs and CDLs. However, this conditional determination uses the term "non-domiciled" CLPs and CDLs to ensure consistent terminology with Federal regulations.

[2] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR Parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 10, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, that administratively stayed the IFR until further notice. Because the transactions detailed in the preliminary determination occurred prior to publication of the IFR, the regulations cited in this conditional determination reflect the pre-IFR text of Parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

DMV submitted on October 26, 2025. FMCSA also convened an informal conference on October 30, 2025 with Director Gordon and other DMV representatives to provide California an opportunity to inform FMCSA of its implemented or planned corrective actions, as well as present or discuss any other information for FMCSA's consideration. Further, through email and telephonic communications that occurred on November 5 and 6, 2025, DMV provided information about its action to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs.

FMCSA issues this conditional determination after considering DMV's action to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs. FMCSA will base its final determination on DMV's implementation of the required corrective actions set forth in the preliminary determination. DMV must provide FMCSA evidence of its corrective action plan implementation as set forth in section III below. DMV's failure to implement, or undue delay in implementing, the required corrective actions will result in FMCSA issuing a Final Determination of Substantial Noncompliance and withholding up to four percent of certain Federal-aid Highway funds as well as possible decertification of California's CDL program, as described in section III.

## I. Background

The Commercial Motor Vehicle Safety Act of 1986,[3] as amended, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312.[4] In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 CFR part 383 and part 384, subpart B. Under 49 CFR § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet each and every standard of part 384, subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices." As part of its oversight, FMCSA conducts comprehensive Annual Program Reviews (APR) of State CDL programs, in accordance with 49 CFR § 384.307, to verify that States are in substantial compliance.

Under 49 U.S.C. § 31311(a)(12)(B)(ii), States are authorized to issue non-domiciled CDLs, but they must do so in accordance with regulations prescribed by FMCSA. The Agency's regulations in effect at the time that the transactions detailed on the preliminary determination occurred provided that States that issue non-domiciled CLPs and CDLs may only accept as valid proof of lawful presence (i) an unexpired employment authorization document (EAD) issued by the United States Customs and Immigration Service (USCIS) or (ii) an unexpired foreign passport accompanied by an approved I-94 form documenting the driver's most recent admittance into the United States (hereinafter "lawful presence documents").[5] In addition, State procedures for

[3] 49 U.S.C. § 31301 *et seq*.

[4] 49 U.S.C. § 31311(a).

[5] 49 CFR §§ 383.71(f)(2)(i), 383.73(f)(3), 384.201, 384.212(b).

issuing, renewing, or upgrading a non-domiciled CLP and CDL must, at a minimum, be identical to those pertaining to any other CLP or CDL.[6]

The requirement that States accept as valid only *unexpired* lawful presence documents also required States to make the period of validity of the non-domiciled CLP or CDL less than or equal to the period of validity of the driver's lawful presence document(s). In other words, because FMCSA's regulations considered only unexpired lawful presence documents to be valid, DMV was required to ensure that the non-domiciled CLP or CDL period of validity *did not exceed* the expiration of the driver's lawful presence documents. Therefore, State driver's licensing agencies were required to ensure that the validity of non-domiciled CLPs or CDLs did not exceed the expiration date of drivers' lawful presence documents specified in 49 CFR § 383.71(f)(2)(ii).

In addition, with one exception, States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada. In this regard, FMCSA has determined that the Canadian Provinces and Territories issue CDLs in accordance with standards that are consistent with 49 CFR part 383.[7] Citizens of Canada are authorized to operate a commercial motor vehicle in the United States with a Canadian CDL and, therefore, are prohibited from obtaining a non-domiciled CDL. Similarly, FMCSA has determined that the United Mexican States issues Licencias Federales de Conductor (Mexican CDLs) in accordance with standards that are consistent with 49 CFR part 383.[8] Citizens of Mexico are authorized to operate a commercial motor vehicle in the United States with a Mexican CDL and, therefore, are prohibited from obtaining a non-domiciled CDL within the United States. FMCSA issued guidance stating that citizens of Mexico who are present in the United States under the Deferred Action for Childhood Arrivals (DACA) program are excepted from the prohibition.[9] While the guidance is in effect, States are permitted to issue a non-domiciled CLP or CDL to citizens of Mexico or Canada *only* if they are present in the United States under the DACA program. FMCSA has not identified any other exceptions to this general prohibition.

FMCSA initiated an APR of DMV's CDL program in August 2025 (2025 APR) in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. As set forth in the September 26, 2025 preliminary determination of the non-domiciled driver records sampled during the 2025 APR, FMCSA found that approximately 25 percent failed to comply with requirements in 49 CFR parts 383 and 384. The 2025 APR uncovered evidence of systemic policy, procedural, and programming errors. In this regard, of the driver records sampled, FMCSA observed a substantial number of transactions where DMV issued non-domiciled CLPs and CDLs that exceeded the expiration date of the driver's lawful presence document(s) and issued non-

[6] *Id*. at § 383.73(f)(2).

[7] The Canadian Provinces and Territories issue CDLs in conformity with the Canadian National Safety Code. Since December 29, 1988, FMCSA has determined that the Canadian National Safety Code is in accordance with the standards set forth in 49 CFR part 383. *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

[8] *See id.*

[9] *See* https://www.fmcsa.dot.gov/registration/commercial-drivers-license/may-state-drivers-licensing-agency-sdla-issue-non-domiciled. FMCSA rescinded this guidance on September 29, 2025, as part of the IFR. However, due to the administrative stay of the IFR, this guidance remains in effect.

domiciled CDLs to citizens of Mexico who are not present in the United States under the DACA program at the time of issuance. In addition, through FMCSA's review of DMV's training manuals and discussions with DMV personnel during the 2025 APR, the Agency discovered that DMV continued to have a policy of issuing "temporary" CLPs and CDLs to drivers pending final determination of the driver's eligibility for a commercial credential and without reporting the issuances to the Commercial Driver's License Information System (CDLIS) as required in 49 CFR §§ 384.212 and 384.225.

FMCSA found that the repeated errors discovered during the 2025 APR evinced an unacceptable deviation from FMCSA's regulations when issuing non-domiciled CLPs and CDLs and indicated a systemic breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. Accordingly, as set forth in the preliminary determination, FMCSA determined that DMV must take the following immediate corrective actions:

- Immediately pause issuing non-domiciled CLPs and CDLs;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were not issued in compliance with parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in widespread noncompliance in issuing non-domiciled CLPs and CDLs;
- Notify FMCSA of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in DMV's internal audit and in the preliminary determination;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with parts 383 and 384 in effect at the time of the reissuance;
- Resume issuing non-domiciled CLPs and CDLs only after the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311.

The preliminary determination required DMV to take the immediate corrective action of pausing all non-domiciled CLP and CDL issuances. However, DMV failed to fully pause non-domiciled CLP and CDL licensing by continuing to process certain types of upgrades. On October 15, 2025, DMV upgraded the non-domiciled CDL of a driver by removing the K (intrastate only) restriction. On October 21, 2025, this driver operated a semi-truck on a California freeway, struck a queue of stopped vehicles, and fatally injured three people. If California had complied with the corrective action of pausing non-domiciled CDL issuance required in the preliminary determination, the driver would not have an interstate CDL, and the crash may have been avoided. Further, DMV upgraded the driver's non-domiciled CDL without applying the standards of the IFR, which was in effect at the time the upgrade occurred. If DMV had applied the standards of the IFR, as required at the time, the driver would have been ineligible for a non-domiciled CDL.

## II. FMCSA Appropriately Issued the Preliminary Determination

Notwithstanding California's implemented or planned corrective actions, the DMV argued in its Response that its internal audit did not corroborate a substantial failure to comply with relevant Federal regulations. In this regard, DMV contends that no regulations in 49 CFR parts 383 and 384 required the State to issue non-domiciled CLPs and CDLs with an expiration date that did not exceed the expiration date of the driver's lawful presence documents. DMV also argues that FMCSA's pre-IFR regulations did not prohibit DMV from issuing non-domiciled CLPs or CDLs to citizens of Mexico and Canada who are not present in the United States under the DACA program. Lastly, DMV contends that the preliminary determination's updated finding from the 2024 APR regarding the DMV's continued issuance of "temporary" or "interim" non-domiciled CDLs is inconsistent with DMV's understanding of the 2024 APR. FMCSA addresses DMV's arguments below.

DMV argues that FMCSA's regulations did not require the State to issue non-domiciled CLPs and CDLs with an expiration date that did not exceed the expiration date of the driver's lawful presence documents. While DMV acknowledges that California regulations prohibit DMV from issuing a non-domiciled CLP or CDL that exceed the driver's legal presence,[10] DMV argues that FMCSA did not impose such a requirement. DMV also suggests that FMCSA's recent publication of the IFR that amended the regulatory framework to clarify this obvious requirement constitutes an admission that no such requirement existed when the transactions at issue were discovered during the 2025 APR. However, the language of 49 CFR §§ 383.71, 383.73, and 383.153 demonstrates that California's assertion is erroneous.[11] The regulatory universe of non-domiciled CLPs and CDLs is premised on the basic notion that a non-domiciled driver's commercial motor vehicle driving privileges cannot extend beyond that driver's lawful presence in the United States. Moreover, FMCSA's IFR amended parts 383 and 384 to underscore *existing* substantive rules governing the period of validity for non-domiciled CLPs and CDLs, not to create new rules on non-domiciled CLP and CDL periods of validity that did not exist prior to FMCSA's publication of the IFR.[12]

---

[10] *See* Cal. Code Regs. tit. 13, § 26.02(c) ("A commercial driver's license or commercial learner's permit issued to a person submitting documents pursuant to 26.01(b) [*i.e.,* a "valid, unexpired employment authorization document" or a "valid, unexpired foreign passport with an approved I-94 form"] will be termed to expire on the same date as the expiration date on the valid DHS document. The person may not renew or upgrade without submitting a document pursuant to 26.01(a) or (b).").

[11] DMV relies on two cases for the proposition that the decision to amend part 383 implies the original regulation did not encompass the amended provisions. *See United States v. Greene*, No. 1:23-CR-52 (RDA), 2025 WL 310128 at *5 (E.D. Va. Jan. 27, 2025); *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967, 973 (W.D. Wis. 2007), *aff'd on other grounds*, 556 F.3d 575 (7th Cir. 2009). FMCSA finds these cases inapposite. *Hecker* concerned regulations in which a regulatory proposal explicitly acknowledged that the regulations did not cover certain activities, while no such acknowledgment exists here. In *Greene*, the statutory/regulatory interpretation analysis is in the criminal context and relies in significant part on the rule of lenity, which requires that courts resolve statutory ambiguity in defendants' favor. FMCSA's preliminary determination, of course, was not a criminal prosecution, so the rule of lenity does not apply.

[12] While the IFR clarified existing rules governing the period of validity for non-domiciled CLPs and CDLs, it also implemented new standards governing non-domiciled driver eligibility, evidence of lawful immigration status, and document verification and retention by State driver licensing agencies. *See generally* 90 Fed. Reg. 46509.

49 U.S.C. § 31308 is the statutory basis for part 383's minimum standards for CDL expiration dates. It governs State issuance of CLPs and CDLs and permits FMCSA to issue regulations that compel all CDLs and CLPs to contain "the dates between which the license or learner's permit is valid." Pursuant to this statutory authority, FMCSA issued regulations requiring that CLPs and CDLs issued by the States "must contain . . . the date of issuance and the date of expiration of the license."[13] Under 49 CFR §§ 383.73(a)(3) and 383.73(b)(9), FMCSA mandates that CLPs be valid for no more than one year from the date of issuance, while CDLs may not be valid for more than eight years from the date of issuance. However, these rules merely provide a regulatory ceiling for CLP and CDL expiration generally. States must follow additional procedures prior to issuing non-domiciled CLPs and CDLs. These additional rules further restrict the period of validity for such credentials. First, under regulations in effect at the time the transactions at issue occurred, FMCSA obligated the States to require proof of an applicant's legal presence prior to issuing a non-domiciled CLP or CDL.[14] In addition, FMCSA required that "[a]n applicant domiciled in a foreign jurisdiction must provide an *unexpired* employment authorization document (EAD) issued by USCIS or an *unexpired* foreign passport accompanied by an approved I–94 form documenting the applicant's most recent admittance into the United States."[15]

Whenever possible, regulations must be read in harmony to avoid redundancy and surplusage.[16] DMV's claim that the State may issue a non-domiciled CLP or CDL that remains valid after a driver's lawful presence in the United States expires is rooted in an isolated reading of regulatory text that disrupts the overall framework. DMV's interpretation of §§ 383.71, 383.73, and 383.153 would render the requirements regarding verification of lawful presence in §§ 383.73(f)(3) and 383.71(f)(2)(i) meaningless. If a State may issue a non-domiciled CLP or CDL that expires after the expiration of the driver's lawful presence document, § 383.71(f)(2)(i)'s mandate to present an unexpired EAD or foreign passport would be irrelevant and inconsequential. Similarly, there would be no reason to verify lawful presence as § 383.73(f)(3) requires. FMCSA's interpretation of its own regulations avoids this conflict. Under FMCSA's regulatory framework, States must require proof of legal presence, in the form of an unexpired EAD or foreign passport, and ensure the expiration date of the CLP or CDL does not exceed the expiration date stated on the driver's lawful presence documents. Viewed in the totality, the regulatory framework demands this result.

Further, DMV's reading of FMCSA's pre-IFR regulations would allow non-domiciled drivers unlawfully present in the United States to operate commercial motor vehicles, at odds with the

---

[13] 49 CFR §§ 383.153(a)(7); 383.153(b)(2)(vi).

[14] 49 CFR § 383.73(f)(3).

[15] 49 CFR § 383.71(f)(2)(i) (emphasis added).

[16] *See, e.g.*, *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669 (2007) (cautioning against reading a regulation "in a way that makes part of it redundant"); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1078 (7th Cir. 2013) ("We do not construe regulations in such a way as to render other provisions of the regulations meaningless or superfluous.").

clear intent of FMCSA's non-domiciled CLP and CDL regulations.[17] The absurdity doctrine cuts against DMV's interpretation. Permitting States to issue non-domiciled CLPs and CDLs to individuals in a manner that permits them to continue operating commercial motor vehicles without being lawfully present in the United States is illogical, unreasonable, and contrary to the fundamental purpose of FMCSA's regulations establishing legal presence requirements for all CLP and CDL applicants: to ensure CLP and CDL drivers, including non-domiciled drivers, operate commercial motor vehicles while *lawfully present* in the United States.[18]

Moreover, FMCSA is unpersuaded by DMV's argument that the Department of Homeland Security (DHS) expressly approved DMV's non-domiciled CLP and CDL issuance practices. At the outset, FMCSA's preliminary determination of noncompliance was based on DMV's compliance with FMCSA's regulations, not DHS's regulations.[19] In addition, FMCSA notes that the noncompliant transactions cited in the preliminary determination are inconsistent with the DHS guidance presented in DMV's response. The Response states that DHS advised that, if a response received from USCIS's online verification service, Systematic Alien Verification for Entitlements (SAVE), shows a clearly defined legal presence end date, DMV should use that date as the expiration date for the applicant's driver's license or identification card. However, FMCSA's preliminary determination cited many transactions where DMV issued a non-domiciled CDL or CLP that exceeded the driver's clearly defined EAD expiration date as shown in SAVE.[20] In fact, FMCSA did not cite any transaction where the expiration date of the non-domiciled CLP or CDL matched the later of either the expiration of the EAD or foreign passport presented by the driver or a SAVE query report generated at the time the transaction occurred.

DMV also contends that it was not a violation of FMCSA's pre-IFR regulations to issue non-domiciled CLPs or CDLs to citizens of Mexico and Canada who are not present in the United States under the DACA program.[21] DMV suggests that FMCSA's regulations cannot be construed to exclude citizens of certain nations categorically from non-domiciled CDL eligibility. In this regard, DMV argues that 49 CFR § 383.5 defines an individual's "domicile" as "that State where a person has his/her true, fixed, and permanent home and principal residence and to which he/she has the intention of returning whenever he/she is absent." This is incorrect.

---

[17] As the Supreme Court has consistently reaffirmed, "[w]here the literal reading of a [regulatory scheme] would 'compel an odd result,' we must search for other evidence of [regulatory] intent to lend the [scheme] its proper scope." *Public Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 454 (1989) (*quoting Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 509 (1989)); *see also U.S. v. Am. Trucking Assn's, Inc.*, 310 U.S. 534, 543-44 (1940) ("When aid to construction of the meaning of words, as used in the [regulation], is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination'") (citations omitted).

[18] *See* 76 Fed. Reg. 26854, 26856 (May 9, 2011); 73 Fed. Reg. 19282, 19285 (Apr. 9, 2008).

[19] DMV's argument that its non-domiciled issuance practices are consistent with DHS requirements is further belied by the fact that the REAL ID regulations also prohibit States from issuing limited term driver's licenses and identification cards that exceed the applicant's legal presence. *See* 6 CFR § 37.21.

[20] *See* Preliminary Determination at section III(a).

[21] DMV states that its internal audit found that it issued non-domiciled CDLs to citizens of Canada and notes that FMCSA's preliminary determination made no mention Canadian CDL holders. However, in the driver records sampled during the 2025 APR, FMCSA found no instances of non-domiciled CDL issuance to citizens of Canada, hence its omission from the preliminary determination. Nonetheless, this conditional determination addresses the ineligibility of Mexican and Canadian citizens for a non-domiciled CLP or CDL.

DMV's argument omits material portions of the definition, resulting in a construction that aligns with its preferred interpretation. The term defined in § 383.5 is "State of domicile," not "domicile." Under § 383.5, the term "State" is defined as "a State of the United States and the District of Columbia." Thus, that definition only applies to individuals applying for a regular CDL as a U.S. citizen or lawful permanent resident. Said another way, the definition of "State of domicile" has no bearing on whether an individual who is a citizen of a foreign jurisdiction qualifies for a non-domiciled CDL under relevant regulations. This is underscored by § 383.71(f)(3)(ii), which indicates, for non-domiciled CLP and CDL applicants, that "no proof of domicile is required."[22]

The plain language of 49 CFR § 383.23(b)(1) demonstrates that Mexican and Canadian citizens may not obtain a non-domiciled CLP or CDL. Under § 383.23(b)(1), the only drivers permitted to obtain non-domiciled CDLs are those *not* from "a jurisdiction that the Administrator has determined tests drivers and issues CDLs in accordance with, or under standards similar to, the standards [adopted by FMCSA] . . . so long as that person meets the requirements of § 383.71(f)." The regulation categorically excludes all other individuals. This necessarily includes individuals domiciled in Canada and Mexico, as footnote 1 to § 383.23(b)(1) explains, because Mexico and Canada are jurisdictions for which the Administrator has issued an equivalency determination and entered into a reciprocity agreement.[23] Accordingly, Mexican and Canadian citizens cannot obtain non-domiciled CLPs or CDLs from any State because they are able to operate commercial motor vehicles in the United States using Mexican or Canadian CDLs.[24] Put simply, citizens of foreign jurisdictions for which an equivalency determination has been made (*i.e.*, Mexico and Canada) are not eligible to obtain a non-domiciled CDL.

In addition, DMV's interpretation flouts regulatory guidance published by FMCSA in 2019, which stated:

> [D]rivers who are citizens of Canada and Mexico are not eligible for non-domiciled CDLs because FMCSA has determined that commercial licenses issued by Canadian provinces and territories, and the United Mexican States, are in

[22] In its 2008 Notice of Proposed Rulemaking (NPRM) that proposed amendments to the definition of "State of domicile," FMCSA noted, "If a State requires proof of domicile…, then those applicants who can demonstrate that they permanently live in the State, *i.e., U.S. citizens and lawful permanent residents*, would be successful." 73 Fed. Reg. 19285 (emphasis added). The NPRM further underscores the inapplicability of "State of domicile" to applicants domiciled in a foreign jurisdiction.

[23] Moreover, the very definitions of "commercial driver's license" and "commercial learner's permit" in § 383.5 illustrate FMCSA's decision to recognize properly issued Mexican and Canadian CDLs as equivalent to U.S. CDLs. Section 383.5 qualifies the definitions of a CDL and CLP as credentials "issued to an individual by a State or other *jurisdiction of domicile*, in accordance with the standards contained in [part 383]." In a 2023 final rule amending §§ 384.208 and 384.209, FMCSA explained, "in accordance with § 383.23(b)(1), CDLs issued by Canadian Provinces and Territories in conformity with the Canadian National Safety Code and the Licencias Federales de Conductor issued by the United Mexican States are in accordance with the standards of 49 CFR part 383." 88 Fed. Reg. 80169, 80174 (Nov. 17, 2023).

[24] Contrary to California's assertion, section 383.23(b)(1) does not establish that this prohibition extends only to individuals who already possess a CDL. Though the footnote references the single license requirement, it does not limit the broad scope of the regulation's language. Such a reading would stretch the plain language of §§ 383.23(b)(1) and 383.71(f)(1)(i) beyond its limit.

> accordance with the standards established by our rules. Therefore, all Mexican and Canadian drivers must have an appropriate commercial license from his or her home country.[25]

This guidance was in effect at the time of the transactions at issue in the 2025 APR. DMV cannot escape the inexorable conclusion that citizens of Canada and Mexico are ineligible for non-domiciled CDLs due to FMCSA's equivalency determinations. The plain language of relevant regulations, alongside the Agency's regulatory guidance, foreclose any argument to the contrary.

Lastly, DMV argues that the preliminary determination's updated finding from the 2024 APR regarding the DMV's continued issuance of "temporary" or "interim" non-domiciled CDLs is inconsistent with DMV's understanding of the 2024 APR. However, the State Compliance Records Enterprise (SCORE) system shows, on November 13, 2024, that FMCSA issued finding number FD-104079, citing DMV's continued issuance of temporary CDLs without reporting the issuance to CDLIS.

For the reasons stated above, the Agency appropriately issued the preliminary determination and DMV's arguments are unavailing. DMV failed to comply with the requirements for issuing non-domiciled CLPs and CDLs set forth in § 384.212 because it (1) issued non-domiciled CLPs or CDLs with an expiration date that exceeded the expiration of the driver's lawful presence documents, and (2) issued non-domiciled CLPs or CDLs to citizens of Mexico not present in the United States under the DACA program. Further, DMV failed to comply with § 384.225 because it continued issuing "temporary" or "interim" non-domiciled CLPs and CDLs without reporting the transaction to CDLIS and without verifying the driver's legal presence. Under 49 CFR § 384.301, any one of these categories of noncompliance was sufficient to issue the preliminary determination and would also be a sufficient basis upon which to make a final determination of substantial noncompliance if DMV fails to complete the required corrective actions.

## III. California's Corrective Action Plan

FMCSA's preliminary determination set forth specific corrective actions DMV must undertake to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312. The required corrective actions centered on DMV immediately pausing issuance of non-domiciled CLPs and CDLs; identifying non-domiciled CLPs and CDLs that were not issued in accordance with FMCSA's standards; conducting an internal audit to identify the reasons for noncompliance and notifying FMCSA of its findings; immediately acting to correct the deficiencies identified in the internal audit; acting to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs; and reissuing the licenses subject to the standards in parts 383 and 384, as amended.[26] DMV was also permitted to resume non-domiciled CLP and CDL issuance only after it is able to meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311.[27] Under 49 CFR § 384.307(c), DMV's corrective action must be adequate to correct the deficiencies noted in the

[25] 84 Fed. Reg. 8464, 8470-71 (Mar. 8, 2019).

[26] Preliminary Determination at Sec. IV.

[27] *Id*.

preliminary determination and must be implemented on a schedule mutually agreed upon by FMCSA and DMV.

In its Response and during the October 30, 2025 informal conference, DMV described the corrective actions that it has implemented or intends to implement. DMV explained that upon receipt of the preliminary determination, it complied with the corrective action requiring an immediate pause in issuing non-domiciled CLPs and CDLs. DMV also reported that it immediately began an in-depth audit of its policies and procedures surrounding the issuance of non-domiciled CLPs and CDLs and the approximately 65,000 records of non-domiciled CDL holders. While the internal audit remains on-going, DMV reported that "the audit revealed some technical limitations, mostly with DMV's programming system . . . that may result in gaps in the reviews that would be required for consistency with State requirements. DMV is working to address these limitations expeditiously. As DMV's audit proceeds, it will continue to timely identify and remedy any such issues." Further, DMV explained that it identified approximately 20,000 non-domiciled CDLs with expiration dates that exceed their drivers' legal presence documents but stated that the majority of those were "issued appropriately based on the results from SAVE…." DMV further stated that the internal audit identified 3,970 non-domiciled CDLs issued to Mexican citizens who are not DACA recipients, that DMV stopped issuing temporary CDLs pending DHS verification of legal presence, and that DMV is instituting procedures to ensure that all records, such as SAVE query reports, are filed and preserved correctly. DMV also explained that it is "currently working to identify and correct any programming limitations that could result in a CDL expiration date that exceeds a person's lawful presence" and that it is working to "correct any programming limitations that result in incomplete CDLIS reporting." DMV also stated it intends to comply with the IFR when non-domiciled CLP and CDL issuance resumes.[28]

In addition, through email and telephonic communications with FMCSA that occurred on November 5th and 6th, DMV stated that it initiated State proceedings to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs. DMV further stated that it continues to review all non-domiciled CLPs and CDLs and anticipates completion by November 15, 2025.

Based on DMV's action to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs, FMCSA issues this conditional determination. FMCSA acknowledges that DMV has implemented, or indicates that it will implement, some of the corrective actions required in the preliminary determination. However, as noted above, DMV did not immediately pause all non-domiciled CLP and CDL licensing but continued to process certain non-domiciled CLP and CDL upgrades, including upgrading the non-domiciled CDL of a driver who was subsequently involved in a fatal crash. FMCSA is disappointed that DMV did not comply with the required corrective action of pausing all non-domiciled CLP and CDL licensing. FMCSA emphasizes that it is important that DMV's corrective action include an immediate pause of non-domiciled CLP and CDL licensing until DMV ensures that its practices comply with each and every standard of 49 CFR part 384, subpart B, in effect at the time DMV resumes non-domiciled CLP and CDL licensing, and 49 U.S.C. § 31311.

[28] As noted above, due to the administrative stay, the IFR is, until further notice, not in effect. Until further notice, States are not prohibited from issuing non-domiciled CLPs and CDLs and commercial learner's permits in accordance with the Federal regulations and guidance in effect immediately prior to issuance of the IFR.

FMCSA further emphasizes that the timely rescission of all unexpired non-domiciled CLPs and CDLs that failed to meet the requirements of parts 383 and 384, as interpreted by FMCSA, at the time of issuance—and the reissuance of the licenses in accordance with parts 383 and 384, in effect at the time of reissuance—is critically important to the overall framework of the required corrective action plan. DMV's failure to rescind and reissue *all* noncompliant non-domiciled CLPs and CDLs, including those issued to citizens of Canada and Mexico not present under the DACA program, will render its overall corrective action plan materially deficient and wholly inadequate to correct the deficiencies noted in the preliminary determination.

DMV must provide additional information about the noncompliant non-domiciled CLPs and CDLs subject to rescission, including: (1) a breakdown of all identified credentials subject to recission by category of noncompliance (*e.g.*, total number of where the expiration date exceeds the driver's legal presence documents); (2) confirmation that the credentials subject to rescission include all non-domiciled CLPs and CDLs that expire after the expiration of the driver's legal presence document(s), that were issued to Citizens of Canada or Mexico not present under the DACA program, or that were issued with other deficiencies identified in the preliminary determination; and (3) the approximate date by which the rescission of noncompliant non-domiciled CLPs and CDLs and reissuance, if eligible, will be completed and recorded on the CDLIS driver record. In addition, DMV must provide FMCSA the findings of the internal audit, including a description of any procedural and programming errors, training and quality assurance problems, insufficient policies and practices, and other issues that have resulted in widespread noncompliance in issuing non-domiciled CLPs and CDLs. DMV must also describe its implemented, or planned, actions to correct any technical, procedural, or policy limitations identified in the internal audit, as well as actions to train or retrain staff. Further, while DMV stated that it will correct programming limitations that resulted in incomplete CDLIS reporting for temporary CDLs, DMV failed to state how it will correct its current practice of issuing temporary non-domiciled CLPs or CDLs before validating the driver's lawful presence. Therefore, DMV must also provide information on its implemented, or planned, corrective actions to address this deficiency. DMV must provide the additional information **no later than December 1, 2025**.

DMV cannot demonstrate substantial compliance with the standards for issuing non-domiciled CLPs and CDLs until it has completed the required corrective actions within the mutually agreed-upon schedule. Further, upon DMV's notification that it has completed the required corrective actions, FMCSA will conduct a supplemental review of DMV's non-domiciled CLP and CDL issuance practices to verify that the corrective actions have been completed.

DMV's failure to complete, or undue delay in completing, the required corrective actions as set forth in the preliminary determination will result in FMCSA issuing a Final Determination of Substantial Noncompliance and withholding up to four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to California under 23 U.S.C. § 104(b)(1) and (2).[29] Under 49 U.S.C. § 31314(d) and 49 CFR § 384.403, funds withheld following a substantial noncompliance determination are no longer available for apportionment

[29] Four percent of these funds totals approximately $158,318,508.

to California. Further, DMV may also be subject to decertification of its CDL program in accordance with 49 U.S.C. § 31312 and 49 CFR § 384.405.

## IV. Conclusion

FMCSA remains committed to working with DMV officials and stands ready to assist the State to ensure its substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Please direct all questions regarding this Notice to Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

**OFFICE OF THE DIRECTOR**
**DEPARTMENT OF MOTOR VEHICLES**
P.O. BOX 932328
SACRAMENTO, CA 94232-3280

December 10, 2025

*Via Email* derek.barrs@dot.gov, jesse.elison@dot.gov *and First-Class Mail*

Derek D. Barrs, Administrator
U.S. Department of Transportation
Federal Motor Carrier Safety Administration
1200 New Jersey Avenue SE
Washington, DC 20590

RE: Response to November 13, 2025 Conditional Determination Regarding Non-Domiciled Commercial Driver's Licenses and Learning Permits

Dear Administrator Barrs:

This correspondence responds to the Federal Motor Carrier Safety Administration's (FMCSA) November 13, 2025 Conditional Determination regarding California Department of Motor Vehicles' (DMV) compliance with the FMCSA regulations governing the issuance of non-domiciled commercial driver's licenses and learner's permits (the Conditional Determination). The Conditional Determination originally requested a response from DMV on December 1, 2025, and FMCSA later extended this deadline to December 10, 2025, which DMV appreciates. As explained in our October 26, 2025 Response to FMCSA's September 26, 2025 Letter, DMV issued non-domiciled commercial driver's licenses (CDLs) in compliance with federal regulations. Nonetheless, DMV has taken action to ensure that its CDLs are issued in compliance with its own state laws and regulations, and in the process, has satisfied FMCSA's list of corrective actions.

## Background

### Federal Regulations Did Not Require an Expiration Date to Coincide with a Person's Lawful Presence – But the Issue is Moot

Unless and until such time that the Interim Final Rule (IFR) issued by FMCSA on September 29, 2025 goes into effect, federal law requires that commercial

learning permits (CLPs) expire within one year of issuance (49 C.F.R. §§ 383.25(c), 383.73(a)(3)) and that CDLs expire within eight years of issuance (49 C.F.R. § 383.73(b)(9)). Section 383.73(f)(2) provides that the procedures for issuing non-domiciled CLPs and CDLs are "identical" to those for issuing a resident CLP and CDL, apart from three exceptions, none of which address expiry period. 49 C.F.R. § 383.73(f)(2). Accordingly, the federal rules must be read to require that non-domiciled CLPs and CDLs expire within one year and eight years, respectively.

FMCSA cites to no authority to show otherwise. Rather, FMCSA alleges that "[t]he regulatory universe of non-domiciled CLPs and CDLs is premised on the basic notion that a non-domiciled driver's commercial motor vehicle driving privileges cannot extend beyond that driver's lawful presence in the United States." Conditional Determination, p. 5. FMCSA provides no citation in support of this assertion. FMCSA's argument that the eight-year CDL term must be read as incorporating an additional, contradictory requirement that CDLs expire *before* that time, is likewise unavailing. *See id.* p. 6, n.16, (citing *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669 (2007), and *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1078 (7th Cir. 2013), for the rule that statutes must not be read to render provisions meaningless). DMV's interpretation of the law would not "render the requirements regarding verification of lawful presence in §§ 383.73(f)(3) and 383.71(f)(2)(i) meaningless." *Id.*, p. 6. Rather, the verification requirements ensure that individuals legally present at the time of issuance can obtain a license and, because lawful presence in the United States is often extended, there is a legitimate basis for allowing CDLs to remain valid for a longer term to avoid the administrative burden of reissuing a CDL every time lawful presence is extended. By contrast, FMCSA's assertion that the requirement to present an unexpired legal presence document means a CDL must expire consistent with legal presence documents reads the existing maximum validity periods out of the regulations entirely. Principles of statutory construction thus weigh in favor of DMV's interpretation.

Finally, FMCSA's assertion that the IFR only "clarifies" existing rules is incorrect. As DMV explained in its October 26, 2025 letter, the fact that FMCSA issued an emergency regulation in the form of an IFR to implement the new expiration date rule demonstrates that no such rule existed before. *See* October 26, 2025 Letter, p. 4. Indeed, the IFR was issued without the required notice and comment period under section 553(b)(B) of the Administrative Procedure Act (APA). *See* 90 Fed. Reg. 46,509, 46,513 (Sept. 29, 2025); 5 U.S.C. § 553(b)(B) (rule may issue without regular notice and comment "when the agency for good

cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."). FMCSA alleged "good cause to issue this IFR without prior notice and comment and to make it effective immediately." IFR, 90 Fed. Reg. at p. 46,513. But if FMCSA were merely interpreting existing rules, it could have done so under APA Section 553, subsection *(b)(A)*, which provides that "interpretive rules" are not subject to notice and comment procedure. 5 U.S.C. § 553(b)(A). FMCSA did not do so: it issued a new rule instead.[1]

Nonetheless, California law does require licenses to expire consistent with a person's legal presence documents. *See* Cal. Code Regs. tit. 13, § 26.02(c). Upon reviewing its records, as FMCSA requested, California identified approximately 20,100 non-domiciled CDLs having expiration dates exceeding the driver's legal presence. On November 6, 2025, DMV issued notices to approximately 17,400 of these drivers, explaining that DMV would cancel their licenses in 60 days if they could not present evidence of lawful presence meeting or exceeding the expiration date of their CDLs. That 60-day period will expire on January 5, 2026.[2] DMV plans to issue notices by December 15 to the remaining CDL holders whose licenses expire past their legal presence date. On completion of this action, California will have no further active non-domiciled CDLs with expiration dates exceeding the legal presence date of the license holder. To be clear, an extended expiration date cannot be a basis to withhold federal highway funding because it is not a violation of relevant federal law. But regardless of the proper interpretation of the federal regulations in effect prior to September 29, 2025, DMV has satisfied FMCSA's request to identify and take action on unexpired non-domiciled CDLs with extended expiration dates.

<u>CDL Issuance to Citizens of Mexico and Canada</u>

Federal regulations provide: "[U]nder the single license provision of § 383.21, a driver holding a commercial driver's license issued under the Canadian National Safety Code or a new Licencia Federal de Conductor issued by Mexico is

[1] The language of the IFR reveals as much. *See* 90 Fed. Reg. at 46,510 ("This IFR *revises* the regulations"), ("The *changes* strengthen the security of the CDL issuance process") (emphasis added); *id.* at 46,510–11 ("This *rule* . . . requires the expiration date for any non-domiciled CLP or CDL to match the expiration date of the Form I-94") (emphasis added); *id.* at 46,511–12 (no mention of expiration date in "Existing Requirements" section).

[2] As discussed further below, if DMV resumes issuing non-domiciled CDLs before the 60-day cure period lapses, DMV may issue licenses with corrected expiration dates to eligible individuals.

prohibited from obtaining a non-domiciled CDL, or any other type of driver's license, from a State or other jurisdiction in the United States." 49 C.F.R. § 383.23(b)(1) n.1. The regulations prohibit issuing a license to a driver from "a foreign jurisdiction that the Administrator has determined tests drivers and issues CDLs in accordance with, or under standards similar to, the [U.S.] standards." 49 C.F.R., Subchapter B, Part 383, Subpart B ("Single License Requirement"); 49 C.F.R. §§ 383.21; 383.23(b)(2). The purpose of the regulations is to avoid the risk of violating the single license rule, which, if not followed, could permit a dangerous driver to avoid detection of safety violations by obtaining multiple licenses. *See* 52 FR 20574-01, at *20576 (June 1, 1987). DMV's interpretation of the federal rules as permitting issuance of non-domiciled CDLs to citizens of Mexico and Canada so long as they do not have a license from those jurisdictions, and they satisfy the provisions of sections 383.71(f) and 383.73(f), is supported by both the text and purpose of the regulations. *See* October 26, 2025 Letter, at 4-7.

FMCSA's guidance on this point has been, at best, inconsistent. *Compare* Conditional Determination, pp. 8–9 (quoting 84 Fed. Reg. 8464, 8470-71 (Mar. 8, 2019)) *with, e.g.*, FMCSA-CDL-383.23-FAQ001(2023-05-08) (explaining that DACA recipients may obtain a non-domiciled CDL despite being citizens of Mexico, provided that have never held a Licencia Federal de Conductor from Mexico) *and* 54 Fed. Reg.22,392, 22,392 (May 23, 1989) ("[A] Canadian driver *holding a commercial driver's license* issued under the Canadian National Safety Code will be prohibited from obtaining any driver's license from a State or other licensing jurisdiction from the United States.)" (emphasis added); Reciprocity and Recognition of United States and Canadian Commercial Drivers Licenses, FMCSA (Feb. 9, 2022), https://www.fmcsa.dot.gov/international-programs/reciprocity-and-recognition-united-states-and-canadian-commercial-drivers.

In the course of FMCSA's audit and exchanges with DMV in the past two months, FMCSA has made clear its current interpretation of these regulations. As explained below, and without conceding the validity of its own interpretation, DMV intends to come into compliance with FMCSA's current interpretation of the rules.

K Restriction Removals

FMCSA required DMV to "[i]mmediately pause issuing non-domiciled CLPs and CDLs." September 26, 2025 Letter, p. 14. Upon receipt of FMCSA's September 26, 2025 letter, DMV immediately paused issuing non-domiciled CLPs and CDLs.

That same day, DMV issued a memo to its staff to notify them that—effective immediately—all DMV offices would cease issuing CLPs and CDLs to non-domiciled applicants. No DMV locations issued non-domiciled CLPs and CDLs thereafter. DMV also reached out to applicants, driving schools, and employer testing firms to notify them of the immediate pause. DMV will resume issuance of non-domiciled CLPs and CDLs only after it has adequate corrective measures in place to ensure non-domiciled CLPs and CDLs are issued in compliance with all relevant state and federal law.

FMCSA now argues that DMV did not pause all *issuance* of CLPs and CDLs because DMV continued to *remove K restrictions*, which limit a CDL-holder to intrastate driving. Conditional Determination, pp. 4, 10. FMCSA's position is that the removal of a K restriction constitutes an "upgrade," which is considered an "issuance." Conditional Determination, pp. 4, 10. But FMCSA did not convey that position to DMV until October 23, 2025. On that date, Brandon Poarch from FMCSA reached out to DMV to discuss the removal of the K restriction on the driver involved in the fatal crash in California. *See* Ex. A, Email from B. Poarch to C. Daniels. Mr. Poarch stated that, based on the discussion with DMV and follow-up with counsel *on that day*, "FMCSA *has determined* that the automatic removal of a K restriction is an 'upgrade' *per our new rule*." *Id.* (emphasis added). Accordingly, Mr. Poarch asked DMV to stop automatically removing K restrictions and to re-apply K restrictions to any non-domiciled CDLs whose restriction had been removed since September 29, 2025. *Id.*

Upon receiving Mr. Poarch's October 23 clarification and request, DMV promptly complied. As DMV informed FMCSA during their October 30, 2025 informal conference, the automatic removal mechanism was disabled, and all K restrictions that had been removed since September 29, 2025, have been reinstated. The record clearly demonstrates that DMV complied with this requirement once FMCSA settled on its position on October 23, 2025.

**<u>DMV Has Complied with FMCSA's Corrective Action Requests</u>**

1) **Immediately pause issuing non-domiciled CLPs and CDLs.**

DMV notified staff about the pause in issuing non-domiciled CLPs and CDLs immediately upon receipt of FMCSA's September 26, 2025 letter. Thus, no non-domiciled CLPs or CDLs have been issued since then. DMV stopped automatically removing K restrictions from all CDLs on October 30, promptly upon notice from FMCSA that FMCSA considered such removals to be an

"issuance." Further, DMV went back and reinstated K restrictions for every non-domiciled CDL for which the restriction was removed between September 29, 2025 and October 30, 2025.

**2) As soon as practicable, identify all unexpired non-domiciled CDLs that were not issued in compliance with parts 383 and 384. Notify FMCSA of the audit findings and the number of unexpired noncompliant non-domiciled CDLs, including a breakdown of all identified credentials subject to recission by category of noncompliance.**

DMV has completed its audit of approximately 65,000 unexpired non-domiciled CDLs. It has identified all non-domiciled CDLs that expired past the date of the driver's legal presence at the time of license issuance. In total, DMV identified approximately 20,100 CDLs falling into this category. DMV has further identified all the non-domiciled CDLs issued to Mexican and Canadian nationals who were not present in the United States under the DACA program. In total, DMV identified approximately 1,600 CDLs falling into this category.[3] CLPs are discussed in response to request number four.

**3) Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with parts 383 and 384 in effect at the time of the reissuance; confirm that the credentials subject to rescission include all non-domiciled CLPs and CDLs that expire after the expiration of the driver's legal presence document(s), that were issued to Citizens of Canada or Mexico not present under the DACA program, or that were issued with other deficiencies identified in the preliminary determination.**

As FMCSA acknowledges in its Conditional Determination, DMV issued notices on November 6, 2025, to approximately 17,400 individuals that their licenses would be canceled in 60 days if they could not provide documentation showing valid legal presence up to or beyond the date of their CDL's expiration. The remaining drivers identified whose licenses expire past the date of their legal presence, numbering approximately 2,700 drivers, will be sent a similar notice on December 15, 2025. Upon sending that notice, DMV will have informed every non-domiciled CDL-holder whose license expired past their legal presence date

[3] As part of its initial response on October 26, the department identified this number as approximately 3,970. Upon further review, however, the department has determined the number of CDLs falling into this category is approximately 1,600.

at the time of issuance that their license is subject to cancellation. Once DMV resumes issuing non-domiciled licenses, any reissuance will be done pursuant to applicable federal and California requirements, including California's requirement that licenses not extend beyond the term of an individual's legal presence in the United States.

The Mexican and Canadian nationals who are not DACA recipients—numbering approximately 1,600 drivers—will be sent notices on December 15, 2025 that their licenses will be subject to cancellation. Upon sending that notice, DMV will have informed every non-DACA citizen of Mexico and Canada that their license is subject to cancellation. CLPs are discussed in response to request number four.

4) **Describe how DMV will correct its current practice of issuing temporary non-domiciled CLPs or CDLs before validating the driver's lawful presence.**

Temporary CLPs and CDLs issued prior to verifying a driver's legal presence are valid for a maximum of 60 days. Therefore, all temporary CLPs and CDLs in effect as of the date of FMCSA's September 26, 2025 letter have since expired. DMV has not issued any further temporary CLPs or CDLs. Going forward, DMV is ceasing the practice of issuing temporary CLPs and CDLs to all applicants, both domiciled and non-domiciled.

Further, CLPs in California are issued for a period of 180 days. Many have expired since FMCSA's September 26, 2025 letter, and DMV has not renewed any non-domiciled CLPs since then. DMV identified 11 remaining non-compliant CLPs. On December 15, 2025, DMV will notify these drivers that their non-domiciled CLPs have been canceled, effective immediately.

5) **Provide the approximate date by which the rescission of noncompliant non-domiciled CLPs and CDLs and reissuance, if eligible, will be completed and recorded on the CDLIS driver record.**

The 60-day period provided in the cancellation notices sent out on November 6, 2025, will expire on January 5, 2026. Any remaining non-compliant licenses that were noticed on that date will be canceled and recorded in CDLIS on January 5, 2026. The 60-day period for the non-domiciled CDL cancellation notices scheduled to be sent on December 15, 2025, will expire on February 13, 2026. Any remaining non-compliant licenses that were noticed on December 15, 2025, will be canceled and recorded in CDLIS on February 13, 2026. The CLP

cancellation notices scheduled to be sent on December 15, 2025, will be effective immediately and recorded in CDLIS no later than December 16, 2025.

6) **Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in widespread noncompliance in issuing non-domiciled CLPs and CDLs.**

DMV has completed its internal audit of its procedures and technical systems. The department has identified computer programming errors and human processing errors as the source of confusion in DMV procedures, as follows:

System Automation Resulted in Faulty Expiration Date Calculation

DMV automated its system so that when limited term (*i.e.*, non-domiciled) CDL holders sought to modify their licenses (for instance, by renewing or upgrading), the system would automatically prompt the technician to check the driver's legal presence documents. One way the system distinguished whether a driver held a standard or limited term CDL was the expiration date keyed into the system at the time the CDL was issued or renewed. As explained in DMV's October 26 Response to FMCSA's September 26, 2025 Letter, DMV calculates expiration dates for non-domiciled CDLs based on an automatic SAVE check. However, DMV's internal audit uncovered certain situations in which the system failed to properly notate a CDL as limited term.

More specifically, certain SAVE responses triggered the entering of a default expiration date of five years from the CDL's first issuance, which is the maximum term of a CDL in California.[4] Cal. Veh. Code § 12816. When the default five-year expiration period is entered, the system equates the CDL to a standard CDL. This error has resulted in inaccurate expiration date calculations in both issuances and renewals of non-domiciled CDLs.

CDL Issuance to Non-DACA Citizen of Mexico or Canada

[4] Three scenarios triggered the entry of a default expiration date: (1) when SAVE returned an inconclusive response and the field technician did not key this result into the system appropriately, (2) when SAVE returned a legal presence date of greater than five years on an original issuance, and (3) when SAVE returned a legal presence date of greater than five years on a renewal.

DMV's practices regarding issuing non-domiciled CDLs to Mexican and Canadian citizens were not in line with the interpretation of the federal requirements FMCSA has now asserted during these proceedings. As a result, non-domiciled CDLs were issued to Mexican and Canadian citizens who were not present under the DACA program. As explained below, DMV is preparing to update its practices to comply with FMCSA's current position on these requirements.

Issuance of "Temporary" or "Interim" CLPs and CDLs

California law and field office procedure allowed the issuance of "temporary" or "interim" permits and licenses to CLP and CDL applicants prior to verification of their legal presence. Cal. Veh. Code § 12801.9(a)(2); Cal. Code Regs. tit. 13, § 16.14 ("The department shall issue a temporary driver's license valid for up to 60 days provided there is no other cause for refusal pending the verification of the documents submitted by the applicant to establish identity and California residency."). As explained below, DMV will end this practice.

7) **Take immediate action to correct the deficiencies identified in the DMV's internal audit and in this letter; describe its implemented, or planned, actions to correct any technical, procedural, or policy limitations identified in the internal audit, as well as actions to train or retrain staff.**

Correction of System Automation

DMV is diligently working to remedy the computer programming errors that resulted in CDLs not being properly recorded as limited term/non-domiciled, which consequently caused license expiration dates to extend past a driver's legal presence. DMV is implementing a short-term solution while it corrects the larger programming errors. This immediate solution involves routing all non-domiciled CDL applications to DMV headquarters, rather than processing them in the field office. At DMV headquarters, a newly prepared software program will query SAVE and populate an applicant's CDL expiration date to match its legal presence date, removing the possibility of technician error from this step. Additionally, DMV headquarters staff will continuously monitor this process and will manually correct any erroneous expiration dates and ensure that all non-domiciled CDLs are issued with the correct expiration dates. Further, DMV has added a data field so that all non-domiciled CDLs will be marked as limited term/non-domiciled. The department will implement this solution by December 17, 2025.

Additionally, DMV has been training its staff on state and federal requirements for issuing and determining expiration dates non-domiciled CDLs. Since receiving FMCSA's September 26, 2025 letter, DMV has held several staff meetings and training sessions, as well as produced memos and other guidance documents concerning legal requirements and proper procedures for processing non-domiciled CLPs and CDLs.

In the long term, DMV will correct the limitations in its system that resulted in CDLs not being properly designated as limited term. The updated system will correctly prompt field technicians to ensure presentation of legal presence documents when the CDL is renewed, and will correctly interpret SAVE responses to automatically assign expiration dates based on the expiration of the applicant's legal presence. DMV will also continually monitor these processes to ensure licenses are issued properly and systems are functioning properly. It is projected that this effort will take six months to complete. DMV will update its internal policies, memoranda, and training documents to reflect the changes, and will continue to train front-line staff accordingly. As noted above, DMV is instituting an interim stopgap solution to prevent the identified errors while this programming overhaul is in progress.

<u>Issuance to non-DACA citizen of Mexico or Canada</u>

Policy and procedure documents are being updated to reflect that non-domiciled CLPs and CDLs cannot be issued to non-DACA citizens of Mexico or Canada. Retraining of front-line staff on this issue will occur by December 17, 2025.

8) **Resume issuing non-domiciled CLPs and CDLs only after the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311.**

At this time, DMV believes that it has identified all issues that could result in improper CLP and CDL issuance. DMV is implementing the corrective actions described above, which will bring it into compliance with each and every standard of subpart B of part 384 and 49 U.S.C. § 31311. Accordingly, DMV will resume issuing non-domiciled CLPs and CDLs on December 17, 2025. Because

this date will precede the end of the 60-day cure period provided in the cancellation notices described above, and consistent with FMCSA's instruction to "reissue the licenses in accordance with parts 383 and 384 in effect at the time of the reissuance," the DMV may take action to issue corrected CDLs to eligible drivers, where doing so would be in full compliance with the relevant federal requirements in effect on that date and the procedures described herein.

* * *

DMV has appreciated the opportunity to review its systems in the course of these proceedings with FMCSA, and it is confident that the corrective measures being implemented as a result will ensure that non-domiciled CLPs and CDLs are issued in accordance with California law and with federal requirements, as FMCSA has interpreted them.  There is no cause, therefore, for FMCSA to withhold funding that plays a critical role in ensuring the safety of California's highways.

STEVE GORDON, Director
Department of Motor Vehicles

# EXHIBIT A

[redacted]

[redacted]

---

**From:** Poarch, Brandon (FMCSA) <brandon.poarch@dot.gov>
**Sent:** Thursday, October 23, 2025 12:51 PM
**To:** Daniels, Cheri M.@DMV <Cheri.Daniels@dmv.ca.gov>
**Cc:** Earles, Courtney A.@DMV <Courtney.Earles@dmv.ca.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Early, Terrance (FMCSA) <terrance.early@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Dequina, Carlos (FMCSA) <carlos.dequina@dot.gov>; Price, Bryan (FMCSA) <bryan.price@dot.gov>
**Subject:** Automatic Removal of K Restriction

Cheri,

Many thanks to you and Courtney for being immediately available this morning to discuss the driver's record involving the K restriction removal.

Based on our discussion and follow-up with our Office of Chief Counsel, FMCSA has determined that the automatic removal of a K restriction is an "upgrade" per our new rule. Because of this, removing the K restriction should have subjected the driver to the new regulatory requirements.

From 383.73(f)

> *(A) Beginning September 29, 2025, the State must not issue (which includes amending, correcting, reprinting, or otherwise duplicating a previously issued CLP or CDL), transfer, renew, or upgrade a non-domiciled CLP or CDL unless, at the time of the transaction, the applicant provides evidence of lawful immigration status as defined under § 383.5. Applicants for a non-domiciled CLP or CDL who do not provide evidence of lawful immigration status as required under § 383.71(f)(3)(i)(B) are not eligible for a non-domiciled CLP or CDL.*

I'm requesting that California DMV turn off this automatic removal feature for any non-domiciled CDLs that currently have a K restriction. Also, that California DMV review previous its records non-domiciled CDLs that have had their K restriction removed since 29 September 2025 to ensure compliance with the new rule.

Please let me know if you would like to discuss and I will make myself available at your next convenience.

Regards,
Brandon

**Brandon A. Poarch**, Field Administrator
*Western Region – TX, NM, AZ, CA*
Federal Motor Carrier Safety Administration
300 East 8th Street, Suite 130
Austin, TX 78701
P: (202) 834-2179

U.S. Department of Transportation

**Federal Motor Carrier Safety Administration**

| | |
|---|---|
| **From:** | Hernandez, Scott (FMCSA) |
| **To:** | "Gordon, Steve P.@DMV" |
| **Cc:** | Hembeck, Mari (FMCSA); Jones, Joshua (FMCSA); Snook, Christopher (FMCSA); Price, Craig (FMCSA); jonathan.cousimano@gov.ca.gov; Howard, Nakisha G.@DMV |
| **Subject:** | RE: CA - Determination of Non Compliance with Issuance of Non-Domiciled CDLs |
| **Date:** | Tuesday, December 16, 2025 10:40:00 PM |
| **Attachments:** | image001.png |

Good evening, Director Gordon,

Thank you for response. I understand and appreciate your request for clarification.
To be direct, your interpretation is not accurate.
The intent of our communications is: CA DMV may not resume issuing non-domiciled CLPs or CDLs until FMCSA completes its review of the State's corrective action(s) and has issued a determination that California is in compliance with the standards in subpart B of Part 384. This includes that CA DMV may not re-issue prior non-domiciled CLPs or CDLs or "full" CDLs that have been issued in violation of the FMCSRs or any improperly issued non-domiciled CLPs or CDLs until FMCSA completes its review of the State's corrective action(s) and has issued a determination that California is in compliance with the standards in subpart B of Part 384.

Scott

**From:** Gordon, Steve P.@DMV <Steve.Gordon@dmv.ca.gov>
**Sent:** Tuesday, December 16, 2025 5:15 PM
**To:** Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>
**Cc:** Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>; jonathan.cousimano@gov.ca.gov; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>
**Subject:** RE: CA - Determination of Non Compliance with Issuance of Non-Domiciled CDLs

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Hello Scott,

Confirming the receipt of your e-mail. I'm also confirming our understanding of what CA DMV is allowed to do. While your e-mail states that we may not resume issuing non-domiciled CDLs, it also states that FMCSA will want to examine corrected CDLs and/or

CLPs. Based upon this statement, we are interpreting FMCSA's direction to be that CA DMV should take action to correct non-domiciled CDLs and CLPs that are currently issued; the pause only prevents CA DMV from issuing new, original, CDLs and CLPs, or from renewing the same. This is also consistent with the corrective action identified in your November 13, 2025 letter: "Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with parts 383 and 384 in effect at the time of the reissuance."

Please advise if you have a different understanding.

Thank you,

Steve

---

**From:** Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>
**Sent:** Tuesday, December 16, 2025 12:12 PM
**To:** Gordon, Steve P.@DMV <Steve.Gordon@dmv.ca.gov>; jonathan.cousimano@gov.ca.gov; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>
**Cc:** Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** CA - Determination of Non Compliance with Issuance of Non-Domiciled CDLs

Good afternoon, Director Gordon,

Thank you for your letter dated December 10, 2025, to FMCSA Administrator Barrs. FMCSA will be coordinating a formal response to the letter soon, but I need to follow up with you more quickly on a particular matter. At the bottom of page 10, the letter indicates that CA DMV will very shortly begin resuming issuing non-domiciled CLPs and CDLs:

*"At this time, DMV believes that it has identified all issues that could result in improper CLP and CDL issuance. DMV is implementing the corrective actions described above, which will bring it into compliance with each and every standard of subpart B of part 384 and 49 U.S.C. § 31311. Accordingly, DMV will resume issuing non-domiciled CLPs and CDLs on December 17, 2025…"*

FMCSA appreciates that CA DMV has identified all issues that could have resulted in improper CLP and CDL issuance, and FMCSA will complete its review of your Corrective Action Plan (CAP) as quickly as possible. <u>However, CA DMV may not resume issuing non-domiciled CLPs or CDLs until FMCSA completes its review of the State's corrective action(s) and has issued a determination that California is in compliance with the standards in subpart B of Part 384.</u> FMCSA will need an opportunity to request and review specific instances of corrected CDLs and/or CLPs or to meet with you and review together a sample of corrected CDLs and/or CLPs; for example, we would want to see a copy of the training materials and new policies referenced in your CAP. We anticipate this determination would

not take place until after the new year.

Kindly confirm receipt of this email.

Please let me know if you would like to discuss further what we would expect to see associated with a CAP or anything else related to this process. I can make myself and my staff available at your convenience this week.

Thank you, Scott

**Scott Hernandez**, Regional Field Administrator
*Western Region*
Federal Motor Carrier Safety Administration
12600 W. Colfax Avenue, Suite B300, Lakewood, CO 80215
P: (303) 407-2370 | M: (303) 918-9423
scott.hernandez@dot.gov

U.S. Department of Transportation
**Federal Motor Carrier Safety Administration**

| | |
|---|---|
| **From:** | Soriano, Bernard C.@DMV |
| **To:** | Hernandez, Scott (FMCSA); Snook, Christopher (FMCSA); Hembeck, Mari (FMCSA); Jones, Joshua (FMCSA); Price, Craig (FMCSA) |
| **Cc:** | Triepke, Kristin J.@DMV; Howard, Nakisha G.@DMV; Wida, Deanna M.@DMV; Gilmore, Brian W.@DMV |
| **Subject:** | Terming |
| **Date:** | Thursday, December 18, 2025 7:07:54 PM |

Some people who received this message don't often get email from bernard.soriano@dmv.ca.gov. Learn why this is important

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

FMCSA team...............As discussed this morning, the following are procedures for correcting the non-domiciled CDLs that have mismatched dates. The process involves three steps. And those three steps can be automated.

> For CDLs identified to have a simple expiration date issue, where the expiration date of the CDL is later than their legal presence expiration date, we will:
>
> 1. Identify the CDL card expiration date on the DL Master database
> 2. Overlay that current (wrong) expiration date with the legal presence expiration date - this correctly sets the CDL expiration date
> 3. Run a CDLIS query to ensure the new (correct) expiration date is displayed.
>
> Any record or query will reflect new/updated expiration date that matches the legal presence expiration date.

We will demonstrate this at our 10:00 meeting tomorrow and can answer any questions you may have. Thank you.................Bernard

Bernard C. Soriano
M: 916.952.0080

| | |
|---|---|
| **From:** | Soriano, Bernard C.@DMV |
| **To:** | Snook, Christopher (FMCSA); Hernandez, Scott (FMCSA); Hembeck, Mari (FMCSA); Jones, Joshua (FMCSA); Price, Craig (FMCSA) |
| **Cc:** | Triepke, Kristin J.@DMV; Howard, Nakisha G.@DMV; Wida, Deanna M.@DMV |
| **Subject:** | Training |
| **Date:** | Thursday, December 18, 2025 6:11:31 PM |
| **Attachments:** | DL Memo DRAFT - Resume Issuance of NonDom CLPs & CDLs DRAFT_Redacted.pdf |

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

FMCSA team...........Thank you for the productive call this morning. As discussed, attached are the training materials used by our field office staff. Approximately 3,000 employees were trained on these procedures on Dec. 17. Training occurred in the field office locations and lasted an hour. Locations that specialize in CDLs and in business transactions trained from 7:00AM-8:00AM and all other locations conducted training from 8:00AM-9:00AM. Offices are closed to customers during these training periods.

You'll note the training material is labelled 'DRAFT.' This is because we did not yet move forward with issuing non-domiciled CDLs. The draft marking will be removed once we are issuing. In addition, the redacted portions are the codes used in our computer system for the transactions. We are sensitive to those codes being available outside of our department.

You'll also see the memo addresses

- Mexico and Canada citizens are ineligible to receive a CDL
- Stop issuing temporary CDLs
- Printing "Non Domiciled" on CDLs and CLPs
- Receiving CLPs (recall we cancelled all CLPs)

As mentioned in our meeting, the short-term solution entails the field office staff starting the intake and the application moving to HQ for completion. That completion is done using automation that has the correct business rules and a manual review/intervention process when necessary.

In addition, there is a fail-safe process where our card production vendor sets aside non-domiciled CDLs for review prior to mailing. We can provide a detailed description of the short-term solution and the fail-safe process in a separate email.

Bernard C. Soriano
M: 916.952.0080

# DL 2025-XX

## Resuming Issuance of Non-Domiciled CLPs and CDLs

**Issue Date: December 15, 2025**

**New Information**

Effective December 17, 2025, DMV will resume issuing limited-term legal presence (non-domiciled) commercial learner's permits (CLPs) and commercial driver's licenses (CDLs) in compliance with federal regulations. This memo provides new processing guidelines and changes to existing procedures for non-domiciled CDL applications. Unless specified otherwise in this memo, continue to follow existing procedures in the DL Manual.

This memo obsoletes the following memos:

- DL 2025-20 Updated Limited-Term Legal Presence (Non-Domiciled) CDL Processes
- DL 2025-23 Limited-Term Legal Presence (Non-Domiciled) CDL Downgrade Procedures

**Acceptable and Not Acceptable Identity Documents for Non-Domiciled CLPs/CDLs**

| ***BD/LP Code*** | ***Form #*** | ***Acceptable*** | ***Not Acceptable*** |
|---|---|---|---|
| [redacted] | I-94<br>I-94A | Valid/unexpired foreign passport with record of arrival and departure (I-94) and valid visa | • Valid foreign passport stamped with "Processed for I-551"<br>• Valid foreign passport stamped with "Upon Endorsement Serves as Temporary I-551 Evidencing Permanent Residency for one Year" or stamped with the blue "ADMITTED" |
| [redacted] | I-766 | Valid/unexpired Employment Authorization Document (EAD) Card | EAD Card with Country of Birth as Canada or Mexico (see *Canadian or Mexican Citizens* below) |
| [redacted] | I-688A | | |
| [redacted] | I-688B | | |
| [redacted] | | | Valid I-94 stamped "Refugee", "Parolee", "Asylum", "Humanitarian Parolee", and "Public Interest Parolee |
| [redacted] | | | Notice of Action (Form I-797 and Form I-797C) when accompanied with an expired Permanent Resident Card or EAD Card |

DRAFT

**Canadian or Mexican Citizens**

Federal regulations prohibit the issuance of a CDL or noncommercial driver's license (DL) to Canadian or Mexican citizens. However, reciprocity agreements between the U.S. and Canada, and the U.S. and Mexico, allow individuals who hold a CDL issued by Canada or Mexico to operate commercial vehicles in the U.S.

**Exception:** Customers who present an EAD Card indicating Country of Birth as Canada or Mexico with Category Code C33 may apply for a non-domiciled CLP/CDL or DL. Follow the chart below to determine if a Canadian or Mexican citizen is eligible for a non-domiciled CDL:

| ***If the Country of Birth is…*** | ***And the Category Code is…*** | ***Then…*** |
|---|---|---|
| Canada or Mexico | C33 | Issue a non-domiciled CLP/CDL using existing procedures. |
| | Not C33 | Do **not** issue a non-domiciled CLP/CDL. |




**Customers with a Cancellation Letter**

All customers who have received a cancellation letter must provide acceptable identity documents to resume with the non-domiciled CDL license. Customers returning with unacceptable identity documents may be subject to cancellation.

## Snook, Christopher (FMCSA)

**From:** Snook, Christopher (FMCSA)
**Sent:** Monday, December 22, 2025 11:30 AM
**To:** 'Soriano, Bernard C.@DMV'; Triepke, Kristin J.@DMV; Wida, Deanna M.@DMV; Howard, Nakisha G.@DMV; Hernandez, Scott (FMCSA); Hembeck, Mari (FMCSA); Jones, Joshua (FMCSA); Price, Craig (FMCSA)
**Subject:** RE: FMCSA/CA DMV Meeting Follow-up

**Categories:** Red Category

Good morning, Bernard,

As a follow-up to the meeting recap provided last week, FMCSA has expanded upon the original follow-up with the addition of new bullet points, as well as adding several new questions, which will need to be addressed as part of our review of the DMV's license issuance process. I have highlighted the additional bullets and questions within the original list of follow-up items below.

1. A comprehensive breakdown of the approximately 65,000 unexpired non-domiciled CDL's
    - Explain the methodology used to identify the 65,000 unexpired non-domiciled CDLs.
        - How many CLPs were found to be inconsistent with current FMCSRs? Was the same methodology used to identify the 65,000 CDLs, applied to identify non-compliant CLPs?
    - The December letter indicates approximately 21,100 of the 65,000 unexpired non-domiciled CDLs were identified to have expiration dates beyond the date of the driver's legal presence. During the call today it was identified the SDLA developed methodology and processes which separated the 21,100 drivers into 'buckets', with each having distinct revocation dates.
        - Please identify the different types of buckets and the number of drivers present within each.
            - What specific methodology was used to separate each bucket and how did each get categorized.
            - How as the legal presence checked for each CDL/CLP? It was indicated SAVE was queried for each driver. Is there a scenario were a SAVE query/legal presence check was not required.
        - Of immediate concern were buckets of drivers which will have their licenses revoked on 1/5/2025.
            - Please provide a list (or lists) of drivers from each of these buckets.
            - We can discuss dates for review of these records (likely in person) once received.
            - NOTE: If the SDLA intends on extending the initial revocation deadline from 1/5/2026, the SDLA is required to notify FMCSA in writing of this proposed extension, as it deviates from the dates outlined within their 12/10 letter.
2. Specifics on the proposed short-term solutions to your non-domiciled license issuance process.
    - The December letter provides general framework for the solution but does not provide sufficient detail on the program deployed, monitoring processes implemented, or the data fields used.
    - Please provide specifics on the Headquarters license issuance process.
        - What processes have changed?
        - How will the new program be regularly monitored for continued compliance.
        - Will it be rolled out statewide, if so, when?
    - Please provide details of the license issuances routing through Headquarters.
        - What is the flow chart from field location to routing to headquarters, and what safeguards are in place to prevent those field offices from issuing a license?
            - Have the license issuance permissions for field office employees been removed?
            - What is the anticipated oversight by headquarters staff?

  - What happens when the license information gets routed to headquarters?
  - How does headquarters anticipate handling the volume of license reviews/issuances?
- It was indicated field training was conducted on 12/17. Please provide the memo distributed, as well as any other policies or procedures developed and deployed, in addition to a mechanism to confirm all field staff have been (or will be) trained on the new solution.
- Please confirm if it will be possible to test this solution in an environment mirroring production.
- Is it possible field staff could override this solution to issue a regular CDL to an individual?
  - If not, what solution was put in place to prevent this?

3. Specifics on the long-term solutions to your non-domiciled license issuance processes.
- The December letter indicates the project to implement the proposed long-term solution is currently being worked on and will take six months. Given the reported staffing shortages and priority struggles, please indicate if the proposed rollout is six months from the date of the letter, or an estimate to be determined later.
- How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
- Will there be a mechanism to track completion of training by field/HQ staff?
  - What percentage of front-line employees have attended, or will attend training, on the issuance of non-domiciled CDLs?
  - Are the Headquarters staff trained differently from field office staff?
  - How will newly hired employees be trained on non-domiciled license issuance practices?

4. Specifics on how your headquarters staff will monitor the short- and long-term solutions.
- How often will headquarters staff be making these checks?
- What mechanism will be in place to ensure any erroneous expiration dates are captured and corrected?

5. Specifics on the policies and procedures being updated to address CLP/CDL issuances to non-DACA recipients.
- How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
- Will there be a mechanism to track completion of training by field/HQ staff?
- In your system, if an applicant selects 'Mexico' as their country of citizenship, does a hard stop trigger immediately, or does it rely on a headquarters or field office employee noticing the country?
- How exactly does your system distinguish a DACA recipient from a standard Mexican national?
  - Does it require a specific code from the Employment Authorization Document (EAD) (e.g. C33) to proceed?

6. Provide any guidance supplied by USCIS or DHS relative to issuance, renewals, extensions of expiration dates of legal presence documentation.

7. DMV's letter indicates the DMV will cease the practice of issuing temporary non-domiciled CDLs and CLPs to all applicants, both domiciled and non-domiciled. Please provide supporting policies, procedures, and statutes or rules.
- Is there ever a time this could be overridden by staff? If so, who may perform the overrides and in what scenarios?
- The DMV has admitted temporary license were not being reported to CDLIS. What has the DMV done to ensure *every* transaction, including 'K' restriction removals or temporary issuances, are now immediately pushed to CDLIS?
- Can the DMV confirm it has discontinued its practice of issuing a temporary license prior to the verifications of lawful status or otherwise ensure all drivers are eligible to hold the driving privileges of their respective CDLs?
- Can the DMV confirm all convictions, while a driver was operating under a temporary license, have now been updated and recorded to CDLIS?
- What policies/procedures/training/systems have changed? Please provide details.

8. On Page 8 of the December 10, 2025, response letter from the DMV, it was indicated "DMV's internal audit uncovered certain situations in which the system failed to properly notate a CDL as a limited term."
- In this case, the CDL would not be identified as limited term; therefore, has the DMV conducted an audit of each 'standard' CDL issuance to ensure those licenses were issued properly?

- If so, how many standard CDLs were improperly issued?

9. California claimed the removal of a 'K' restriction wasn't an 'issuance' until FMCSA corrected this assertion on October 23, 2025.
   - Has the DMV audited every other transaction type (e.g. address change, duplicate licenses, adding varying endorsements, downgrades/upgrades) to guarantee no other issuance transactions are bypassing lawful presence verifications?

10. It's being reported California "will not act on the notices of cancellations". Can you please explain whether California has changed their position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated?

Preliminary On-site Follow-up Process:

- Since the short-term solution proposed is using DMV headquarters as the final stop in the license issuance process, the FMCSA needs to be on-site at field office(s) to view how DMV field staff will transmit the license requests to headquarters. Additionally, FMCSA will need to be on-site at headquarters to view the processes and systems used when issuing licenses under the short-term solution.
  - This will need to be done in simulation first, prior to resuming issuances of non-domiciled CDLs.
  - FMCSA will evaluate the safeguards, policies, procedures, and training to assure issuances are in accordance with FMCSA's regulations.
- Once verified and confirmed by FMCSA, California may begin issuing non-domiciled CDLs using the approved short-term solution.
- When DMV begins relying solely on the proposed long-term solution (within 6 months), the FMCSA will be on-site at field office(s), and headquarters as necessary, to verify the safeguards for issuance, PRIOR to permitting the DMV to resume issuing CDLs at field offices.

Thank you,

Chris Snook, CDL Program Specialist
Western Service Center
U.S. Department of Transportation
Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)
Western Service Center
12300 W Dakota Ave, Suite B-131
Lakewood, CO 80228

OUR ROADS OUR RESPONSIBILITY
Partnership for Road Safety

---

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Friday, December 19, 2025 6:22 AM
**To:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** Re: FMCSA/CA DMV Meeting Follow-up

You don't often get email from bernard.soriano@dmv.ca.gov. Learn why this is important

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Thank you Chris. We appreciate you and the team meeting with us. We'll be sending you the information to review.

Bernard C. Soriano
M: 916.952.0080

---

**From:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>
**Sent:** Thursday, December 18, 2025 3:47 PM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** FMCSA/CA DMV Meeting Follow-up

Good afternoon, Bernard,

Thank you to you and your team for meeting with us this morning. We appreciate your efforts to get your internal audit done in such a short amount of time and we look forward to assisting you going forward. As discussed, we wanted to recap some of the items covered this morning, to ensure everyone has a clear path moving forward.

It was determined the following information will be needed to begin a comprehensive follow up by the FMCSA. Additional information may be required throughout the review of your non-domiciled license issuance process.

Before we proceed/commit to an in-person review, FMCSA is requesting follow-up on the items below. Tentatively, we discussed meeting in person after the first of the year to begin review of non-domiciled records, and that it may be a multi-part/tiered, review process.

1. A comprehensive breakdown of the approximately 65,000 unexpired non-domiciled CDL's
    - Explain the methodology used to identify the 65,000 unexpired non-domiciled CDLs.
        - How many CLPs were found to be inconsistent with current FMCSRs? Was the same methodology used to identify the 65,000 CDLs, applied to identify non-compliant CLPs?
    - The December letter indicates approximately 21,100 of the 65,000 unexpired non-domiciled CDLs were identified to have expiration dates beyond the date of the driver's legal presence. During the call today it was identified the SDLA developed methodology and processes which separated the 21,100 drivers into 'buckets', with each having distinct revocation dates.
        - Please identify the different types of buckets and the number of drivers present within each.
            - What specific methodology was used to separate each bucket and how did each get categorized.
            - How as the legal presence checked for each CDL/CLP? It was indicated SAVE was queried for each driver. Is there a scenario were a SAVE query/legal presence check was not required.
        - Of immediate concern were buckets of drivers which will have their licenses revoked on 1/5/2025.
            - Please provide a list (or lists) of drivers from each of these buckets.
            - We can discuss dates for review of these records (likely in person) once received.
            - NOTE: If the SDLA intends on extending the initial revocation deadline from 1/5/2026, the SDLA is required to notify FMCSA in writing of this proposed extension, as it deviates from the dates outlined within their 12/10 letter.
2. Specifics on the proposed short-term solutions to your non-domiciled license issuance process.
    - The December letter provides general framework for the solution but does not provide sufficient detail on the program deployed, monitoring processes implemented, or the data fields used.

- It was indicated field training was conducted on 12/17. Please provide the memo distributed, as well as any other policies or procedures developed and deployed, in addition to a mechanism to confirm all field staff have been (or will be) trained on the new solution.
- Please confirm if it will be possible to test this solution in an environment mirroring production.
- Is it possible field staff could override this solution to issue a regular CDL to an individual?
    - If not, what solution was put in place to prevent this?

3. Specifics on the long-term solutions to your non-domiciled license issuance processes.
    - The December letter indicates the project to implement the proposed long-term solution is currently being worked on and will take six months. Given the reported staffing shortages and priority struggles, please indicate if the proposed rollout is six months from the date of the letter, or an estimate to be determined later.
    - How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
    - Will there be a mechanism to track completion of training by field/HQ staff?
4. Specifics on how your headquarters staff will monitor the short- and long-term solutions.
    - How often will headquarters staff be making these checks?
    - What mechanism will be in place to ensure any erroneous expiration dates are captured and corrected?
5. Specifics on the policies and procedures being updated to address CLP/CDL issuances to non-DACA recipients.
    - How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
    - Will there be a mechanism to track completion of training by field/HQ staff?
6. Provide any guidance supplied by USCIS or DHS relative to issuance, renewals, extensions of expiration dates of legal presence documentation.
7. DMV's letter indicates the DMV will cease the practice of issuing temporary non-domiciled CDLs and CLPs to all applicants, both domiciled and non-domiciled. Please provide supporting policies, procedures, and statutes or rules.
    - Is there ever a time this could be overridden by staff? If so, who may perform the overrides and in what scenarios?

We look forward to hearing from you soon. If you have any questions, please let us know.

Thank you,

Chris Snook, CDL Program Specialist
Western Service Center
U.S. Department of Transportation
Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)
Western Service Center
12300 W Dakota Ave, Suite B-131
Lakewood, CO 80228

OUR ROADS OUR RESPONSIBILITY
Partnership for Road Safety

## Snook, Christopher (FMCSA)

| | |
|---|---|
| **From:** | Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov> |
| **Sent:** | Wednesday, December 24, 2025 1:00 PM |
| **To:** | Snook, Christopher (FMCSA); Triepke, Kristin J.@DMV; Wida, Deanna M.@DMV; Howard, Nakisha G.@DMV; Hernandez, Scott (FMCSA); Hembeck, Mari (FMCSA); Jones, Joshua (FMCSA); Price, Craig (FMCSA); Barrs, Derek (FMCSA) |
| **Subject:** | Re: FMCSA/CA DMV Meeting Follow-up |
| **Categories:** | Red Category |

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

+Administrator Barrs

Chris...........Thank you for your email. We are working on responses to these items and will send as soon as they are ready. There is an item that is time sensitive. For item #10 (*It's being reported California "will not act on the notices of cancellations". Can you please explain whether California has changed their position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated?*), our position has not changed on license cancellations. However, in light of the ongoing discussions between DMV and FMCSA, coupled with holiday season scheduling challenges, the January 5, 2026 date will need to be changed.

We will move that cancellation date to March 6. This will give time for FMCSA and DMV to work through the compliance process and the items listed in your note. We very much appreciate the constructive relationship and look forward to FMCSA's on-site visits next year.

Please let me know if there are any questions. Thanks and Happy Holidays...............Bernard

Bernard C. Soriano
M: 916.952.0080

---

**From:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>
**Sent:** Monday, December 22, 2025 11:30 AM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** RE: FMCSA/CA DMV Meeting Follow-up

Good morning, Bernard,

As a follow-up to the meeting recap provided last week, FMCSA has expanded upon the original follow-up with the addition of new bullet points, as well as adding several new questions, which will need to be addressed as part of our review of the DMV's license issuance process. I have highlighted the additional bullets and questions within the original list of follow-up items below.

1. A comprehensive breakdown of the approximately 65,000 unexpired non-domiciled CDL's
    - Explain the methodology used to identify the 65,000 unexpired non-domiciled CDLs.
        - How many CLPs were found to be inconsistent with current FMCSRs? Was the same methodology used to identify the 65,000 CDLs, applied to identify non-compliant CLPs?
    - The December letter indicates approximately 21,100 of the 65,000 unexpired non-domiciled CDLs were identified to have expiration dates beyond the date of the driver's legal presence. During the call today it was identified the SDLA developed methodology and processes which separated the 21,100 drivers into 'buckets', with each having distinct revocation dates.
        - Please identify the different types of buckets and the number of drivers present within each.
            - What specific methodology was used to separate each bucket and how did each get categorized.
            - How as the legal presence checked for each CDL/CLP? It was indicated SAVE was queried for each driver. Is there a scenario were a SAVE query/legal presence check was not required.
        - Of immediate concern were buckets of drivers which will have their licenses revoked on 1/5/2025.
            - Please provide a list (or lists) of drivers from each of these buckets.
            - We can discuss dates for review of these records (likely in person) once received.
            - NOTE: If the SDLA intends on extending the initial revocation deadline from 1/5/2026, the SDLA is required to notify FMCSA in writing of this proposed extension, as it deviates from the dates outlined within their 12/10 letter.
2. Specifics on the proposed short-term solutions to your non-domiciled license issuance process.
    - The December letter provides general framework for the solution but does not provide sufficient detail on the program deployed, monitoring processes implemented, or the data fields used.
    - Please provide specifics on the Headquarters license issuance process.
        - What processes have changed?
        - How will the new program be regularly monitored for continued compliance.
        - Will it be rolled out statewide, if so, when?
    - Please provide details of the license issuances routing through Headquarters.
        - What is the flow chart from field location to routing to headquarters, and what safeguards are in place to prevent those field offices from issuing a license?
            - Have the license issuance permissions for field office employees been removed?
            - What is the anticipated oversight by headquarters staff?
        - What happens when the license information gets routed to headquarters?
        - How does headquarters anticipate handling the volume of license reviews/issuances?
    - It was indicated field training was conducted on 12/17. Please provide the memo distributed, as well as any other policies or procedures developed and deployed, in addition to a mechanism to confirm all field staff have been (or will be) trained on the new solution.
    - Please confirm if it will be possible to test this solution in an environment mirroring production.
    - Is it possible field staff could override this solution to issue a regular CDL to an individual?
        - If not, what solution was put in place to prevent this?
3. Specifics on the long-term solutions to your non-domiciled license issuance processes.
    - The December letter indicates the project to implement the proposed long-term solution is currently being worked on and will take six months. Given the reported staffing shortages and priority struggles, please indicate if the proposed rollout is six months from the date of the letter, or an estimate to be determined later.
    - How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
    - Will there be a mechanism to track completion of training by field/HQ staff?
        - What percentage of front-line employees have attended, or will attend training, on the issuance of non-domiciled CDLs?
        - Are the Headquarters staff trained differently from field office staff?
        - How will newly hired employees be trained on non-domiciled license issuance practices?

4. Specifics on how your headquarters staff will monitor the short- and long-term solutions.
- How often will headquarters staff be making these checks?
- What mechanism will be in place to ensure any erroneous expiration dates are captured and corrected?

5. Specifics on the policies and procedures being updated to address CLP/CDL issuances to non-DACA recipients.
- How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
- Will there be a mechanism to track completion of training by field/HQ staff?
- In your system, if an applicant selects 'Mexico' as their country of citizenship, does a hard stop trigger immediately, or does it rely on a headquarters or field office employee noticing the country?
- How exactly does your system distinguish a DACA recipient from a standard Mexican national?
    - Does it require a specific code from the Employment Authorization Document (EAD) (e.g. C33) to proceed?

6. Provide any guidance supplied by USCIS or DHS relative to issuance, renewals, extensions of expiration dates of legal presence documentation.

7. DMV's letter indicates the DMV will cease the practice of issuing temporary non-domiciled CDLs and CLPs to all applicants, both domiciled and non-domiciled. Please provide supporting policies, procedures, and statutes or rules.
- Is there ever a time this could be overridden by staff? If so, who may perform the overrides and in what scenarios?
- The DMV has admitted temporary license were not being reported to CDLIS. What has the DMV done to ensure *every* transaction, including 'K' restriction removals or temporary issuances, are now immediately pushed to CDLIS?
- Can the DMV confirm it has discontinued its practice of issuing a temporary license prior to the verifications of lawful status or otherwise ensure all drivers are eligible to hold the driving privileges of their respective CDLs?
- Can the DMV confirm all convictions, while a driver was operating under a temporary license, have now been updated and recorded to CDLIS?
- What policies/procedures/training/systems have changed? Please provide details.

8. On Page 8 of the December 10, 2025, response letter from the DMV, it was indicated "DMV's internal audit uncovered certain situations in which the system failed to properly notate a CDL as a limited term."
- In this case, the CDL would not be identified as limited term; therefore, has the DMV conducted an audit of each 'standard' CDL issuance to ensure those licenses were issued properly?
    - If so, how many standard CDLs were improperly issued?

9. California claimed the removal of a 'K' restriction wasn't an 'issuance' until FMCSA corrected this assertion on October 23, 2025.
- Has the DMV audited every other transaction type (e.g. address change, duplicate licenses, adding varying endorsements, downgrades/upgrades) to guarantee no other issuance transactions are bypassing lawful presence verifications?

10. It's being reported California "will not act on the notices of cancellations". Can you please explain whether California has changed their position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated?

Preliminary On-site Follow-up Process:
- Since the short-term solution proposed is using DMV headquarters as the final stop in the license issuance process, the FMCSA needs to be on-site at field office(s) to view how DMV field staff will transmit the license requests to headquarters. Additionally, FMCSA will need to be on-site at headquarters to view the processes and systems used when issuing licenses under the short-term solution.
    - This will need to be done in simulation first, prior to resuming issuances of non-domiciled CDLs.
    - FMCSA will evaluate the safeguards, policies, procedures, and training to assure issuances are in accordance with FMCSA's regulations.
- Once verified and confirmed by FMCSA, California may begin issuing non-domiciled CDLs using the approved short-term solution.

- When DMV begins relying solely on the proposed long-term solution (within 6 months), the FMCSA will be on-site at field office(s), and headquarters as necessary, to verify the safeguards for issuance, PRIOR to permitting the DMV to resume issuing CDLs at field offices.

Thank you,

Chris Snook, CDL Program Specialist
Western Service Center
U.S. Department of Transportation
Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)
Western Service Center
12300 W Dakota Ave, Suite B-131
Lakewood, CO 80228

---

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Friday, December 19, 2025 6:22 AM
**To:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** Re: FMCSA/CA DMV Meeting Follow-up

You don't often get email from bernard.soriano@dmv.ca.gov. Learn why this is important

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Thank you Chris. We appreciate you and the team meeting with us. We'll be sending you the information to review.

Bernard C. Soriano
M: 916.952.0080

---

**From:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>
**Sent:** Thursday, December 18, 2025 3:47 PM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** FMCSA/CA DMV Meeting Follow-up

Good afternoon, Bernard,

Thank you to you and your team for meeting with us this morning. We appreciate your efforts to get your internal audit done in such a short amount of time and we look forward to assisting you going forward. As discussed, we wanted to recap some of the items covered this morning, to ensure everyone has a clear path moving forward.

It was determined the following information will be needed to begin a comprehensive follow up by the FMCSA. Additional information may be required throughout the review of your non-domiciled license issuance process.

Before we proceed/commit to an in-person review, FMCSA is requesting follow-up on the items below. Tentatively, we discussed meeting in person after the first of the year to begin review of non-domiciled records, and that it may be a multi-part/tiered, review process.

1. A comprehensive breakdown of the approximately 65,000 unexpired non-domiciled CDL's
    - Explain the methodology used to identify the 65,000 unexpired non-domiciled CDLs.
        - How many CLPs were found to be inconsistent with current FMCSRs? Was the same methodology used to identify the 65,000 CDLs, applied to identify non-compliant CLPs?
    - The December letter indicates approximately 21,100 of the 65,000 unexpired non-domiciled CDLs were identified to have expiration dates beyond the date of the driver's legal presence. During the call today it was identified the SDLA developed methodology and processes which separated the 21,100 drivers into 'buckets', with each having distinct revocation dates.
        - Please identify the different types of buckets and the number of drivers present within each.
            - What specific methodology was used to separate each bucket and how did each get categorized.
            - How as the legal presence checked for each CDL/CLP? It was indicated SAVE was queried for each driver. Is there a scenario were a SAVE query/legal presence check was not required.
        - Of immediate concern were buckets of drivers which will have their licenses revoked on 1/5/2025.
            - Please provide a list (or lists) of drivers from each of these buckets.
            - We can discuss dates for review of these records (likely in person) once received.
            - NOTE: If the SDLA intends on extending the initial revocation deadline from 1/5/2026, the SDLA is required to notify FMCSA in writing of this proposed extension, as it deviates from the dates outlined within their 12/10 letter.
2. Specifics on the proposed short-term solutions to your non-domiciled license issuance process.
    - The December letter provides general framework for the solution but does not provide sufficient detail on the program deployed, monitoring processes implemented, or the data fields used.
    - It was indicated field training was conducted on 12/17. Please provide the memo distributed, as well as any other policies or procedures developed and deployed, in addition to a mechanism to confirm all field staff have been (or will be) trained on the new solution.
    - Please confirm if it will be possible to test this solution in an environment mirroring production.
    - Is it possible field staff could override this solution to issue a regular CDL to an individual?
        - If not, what solution was put in place to prevent this?
3. Specifics on the long-term solutions to your non-domiciled license issuance processes.
    - The December letter indicates the project to implement the proposed long-term solution is currently being worked on and will take six months. Given the reported staffing shortages and priority struggles, please indicate if the proposed rollout is six months from the date of the letter, or an estimate to be determined later.
    - How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
    - Will there be a mechanism to track completion of training by field/HQ staff?
4. Specifics on how your headquarters staff will monitor the short- and long-term solutions.
    - How often will headquarters staff be making these checks?
    - What mechanism will be in place to ensure any erroneous expiration dates are captured and corrected?
5. Specifics on the policies and procedures being updated to address CLP/CDL issuances to non-DACA recipients.
    - How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?

- Will there be a mechanism to track completion of training by field/HQ staff?

6. Provide any guidance supplied by USCIS or DHS relative to issuance, renewals, extensions of expiration dates of legal presence documentation.
7. DMV's letter indicates the DMV will cease the practice of issuing temporary non-domiciled CDLs and CLPs to all applicants, both domiciled and non-domiciled. Please provide supporting policies, procedures, and statutes or rules.

- Is there ever a time this could be overridden by staff? If so, who may perform the overrides and in what scenarios?

We look forward to hearing from you soon. If you have any questions, please let us know.

Thank you,

Chris Snook, CDL Program Specialist
Western Service Center
U.S. Department of Transportation
Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)
Western Service Center
12300 W Dakota Ave, Suite B-131
Lakewood, CO 80228

OUR ROADS RESPONSIBILITY
Partnership for Road Safety

## Snook, Christopher (FMCSA)

**From:** Hernandez, Scott (FMCSA)
**Sent:** Wednesday, December 31, 2025 4:10 PM
**To:** Bernard.Soriano dmv.ca.gov; Snook, Christopher (FMCSA); Triepke, Kristin J.@DMV; Wida, Deanna M.@DMV; Howard, Nakisha G.@DMV; Hembeck, Mari (FMCSA); Jones, Joshua (FMCSA); Price, Craig (FMCSA); Hampton, Michael (FMCSA)
**Subject:** RE: FMCSA/CA DMV Meeting Follow-up

**Categories:** Red Category

Bernard,

FMCSA's position has not changed. The extension is not, and was not, approved by FMCSA and is contrary to the corrective action plan. I look forward to your responses to the questions asked in the email dated Dec. 18 & 22, 2025.

Scott

---

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Wednesday, December 31, 2025 1:07 PM
**To:** Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>; Hampton, Michael (FMCSA) <michael.hampton@dot.gov>; Barrs, Derek (FMCSA) <derek.barrs@dot.gov>
**Subject:** Re: FMCSA/CA DMV Meeting Follow-up

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

+Administrator Barrs

Scott,

Thank you for your response, but it seems inconsistent with FMCSA's prior communications indicating that FMCSA was open to an extension of the revocation date. During our meeting with FMCSA on December 18, FMCSA and DMV collectively discussed extending the January 5 cancellation date to give FMCSA time to further audit DMV's corrective actions. And FMCSA agreed that moving the date was reasonable given the short time frame to review. That same day and then again on December 22, FMCSA wrote to me stating that if DMV intended to extend the January 5, 2026 revocation date we should notify FMCSA in writing of the proposed extension. You and others from FMCSA are copied on both of those emails.

I provided such written notification in an email addressed to you, Administrator Barrs, and others at FMCSA on December 24. My email expressly stated that DMV will move the revocation date to March 6, 2026 in order to give our respective teams time to work through outstanding issues. As you know, this

extension is intended to avoid unnecessarily disenfranchising drivers who remain eligible for a CDL under federal rules. Six days later, with the January 5 date fast approaching and after receiving no response from FMCSA, DMV issued a release informing the public of the extension to March 6, 2026. It was only after this public release that you responded to my email.

DMV will continue to work collaboratively with FMCSA to address outstanding issues—including by providing FMCSA advance notice of steps we intend to take, as we did in this instance. It is our hope that we can resolve these issues as quickly as possible to avoid further disruption to the lives and livelihoods of those affected drivers who remain eligible for a CDL under federal rules, as well as the businesses that rely on their important work.

Bernard

Bernard C. Soriano
M: 916.952.0080

---

**From:** Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>
**Sent:** Tuesday, December 30, 2025 4:08 PM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>; Hampton, Michael (FMCSA) <michael.hampton@dot.gov>
**Subject:** RE: FMCSA/CA DMV Meeting Follow-up

Bernard,

Thank you for your continued work on this important safety issue. In your December 10, 2025 response to FMCSA's Conditional Determination letter of October 26, 2025, you clearly indicated that after the 60-day period provided in the cancellation notices sent out on November 6, 2025, you would cancel and record in CDLIS the cancellation of almost all noncompliant non-domiciled CLPs and CDLs. This date was agreed upon and formed an important basis for FMCSA's conditional determination that your CAP would bring California into compliance. FMCSA's Conditional Determination letter also noted that DMV's failure to implement, or undue delay in implementing, the required corrective actions would result in FMCSA issuing a Final Determination of Substantial Noncompliance.

FMCSA noted in our email to you of December 22, 2025, that if the SDLA intended to extend the initial revocation deadline from 1/5/2026, California DMV would be required to notify FMCSA in writing of this proposed extension. Extending the timeline for cancellation of improperly issued CLPs and CDLs is a continuing safety concerns, therefore, FMCSA does not accept your proposed extension.

Scott

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Wednesday, December 24, 2025 2:00 PM
**To:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>; Barrs, Derek (FMCSA) <derek.barrs@dot.gov>
**Subject:** Re: FMCSA/CA DMV Meeting Follow-up

Some people who received this message don't often get email from bernard.soriano@dmv.ca.gov. Learn why this is important

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

+Administrator Barrs

Chris...........Thank you for your email. We are working on responses to these items and will send as soon as they are ready. There is an item that is time sensitive. For item #10 (*It's being reported California "will not act on the notices of cancellations". Can you please explain whether California has changed their position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated?*), our position has not changed on license cancellations. However, in light of the ongoing discussions between DMV and FMCSA, coupled with holiday season scheduling challenges, the January 5, 2026 date will need to be changed.

We will move that cancellation date to March 6. This will give time for FMCSA and DMV to work through the compliance process and the items listed in your note. We very much appreciate the constructive relationship and look forward to FMCSA's on-site visits next year.

Please let me know if there are any questions. Thanks and Happy Holidays..............Bernard

Bernard C. Soriano

M: 916.952.0080

---

**From:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>
**Sent:** Monday, December 22, 2025 11:30 AM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** RE: FMCSA/CA DMV Meeting Follow-up

Good morning, Bernard,

As a follow-up to the meeting recap provided last week, FMCSA has expanded upon the original follow-up with the addition of new bullet points, as well as adding several new questions, which will need to be addressed as part of our review of the DMV's license issuance process. I have highlighted the additional bullets and questions within the original list of follow-up items below.

1. A comprehensive breakdown of the approximately 65,000 unexpired non-domiciled CDL's

- Explain the methodology used to identify the 65,000 unexpired non-domiciled CDLs.
  - How many CLPs were found to be inconsistent with current FMCSRs? Was the same methodology used to identify the 65,000 CDLs, applied to identify non-compliant CLPs?
- The December letter indicates approximately 21,100 of the 65,000 unexpired non-domiciled CDLs were identified to have expiration dates beyond the date of the driver's legal presence. During the call today it was identified the SDLA developed methodology and processes which separated the 21,100 drivers into 'buckets', with each having distinct revocation dates.
  - Please identify the different types of buckets and the number of drivers present within each.
    - What specific methodology was used to separate each bucket and how did each get categorized.
    - How as the legal presence checked for each CDL/CLP? It was indicated SAVE was queried for each driver. Is there a scenario were a SAVE query/legal presence check was not required.
  - Of immediate concern were buckets of drivers which will have their licenses revoked on 1/5/2025.
    - Please provide a list (or lists) of drivers from each of these buckets.
    - We can discuss dates for review of these records (likely in person) once received.
    - NOTE: If the SDLA intends on extending the initial revocation deadline from 1/5/2026, the SDLA is required to notify FMCSA in writing of this proposed extension, as it deviates from the dates outlined within their 12/10 letter.

2. Specifics on the proposed short-term solutions to your non-domiciled license issuance process.

- The December letter provides general framework for the solution but does not provide sufficient detail on the program deployed, monitoring processes implemented, or the data fields used.
- Please provide specifics on the Headquarters license issuance process.

    - What processes have changed?
    - How will the new program be regularly monitored for continued compliance.
    - Will it be rolled out statewide, if so, when?
- Please provide details of the license issuances routing through Headquarters.
    - What is the flow chart from field location to routing to headquarters, and what safeguards are in place to prevent those field offices from issuing a license?
        - Have the license issuance permissions for field office employees been removed?
        - What is the anticipated oversight by headquarters staff?
    - What happens when the license information gets routed to headquarters?
    - How does headquarters anticipate handling the volume of license reviews/issuances?
- It was indicated field training was conducted on 12/17. Please provide the memo distributed, as well as any other policies or procedures developed and deployed, in addition to a mechanism to confirm all field staff have been (or will be) trained on the new solution.
- Please confirm if it will be possible to test this solution in an environment mirroring production.
- Is it possible field staff could override this solution to issue a regular CDL to an individual?
    - If not, what solution was put in place to prevent this?

3. Specifics on the long-term solutions to your non-domiciled license issuance processes.

- The December letter indicates the project to implement the proposed long-term solution is currently being worked on and will take six months. Given the reported staffing shortages and priority struggles, please indicate if the proposed rollout is six months from the date of the letter, or an estimate to be determined later.
- How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
- Will there be a mechanism to track completion of training by field/HQ staff?
    - What percentage of front-line employees have attended, or will attend training, on the issuance of non-domiciled CDLs?
    - Are the Headquarters staff trained differently from field office staff?
    - How will newly hired employees be trained on non-domiciled license issuance practices?

4. Specifics on how your headquarters staff will monitor the short- and long-term solutions.

- How often will headquarters staff be making these checks?
- What mechanism will be in place to ensure any erroneous expiration dates are captured and corrected?

5. Specifics on the policies and procedures being updated to address CLP/CDL issuances to non-DACA recipients.

- How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
- Will there be a mechanism to track completion of training by field/HQ staff?
- In your system, if an applicant selects 'Mexico' as their country of citizenship, does a hard stop trigger immediately, or does it rely on a headquarters or field office employee noticing the country?
- How exactly does your system distinguish a DACA recipient from a standard Mexican national?
    - Does it require a specific code from the Employment Authorization Document (EAD) (e.g. C33) to proceed?

6. Provide any guidance supplied by USCIS or DHS relative to issuance, renewals, extensions of expiration dates of legal presence documentation.

7. DMV's letter indicates the DMV will cease the practice of issuing temporary non-domiciled CDLs and CLPs to all applicants, both domiciled and non-domiciled. Please provide supporting policies, procedures, and statutes or rules.

- Is there ever a time this could be overridden by staff? If so, who may perform the overrides and in what scenarios?
- The DMV has admitted temporary license were not being reported to CDLIS. What has the DMV done to ensure *every* transaction, including 'K' restriction removals or temporary issuances, are now immediately pushed to CDLIS?
- Can the DMV confirm it has discontinued its practice of issuing a temporary license prior to the verifications of lawful status or otherwise ensure all drivers are eligible to hold the driving privileges of their respective CDLs?
- Can the DMV confirm all convictions, while a driver was operating under a temporary license, have now been updated and recorded to CDLIS?
- What policies/procedures/training/systems have changed? Please provide details.

8. On Page 8 of the December 10, 2025, response letter from the DMV, it was indicated "DMV's internal audit uncovered certain situations in which the system failed to properly notate a CDL as a limited term."

- In this case, the CDL would not be identified as limited term; therefore, has the DMV conducted an audit of each 'standard' CDL issuance to ensure those licenses were issued properly?
    - If so, how many standard CDLs were improperly issued?

9. California claimed the removal of a 'K' restriction wasn't an 'issuance' until FMCSA corrected this assertion on October 23, 2025.

- Has the DMV audited every other transaction type (e.g. address change, duplicate licenses, adding varying endorsements, downgrades/upgrades) to guarantee no other issuance transactions are bypassing lawful presence verifications?

10. It's being reported California "will not act on the notices of cancellations". Can you please explain whether California has changed their position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated?

Preliminary On-site Follow-up Process:

- Since the short-term solution proposed is using DMV headquarters as the final stop in the license issuance process, the FMCSA needs to be on-site at field office(s) to view how DMV field staff will transmit the license requests to headquarters. Additionally, FMCSA will need to be on-site at headquarters to view the processes and systems used when issuing licenses under the short-term solution.
    - This will need to be done in simulation first, prior to resuming issuances of non-domiciled CDLs.
    - FMCSA will evaluate the safeguards, policies, procedures, and training to assure issuances are in accordance with FMCSA's regulations.
- Once verified and confirmed by FMCSA, California may begin issuing non-domiciled CDLs using the approved short-term solution.
- When DMV begins relying solely on the proposed long-term solution (within 6 months), the FMCSA will be on-site at field office(s), and headquarters as necessary, to verify the safeguards for issuance, PRIOR to permitting the DMV to resume issuing CDLs at field offices.

Thank you,

Chris Snook, CDL Program Specialist

Western Service Center

U.S. Department of Transportation

Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)

Western Service Center

12300 W Dakota Ave, Suite B-131

Lakewood, CO 80228

---

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Friday, December 19, 2025 6:22 AM
**To:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** Re: FMCSA/CA DMV Meeting Follow-up

You don't often get email from bernard.soriano@dmv.ca.gov. Learn why this is important

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Thank you Chris.  We appreciate you and the team meeting with us.  We'll be sending you the information to review.

Bernard C. Soriano

M: 916.952.0080

---

**From:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>
**Sent:** Thursday, December 18, 2025 3:47 PM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** FMCSA/CA DMV Meeting Follow-up

Good afternoon, Bernard,

Thank you to you and your team for meeting with us this morning. We appreciate your efforts to get your internal audit done in such a short amount of time and we look forward to assisting you going forward. As discussed, we wanted to recap some of the items covered this morning, to ensure everyone has a clear path moving forward.

It was determined the following information will be needed to begin a comprehensive follow up by the FMCSA. Additional information may be required throughout the review of your non-domiciled license issuance process.

Before we proceed/commit to an in-person review, FMCSA is requesting follow-up on the items below. Tentatively, we discussed meeting in person after the first of the year to begin review of non-domiciled records, and that it may be a multi-part/tiered, review process.

1. A comprehensive breakdown of the approximately 65,000 unexpired non-domiciled CDL's

- Explain the methodology used to identify the 65,000 unexpired non-domiciled CDLs.
  - How many CLPs were found to be inconsistent with current FMCSRs? Was the same methodology used to identify the 65,000 CDLs, applied to identify non-compliant CLPs?
- The December letter indicates approximately 21,100 of the 65,000 unexpired non-domiciled CDLs were identified to have expiration dates beyond the date of the driver's legal presence. During the call today it was identified the SDLA developed methodology and processes which separated the 21,100 drivers into 'buckets', with each having distinct revocation dates.
  - Please identify the different types of buckets and the number of drivers present within each.
    - What specific methodology was used to separate each bucket and how did each get categorized.

        - How as the legal presence checked for each CDL/CLP? It was indicated SAVE was queried for each driver. Is there a scenario were a SAVE query/legal presence check was not required.
    - Of immediate concern were buckets of drivers which will have their licenses revoked on 1/5/2025.
        - Please provide a list (or lists) of drivers from each of these buckets.
        - We can discuss dates for review of these records (likely in person) once received.
        - NOTE: If the SDLA intends on extending the initial revocation deadline from 1/5/2026, the SDLA is required to notify FMCSA in writing of this proposed extension, as it deviates from the dates outlined within their 12/10 letter.

2. Specifics on the proposed short-term solutions to your non-domiciled license issuance process.

- The December letter provides general framework for the solution but does not provide sufficient detail on the program deployed, monitoring processes implemented, or the data fields used.
- It was indicated field training was conducted on 12/17. Please provide the memo distributed, as well as any other policies or procedures developed and deployed, in addition to a mechanism to confirm all field staff have been (or will be) trained on the new solution.
- Please confirm if it will be possible to test this solution in an environment mirroring production.
- Is it possible field staff could override this solution to issue a regular CDL to an individual?
    - If not, what solution was put in place to prevent this?

3. Specifics on the long-term solutions to your non-domiciled license issuance processes.

- The December letter indicates the project to implement the proposed long-term solution is currently being worked on and will take six months. Given the reported staffing shortages and priority struggles, please indicate if the proposed rollout is six months from the date of the letter, or an estimate to be determined later.
- How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
- Will there be a mechanism to track completion of training by field/HQ staff?

4. Specifics on how your headquarters staff will monitor the short- and long-term solutions.

- How often will headquarters staff be making these checks?
- What mechanism will be in place to ensure any erroneous expiration dates are captured and corrected?

5. Specifics on the policies and procedures being updated to address CLP/CDL issuances to non-DACA recipients.

- How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
- Will there be a mechanism to track completion of training by field/HQ staff?

6. Provide any guidance supplied by USCIS or DHS relative to issuance, renewals, extensions of expiration dates of legal presence documentation.

7. DMV's letter indicates the DMV will cease the practice of issuing temporary non-domiciled CDLs and CLPs to all applicants, both domiciled and non-domiciled. Please provide supporting policies, procedures, and statutes or rules.

- Is there ever a time this could be overridden by staff? If so, who may perform the overrides and in what scenarios?

We look forward to hearing from you soon. If you have any questions, please let us know.

Thank you,

Chris Snook, CDL Program Specialist

Western Service Center

U.S. Department of Transportation

Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)

Western Service Center

12300 W Dakota Ave, Suite B-131

Lakewood, CO 80228

## Snook, Christopher (FMCSA)

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Monday, January 5, 2026 5:00 PM
**To:** Hernandez, Scott (FMCSA); Snook, Christopher (FMCSA); Triepke, Kristin J.@DMV; Wida, Deanna M.@DMV; Howard, Nakisha G.@DMV; Hembeck, Mari (FMCSA); Jones, Joshua (FMCSA); Price, Craig (FMCSA); Hampton, Michael (FMCSA)
**Subject:** Re: FMCSA/CA DMV Meeting Follow-up

**Categories:** Red Category

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Scott,

Our program is now compliant and we look forward to completing a review with FMCSA.

As we wait for this review, we are holding these records in their current state.

We look forward to your visit here in Sacramento.

Bernard

Bernard C. Soriano
M: 916.952.0080

---

**From:** Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>
**Sent:** Monday, January 5, 2026 3:19 PM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>; Hampton, Michael (FMCSA) <michael.hampton@dot.gov>
**Subject:** RE: FMCSA/CA DMV Meeting Follow-up

Bernard,

Could you please confirm the current status of the approximately 17,000 drivers subject to the 60-day notice? Specifically, did the California DMV extend the deadline, or have these licenses now been revoked/downgraded?

Thank you, Scott

---

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Monday, January 5, 2026 4:10 PM
**To:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>;

Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** Re: FMCSA/CA DMV Meeting Follow-up

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Chris............Attached is a document with answers to FMCSA's questions. Please feel free to reach out as needed.

As mentioned previously we're ready to have FMCSA onsite to review the program. Please let us know when you and the FMCSA team are ready so we can schedule. Thanks..............Bernard

Bernard C. Soriano
M: 916.952.0080

---

**From:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>
**Sent:** Monday, December 22, 2025 11:30 AM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** RE: FMCSA/CA DMV Meeting Follow-up

Good morning, Bernard,

As a follow-up to the meeting recap provided last week, FMCSA has expanded upon the original follow-up with the addition of new bullet points, as well as adding several new questions, which will need to be addressed as part of our review of the DMV's license issuance process. I have highlighted the additional bullets and questions within the original list of follow-up items below.

1. A comprehensive breakdown of the approximately 65,000 unexpired non-domiciled CDL's
   - Explain the methodology used to identify the 65,000 unexpired non-domiciled CDLs.
     - How many CLPs were found to be inconsistent with current FMCSRs? Was the same methodology used to identify the 65,000 CDLs, applied to identify non-compliant CLPs?
   - The December letter indicates approximately 21,100 of the 65,000 unexpired non-domiciled CDLs were identified to have expiration dates beyond the date of the driver's legal presence. During the call today it was identified the SDLA developed methodology and processes which separated the 21,100 drivers into 'buckets', with each having distinct revocation dates.
     - Please identify the different types of buckets and the number of drivers present within each.
       - What specific methodology was used to separate each bucket and how did each get categorized.
       - How as the legal presence checked for each CDL/CLP? It was indicated SAVE was queried for each driver. Is there a scenario were a SAVE query/legal presence check was not required.
     - Of immediate concern were buckets of drivers which will have their licenses revoked on 1/5/2025.
       - Please provide a list (or lists) of drivers from each of these buckets.
       - We can discuss dates for review of these records (likely in person) once received.
       - NOTE: If the SDLA intends on extending the initial revocation deadline from 1/5/2026, the SDLA is required to notify FMCSA in writing of this proposed extension, as it deviates from the dates outlined within their 12/10 letter.

2. Specifics on the proposed short-term solutions to your non-domiciled license issuance process.
- The December letter provides general framework for the solution but does not provide sufficient detail on the program deployed, monitoring processes implemented, or the data fields used.
- Please provide specifics on the Headquarters license issuance process.
    - What processes have changed?
    - How will the new program be regularly monitored for continued compliance.
    - Will it be rolled out statewide, if so, when?
- Please provide details of the license issuances routing through Headquarters.
    - What is the flow chart from field location to routing to headquarters, and what safeguards are in place to prevent those field offices from issuing a license?
        - Have the license issuance permissions for field office employees been removed?
        - What is the anticipated oversight by headquarters staff?
    - What happens when the license information gets routed to headquarters?
    - How does headquarters anticipate handling the volume of license reviews/issuances?
- It was indicated field training was conducted on 12/17. Please provide the memo distributed, as well as any other policies or procedures developed and deployed, in addition to a mechanism to confirm all field staff have been (or will be) trained on the new solution.
- Please confirm if it will be possible to test this solution in an environment mirroring production.
- Is it possible field staff could override this solution to issue a regular CDL to an individual?
    - If not, what solution was put in place to prevent this?

3. Specifics on the long-term solutions to your non-domiciled license issuance processes.
- The December letter indicates the project to implement the proposed long-term solution is currently being worked on and will take six months. Given the reported staffing shortages and priority struggles, please indicate if the proposed rollout is six months from the date of the letter, or an estimate to be determined later.
- How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
- Will there be a mechanism to track completion of training by field/HQ staff?
    - What percentage of front-line employees have attended, or will attend training, on the issuance of non-domiciled CDLs?
    - Are the Headquarters staff trained differently from field office staff?
    - How will newly hired employees be trained on non-domiciled license issuance practices?

4. Specifics on how your headquarters staff will monitor the short- and long-term solutions.
- How often will headquarters staff be making these checks?
- What mechanism will be in place to ensure any erroneous expiration dates are captured and corrected?

5. Specifics on the policies and procedures being updated to address CLP/CDL issuances to non-DACA recipients.
- How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
- Will there be a mechanism to track completion of training by field/HQ staff?
- In your system, if an applicant selects 'Mexico' as their country of citizenship, does a hard stop trigger immediately, or does it rely on a headquarters or field office employee noticing the country?
- How exactly does your system distinguish a DACA recipient from a standard Mexican national?
    - Does it require a specific code from the Employment Authorization Document (EAD) (e.g. C33) to proceed?

6. Provide any guidance supplied by USCIS or DHS relative to issuance, renewals, extensions of expiration dates of legal presence documentation.

7. DMV's letter indicates the DMV will cease the practice of issuing temporary non-domiciled CDLs and CLPs to all applicants, both domiciled and non-domiciled. Please provide supporting policies, procedures, and statutes or rules.
- Is there ever a time this could be overridden by staff? If so, who may perform the overrides and in what scenarios?

- The DMV has admitted temporary license were not being reported to CDLIS. What has the DMV done to ensure *every* transaction, including 'K' restriction removals or temporary issuances, are now immediately pushed to CDLIS?
- Can the DMV confirm it has discontinued its practice of issuing a temporary license prior to the verifications of lawful status or otherwise ensure all drivers are eligible to hold the driving privileges of their respective CDLs?
- Can the DMV confirm all convictions, while a driver was operating under a temporary license, have now been updated and recorded to CDLIS?
- What policies/procedures/training/systems have changed? Please provide details.

8. On Page 8 of the December 10, 2025, response letter from the DMV, it was indicated "DMV's internal audit uncovered certain situations in which the system failed to properly notate a CDL as a limited term."
   - In this case, the CDL would not be identified as limited term; therefore, has the DMV conducted an audit of each 'standard' CDL issuance to ensure those licenses were issued properly?
     - If so, how many standard CDLs were improperly issued?
9. California claimed the removal of a 'K' restriction wasn't an 'issuance' until FMCSA corrected this assertion on October 23, 2025.
   - Has the DMV audited every other transaction type (e.g. address change, duplicate licenses, adding varying endorsements, downgrades/upgrades) to guarantee no other issuance transactions are bypassing lawful presence verifications?
10. It's being reported California "will not act on the notices of cancellations". Can you please explain whether California has changed their position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated?

Preliminary On-site Follow-up Process:

- Since the short-term solution proposed is using DMV headquarters as the final stop in the license issuance process, the FMCSA needs to be on-site at field office(s) to view how DMV field staff will transmit the license requests to headquarters. Additionally, FMCSA will need to be on-site at headquarters to view the processes and systems used when issuing licenses under the short-term solution.
  - This will need to be done in simulation first, prior to resuming issuances of non-domiciled CDLs.
  - FMCSA will evaluate the safeguards, policies, procedures, and training to assure issuances are in accordance with FMCSA's regulations.
- Once verified and confirmed by FMCSA, California may begin issuing non-domiciled CDLs using the approved short-term solution.
- When DMV begins relying solely on the proposed long-term solution (within 6 months), the FMCSA will be on-site at field office(s), and headquarters as necessary, to verify the safeguards for issuance, PRIOR to permitting the DMV to resume issuing CDLs at field offices.

Thank you,

Chris Snook, CDL Program Specialist
Western Service Center
U.S. Department of Transportation
Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)
Western Service Center
12300 W Dakota Ave, Suite B-131
Lakewood, CO 80228

OUR ROADS OUR RESPONSIBILITY
Partnership for Road Safety

**From:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>
**Sent:** Friday, December 19, 2025 6:22 AM
**To:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** Re: FMCSA/CA DMV Meeting Follow-up

You don't often get email from bernard.soriano@dmv.ca.gov. Learn why this is important

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Thank you Chris. We appreciate you and the team meeting with us. We'll be sending you the information to review.

Bernard C. Soriano
M: 916.952.0080

---

**From:** Snook, Christopher (FMCSA) <christopher.snook@dot.gov>
**Sent:** Thursday, December 18, 2025 3:47 PM
**To:** Soriano, Bernard C.@DMV <Bernard.Soriano@dmv.ca.gov>; Triepke, Kristin J.@DMV <Kristin.Triepke@dmv.ca.gov>; Wida, Deanna M.@DMV <Deanna.Wida@dmv.ca.gov>; Howard, Nakisha G.@DMV <Nakisha.Howard@dmv.ca.gov>; Hernandez, Scott (FMCSA) <scott.hernandez@dot.gov>; Hembeck, Mari (FMCSA) <mari.hembeck@dot.gov>; Jones, Joshua (FMCSA) <joshua.jones@dot.gov>; Price, Craig (FMCSA) <craig.price@dot.gov>
**Subject:** FMCSA/CA DMV Meeting Follow-up

Good afternoon, Bernard,

Thank you to you and your team for meeting with us this morning. We appreciate your efforts to get your internal audit done in such a short amount of time and we look forward to assisting you going forward. As discussed, we wanted to recap some of the items covered this morning, to ensure everyone has a clear path moving forward.

It was determined the following information will be needed to begin a comprehensive follow up by the FMCSA. Additional information may be required throughout the review of your non-domiciled license issuance process.

Before we proceed/commit to an in-person review, FMCSA is requesting follow-up on the items below. Tentatively, we discussed meeting in person after the first of the year to begin review of non-domiciled records, and that it may be a multi-part/tiered, review process.

1. A comprehensive breakdown of the approximately 65,000 unexpired non-domiciled CDL's
    - Explain the methodology used to identify the 65,000 unexpired non-domiciled CDLs.
        - How many CLPs were found to be inconsistent with current FMCSRs? Was the same methodology used to identify the 65,000 CDLs, applied to identify non-compliant CLPs?
    - The December letter indicates approximately 21,100 of the 65,000 unexpired non-domiciled CDLs were identified to have expiration dates beyond the date of the driver's legal presence. During the call today it was identified the SDLA developed methodology and processes which separated the 21,100 drivers into 'buckets', with each having distinct revocation dates.
        - Please identify the different types of buckets and the number of drivers present within each.
            - What specific methodology was used to separate each bucket and how did each get categorized.

        - How as the legal presence checked for each CDL/CLP? It was indicated SAVE was queried for each driver. Is there a scenario were a SAVE query/legal presence check was not required.
    - Of immediate concern were buckets of drivers which will have their licenses revoked on 1/5/2025.
        - Please provide a list (or lists) of drivers from each of these buckets.
        - We can discuss dates for review of these records (likely in person) once received.
        - NOTE: If the SDLA intends on extending the initial revocation deadline from 1/5/2026, the SDLA is required to notify FMCSA in writing of this proposed extension, as it deviates from the dates outlined within their 12/10 letter.

2. Specifics on the proposed short-term solutions to your non-domiciled license issuance process.
    - The December letter provides general framework for the solution but does not provide sufficient detail on the program deployed, monitoring processes implemented, or the data fields used.
    - It was indicated field training was conducted on 12/17. Please provide the memo distributed, as well as any other policies or procedures developed and deployed, in addition to a mechanism to confirm all field staff have been (or will be) trained on the new solution.
    - Please confirm if it will be possible to test this solution in an environment mirroring production.
    - Is it possible field staff could override this solution to issue a regular CDL to an individual?
        - If not, what solution was put in place to prevent this?
3. Specifics on the long-term solutions to your non-domiciled license issuance processes.
    - The December letter indicates the project to implement the proposed long-term solution is currently being worked on and will take six months. Given the reported staffing shortages and priority struggles, please indicate if the proposed rollout is six months from the date of the letter, or an estimate to be determined later.
    - How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
    - Will there be a mechanism to track completion of training by field/HQ staff?
4. Specifics on how your headquarters staff will monitor the short- and long-term solutions.
    - How often will headquarters staff be making these checks?
    - What mechanism will be in place to ensure any erroneous expiration dates are captured and corrected?
5. Specifics on the policies and procedures being updated to address CLP/CDL issuances to non-DACA recipients.
    - How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered?
    - Will there be a mechanism to track completion of training by field/HQ staff?
6. Provide any guidance supplied by USCIS or DHS relative to issuance, renewals, extensions of expiration dates of legal presence documentation.
7. DMV's letter indicates the DMV will cease the practice of issuing temporary non-domiciled CDLs and CLPs to all applicants, both domiciled and non-domiciled. Please provide supporting policies, procedures, and statutes or rules.
    - Is there ever a time this could be overridden by staff? If so, who may perform the overrides and in what scenarios?

We look forward to hearing from you soon. If you have any questions, please let us know.

Thank you,

Chris Snook, CDL Program Specialist
Western Service Center
U.S. Department of Transportation
Federal Motor Carrier Safety Administration (www.fmcsa.dot.gov)
Western Service Center
12300 W Dakota Ave, Suite B-131
Lakewood, CO 80228

# FMCSA Questions – 12/18 and 12/22 emails

1. A comprehensive breakdown of the approximately 65,000 unexpired non-domiciled CDL's
   - Explain the methodology used to identify the 65,000 unexpired non-domiciled CDLs.

     **DMV searched our database to identify all CDL records for customers that provided non-domiciled legal presence documents.**

     - How many CLPs were found to be inconsistent with current FMCSRs? **There were 3,757 valid non-domiciled CLPs on Sept. 26, 2025 (when DMV paused issuing non-domiciled CLPs & CDLs). Of those, 66 were issued pending legal presence verification. All non-domiciled CLPs were cancelled or have expired.**
     - Was the same methodology used to identify the 65,000 CDLs, applied to identify non-compliant CLPs? **For CLPs, the DMV searched through the database to identify CLPs that were issued prior to a legal presence verification.**
   - The December letter indicates approximately 21,100 of the 65,000 unexpired non-domiciled CDLs were identified to have expiration dates beyond the date of the driver's legal presence. During the call today it was identified the SDLA developed methodology and processes which separated the 21,100 drivers into 'buckets', with each having distinct revocation dates.
     - Please identify the different types of buckets and the number of drivers present within each.
       - **There are 3 "buckets" that the CDLs were assigned.**
         1) **CDLs with expiration dates exceeding legal presence date - 17,299 CDLs**
         2) **CDLs given to citizens of Canada or Mexico - 1,613 CDLs**
         3) **CDLs that were federally non-compliant (i.e., non-REAL ID), with expiration dates exceeding legal presence date - 2,719 CDLs**

       - What specific methodology was used to separate each bucket and how did each get categorized?

**<u>Bucket 1:</u> CDLs with expiration dates exceeding legal presence date**

**The first bucket contains 17,299 CDLs. To determine if the CDL expiration date was beyond the legal presence expiration date, DMV searched all of the 65,000 records of unexpired non-domiciled CDLs, manually gathered all of the legal presence documents for each record, and compared the legal presence document expiration date to the expiration date of the card, which is identified from the DMV's internal master database of all driver's license records. Then the records were sorted to determine how many had expiration dates that did not align with the legal presence documents.**

**Bucket 2: CDLs given to citizens of Canada or Mexico.**

- **The second bucket contains 1,613 CDLs. This group was identified as part of the manual review of the legal presence documents gathered for each record.**

**Bucket 3: CDLs with expiration dates exceeding legal presence date and which are federally non-compliant (i.e., not REAL IDs).**

- **The third bucket contains 2,719 CDLs. This group was identified in the same manner as the group in Bucket 1.**

- How was the legal presence checked for each CDL/CLP? Legal presence is checked for each CDL/CLP. **A SAVE check is performed automatically in the field office. The DMV's licensing computer system – called EASE – is programmed to check SAVE as part of each application. Additionally, for transactions sent to HQ for further processing, staff manually perform a second SAVE check.**
- It was indicated SAVE was queried for each driver. Is there a scenario where a SAVE query/legal presence check was not required. **No.**

- Of immediate concern were buckets of drivers which will have their licenses revoked on 1/5/2025.
  - Please provide a list (or lists) of drivers from each of these buckets. **As discussed in our December 18, 2025 meeting, we can provide a sample for FMCSA review. In addition, FMCSA is welcome to re-check the original sample of 145 records used in the annual review. Finally, we invite FMCSA on-site to review as many records as desired.**
  - We can discuss dates for review of these records (likely in person) once received.
  - NOTE: If the SDLA intends on extending the initial revocation deadline from 1/5/2026, the SDLA is required to notify FMCSA in writing of this proposed extension, as it deviates from the dates outlined within their 12/10 letter. **Notification was provided in the December 24, 2025, email to FMCSA.**

2. Specifics on the proposed short-term solutions to your non-domiciled license issuance process.

   - The December letter provides general framework for the solution but does not provide sufficient detail on the program deployed, monitoring processes implemented, or the data fields used.
   - Please provide specifics on the Headquarters license issuance process.

- What processes have changed? **Before the audit, technical limitations in DMV's computer system meant that incorrect expiration dates were automatically assigned for some non-domiciled CDLs. If this error was not detected by field office technicians, it would not have been corrected. Going forward, using DMV's short-term solution, all applications will be routed to DMV HQ for processing. The DMV's intelligent automation (bot) will automatically verify the SAVE response against the customer's legal presence document. The system will then automatically match the license expiration date to the expiration date of the legal presence document. This bypasses the software error in our current computer program.**
- How will the new program be regularly monitored for continued compliance. **Headquarters staff will periodically review a sampling of the legal presence documents presented and the SAVE inquiry conducted to ensure the cards are issued appropriately.**
- Will it be rolled out statewide, if so, when? Statewide. **Customers will be able to apply for CDLs statewide, and all applications will be routed to headquarters for final processing. We have been ready to implement this short-term solution as of December 17, 2025, and staff have been trained to follow this procedure as of that date. However, at FMCSA's instruction, we have not lifted the pause on issuing non-domiciled CDLs.**

o Please provide details of the license issuances routing through Headquarters.

- What is the flow chart from field location to routing to headquarters, and what safeguards are in place to prevent those field offices from issuing a license? **Customer applies for CDL and provides non-domiciled legal presence documentation. DMV's system will not finalize the application or issue a CLP. Instead, the application will be forwarded to the bot at headquarters. A bot will automatically verify SAVE against the legal presence document, then match the license expiration date to the expiration date of the legal presence document.** Have the license issuance permissions for field office employees been removed? **Yes. On September 29, 2025, field office employees were directed to stop issuing non-domiciled CLPs and CDLs. On October 28, 2025, programming modifications to prohibit field office employees from issuing non-domiciled CLPs and CDLs were released into production; field office employees are no longer able to issue non-domiciled CDLs.**
    - What is the anticipated oversight by headquarters staff? **Headquarters staff will periodically review a sample of the legal presence documents presented and the SAVE inquiry conducted by the bot to ensure the cards are issued appropriately.**
- What happens when the license information gets routed to headquarters?

**The newly developed bot automatically verifies SAVE against the legal presence document presented with each new CDL application. Then the bot automatically terms the CDL expiration date to match the driver's legal presence expiration date. If the SAVE response is one that the bot cannot process, the transaction is then manually reviewed by HQ personnel.**

  - How does headquarters anticipate handling the volume of license reviews/issuances**? Headquarters will utilize multiple units to conduct the reviews.**

- It was indicated field training was conducted on 12/17. Please provide the memo distributed, as well as any other policies or procedures developed and deployed, in addition to a mechanism to confirm all field staff have been (or will be) trained on the new solution. **Training was provided on December 17, 2025. See attachment in email sent on December 18, 2025. Field offices were instructed to record which employees received the training on December 17th and continue to record training that occurs on an ongoing basis for employees who were absent on December 17, 2025.**
- Please confirm if it will be possible to test this solution in an environment mirroring production. **Yes.**
  - Is it possible field staff could override this solution to issue a regular CDL to an individual? **No.**
  - If not, what solution was put in place to prevent this? **N/A.**

3. Specifics on the long-term solutions to your non-domiciled license issuance processes.
   - The December letter indicates the project to implement the proposed long-term solution is currently being worked on and will take six months. Given the reported staffing shortages and priority struggles, please indicate if the proposed rollout is six months from the date of the letter, or an estimate to be determined later. **To clarify, DMV does not have staffing shortages and priority struggles. Developers for this effort are currently working on National Medical Registry II. As they become available, they will work on this project. This effort will take approximately six months from the date the programming begins. In the interim, the short-term solution is designed to resolve all issues discovered during DMV's internal audit.**
   - How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered**? In addition to the training already provided on December 17, the training will be provided to new staff and those that were not available that day, and any updates to that training will become part of the onboarding training for employees and refresher training will be conducted as needed.**
   - Will there be a mechanism to track completion of training by field/HQ staff? **Yes.**
     - What percentage of front-line employees have attended, or will attend training, on the issuance of non-domiciled CDLs? **All field office staff will be trained.**

# FMCSA Questions – 12/18 and 12/22 emails

- Are the Headquarters (HQ) staff trained differently from field office (FO) staff? **Yes. Headquarters staff perform specialized processing that field office personnel are unable to complete. They will also have access to the training information provided to field office.**
- How will newly hired employees be trained on non-domiciled license issuance practices? **Training will become part of the onboarding training for employees and refresher training will be provided as needed.**

4. Specifics on how your headquarters staff will monitor the short- and long-term solutions.
   - How often will headquarters staff be making these checks?

     **Short term: daily manual review.**

     **Long term: completely automated. An audit will be conducted regularly to ensure compliance.**
   - What mechanism will be in place to ensure any erroneous expiration dates are captured and corrected?

     **Short Term: The applications will be sent to Headquarters for final processing by the bot. The bot work will be reviewed and audited for continued accuracy. Any transactions that cannot be completed by the bot will be done manually. Any non-domiciled cards issued will be reviewed by headquarters staff before mailing to customers.**

     **Long Term: For all applications where the customer has provided a limited term non-domiciled legal presence document, the updated system will prompt field office technicians to ensure presentation of legal presence documents and will interpret SAVE responses to automatically assign expiration dates based on the expiration of the applicant's legal presence document. The records will be marked as limited term in our system to ensure that DMV continues to request new legal presence documents when licensees return for subsequent transactions. Non-domiciled applications will be processed in a field office, and audited for continued accuracy.**
5. Specifics on the policies and procedures being updated to address CLP/CDL issuances to non-DACA recipients.

   - How often will training be conducted to ensure field staff remain apprised of changes to policies and procedures. In what manner will this training be delivered**? As described above, this training will become part of the onboarding training for employees and refresher training will be provided as needed.**
   - Will there be a mechanism to track completion of training by field/HQ staff? **The field offices track training by requiring staff to complete training forms.**
   - In your system, if an applicant selects 'Mexico' as their country of citizenship, does a hard stop trigger immediately, or does it rely on a headquarters or field office employee noticing

the country? **Our application does not have this question. Field offices will not process the application unless the applicant is a DACA recipient.** How exactly does your system distinguish a DACA recipient from a standard Mexican national? **Field offices will not process the application unless the EAD indicates C33. In the future, DMV will also make system changes to programmatically prevent the issuance of a non-domiciled CDL to an applicant who is a Mexican citizen, unless they are a DACA recipient, based on the EAD and SAVE response.**

- Does it require a specific code from the Employment Authorization Document (EAD) (e.g. C33) to proceed? **Field offices will not process the application unless the EAD indicates C33. Once processed, the SAVE response must also show that the applicant is a DACA recipient, or the application will be denied.**

6. Provide any guidance supplied by USCIS or DHS relative to issuance, renewals, extensions of expiration dates of legal presence documentation.

**DMV drafted the chart below with input from DHS, and DHS confirmed to DMV that it is correct:**

| *If the Verified Response Received Specifies* | Then |
|---|---|
| A clearly defined end date | Key the end date as the applicant's expiration date for their DL/ID card. |
| Conflicting end dates | Key the end date that extends the applicant's DL/ID card out the furthest. |
| Duration of Stay (D/S) | Key **1-year** date from the applicant's DL/ID card application date. (**EXAMPLE:** If the applicant completed their DL/ID card renewal application on October 1, 2019, issue their DL/ID card with a September 30, 2020, expiration date.) |
| No Date | Key **1-year** date from the applicant's DL/ID card application date. (**EXAMPLE:** If the applicant completed their DL/ID card renewal application on October 1, 2019, issue their DL/ID card with a September 30, 2020, expiration date.) |

7. DMV's letter indicates the DMV will cease the practice of issuing temporary non-domiciled CDLs and CLPs to all applicants, both domiciled and non-domiciled. Please provide supporting policies, procedures, and statutes or rules. See attached.
   - Is there ever a time this could be overridden by staff? If so, who may perform the overrides and in what scenarios? DMV's programming will prohibit the issuance of a temporary CDL or CLP for non-domiciled customers.
   - The DMV has admitted temporary license were not being reported to CDLIS. What has the DMV done to ensure every transaction, including 'K' restriction removals or temporary issuances, are now immediately pushed to CDLIS? **DMV has ceased issuing temporary CDLs/CLPs. All other types of transactions, including adding and removing restrictions, are updated to the record and report the most current information via CDLIS.**
   - Can the DMV confirm it has discontinued its practice of issuing a temporary license prior to the verifications of lawful status or otherwise ensure all drivers are eligible to hold the

driving privileges of their respective CDLs? **Yes, we have ceased the issuance of temporary licenses to CDL applicants and have removed the ability to issue temporary licenses from our system.**

- Can the DMV confirm all convictions, while a driver was operating under a temporary license, have now been updated and recorded to CDLIS? **Yes.**
- What policies/procedures/training/systems have changed? Please provide details. **As described throughout these responses and in our December 10 letter, DMV has made and is continuing to make changes to policies, procedures, training and systems based on directives from FMCSA.**

8. On Page 8 of the December 10, 2025, response letter from the DMV, it was indicated "DMV's internal audit uncovered certain situations in which the system failed to properly notate a CDL as a limited term."
   - In this case, the CDL would not be identified as limited term; therefore, has the DMV conducted an audit of each 'standard' CDL issuance to ensure those licenses were issued properly? **While DMV's processing system may not have notated the CDL as limited term non-domiciled for the purposes of processing transactions, DMV did not issue standard cards (without limited term marking) to customers that presented limited term non-domiciled legal presence documents. Therefore, the methodology used to identify CDLs with expiration dates exceeding legal presence dates based on records of limited-term CDL cards captured all non-domiciled CDLs.**
   - If so, how many standard CDLs were improperly issued? **None.**
9. California claimed the removal of a 'K' restriction wasn't an 'issuance' until FMCSA corrected this assertion on October 23, 2025.
   - Has the DMV audited every other transaction type (e.g. address change, duplicate licenses, adding varying endorsements, downgrades/upgrades) to guarantee no other issuance transactions are bypassing lawful presence verifications? **DMV has implemented corrective measures to ensure that legal presence documents are verified, consistent with FMCSA regulations.**
10. It's being reported California "will not act on the notices of cancellations". Can you please explain whether California has changed their position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated? **The report that California "will not act on the notices of cancellations" is inaccurate. DMV addressed this question via email on Dec. 24, 2025.**

# CALIFORNIA DMV EXTENDS DATE OF NONDOMICILED CDL ACTION

Contact: Office of Public Affairs
2415 First Avenue
Sacramento, CA 95818
(916) 657-6437 | dmvpublicaffairs@dmv.ca.gov [mailto:dmvpublicaffairs@dmv.ca.gov]

**FOR IMMEDIATE RELEASE**
**December 30, 2025**

**What you need to know:** The DMV has extended the anticipated cancelation date of approximately 17,000 nondomiciled Commercial Driver's Licenses by 60 days.

---

**Sacramento** — The California Department of Motor Vehicles (DMV) has extended the cancelation date of approximately 17,000 nondomiciled Commercial Driver's Licenses (CDL) for an additional 60 days, while the state works with representatives of the Federal Motor Carrier Safety Administration (FMCSA) to resolve their concerns with DMV's CDL licensing process prior to March 6, 2026.

> "Commercial drivers are an important part of our economy — our supply chains don't move, and our communities don't stay connected without them," said DMV Director Steve Gordon. "We are hopeful that our collaboration with the federal government will give FMCSA confidence in our updated processes to allow California to promptly resume issuance of nondomiciled commercial driver's licenses."

Feedback

This 60-day extension allows the parties to find a solution that permits drivers to remain working to serve our communities. The affected drivers will be receiving letters shortly, informing them of the extension.

DMV stands ready to resume issuing commercial driver's licenses, including corrected licenses to eligible drivers.

**Before Going to a DMV Office — Try Online First**

Most DMV tasks do not require an office visit. The DMV encourages customers to use its online services [/portal/dmv-online/] and other service channels for tasks such as eligible driver's license and vehicle registration renewals. Customers can also use the Service Advisor [/portal/?s=] on the DMV website to learn about options to complete DMV tasks.

Go Paperless — To sign up for paperless vehicle registration and driver's license renewal notices, sign in or create a secure online account at dmv.ca.gov [/portal] to opt in.

###

Sign up to receive the latest DMV News Alerts: DMV NEWS ALERTS – California DMV [/portal/dmv-news-alerts/]

# IMPORTANT CHANGES TO LIMITED-TERM LEGAL PRESENCE CDL REQUIREMENTS

Important Updates

## DMV Ceases Issuing Nondomiciled CLPs/CDLs

On September 26, 2025, the Federal Motor Carrier Safety Administration (FMCSA) issued a preliminary determination of non-compliance letter to DMV relating to the issuance of non-domiciled commercial learner's permits (CLPs) and commercial driver's licenses (CDLs).
In accordance with the direction provided by the FMCSA, the DMV has ceased issuing nondomiciled CLPs/CDLs. If your CLP or CDL status changes, you will receive a letter and/or email advising of one of the following:

- Non-domiciled CLPs and pending non-domiciled CDL applications will be cancelled.
- Non-domiciled CDLs issued out of compliance with state law and federal regulations at the time of issuance will be cancelled.
- Valid/unexpired non-domiciled CDLs issued in compliance with state law and federal regulations at the time of issuance will remain valid until the expiration date.

## 60-Day Extension for Approximately 17,000 Nondomiciled CDLs

On December 30, 2025, the DMV extended the cancellation date for approximately 17,000 nondomiciled CDLs by an additional 60 days while the state continues to work with representatives of the FMCSA to resolve concerns with the CDL licensing process prior to March 6, 2026.
This extension provides additional time for the DMV and FMCSA to identify a solution that allows affected drivers to continue working and serving California communities. **Impacted drivers will receive letters shortly informing them of the extension.**

## What You Can Do Now

| |
|---|
| If you do not have permanent residency or U.S. citizenship: |
| YOUR NEXT STEP<br>Apply for a noncommercial driver's license by the date on your letter by visiting a DMV office. |
| WILL I BE CHARGED AN ADDITIONAL FEE?<br>The fee will be waived with a copy of your letter. |

| |
|---|
| If you have permanent residency or U.S. citizenship: |
| YOUR NEXT STEP<br>Apply for a commercial driver's license by the date on your letter by visiting a DMV office. |
| WILL I BE CHARGED AN ADDITIONAL FEE?<br>The fee will be waived with a copy of your letter. |
| If you are a driver domiciled in Mexico or Canada, and you do not participate in the Deferred Action for Childhood Arrivals (DACA) program: |
| YOUR NEXT STEP<br>Apply for a noncommercial driver's license by the date on your letter by visiting a DMV office. |
| WILL I BE CHARGED AN ADDITIONAL FEE?<br>The fee will be waived with a copy of your letter. |

For office visits, make an appointment [/portal/appointments/select-appointment-type] and complete an online application [/portal/driver-licenses-identification-cards/dl-id-online-app-edl-44/] prior to your appointment.

## More Information

For more information about the newly imposed federal requirements, visit fmcsa.dot.gov [https://www.fmcsa.dot.gov/].

### Frequently Asked Questions

#### When will DMV cancel my CDL?

DMV is extending the cancellation dates of January 5, 2026 and February 13, 2026 to close of business, March 6, 2026. However, drivers domiciled in Mexico or Canada, unless they participate in the DACA program, will retain their original cancellation dates of January 5, 2026 and February 13, 2026, respectively.

#### If my CDL is cancelled, can I keep driving my regular car?

+

#### If my CDL is cancelled, do I have to retake the written knowledge test and behind the wheel test again to get my noncommercial driver's license?

+

#### Do I have to go to a DMV office to get a new driver's license?

+

#### What are the new legal presence document requirements?

+

#### Who should I contact for additional questions?

You may call the DMV at (916) 306-5153.

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

1200 New Jersey Avenue, S.E.
Washington, D.C. 20590

January 7, 2026

<u>Via Electronic Mail and UPS</u>
The Honorable Gavin Newsom
Governor of California
1021 O Street, Suite 9000
Sacramento, CA 95814

Mr. Steve Gordon, Director
California Department of Motor Vehicles
2415 1st Avenue
Mail Station F101
Sacramento, CA 95818

**NOTICE OF FINAL DETERMINATION OF SUBSTANTIAL NONCOMPLIANCE**

Dear Governor Newsom and Mr. Gordon:

The U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA or Agency) served the State of California a Preliminary Determination of Noncompliance (Preliminary Determination) in accordance with 49 CFR § 384.307(b) on September 26, 2025. The Preliminary Determination proposed a finding that the California Department of Motor Vehicles (DMV) has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled commercial learner's permits (CLPs) and commercial driver's licenses (CDLs)[1] set forth in 49 CFR § 384.212 and the standards for certain Commercial Driver's License Information System (CDLIS) reporting requirements in 49 CFR § 384.225.[2]

---

[1] FMCSA notes that California issues non-domiciled CLPs and CDLs as "limited term" CLPs and CDLs. However, this final determination uses the term "non-domiciled" CLPs and CDLs to ensure consistent terminology with Federal regulations.

[2] On September 29, 2025, FMCSA issued an interim final rule (IFR) amending Federal regulations in 49 CFR parts 383 and 384 applicable to State Driver's Licensing Agencies' (SDLAs) issuance of non-domiciled CLPs and CDLs. *See* Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses, 90 Fed. Reg. 46509 (Sept. 29, 2025). On November 13, 2025, the U.S. Court of Appeals for the District of Columbia Circuit issued an Order in *Lujan v. FMCSA*, Case No. 25-1215, staying the effective date of the IFR pending court review. Because the transactions at issue occurred prior to publication of the IFR, the regulations cited in this final determination of noncompliance reflect the pre-IFR text of parts 383 and 384, specifically the 2024 edition of Title 49 of the Code of Federal Regulations, which is currently in effect.

FMCSA reviewed California's "Response to the September 26, 2025, Letter Regarding Commercial Learning Permit and Commercial Driver's License Issuance," which DMV submitted on October 26, 2025, convened an informal conference with DMV officials on October 30, 2025 and engaged in email and telephonic communications with DMV officials on November 5 and 6, 2025. DMV informed FMCSA that it took initial steps to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs. On November 13, 2025, FMCSA issued a Conditional Determination reiterating that DMV's failure to complete, or undue delay in completing, the required corrective actions as set forth in the Preliminary Determination, including immediate rescission of all noncompliant non-domiciled CLPs and CDLs, would result in FMCSA issuing a Final Determination of Substantial Noncompliance.[3] Specifically, FMCSA's Conditional Determination was predicated on DMV's corrective actions—primarily, the timely rescission of approximately 17,000 noncompliant non-domiciled CLPs and CDLs.

On December 10, 2025, DMV submitted a "Response to November 13, 2025 Conditional Determination Regarding Non-Domiciled Commercial Driver's License and Learning Permits Issuance," which stated, among other things, that DMV issued cancellation notices to approximately 17,400 drivers and the cancellations would be effective on January 5, 2026. However, on December 30, 2025, contrary to the mutually agreed upon date with FMCSA, DMV unilaterally informed the public that noncompliant non-domiciled CLPs and CDLs that were due to be cancelled on January 5, 2026 would not be cancelled until March 6, 2026.[4] FMCSA subsequently reiterated to DMV that any extension was not approved and that failure or delay in the implementation of the required corrective actions would be contrary to the corrective action plan.

After considering DMV's responses and its failure to adhere to the schedule for corrective action, FMCSA makes this Final Determination of Substantial Noncompliance with the standards for issuing non-domiciled CLPs and CDLs set forth in 49 CFR § 384.212(a). FMCSA considered DMV's implemented and planned corrective actions and determined that they are inadequate to correct the deficiencies noted in the Preliminary Determination because they were not implemented on a schedule mutually agreed upon by the Agency and the State. FMCSA makes this final determination in accordance with 49 CFR §§ 384.307(d) and 384.309(a)(2). Accordingly, pursuant to 49 U.S.C. § 31314(c)(1) and 49 CFR § 384.401(a), FMCSA is withholding four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would

---

[3] The September 26, 2025 Preliminary Determination and the November 13, 2025 Conditional Determination letters are incorporated by reference into this Final Determination of Substantial Noncompliance.

[4] *Important Changes to Limited-Term Legal Presence CDL Requirements*, State of California DMV, https://www.dmv.ca.gov/portal/important-changes-to-limited-term-legal-presence-cdl-requirements (last visited Jan. 7, 2026); *California DMV Extends Date of Nondomiciled CDL Action*, State of California DMV, https://www.dmv.ca.gov/portal/news-and-media/california-dmv-extends-date-of-nondomiciled-cdl-action (last visited Jan. 7, 2026).

otherwise be apportioned to California under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $158,318,508.[5,6]

## I. Background[7]

FMCSA initiated an annual program review (APR) of DMV's CDL program in August 2025 in accordance with 49 U.S.C. § 31311 and 49 CFR § 384.307. As set forth in the Preliminary Determination and restated in the Conditional Determination, of the non-domiciled driver records sampled during the 2025 APR, FMCSA found that approximately 25 percent failed to comply with requirements in 49 CFR parts 383 and 384. Accordingly, the September 26, 2025 Preliminary Determination proposed a finding that DMV failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs set forth in 49 CFR § 384.212. Specifically, FMCSA found that DMV issued non-domiciled CLPs or CDLs with an expiration date that exceeded the expiration of the driver's lawful presence documents and issued non-domiciled CLPs or CDLs to citizens of Mexico who were not present in the United States under the Deferred Action for Childhood Arrivals (DACA) program—drivers who are per se ineligible to hold a non-domiciled CDL. FMCSA also found that DMV failed to comply with the requirements for substantial compliance with 49 CFR § 384.225 because DMV issued "temporary" non-domiciled CLPs and CDLs to drivers without first validating the driver's lawful presence and without reporting issuance of the temporary credentials to CDLIS. FMCSA found that the repeated errors discovered during the 2025 APR evinced an unacceptable deviation from FMCSA's regulations when issuing non-domiciled CLPs and CDLs and indicated a systemic breakdown in DMV's issuance process for non-domiciled CLPs and CDLs. Accordingly, as set forth in the Preliminary Determination, FMCSA determined that DMV must take the following immediate corrective actions:

- Immediately pause issuing non-domiciled CLPs and CDLs;
- As soon as practicable, identify all unexpired non-domiciled CLPs and CDLs that were issued not in compliance with parts 383 and 384;
- Conduct an internal audit to identify all procedural and programming errors; training and quality assurance problems; insufficient policies and practices; and other issues that have resulted in widespread noncompliance in issuing non-domiciled CLPs and CDLs;
- Notify FMCSA of the audit findings and the number of unexpired noncompliant non-domiciled CLPs and CDLs;
- Take immediate action to correct the deficiencies identified in DMV's internal audit and in the Preliminary Determination;
- Take immediate action to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs and reissue the licenses in accordance with parts 383 and 384 in effect at the time of the reissuance;

---

[5] FMCSA calculates this amount based on FY 2026 funding levels.

[6] 49 U.S.C. § 31314(d), 49 CFR § 384.403.

[7] The relevant statutory and regulatory authorities are set forth in the Preliminary Determination and Conditional Determination letters and are not repeated in this final determination.

- Resume issuing non-domiciled CLPs and CDLs only after the State ensures that all statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices meet each and every standard of subpart B of 49 CFR part 384 and 49 U.S.C. § 31311.

On October 26, 2025, DMV provided a “Response to the September 26, 2025, Letter Regarding Commercial Learning Permit and Commercial Driver’s License Issuance” (October Response). DMV’s October Response described the corrective actions that DMV had implemented or intended to implement. DMV’s October Response also argued that no regulations in 49 CFR parts 383 and 384 required the State to issue non-domiciled CLPs and CDLs with an expiration date that did not exceed the expiration date of the driver’s lawful presence documents and that FMCSA’s pre-IFR regulations did not prohibit DMV from issuing non-domiciled CLPs or CDLs to citizens of Mexico and Canada who are not present in the United States under the DACA program.

On October 30, 2025, FMCSA convened an informal conference with Director Gordon and other DMV representatives to provide California an opportunity to inform FMCSA of its implemented or planned corrective actions, as well as to present or to discuss any other information for FMCSA’s consideration. Further, through email and telephonic communications that occurred on November 5 and 6, 2025, DMV provided information about its action to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs. In this regard, DMV stated that it initiated State proceedings to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs where the license expiration exceeded the drivers’ lawful presence documents. DMV provided FMCSA with a template of its Notice of Commercial Driver’s License (CDL) Cancellation, stating that it was sent to approximately 17,000 recipients. The cancellation notice informed the drivers that DMV will cancel their CDLs 60 days from the date of the letter. DMV further stated that it would continue to review all non-domiciled CLPs and CDLs and anticipated completion by November 15, 2025.

FMCSA issued the Conditional Determination on November 13, 2025 based on DMV’s representation that it initiated proceedings to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs within 60 days, which would have been on or around January 5, 2026. The Conditional Determination reiterated that the Agency appropriately issued the Preliminary Determination, and that DMV did not demonstrate substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. The Conditional Determination accepted DMV’s corrective action of rescinding approximately 17,000 noncompliant non-domiciled CLPs and CDLs *within the mutually agreed-upon 60-day timeframe*. The Conditional Determination also emphasized, among other requirements, that the timely rescission of all unexpired non-domiciled CLPs and CDLs that failed to meet the requirements of parts 383 and 384, as interpreted by FMCSA, at the time of issuance is critically important to the overall framework of the required corrective action plan. As outlined in the Conditional Determination, “DMV’s failure to rescind and reissue all noncompliant non-domiciled CLPs and CDLs, including those issued to citizens of Canada and Mexico not present under the DACA program, will render its overall corrective action plan materially deficient and wholly inadequate to correct the deficiencies noted in the Preliminary Determination.”

The Conditional Determination also noted that the corrective action plan set forth in the Preliminary Determination required DMV to pause all non-domiciled CLP and CDL issuances immediately but that DMV failed to do so by continuing to upgrade non-domiciled CDLs by removing the K (intrastate only) restriction from the licenses of drivers upon their 21st birthday.[8] The Conditional Determination further informed DMV that its failure to implement, or undue delay in implementing, the required corrective actions would result in FMCSA issuing a Final Determination of Substantial Noncompliance and withholding up to four percent of certain Federal-aid Highway funds as well as possibly decertifying of California's CDL program. At no time did FMCSA approve an extension of the mutually agreed-upon January 5, 2026 cancellation date for the 17,000 noncompliant non-domiciled CDLs.

On December 10, 2025, DMV submitted a "Response to November 13, 2025 Conditional Determination Regarding Non-Domiciled Commercial Driver's License and Learning Permits Issuance" (December Response). As explained in Section II below, DMV's December Response described its corrective action plan and asserted that it has complied with FMCSA's corrective action requests. DMV explained that it issued notices to approximately 17,400 drivers, stating that it would cancel their non-domiciled CDL in 60 days if they could not present evidence of lawful presence meeting or exceeding the expiration date of their CDL. DMV's December Response explained that the 60-day period provided in the November 6, 2025 cancellation notices would expire on January 5, 2026. DMV stated that any remaining non-compliant licenses that were noticed on November 6, 2025 would be canceled and recorded in CDLIS on January 5, 2026.

FMCSA and DMV representatives continued to communicate, allowing California an opportunity to inform FMCSA of its implemented or planned corrective actions, as well as discuss DMV's license issuance process. On December 24, 2025, DMV informed FMCSA that the recission date of January 5, 2026 needed to be changed to March 6, 2026. On December 30, 2025, without reaching a mutually agreed upon date with FMCSA other than January 5, 2026, DMV unilaterally informed the public that noncompliant non-domiciled CLPs and CDLs that were due to be cancelled on January 5, 2026 would not be cancelled until March 6, 2026. FMCSA subsequently reiterated to DMV that an extension was not approved and that failure or delay in the implementation of the required corrective actions would be contrary to the corrective action plan.

## II. California's December Response to FMCSA's Conditional Determination and Corrective Actions

FMCSA's Preliminary Determination set forth specific corrective actions DMV must undertake to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312. The required corrective actions centered on DMV immediately pausing issuance of non-domiciled CLPs and CDLs; identifying non-domiciled CLPs and CDLs that were not issued in accordance with

[8] The Conditional Determination cited a transaction that occurred on October 15, 2025, when DMV upgraded the non-domiciled CDL of a driver by removing the K restriction. The Conditional Determination went on to state that on October 21, 2025, this driver operated a semi-truck on a California freeway, struck a queue of stopped vehicles, and fatally injured three people and that the crash may have been avoided if California had complied with the corrective action of pausing non-domiciled CDL issuance required in the Preliminary Determination.

FMCSA's standards; conducting an internal audit to identify the reasons for noncompliance and notifying FMCSA of its findings; immediately acting to correct the deficiencies identified in the internal audit; acting to void or rescind all unexpired noncompliant non-domiciled CLPs and CDLs; and reissuing the licenses subject to the standards in parts 383 and 384 in effect at the time of the reissuance.[9] DMV would be permitted to resume non-domiciled CLP and CDL issuance only after becoming able to meet each and every standard of subpart B of part 384 and 49 U.S.C. § 31311.[10] Under 49 CFR § 384.307(c), DMV's corrective action must be adequate to correct the deficiencies noted in the Preliminary Determination and must be implemented on a schedule mutually agreed upon by FMCSA and DMV.

In its December Response, DMV continued to assert that FMCSA's regulations did not require California to issue non-domiciled CLPs and CDLs with an expiration date that did not exceed the expiration date of the driver's lawful presence documents, though DMV acknowledged that California State law includes such a requirement. DMV continued to argue that it interprets 49 CFR § 383.23(b)(1) to permit issuance of non-domiciled CLPs and CDLs to citizens of Mexico and Canada so long as they do not have a license from those jurisdictions and present the documentation required under 49 CFR §§ 383.71(f) and 383.73(f). The December Response also disputes FMCSA's interpretation of the regulations that the removal of a K (intrastate only) "restriction" is an upgrade and contends that it did not fail to pause issuance of non-domiciled CLPs and CDLs immediately.[11] FMCSA previously addressed these arguments in the Preliminary Determination and in the Conditional Determination and reaffirms the Agency's positions set forth therein.

In addition, DMV's December Response recites the corrective actions that it has implemented or intends to implement. DMV explained that upon receipt of the Preliminary Determination, it complied with the corrective action requiring an immediate pause in issuing non-domiciled CLPs and CDLs and that no non-domiciled CLPs or CDLs have been issued since FMCSA's September 26, 2025 letter. Yet, DMV goes on to state that it ceased automatically removing the K restriction from all CDLs on October 30, 2025 and that it reinstated the K restrictions it had removed. DMV also reported that it completed an audit of approximately 65,000 records of non-domiciled CDL holders and has identified all unexpired non-domiciled CDLs that were issued out of compliance with parts 383 and 384. In this regard, DMV advised that it identified approximately 20,100 non-domiciled CDLs where the expiration date on the CDL exceeded the driver's legal presence documentation at the time of issuance, and further identified approximately 1,600 CDLs that were issued to Mexican and Canadian nationals who were not

---

[9] Preliminary Determination at Sec. IV.

[10] *Id*.

[11] DMV states that FMCSA did not convey the Agency's position that removal of a "K" restriction constitutes an upgrade until October 23, 2025. However, under 49 CFR part 383, in effect at the time California lifted the restriction, removal of a restriction that would result in an *expansion* of the license holder's driving privileges, such as removal of the "K" intrastate only restriction, was an upgrade. This was not a new position. At the time the upgrade occurred, the corrective action plan required DMV to pause all non-domiciled CLP and CDL issuances. If California had complied with the corrective action of pausing non-domiciled CDL issuance required in the Preliminary Determination, the driver, supra note 8, would not have held an interstate CDL, and the crash may have been avoided. As stated in the Conditional Determination, DMV upgraded this driver's non-domiciled CDL without applying the standards of the IFR, which was in effect at the time the upgrade occurred. If DMV had applied the standards of the IFR, as required at the time, the driver would have been ineligible for a non-domiciled CDL.

present in the United States under the DACA program and, therefore, were ineligible to hold a non-domiciled CDL. DMV also stated that it would send the 1,600 Mexican and Canadian non-domiciled CDL holders who are not present under DACA 60-day cancellation notices on December 15, 2025, which would have been effective on February 13, 2026.

Further, regarding DMV's practice of issuing temporary non-domiciled CLPs or CDLs before validating the driver's lawful presence, DMV notes that those temporary CLPs and CDLs in effect as of September 26, 2025 have expired, because those credentials were only valid for a maximum of 60 days. DMV also notes that DMV has stopped issuing temporary CLPs and CDLs for both standard and non-domiciled CDLs.

Moreover, DMV advised that it audited its procedures and systems and identified various programming and computer errors that resulted in the deficiencies FMCSA outlined in its Preliminary Determination letter. More specifically, DMV explained that DMV system automation resulted in the faulty calculation of non-domiciled CDL expiration dates. DMV explained that it issued non-domiciled credentials to non-DACA Mexican and Canadian citizens because it misunderstood FMCSA's determination that States may not issue a non-domiciled CLP or CDL to citizens of Mexico or Canada, because FMCSA has determined that the Canadian Provinces and Territories and the United Mexican States issue CDLs in accordance with standards that are consistent with 49 CFR part 383.[12] DMV attributes its issuance of temporary or interim credentials to California law and field office procedure. DMV pledged to update and end these practices and described its efforts to correct these deficiencies.

In its December Response, DMV confirmed that it issued cancellation notices to approximately 17,400 drivers on November 6, 2025, informing the drivers that it would cancel their CDLs in 60 days if they could not present evidence of their lawful presence meeting or exceeding the expiration date of their CDLs. DMV explained that the 60-day period provided in the cancellation notices would expire on January 5, 2026. DMV stated that any remaining non-compliant licenses that were noticed on November 6, 2025 would be canceled and recorded in CDLIS on January 5, 2026.

Following the December Response, FMCSA and DMV representatives continued to communicate, allowing DMV an opportunity to inform FMCSA of its implemented or planned corrective actions, as well as to discuss DMV's license issuance process. On December 18, 2025, FMCSA advised DMV that any extension of the initial January 5, 2026 revocation deadline must be submitted in writing, because this would deviate from the commitment outlined in the December Response. In a December 22, 2025 follow-up email, FMCSA explicitly asked DMV whether it changed its position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated. FMCSA again directed DMV to notify FMCSA in writing of a proposed extension of the deadline. On December 24, 2025, DMV informed FMCSA that due to ongoing dialogue between DMV and FMCSA, the recission date of January 5, 2026 would need to be changed. DMV subsequently advised that it would move the cancellation date to March 6, 2026, to allow time for the parties to work through the compliance process and FMCSA's requested follow-up inquiries.

[12] *See* 49 CFR §§ 383.23, fn. 1; 383.71(f)(1)(i); and 383.73(f)(1).

On December 30, 2025, DMV unilaterally informed the public that noncompliant non-domiciled CLPs and CDLs that were due to be cancelled on January 5, 2026 would not be cancelled until March 6, 2026.[13] DMV advised the public that impacted drivers will receive letters shortly informing them of the extension.[14] DMV did so without assent from FMCSA. In an email on the same date, FMCSA advised DMV that an extension to March 6, 2026 was unacceptable because extending the timeline for the cancellation of improperly issued CLPs and CDLs is a continuing safety concern. The following day, DMV responded that it did not initially receive a response to its December 24, 2025 proposed extension. Rather than following up with FMCSA by email or requesting a meeting, as DMV has done in the past, DMV instead decided to issue a press release informing the public of the extension to March 6, 2026. To date, DMV has not issued a retraction of its December 30, 2025 press release.

Regarding the actions DMV has taken as outlined above and the others it committed to take in the December Response, FMCSA acknowledges DMV's attempts at coming into compliance with FMCSA's designated corrective actions. However, as stated in the Conditional Determination, DMV cannot demonstrate substantial compliance with the standards for issuing non-domiciled CLPs and CDLs until it has completed the required corrective actions within the mutually agreed-upon schedule. Prior to FMCSA issuing the Conditional Determination, DMV explicitly stated that it sent the cancellation notices to approximately 17,000 recipients on September 6, 2025, with a deadline on January 5, 2026. These letters were material to the Agency's decision to issue the Conditional Determination because they demonstrated DMV's prompt corrective action to an identified issue. In the December Response, DMV confirmed the deadline date, indicating continued progress toward compliance. However, two weeks later, without seeking approval from FMCSA about its proposed extension, DMV attempted to independently change a key term of its corrective action plan and the mutually agreed upon timeline; and did so, in a press release. DMV moved the anticipated deadline two months later to March 6, 2026.

Moreover, DMV's January 5, 2026 commitment to rescind the noncompliant non-domiciled credentials was not the only commitment to corrective action DMV has failed to deliver upon. In DMV's December Response, DMV asserted that "the 60-day period for the non-domiciled CDL cancellation notices scheduled to be sent on December 15, 2025, will expire on February 13, 2026."[15] FMCSA has discovered the following language in an FAQ heralding a "60-Day Extension for Approximately 17,000 Nondomiciled CDLs" on DMV's website: question, "When will DMV cancel my CDL?"[16] Response, "DMV is extending the cancellation dates of January

---

[13] *Important Changes to Limited-Term Legal Presence CDL Requirements*, State of California DMV, https://www.dmv.ca.gov/portal/important-changes-to-limited-term-legal-presence-cdl-requirements (last visited Jan. 7, 2026); *California DMV Extends Date of Nondomiciled CDL Action*, State of California DMV, https://www.dmv.ca.gov/portal/news-and-media/california-dmv-extends-date-of-nondomiciled-cdl-action (last visited Jan. 7, 2026).

[14] *Id*.

[15] December Response, at 7.

[16] *Important Changes to Limited-Term Legal Presence CDL Requirements*, State of California DMV, https://www.dmv.ca.gov/portal/important-changes-to-limited-term-legal-presence-cdl-requirements (last visited Jan. 7, 2026).

5, 2026 and February 13, 2026 to close of business, March 6, 2026."[17] DMV failed to mention in its correspondence with FMCSA between December 18 and 31, 2025 that it also planned to extend the cancellation dates of additional drivers whose non-domiciled CDLs were scheduled to be cancelled on February 13, 2026. FMCSA opposes this extension as well and urges DMV, as an important safety partner, to honor its initial commitments to complete these vital corrective actions by the dates that FMCSA and DMV mutually agreed upon, January 5 and February 13, 2026, respectively.

FMCSA acknowledges that DMV has implemented or indicates that it plans to implement some of the corrective actions required in the Preliminary Determination. However, as DMV is aware, the rescission and reissuance of all unexpired noncompliant non-domiciled CLPs and CDLs in accordance with parts 383 and 384, in effect at the time of reissuance, is critically important to the overall framework of the required corrective action plan. DMV acknowledges that more than 65,000 drivers held a California-issued non-domiciled CLP or CDL. Of those, DMV identified approximately 20,100 non-domiciled CDLs that expire past the date of the driver's legal presence at the time of license issuance; and of those, 17,400 were scheduled to be cancelled on January 5, 2026, with a remaining 2,700 scheduled to be cancelled on February 13, 2026. As FMCSA has already noted, these corrective actions were the basis for FMCSA's issuance of a Conditional Determination, a mutual recognition that DMV was moving toward coming into compliance with parts 383 and 384, while acknowledging DMV has more work to do.[18]

DMV is well aware of its obligation to not only provide documentation of corrective action as required by the Agency, but that corrective action must be adequate to correct the deficiencies noted in the program review and be implemented on a schedule mutually agreed upon by the Agency and the State.[19] DMV failed to implement the crucial corrective action of rescinding and reissuing the licenses in accordance with 49 CFR § 384.212, FMCSA and DMV's mutually agreed upon timeline, and DMV's own commitments. Instead, DMV unilaterally extended the timeline for cancellation of improperly issued CLPs and CDLs, flouted the mutually agreed upon terms of the State's corrective action, and is in substantial non-compliance with parts 383 and 384. As a result, thousands of drivers continue to hold noncompliant California-issued non-domiciled CLPs or CDLs. This is unacceptable and a significant safety risk. Because DMV has failed to undertake the necessary step of rescinding and reissuing noncompliant non-domiciled CLPs and CDLs, as promised and agreed upon, FMCSA determines that DMV's corrective actions undertaken thus far are inadequate to correct the deficiencies noted in the Preliminary Determination.

---

[17] *Id*.

[18] FMCSA has repeatedly requested an audit report identifying every driver to whom DMV has issued a non-compliant CLP or CDL. However, DMV only agreed to provide a sample of the identified drivers, which is inadequate for FMCSA to verify compliance. FMCSA also requested details to verify that DMV did not issue any non-domiciled CLPs or CDLs between September 29, and October 28, 2025, but DMV refused to provide details to demonstrate compliance during this period. Furthermore, DMV has not provided the required details regarding the approximately 2,000 drivers who achieved U.S. citizenship or permanent residency prior to the January 5, 2026 deadline, the sustainability of DMV's short-term solution, or realistic timeframes for implementation of the long-term programmatic changes.

[19] 49 CFR 384.307(c).

## III. Withholding of Funds Based on Noncompliance

FMCSA determines that DMV has failed to meet the requirement for substantial compliance with the standards for issuing non-domiciled CLPs and CDLs set forth in 49 CFR § 384.212 and the standards for reporting "temporary" or "interim" non-domiciled CLP and CDL issuance to CDLIS in 49 CFR § 384.225. Accordingly, pursuant to 49 U.S.C. § 31314(c)(1) and 49 CFR § 384.401(a), FMCSA is withholding four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to California under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $158,318,508. Under 49 U.S.C. § 31314(d) and 49 CFR § 384.403, funds withheld following a substantial noncompliance determination are no longer available for apportionment to California. Further, DMV may also be subject to decertification of its CDL program in accordance with 49 U.S.C. § 31312 and 49 CFR § 384.405.

If DMV persists in substantial noncompliance with the standards set forth in 49 CFR §§ 384.212 and 384.225 in subsequent years, FMCSA may withhold up to eight percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2028 that would otherwise be apportioned to California under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $316,637,016.[20]

## IV. Conclusion

FMCSA is deeply disappointed by DMV's failure to implement *all* required corrective actions set forth in the Preliminary Determination. The withholding of Federal funds is the direct and necessary consequence of California's own actions and its demonstrated disregard for Federal safety standards. The Agency remains committed to working with DMV officials to bring California's CDL program into substantial compliance to ensure that further withholding of funds or decertification of California's CDL program is unnecessary.

Please direct all questions regarding this Notice to Philip Thomas, Deputy Associate Administrator for Safety, at philip.thomas@dot.gov.

Sincerely,

Derek D. Barrs
Administrator

[20] FMCSA calculates this amount based on FY 2026 funding levels.

## CERTIFICATE OF SERVICE

I hereby certify that on **June 22, 2026**, I electronically filed the Joint Appendix with the United States Court of Appeals for the District of Columbia Circuit via the CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: June 22, 2026

*/s/ Vanessa Jordan*
Vanessa Jordan