ORAL ARGUMENT NOT YET SCHEDULED

No. 26-1027

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CALIFORNIA DEPARTMENT OF MOTOR VEHICLES,

Petitioner,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION; ET AL,

Respondents.

## On Petition for Review of an Order of the
## Federal Motor Carrier Safety Administration

## PETITIONER'S FINAL REPLY BRIEF

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE
SETH E. GOLDSTEIN
Supervising Deputy Attorneys General

KRISTEN C.A. KIDO
SHIWON CHOE
JAY C. RUSSELL
Deputy Attorneys General
State of California
Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3617
Fax: (415) 703-5480
Jay.Russell@doj.ca.gov
*Attorneys for Petitioner*
*California Department of Motor Vehicles*

**TABLE OF CONTENTS**

**Page**

Introduction and Summary of Argument ..................................................... 1

Argument ............................................................................................... 2

    I.     FMCSA's Final Determination Is Based on a Misreading of the Law .................................................................................. 2

        A.    No Federal Law Required Commercial Driver's Licenses to Expire on or Before a Driver's Legal Presence Documentation ............................................... 2

        B.    FMCSA Fails to Show Why the Plain Meaning Should Not Control ..................................................... 4

    II.    FMCSA Cannot Use California's Implementation of State Law to Support the Final Determination ................................... 8

    III.   FMCSA's Additional Bases for the Final Determination Are Unsupported ................................................................. 11

    IV.   There Is No Legal Basis for FMCSA's Indeterminate "Pause" on DMV's Authority to Issue Licenses ..................... 14

Conclusion ......................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*BFI Waste Sys. of N. Am., Inc. v. F.A.A.*
293 F.3d 527 (D.C. Cir. 2002).................................................... 14

*Christensen v. Harris Cnty.*
529 U.S. 576 (2000)................................................................. 8

*Delta Air Lines, Inc. v. Exp.-Imp. Bank of United States*
85 F. Supp. 3d 436 (D.D.C. 2015)............................................ 12

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*
591 U.S. 1 (2020)..................................................................... 12

*Fed. Election Comm'n v. Akins*
524 U.S. 11 (1998)............................................................... 4, 10

*Hisp. Affs. Project v. Acosta*
901 F.3d 378 (D.C. Cir. 2018)................................................... 5

*Kisor v. Wilkie*
588 U.S. 558 (2019)................................................................. 2

*Nat'l Env't Dev. Ass'n Clean Air Project v. E.P.A.*
752 F.3d 999 (D.C. Cir. 2014)................................................. 13

*Nat'l Fed'n of Indep. Bus. v. Dep't of Labor*
595 U.S. 109 (2022)........................................................... 11, 15

*Nat'l Fed'n of Indep. Bus. v. Sebelius*
567 U.S. 519 (2012)............................................................... 10

*Robinson v. Shell Oil Co.*
519 U.S. 337 (1997)............................................................. 2, 3

*Sprint Corp. v. F.C.C.*
315 F.3d 369 (D.C. Cir. 2003)................................................... 4

*Taniguchi v. Kan Pac. Saipan, Ltd.*
566 U.S. 560 (2012)................................................................ 2

*Tripoli Rocketry Ass'n, Inc.* v. *Bureau of Alcohol, Tobacco, Firearms, and Explosives*
437 F.3d 75 (D.C. Cir. 2006)................................................. 10

*United Mine Workers of Am. v. Fed. Mine Safety & Health Rev. Comm'n*
671 F.2d 615 (D.C. Cir. 1982)............................................. 6, 8

STATUTES

United States Code
Title 23 § 104(b)(1)................................................................ 14
Title 23 § 104(b)(2)................................................................ 14
Title 49 § 101 ........................................................................ 11
Title 49 §§ 31100 et seq......................................................... 5
Title 49 Chapter 313 ............................................................. 11

Administrative Procedure Act................................................... 4

Security and Accountability for Every Port Act of 2006 (SAFE Port Act) H.R. 4954, 109th Cong., § 703(a) 120 Stat. 1884 (Oct. 13, 2006) ..................................................................... 7

REGULATIONS

8 C.F.R.
§ 274a.12(a)(5)....................................................................... 5
§ 274a.12(c)(9)...................................................................... 5, 6
§ 274a.13(d)(1) ...................................................................... 6

49 C.F.R.

pt. 383 ................................................................................ 5, 9, 10, 12

pt. 384 ................................................................................................ 5

pt. 384, subpt. B ........................................................................ 9, 10, 12

§ 1.87(e) ........................................................................................... 11

§ 383.25(c) ..................................................................................... 3, 5

§ 383.71(f)(2)(i) .................................................................................. 5

§ 383.72(a)(3) ...................................................................................... 1

§ 383.73(a)(3) .................................................................................. 3, 5

§ 383.73(b)(9) .................................................................................. 3, 5

§ 384.201 .......................................................................................... 12

§ 384.209 .......................................................................................... 13

§ 384.235 .......................................................................................... 13

§ 384.301(a) ............................................................................... 9, 10, 12

§ 384.301(o) ............................................................................... 9, 10, 12

§ 384.307(c) ...................................................................................... 10

§ 384.401 .......................................................................................... 14

§ 384.405 .......................................................................................... 14

§ 384.405(h) ...................................................................................... 15

**FEDERAL REGISTER**

Com. Driver's License Testing and Com. Learner's Permit
Standards, 73 Fed. Reg 19,282 (Apr. 8, 2008) ................................................. 7

Com. Driver's License Testing and Com. Learner's Permit
Standards, 76 Fed. Reg. 26,854-01 (May 9, 2011) .................................... 3, 7

Designation of REAL ID Identity Docs. for Citizens of the Freely
Associated States, 84 Fed. Reg. 46,556-01 (Sept. 4, 2019) .......................... 6

Restoring Integrity to the Issuance of Non-Domiciled Commercial
Drivers Licenses (CDL), 90 Fed. Reg. 46,509 (Sept. 29, 2025) ................... 1

OTHER AUTHORITIES

Mem. from Kenneth Mead, Inspector Gen., U.S. Dep't of Transp.,
to Deputy Sec'y et al. 2 (June 4, 2004).......................................................... 7

# GLOSSARY OF ABBREVIATIONS

| Abbreviations | Definition |
| --- | --- |
| CDL | Commercial Driver's License |
| DMV | California Department of Motor Vehicles |
| FMCSA | Federal Motor Carrier Safety Administration |

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This Petition is about how to interpret a regulation that defines the maximum validity period for commercial driver's licenses (CDLs). That regulation plainly reads: "A State must . . . make the CDL valid for no more than 8 years from the date of issuance." 49 C.F.R. § 383.73(b)(9).[1] Yet the Federal Motor Carrier Safety Administration (FMCSA) has disregarded this unambiguous language, both in making an adverse Final Determination against the California Department of Motor Vehicles (DMV) and in defending its strained interpretation of the relevant law. FMCSA relies on its own Preliminary Determination to claim that entirely separate regulations governing *legal presence* documentation set the maximum validity period, despite the absence of any language to that effect. Resp't Br. 37. Nothing in the law supports that interpretation—which FMCSA barely defends, contending instead that the issue is "beside the point." *Id.* at 2.

Indeed, FMCSA argues that whether its interpretation of federal law is correct is irrelevant because *California* law requires legal presence expiration dates to

---

[1] As noted in DMV's opening brief, every license addressed in this Petition was issued prior to September 29, 2025. Opening Br. 7, n.1. On that date, FMCSA issued an Interim Final Rule that dramatically altered the eligibility criteria for non-domiciled CDLs. Restoring Integrity to the Issuance of Non-Domiciled Commercial Drivers Licenses (CDL), 90 Fed. Reg. 46,509 (Sept. 29, 2025). Accordingly, unless otherwise noted, all references to federal statutes and regulations are to the rules as they existed prior to September 29, 2025.

match or exceed a CDL term.  But FMCSA offers no authority establishing that it may enforce *state* law, let alone through a Final Determination that it has leveraged to impose an interminable "pause" on DMV's ability to issue—or even renew or replace—CDLs to qualified drivers.

As shown here and in the DMV's opening brief, FMCSA's actions were unlawful, and the Final Determination should be set aside.

## ARGUMENT

### I. FMCSA'S FINAL DETERMINATION IS BASED ON A MISREADING OF THE LAW

#### A. No Federal Law Required Commercial Driver's Licenses to Expire on or Before a Driver's Legal Presence Documentation

"[C]ourts exercise independent review over the meaning of agency rules. . . . "[A] court must apply all traditional methods of interpretation to any rule, and must enforce the plain meaning those methods uncover." *Kisor v. Wilkie*, 588 U.S. 558, 581 (2019).  When reading the text, words and phrases are given their "ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012).  And when unambiguous, a "regulation then just means what it means— and the court must give it effect, as the court would any law." *Kisor*, 588 U.S. at 575; *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (a court's inquiry into the meaning of a law "must cease" where the language is "unambiguous").  FMCSA argues that DMV violated federal law by "improperly" issuing CDLs where "the expiration date of the license exceeded the applicant's

2

period of lawful presence." Resp't Br. 21. The regulation's plain language belies that assertion.

As FMCSA implicitly concedes, there is no federal statute that specifically governs CDL validity periods. But the regulations governing CDL validity periods are clear. In their totality, they provide that learner's permits must expire within one year of issuance and CDLs within eight years. 49 C.F.R. § 383.73(a)(3) ("A State must . . . make the [commercial learner's permit] valid for no more than 1 year from the date of issuance"); *id.* § 383.73(b)(9) ("A State must . . . make the CDL valid for no more than 8 years from the date of issuance"); *see also id.* § 383.25(c). No regulation requires a license to expire at the same time as an applicant's legal presence documents. And FMCSA points to none. Given this, the plain, unambiguous regulatory language ends the inquiry. *Robinson*, 519 U.S. at 340.

Moreover, as DMV explained in its opening brief, the plain language reading of the regulations is supported by the regulatory history. *See* Opening Br. 26-27. FMCSA promulgated a final rule in 2011 that set *both* the maximum validity periods for CDLs *and* the legal presence requirements for non-domiciled applicants, and that rule did not draw any connection between the two, nor any distinction between validity periods for domiciled and non-domiciled CDLs. *Id.*; *see also* Com. Driver's License Testing and Com. Learner's Permit Standards, 76

Fed. Reg. 26,854-01, 26,856, 26,860 (May 9, 2011).  Even more, the new rule

FMCSA promulgated this year under the Administrative Procedure Act requiring

non-domiciled CDLs to expire on or before the date of the driver's legal presence

documentation underscores that no such rule existed previously.  *See, e.g.*, *Sprint*

*Corp. v. F.C.C.,* 315 F.3d 369, 374 (D.C. Cir. 2003) ("[W]hen an agency changes

the rules of the game . . . more than a clarification has occurred"); Opening Br. 27-

30.

The Final Determination, which is based on the failure to cancel licenses with

allegedly incorrect expiration dates, has no grounding in federal law.  *Fed. Election*

*Comm'n v. Akins*, 524 U.S. 11, 25 (1998) (agency decisions may not be "based . . .

upon an improper legal ground").  It should be vacated.

## B.    FMCSA Fails to Show Why the Plain Meaning Should Not Control

Despite the plain language in the regulations, FMCSA argues that because

non-domiciled drivers must provide an "unexpired" document showing legal

presence at the time of application, the CDL must therefore expire at the same time

as the presented document.  Resp't Br. 37-38; *see also* JA007 (Prelim.

Determination at 3).  But as DMV explained, the *legal presence* requirement is an

eligibility requirement, separate and distinct from the procedural rule setting a

maximum expiration date.  Opening Br. 24-25.  FMCSA claims that its

interpretation is necessary to give effect to both the maximum validity periods

4

contained in 49 C.F.R. §§ 383.73(a)(3) and (b)(9), and to the legal presence requirements. Resp't Br. 39-40. But the regulatory scheme, by its plain language, already gives effect to all of the relevant rules. *See* 49 C.F.R. parts 383, 384; 49 U.S.C. §§ 31100 et seq. The regulations unambiguously set a ceiling of one-year and eight-year validity periods for CLPs and CDLs, respectively (49 C.F.R. §§ 383.25(c), 383.73(a)(3), 383.73(b)(9)), and separately, non-domiciled CDL applicants are required to demonstrate their legal presence in the United States at the time of application. *Id.* § 383.71(f)(2)(i). FMCSA's interpretation "contravene[s] the plain text of its own regulations" and must be rejected. *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 387 (D.C. Cir. 2018).

The CDL regulatory scheme also makes sense in practice. Several immigration categories provide for *continuing* employment authorization *despite* expiration of the physical Employment Authorization Document. *See, e.g.*, 8 C.F.R. § 274a.12(a)(5) (authorizing asylum grantees to work in the United States and stating "[a]n expiration date on the employment authorization document issued by [federal customs enforcement] reflects only that the document must be renewed, and not that the bearer's work authorization has expired"); *see also id.* § 274a.12(c)(9) (applicants for adjustment of status need not seek additional employment authorization under certain circumstances). Similarly, citizens of foreign States governed by The Compacts of Free Association are authorized to

live and work indefinitely in the United States, and thus have I-94 Entry forms with *no* expiration date. *See* Designation of REAL ID Identity Docs. for Citizens of the Freely Associated States, 84 Fed. Reg. 46,556-01, 46,557 (Sept. 4, 2019) (authorization to work not subject to limitations of Employment Authorization Documents). Indeed, until October 30, 2025, employment authorization was "automatically extended for an additional period not to exceed 540 days" when a renewal application met certain criteria. 8 C.F.R. § 274a.13(d)(1) (effective Jan. 13, 2025 to Oct. 29, 2025).

Accordingly, accepting the plain language does not, as FMCSA urges, yield a "paradoxical result." Resp't Br. 38 (citing *United Mine Workers of Am. v. Fed. Mine Safety & Health Rev. Comm'n*, 671 F.2d 615, 625-26 (D.C. Cir. 1982)). *United Mine Workers* is distinguishable. There, this Court reviewed regulations related to miner representatives' right to accompany federal inspectors. *United Mine Workers*, 671 F.2d at 617. Because the general statutory scheme provided "broad" rights to accompany federal inspectors, the Court rejected a "paradoxical" interpretation that would have significantly limited those rights. *See id.* at 618-19, 625-26. Here, no similar "paradox" arises from the plain reading of the regulations.

FMCSA's reliance on a memorandum by the former Inspector General of the U.S. Department of Transportation is also misplaced. Resp't Br. 37-38. The

6

Inspector General's memorandum recommended that FMCSA require all "CDL *applicants* [to] demonstrate that they are either a U.S. citizen, a permanent legal resident, or otherwise legally present in the United States." Mem. from Kenneth Mead, Inspector Gen., U.S. Dep't of Transp., to Deputy Sec'y et al. 2 (June 4, 2004), https://tinyurl.com/yf6j94pf (emphasis added). Congress required the "Secretary of Transportation [to] issue regulations to implement the recommendations contained in the memorandum." Security and Accountability for Every Port Act of 2006 (SAFE Port Act), H.R. 4954, 109th Cong., § 703(a) 120 Stat. 1884 (Oct. 13, 2006). Consistent with the Inspector General's recommendation, FMCSA proposed a rule requiring CDL applicants to show proof of "legal presence in the United States before a State issues a CDL." Com. Driver's License Testing and Com. Learner's Permit Standards, 73 Fed. Reg 19,282, 19,285 (Apr. 8, 2008). The final rule contained that same "legal presence" requirement. *See* Com. Driver's License Testing and Com. Learner's Permit Standards, 76 Fed. Reg. 26,854-01, 26,856, 26,860 (May 9, 2011). But *none* of these recommendations or rules state that the driver's documentation of legal presence must remain unexpired throughout the duration of the CDL's validity. Rather, as discussed in DMV's brief, the final rule that was adopted set maximum validity periods for all CDLs, and established the documents a non-citizen

applicant must present to prove legal presence.  It did not tether the expiration

dates of the two together.  Opening Br. 26-27.

As *United Mine Workers* explains, extrinsic sources "may generally be

considered only in case of ambiguity."  *United Mine Workers*, 671 F.2d at 621.

FMCSA's attempt to construe the regulation "contrary to its plain terms" does not

withstand scrutiny.  *Id.*  ("Upon examination, it is readily apparent that the

[agency's] reliance upon the [legislative statement] has produced a result which is

in conflict with an unambiguous requirement of [the regulation], and that it

therefore cannot stand.").  Accepting FMCSA's position would instead "permit the

agency, under the guise of interpreting a regulation, to create de facto a new

regulation."  *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000).

Accepting the plain meaning of the regulations, the Final Determination

should be set aside as arbitrary, capricious, and contrary to law.

## II.   FMCSA CANNOT USE CALIFORNIA'S IMPLEMENTATION OF STATE LAW TO SUPPORT THE FINAL DETERMINATION

FMCSA repeatedly argues that DMV "agreed" that CDLs had been issued

"unlawfully," *see, e.g.*, Resp't Br. 1, but the record does not support this assertion.

To be sure, DMV has acknowledged that CDLs were issued in violation of

*California*—and only California—legal requirements.  *See* Decl. S. Gordon, Doc.

No. 2158053 at 30-32, ¶¶ 6-7, 9; Opening Br. 32-33.  And on that basis, DMV was

required to notice the licenses for cancellation pursuant to state law.  *Id.*  FMCSA

is aware that DMV never agreed that any licenses were noncompliant with federal expiration-date requirements.  Resp't Br. 11 (conceding that "DMV disputed that its practice of issuing CDLs that expired after an alien's period of lawful presence violated federal law") (citing JA023-024 (DMV Resp. to Prelim. Determination at 3-4)).  Accordingly, there was no mutual agreement between FMCSA and DMV to a corrective action plan that included the cancellation of CDLs pursuant to federal law.[2]  *See* Opening Br. 31-34.

FMCSA argues that "DMV's protest that it agreed to cancellation of the licenses because they violated state law, not federal law, is beside the point: what matters is DMV's failure to honor its commitment to take corrective action it agreed was needed."  Resp't Br. 2-3.  But the failure to adhere to a corrective schedule is not an independent basis for a finding of noncompliance; logic requires that there be some prior noncompliance for there to be anything to correct.  As FMCSA explains, it conducts annual program reviews of state licensing agencies to "determine whether or not the State meets the general requirement for substantial compliance."  Resp't Br. 7-8 (citing 49 C.F.R. § 384.307(a)).  To be in "substantial compliance," a State must comply with the provisions of part 383 and subpart B of part 384 of title 49 of the Code of Federal Regulations.  49 C.F.R.

---

[2] For the same reason, FMCSA had no regulatory authority to *condition* its determination of compliance on the planned cancellations.  JA051 (Conditional Determination at 11).

§ 384.301(a), (o).  The requirement to adhere to a corrective schedule is found in section 384.307(c)—that is, in subpart *C* of part 384.  In this context, the requirement to adhere to a corrective schedule must advance a State's compliance with the relevant regulations; it cannot be an *independent* basis for a finding of substantial noncompliance with part 383 and subpart B of part 384, particularly where the corrective action "agreed to" is not contained in those provisions.  49 C.F.R. § 384.301(a), (o).  Therefore, a Final Determination based exclusively on the failure to adhere to a corrective schedule to comply with *state* law is inherently flawed and should be set aside.  *See Akins*, 524 U.S. at 25; *Tripoli Rocketry Ass'n, Inc.* v. *Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006) (agency must engage in "reasoned decisionmaking").

FMCSA attempts to defend its overreach by arguing that it is entitled to review a State's issuance procedures "as an integrated whole," and that it may require States to complete corrective actions even if the review finds noncompliance with *state* law.  Resp't Br. 22.  But FMCSA cites no authority to support this striking assertion.  "[T]he Federal Government 'can exercise only the powers granted to it.'"  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 534-35 (2012) (quoting *McCulloch v. Maryland*, 17 U.S. 316, 405 (1819)).  The Department of Transportation—consistent with principles of federalism—is authorized by Congress to carry out the duties and powers related to "ensur[ing]

10

the coordinated and effective administration of the transportation programs of the United States Government[.]" 49 U.S.C. § 101. As relevant here, the Department of Transportation delegated authority to FMCSA to carry out the Secretary's functions under 49 U.S.C. chapter 313, which sets forth *federal* commercial motor vehicle standards. 49 C.F.R. § 1.87(e). Any enforcement action based on *state* law exceeds that statutory authority. *See Nat'l Fed'n of Indep. Bus. v. Dep't of Labor*, 595 U.S. 109, 117 (2022) ("Administrative agencies . . . possess only the authority that Congress has provided.").

### III. FMCSA's Additional Bases for the Final Determination Are Unsupported

FMCSA issued its Final Determination "[b]ecause DMV has failed to undertake the necessary step of rescinding and reissuing noncompliant non-domiciled CLPs and CDLs, as promised and agreed upon." JA120 (Final Determination at 9). While FMCSA noted other areas of alleged noncompliance raised in the Preliminary Determination, they were not the basis of the Final Determination. *See, e.g.*, JA113 ("After considering DMV's responses and its failure to adhere to the schedule for corrective action, FMCSA makes this Final Determination of Substantial Noncompliance[.]"). FMCSA now argues that the Final Determination is valid because DMV also purportedly failed to provide adequate documentation of its corrective actions (Resp't Br. 30-31, 35), had technical limitations in its processing systems (*id.* at 26, 33, 44), issued licenses to

11

citizens of Mexico and Canada (*id*. at 24-25); and issued "temporary" CDLs without reporting them to the federal database (*id.* at 25-28). But those are not the grounds stated in the Final Determination. Again, the Final Determination was issued because DMV "failed to implement the crucial corrective action of rescinding and reissuing licenses" by January 5, 2026. JA120.[3] The other purported areas of noncompliance are therefore immaterial to this review because "[w]ithout doubt, a fundamental rule of administrative law is that a court reviewing an agency's decision must judge the propriety of the agency action solely by the grounds invoked by the agency." *Delta Air Lines, Inc. v. Exp.-Imp. Bank of United States*, 85 F. Supp. 3d 436, 448 (D.D.C. 2015) (internal citations and quotations omitted); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 22 (2020) (*post hoc* rationalizations of agency action are impermissible).

In any event, the other corrective action demands either were not legally supported or had been resolved before the Final Determination was issued. As discussed *supra*, "substantial compliance" requires compliance with part 383 and subpart B of part 384 of title 49 of the Code of Federal Regulations. 49 C.F.R. § 384.301(a), (o). These regulations concern safety measures such as ensuring that States have adequate testing programs (*id.* § 384.201), a traffic violation

---

[3] Indeed, of the other purported areas of noncompliance, FMCSA acknowledged in the Final Determination that "DMV pledged to update and end these practices and described its efforts to correct these deficiencies." JA118.

notification system (*id.* § 384.209), and a commercial driver drug and alcohol "clearinghouse" (*id.* § 384.235). They say nothing about a State providing "adequate documentation" of corrective actions or having certain technical capabilities in its digital processing systems. Accordingly, a Final Determination issued on any of those bases would be arbitrary and capricious. *Nat'l Env't Dev. Ass'n Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("It is axiomatic . . . that an agency is bound by its own regulations. . . . Thus, an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations.") (internal quotations and citations omitted).

FMCSA also argues that DMV was noncompliant for issuing temporary CDLs to drivers while DMV verified their legal presence, and for issuing CDLs to citizens of Mexico and Canada who were not DACA recipients. Resp't Br. 24-25. But DMV stopped issuing temporary CDLs on September 26, 2025, all temporary permits and CDLs issued prior to that date were expired as of November 2025, and it ended the practice altogether. JA059 (DMV Resp. to Conditional Determination at 7). FMCSA was aware of those facts. JA118. As to issuing licenses to Mexican and Canadian citizens, DMV explained that it did not agree with FMCSA's interpretation of this rule but nevertheless implemented the required corrective action by "com[ing] into compliance with FMCSA's current interpretation of the rules" on December 10, 2025 (JA056) and training its field

13

staff on this issue on December 17, 2025 (JA071-073 (Dec. 18, 2025 E-mail from

DMV to FMCSA regarding staff training)).[4]  Neither could therefore serve as an

independently sufficient basis for the Final Determination because they were

already resolved.  *See BFI Waste Sys. of N. Am., Inc. v. F.A.A.*, 293 F.3d 527, 532

(D.C. Cir. 2002) (agency determinations are arbitrary and capricious if they are not

supported by substantial evidence in the record as a whole) (internal quotations and

citations omitted).

## IV. THERE IS NO LEGAL BASIS FOR FMCSA'S INDETERMINATE "PAUSE" ON DMV'S AUTHORITY TO ISSUE LICENSES

The regulations applicable to this matter clearly describe the consequences of

a State's noncompliance.  A never-ending "pause" against issuing, or even

replacing or making corrections to, non-domiciled licenses is not among those

consequences.  49 C.F.R. §§ 384.401, 384.405 (limiting penalties to withholding

up to four percent of the federal-aid highway funds required to be apportioned

annually to any State under 23 U.S.C. §§ 104(b)(1) and (2) after the first year of

noncompliance; withholding up to eight percent of the federal-aid highway funds

required to be apportioned to any State under 23 U.S.C. §§ 104(b)(1) and (2) for

---

[4] And DMV did cancel all licenses issued to Mexican and Canadian nationals not present under the DACA program on February 13, 2026, as it stated it would.  JA059.

subsequent years of non-compliance; and decertifying a State's commercial license program).

Having now been in place for nine months, FMCSA's determinations have effectively ended DMV's non-domiciled licensing program. *See* Resp't Addendum A3-12. DMV cannot even correct or replace valid, unexpired CDLs that do not exhibit any of the characteristics with which FMCSA has taken issue. *See* Sikh Coalition Amicus Br. 11-12, 15-17 (detailing the State's inability to replace or renew CDLs and the consequences for drivers). Not even the most extreme of corrective actions—that is, program decertification—envisions the cancellation of CDLs or preventing drivers from having their unexpired CDLs replaced. 49 C.F.R. § 384.405(h) (an unexpired CDL issued prior to decertification date "will remain valid until its stated expiration date"). FMCSA's punitive and indeterminate moratorium on DMV's non-domiciled CDL program is unlawful and should be set aside. *See Nat'l Fed'n of Indep. Bus v. Dep't of Labor*, 595 U.S. at 117; *see also* Opening Br. 34-36.

FMCSA attempts to justify its actions by arguing that DMV voluntarily agreed to an indefinite "pause." Resp't Br. 43-44. Not so. As part of its September 2025 Preliminary Determination, FMCSA demanded that DMV "pause" issuing non-domiciled CDLs pending FMCSA's review. JA018. DMV immediately cooperated with FMCSA's audit and enforcement efforts and

instituted the demanded "pause" even while pointing out that federal regulations did not require work authorization and license expiration dates to match.  JA033-034.  Even in the Preliminary Determination, FMCSA made it clear that DMV's entire CDL program—domiciled and non-domiciled—was at stake.  JA019.  It constantly reminded DMV of the potential decertification.  JA052, JA121.  DMV in good faith complied with FMCSA's demands under the reasonable belief that FMCSA would lift the pause upon the audit's completion.  But FMCSA has failed to act.  Thus, using the analogy in FMCSA's brief, DMV did not agree to "stop the truck" as repairs are made (Resp't Br. 44), but instead was coerced into pulling to the roadside and turning the engine off while being threatened with having its truck seized and confiscated.  That was, and is not, an assent to a punitive and legally unsupported action that continues to cause irreparable harm to California and its residents.

## CONCLUSION

DMV's petition for review should be granted, and the Final Determination should be vacated.  FMCSA does not dispute DMV's request to grant relief at the Court's earliest opportunity to avoid funding being withheld at the start of the new fiscal year on October 1, 2026.  Accordingly, if the Court finds this Petition meritorious, DMV respectfully requests expedited relief before that date.

Dated: June 26, 2026

Respectfully Submitted,

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
R. MATTHEW WISE
SETH E. GOLDSTEIN
*Supervising Deputy Attorneys General*
KRISTEN C.A. KIDO
SHIWON CHOE

 /s/ Jay C. Russell

JAY C. RUSSELL
*Deputy Attorneys General*
Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3617
Email: Jay.Russell@doj.ca.gov

*Attorneys for Petitioner*
*California Department of Motor Vehicles*

17

# CERTIFICATE OF COMPLIANCE

Under Fed. R. App. P. 32(g)(1), I certify that:

1.     This document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), the brief contains 3,735 words and thus does not exceed the 6,500-word limit.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(b) because the brief has been prepared in proportionally spaced typeface using Microsoft Word word-processing system in Times New Roman that is at least 14 points.

Dated: June 26, 2026                                    */s/ Jay C. Russell*
                                                        JAY C. RUSSELL

**CERTIFICATE OF SERVICE**

I hereby certify that on this June 26, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: June 26, 2026                     */s/ Melissa Mendiola*
                                          MELISSA MENDIOLA